BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

28 (Pages 506 to 509)

| Page 506 | Page 508 |
|---|---|

**Page 506**

1    you received an award. I said, yeah, I did. She
2    said, unh-unh, you lie, and just walked away. And
3    then Tammy also asked me and said, ooh -- and
4    pretty -- almost the same thing. And I said -- I told
5    her. I said, yeah, I did receive one. Tammy said,
6    you're a liar; you didn't receive one.
7        So they evidently took Paul Reams' word over my
8    word, which was very degrading; but I left it like
9    that. I didn't try to prove anything to anyone.
10       Q.  Did you ever go talk to Mr. Reams and say you
11   forgot about me or --
12       A.  No.
13       Q.  -- ask him why he didn't mention you?
14       A.  No.
15       Q.  Was anyone else recognized at that meeting
16   when Ms. McAnnally got this award?
17       A.  Not that I'm aware of.
18       Q.  Do you know the exact name of the award she
19   received?
20       A.  It was a citation. I can't -- I can't
21   remember the exact award. Citation is in the name of
22   it, I think.
23       Q.  Do you know who it came from or who made the
24   decision to give it to her?
25       A.  No.

**Page 508**

1        Q.  Did you ever talk to Ms. Davenport about the
2    comment?
3        A.  No.
4        Q.  Did you ever talk to Mr. Reams about the
5    comment?
6        A.  No.
7        Q.  What is your basis for saying she made the
8    comment to retaliate against you?
9        A.  Okay. Your question again. I'm sorry.
10           MR. DuBOIS:  Would you repeat it?
11               (The court reporter read the
12                pending question.)
13       A.  That it occurred.
14       Q.  Anything else?
15       A.  Yes. Paul Reams decided that he was going to
16   decrease the number of ADS days that -- that employees
17   could work at home. At one time, legal assistants
18   could work at home two days out of the -- out of the
19   week; and he decreased that number to one day. And he
20   discussed that matter with me. I was the union
21   steward. I said, okay. I said, give me something in
22   writing. I said, please put out something in writing
23   to let them know that this action came from you.
24       Because I had nothing to do with the number of
25   days. As the union steward, I hadn't -- as the union,

**Page 507**

1        Q.  All right. Besides the acts you've told me
2    about in this deposition, are there any other acts you
3    claim made it a hostile work environment?
4        A.  Yes. Pam Davenport -- this took place in
5    about 1999 while we was at the other location on --
6    what was that -- McDonough Street. Pam told employees
7    that -- that I -- that I lied, that I lied to the
8    union to get the position that I got. And that was
9    very -- so Pam -- in other words, the information that
10   she gave the other employee was erroneous information.
11   And so I was a liar in the eyes of the people.
12       Q.  Okay. And who told you about Ms. Davenport
13   making this comment back in 1999?
14       A.  I heard her.
15       Q.  You heard Ms. Davenport make the comment?
16       A.  Yes. She made the comment. I think it was
17   to Karen Burton. Now, I could see Karen Burton. And
18   I don't know who the other people were; but those were
19   the ones that I could see, Pam and Karen.
20       Q.  Okay. Did you --
21       A.  And, also, she -- evidently informed Paul
22   Johnson of it as well.
23       Q.  And how do you know that?
24       A.  Paul Johnson wrote a statement regarding
25   that.

**Page 509**

1    the union had nothing to do with saying how many days
2    the employee could work at home. That was a matter we
3    could not touch. And he said, okay.
4        Well, he decreased the number of days an
5    employee -- that legal assistants could work at home.
6    And everybody -- he gave the appearance that I was the
7    reason that it decreased.
8        Q.  And when did this conversation take place?
9        A.  I'm going to say between -- oh, I don't know.
10   Well, but I know it had to be between 2001, 2002.
11       Q.  You're saying he reduced the number of days
12   from two to one?
13       A.  Yes.
14       Q.  And you're saying somehow he implied that you
15   had something to do with that?
16       A.  Yes.
17       Q.  How did he do that?
18       A.  Paul Reams -- well, how did he do that? I
19   don't know how he did that. Well, I don't know
20   actually how he did it.
21       Q.  Well, what do you base your statement that he
22   implied you had something to do with it?
23       A.  That it occurred. He never -- I did ask Paul
24   Reams to put something in writing to the bargaining
25   unit, union employees informing them that I had

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                     7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

29 (Pages 510 to 513)

Page 510

1  nothing to do with that decision that he made. It
2  never happened.
3      Q.  Did you ever tell anyone you had nothing to
4  do with the decision?
5      A.  I tried to tell a few people that approached
6  me about that, that I had nothing to do with that.
7      Q.  Did you have any further conversations with
8  Mr. Reams about that decision?
9      A.  No. No.
10     Q.  And what's your basis for alleging anything
11  he did regarding that was retaliatory?
12     A.  That it occurred and he did not do anything
13  to try to keep the appearance of -- of it looking as
14  though I did that.
15     Q.  Anything else?
16     A.  Yes. Paul Johnson had issued some cases, ten
17  cases to Bonita McWilliams as well as ten cases to me.
18  The size of those cases were just -- the ten cases
19  were just unbelievable, but they had to be worked. He
20  gave me ten of the largest cases, I guess, that the
21  agency had and gave Bonita ten smaller cases. And I
22  was -- I -- I showed Bonita the cases, and I also
23  showed -- well, when I showed Bonita, Bonita said, uh,
24  I can't believe they did -- he did that. She said
25  show Tammy, and I showed Tammy. And Tammy said, I

Page 511

1  would say something to Paul about it.
2      Q.  Okay. When was this particular assignment of
3  cases?
4      A.  I'm going to say it was -- it took place
5  possibly 2003, 2004.
6      Q.  Do you know the exact month?
7      A.  No.
8      Q.  Did you go talk to Mr. Johnson about the
9  assignment?
10     A.  No.
11     Q.  Did you ever ask him how he made the
12  assignment?
13     A.  No.
14     Q.  Or how he selected which cases went to which
15  person?
16     A.  No.
17     Q.  All right. Was there any other acts you
18  allege made your work environment at the Social
19  Security office a hostile work environment due to
20  retaliation?
21     A.  Yes. Yes.
22     Q.  What else?
23     A.  The agency started reassigning people's
24  workload. And we had to go into the conference or
25  into the IVT room to -- to get the work. And when I

Page 512

1  was asked to come in to get my work, the supervisors
2  walked around -- all the supervisors were there. Oh,
3  excuse me. Supervisors were there. I'm going to
4  rephrase that. Management was there. And they walked
5  around -- give me a second. They walked around as
6  though -- the feeling that I received from what I saw
7  in there was they walked around as though they were
8  guarding, like -- like I was some criminal. And my
9  understanding is that they did not do that -- that
10  they did not do that to any of the other employees.
11     Q.  All right. There was a -- well, there was a
12  meeting when they reassigned work? Is that what
13  you're saying?
14     A.  We had a meeting or Paul Reams put out e-mail
15  about we were going to reassign work and all of that
16  and that we were going to go into the IVT room to --
17  to do -- pick up the assignment of work, to receive
18  our work and everything. When -- when they called me
19  to come in there, they had -- management was in there
20  walking around as though they were watching -- they
21  were walking around as though I was a criminal or
22  there to steal or as if I would hurt someone or
23  something like that.
24     And that was -- I felt that was very retaliatory
25  because it did not -- I'm sorry. Do you want me to

Page 513

1  stop?
2      Q.  When did this take place?
3      A.  It took place between 2002 -- I'm sorry --
4  2003 and 2005.
5      Q.  Can you give me the exact month?
6      A.  No.
7      Q.  All right. When you went into the IVT room,
8  that's a room at the Social Security office?
9      A.  Yes.
10     Q.  Was anyone else -- who was present in the
11  room when you went in?
12     A.  The -- excuse me. I'm sorry. Okay. It was
13  Pam Davenport. I believe it was -- I can't -- I can't
14  recall. I know for a fact that it was Pam Davenport.
15     Q.  You can't recall who else was in the room?
16     A.  It was Pam Davenport.
17     Q.  Were you present --
18     A.  I think -- no. It was -- I know Pam was
19  there.
20     Q.  You don't recall who else was there?
21     A.  I want to say Paul Reams was there.
22     Q.  You want to say. Do you know? Do you recall
23  him being there?
24     A.  No. I know for a fact Paul -- Pam Davenport
25  was there.

Page 514

1  Q.  Was Paul Reams there?
2  A.  I -- I -- I cannot say for sure that he was
3  there.
4  Q.  Besides Pam Davenport, who else was there?
5  A.  I was the only employee in there.
6  Q.  Okay.  So you went in alone, Ms. Davenport
7  was in there, and you got your new work?
8  A.  And a male was in there.  A male.
9  Q.  A male?
10 A.  A male was in there, yes.
11 Q.  All right.  So you went into the IVT room,
12 Ms. Davenport was in there, and some male was in
13 there?
14 A.  A male.  A management official that was a
15 male.
16 Q.  Okay.  Who was that person?
17 A.  I don't know.  I can't -- a male was in
18 there.
19 Q.  Was this someone who had worked in the office
20 or just some unknown male in the Social Security
21 Administration?
22 A.  It was one of the management officials.
23 Q.  You just can't recall which one?
24 A.  No.
25 Q.  Were you present when any of the other legal

Page 515

1  assistants went into the IVT room to get their work?
2  A.  No.
3  Q.  And what is your basis for alleging anything
4  that management did when you were given the work on
5  that occasion was due to retaliation?
6  A.  It occurred and that no one else had to go
7  through that.  No one else had to go through that.
8  Q.  And what is your basis for alleging no one
9  else had to go through that?
10 A.  Because I was informed by Tresalyn Collier
11 that no one else had to go through that.
12 Q.  What did Ms. Collier tell you?
13 A.  She said, do you remember when you went to
14 get your cases?  And I said, yes.  She said, you were
15 the only employee that they did that way.  I said, oh,
16 okay.
17 Q.  When did she tell you this?
18 A.  Just through a conversation.  We were just
19 talking one time and she mentioned it.
20 Q.  Did she say how she knew?
21 A.  I did not question what she told me.
22 Q.  And what exactly did management do to you,
23 are you claiming on that occasion?
24 A.  Humiliated me.  Embarrassed me.
25 Q.  The fact that there were two supervisors in

Page 516

1  the room?
2  A.  Two.  Possibly more, but two for sure.  That
3  evidently, other people had to hear about it since
4  Ms -- Ms. Collier informed me of it.
5  Q.  And you have no idea how she found out?
6  A.  No.
7  Q.  When you were in room with Ms. Davenport and
8  this unidentified male supervisor, what did they do
9  that you're claiming was retaliatory?
10 A.  I did not say that he was a male supervisor.
11 I -- well, management is supervisor.  So, okay.  What
12 was your question?
13 Q.  What are you claiming Ms. Davenport and this
14 unidentified male management did while you were in the
15 IVT room that was retaliatory?
16 A.  Humiliating, embarrassing.
17 Q.  What did they do that was humiliating?
18 A.  Walk around as though I was there to -- to
19 either -- to commit a criminal act or something.
20 Q.  And what about them walking around the room
21 made you think that they thought you were there to do
22 a criminal act?
23 A.  My understanding is it did not occur with
24 anybody else.
25 Q.  What did not occur?

Page 517

1  A.  That they walked around to guard whatever
2  they were doing.  It did not occur with anybody else.
3  Q.  And as I understand, it's solely based on
4  your conversation with Ms. Collier?
5  A.  Yes.
6  Q.  Besides the acts you've told me about during
7  this deposition, are there any other acts you claim
8  made your work environment at the Montgomery Social
9  Security office a hostile work environment due to
10 retaliation?
11 A.  Management -- give me a second, please.
12 Management allow other -- other employees to -- to
13 stretch their work over into another working area if
14 they want, if they wanted to or needed to.  And I
15 asked Cynthia Lamar if I could work in the IVT room.
16 They used to allow me to work in the IVT room.  And
17 Cynthia Lamar told me, yes, I could work in the IVT
18 room.  So after I took all my work there and got it
19 spread out and everything, she came in and told me no,
20 I could not work in there, to get my work and to leave
21 out.
22 Q.  When was this?
23 A.  It had to occur after I was under the --
24 under Cynthia Lamar's supervision.
25 Q.  You started working for her in May 2004; is

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

31 (Pages 518 to 521)

Page 518

1  that right?
2     A.  I'm not certain, but it was May of something.
3     Q.  Do you know the exact month this happened?
4     A.  No.
5     Q.  Did Ms. Lamar say why she was saying you
6  couldn't work in the IVT room?
7     A.  No.
8     Q.  Did you have any discussion with her about
9  why she wouldn't let you work in the IVT room?
10    A.  No.
11    Q.  Did you talk to Mr. Reams or Mr. Johnson or
12  Ms. Davenport about this matter?
13    A.  No.  I talked -- oh, no.
14    Q.  What is your basis for alleging that
15  Ms. Lamar's statement to you, you couldn't spread out
16  your work in the IVT room, was retaliation?
17    A.  They continued to let other people do it.
18    Q.  On that same day?
19    A.  Yes.
20    Q.  You're saying --
21    A.  Oh.  When I say do it, not work in the IVT
22  room, but continue to allow them to spread their work
23  out to other working area.
24    Q.  Are you saying Ms. Lamar let other legal
25  assistants spread their work out to other working

Page 519

1  areas?
2     A.  Yes.
3     Q.  Did you ask her at that time to -- if you
4  could use another room besides the IVT room?
5     A.  No.
6     Q.  Did you ever request again to work in other
7  areas or spread your work out?
8     A.  No.
9     Q.  All right.  Are there any other acts you
10  claim are part of your hostile work environment claim?
11    A.  Yes.  I left a book on my desk.  I left -- I
12  accidentally left a book on my desk.  And I knew it
13  was on my desk; and I said, well, I'll just get it
14  when I get back to work.  The next day I had off.  And
15  I don't know if I was -- anyway, the next day I had
16  off.
17    So when I came back to my office, to my desk, my
18  book was gone and my desk area was cleaned up.
19  Talking with Tammy Martin, she informed me that
20  management asked her to clean up -- to clean my desk
21  area.
22    Q.  When -- when was this?
23    A.  I can't say.  I'll say it happened between
24  2003 and 2005.
25    Q.  So you left -- what book did you leave on

Page 520

1  your desk?
2     A.  A book that I kept information in.
3     Q.  What kind of information?
4     A.  Like a journal.
5     Q.  A personal journal?
6     A.  Yes.
7     Q.  And when you came back to the office, it was
8  gone?
9     A.  Yes.
10    Q.  And Ms. Martin told you she had been asked to
11  clean the desk?
12    A.  She said management asked her to clean the
13  desk.
14    Q.  Did you ever go talk to anyone in management
15  about this?
16    A.  No.
17    Q.  And what are you claiming about that event
18  was retaliatory?
19    A.  That -- that someone discovered my book, took
20  my book and then asked that it be cleaned up so
21  that -- that it would look as though whoever found my
22  book or took my book -- well, let me put it like that.
23  Having Tammy -- management having Tammy Martin to
24  clean off my desk, I felt like that was retaliatory.
25  They had never had Tammy Martin or, to the best of my

Page 521

1  knowledge, anyone else to ever clean off my desk
2  before like that.  Now, they did -- well, I can't --
3  okay.
4     Q.  Did you ever find your journal?
5     A.  No.
6     Q.  Did you ever ask Tammy Martin why she was
7  asked to clean off your desk?
8     A.  No.
9     Q.  And you never spoke to any management
10  officials about this?
11    A.  No.
12    Q.  Do you have any knowledge whether Ms. Martin
13  was asked to clean anyone else's desk?
14    A.  No.
15    Q.  Why do you claim this was retaliatory?
16    A.  Because it occurred.  And that's why I claim
17  it was retaliatory.
18    Q.  Anything else?
19    A.  No.
20    Q.  Have you told me about all the acts you
21  believe created a hostile work environment due to
22  retaliation at the Social Security office in
23  Montgomery?
24    A.  To the best of my knowledge.
25    Q.  Well, if you could take time to read the

| Page 522 | Page 524 |
|---|---|

**Page 522**

1  complaints. I want to make sure we covered all of
2  your claims in the deposition.
3      A.  Okay.
4      Q.  So read the two complaints. And we'll take a
5  short break, and we'll wrap it up.
6              (Off-the-record discussion)
7              (Evening recess at 4:57 p.m.)
8              (Proceedings reconvened on Friday,
9              July 11, 2008, at 10:12 a.m., as
10             follows:)
11             EXAMINATION (continued)
12  BY MR. DUBOIS:
13      Q.  Good morning, Ms. Johnson.
14      A.  Good morning.
15      Q.  Is there any reason you won't be able to give
16  true and honest answers to the questions I'm asking
17  you today?
18      A.  No.
19      Q.  And you understand you're still under oath?
20      A.  That is correct.
21      Q.  And are you on any medication this morning?
22      A.  No.
23      Q.  And previously you mentioned when you were
24  staying in town here in Montgomery, you were staying
25  with some friends; is that right?

**Page 524**

1      And my first question would be, who are you
2  alleging created this hostile work environment, this
3  retaliatory, hostile work environment in the Social
4  Security office in Montgomery?
5      A.  The management officials.
6      Q.  And who -- what individual management
7  officials are you referring to?
8      A.  Paul Reams, Paul Johnson, Cynthia Lamar, Pam
9  Davenport, Judge Thigpen, Gloria Bozeman, Kim
10  Leisiure.
11      Q.  What was the last name?
12      A.  Leisiure.
13      Q.  Can you spell that for me?
14      A.  No, I can't.  L-E-I-S-I-U-R-E.
15      Q.  And what was the first name?
16      A.  Kim.
17      Q.  Kim, K-I-M?
18      A.  Correct.
19      Q.  And who is Kim Leisiure?
20      A.  Kim Leisiure is -- was my supervisor in
21  Chattanooga, Tennessee.
22      Q.  She's no longer your supervisor?
23      A.  That's correct.
24      Q.  And she was a supervisor you worked under
25  after you transferred to Chattanooga?

**Page 523**

1      A.  Yes.
2      Q.  What are the names of those friends?
3      A.  Roger.
4      Q.  Roger. Does he have a last name?
5      A.  Rudolph.
6      Q.  Rudolph?
7      A.  Yes.
8      Q.  All right. And is he a friend from work or a
9  social acquaintance?
10      A.  Social acquaintance.
11      Q.  And have you spoken to anybody about the
12  testimony you've given during these depositions?
13      A.  No.
14      Q.  Did you review any documents today?
15      A.  No.
16      Q.  And let me refer you back to Defendants'
17  Exhibits #9 and #31, which are the two complaints you
18  filed in federal court that we've been talking about.
19  And when we left off on Wednesday, we were talking
20  about the hostile work environment claims in these two
21  complaints, which were, I think -- let's see. It was
22  page 9 of your first complaint, count three, and then
23  page 15, count two, of the second complaint. And I
24  want to start up our conversation again about these
25  claims.

**Page 525**

1      A.  One of the supervisors that I worked with
2  after I transferred from Chattanooga -- I mean from
3  here to Chattanooga.
4      Q.  Are those all the management officials you
5  claim created this hostile work environment in
6  Montgomery?
7      A.  Oh, in Montgomery? No. Kim Leisiure is not
8  in Montgomery. She is in Chattanooga, but I feel
9  that -- yes. So those --
10      Q.  So cross her out?
11      A.  No.
12      Q.  Include her?
13      A.  But she's not from Montgomery. You said
14  Montgomery.
15      Q.  My question was, in these two complaints,
16  Exhibit #9 and #31, you have a claim that there was a
17  hostile work environment at the Social Security office
18  in Montgomery.
19      A.  Okay.
20      Q.  Now, the question was what management
21  officials created it, and I said what management officials.
22  and I said what management officials.
23      A.  In Montgomery, everyone. And scratch out Kim
24  Leisiure. She's in Chattanooga, Tennessee.
25      Q.  Okay. And going back to these two claims,

Page 526

1  we've been talking about some of the acts that you
2  claim created this hostile work environment. Have we
3  discussed all the acts you're alleging created a
4  hostile work environment in the Social Security office
5  in Montgomery?
6      A.  I -- I don't -- I don't think so.
7      Q.  Okay.
8      A.  There were more to it where we left off
9  yesterday -- I mean day before yesterday.
10     Q.  Well, you had previously said all of them
11 were listed in paragraphs of these two complaints.  So
12 if you can take a minute and look over the
13 complaints.  And I want to know if there are any
14 additional acts that we have not discussed, and I'd
15 like to ask you a few questions about them.
16     A.  Okay.  And you said it's on page 9?  Hostile
17 work environment, yes.  Okay.
18     MR. DuBOIS:  You can go off the record while
19 she looks at it.
20        (Brief pause)
21     A.  You said page 9 and page 15?
22     Q.  And I think we -- yeah.  And the second
23 lawsuit starts on 14 and rolls over onto 15.
24     A.  Okay.  Okay.
25        (Brief pause)

Page 527

1      A.  I read the hostile work environment.  That's
2  what you wanted me to read, right?
3      Q.  Well, I wanted to know if there's any
4  additional acts that are part of the claims that are
5  alleged in these two lawsuits that we haven't yet
6  discussed.
7      A.  Okay.  I don't believe I named about -- or I
8  mentioned about lamp, my desk lamp.
9      Q.  I believe we discussed that back in October.
10     A.  Okay.  Okay.  I don't -- just don't recall.
11 Okay.  So that's fine.  Let me see.  Taking lunch,
12 extended lunches.
13     Q.  Okay.  And what are you referring to when you
14 say take extended lunches?
15     A.  Ms. -- individual -- well, Mr. Reams would
16 allow individuals that he would -- employee bargaining
17 unit employees to go to lunch and -- and they would
18 come back and not take -- sign for the leave that they
19 took.  And I feel that that -- that if -- had I done
20 that, I would have to account for every second of my
21 leave.  So I feel that the fact that he allowed some
22 of them to do it and I was not allowed to do it, that
23 was retaliation.
24     Q.  Okay.  Can you tell me which employees you're
25 claiming he allowed to take extended lunches?

Page 528

1      A.  Louise Chevalier and Laura Robinson.
2      Q.  And when did he -- when do you allege
3  Mr. Reams allowed these two people to take extended
4  lunches?
5      A.  Laura Robinson, he allowed her to take them
6  very often.
7      Q.  Well, can you be more specific?
8      A.  Almost daily.
9      Q.  All right.  And how about Ms. Chevalier?
10     A.  As long as -- if Ms. Robinson was not in the
11 office, then he would allow -- he would allow her to
12 do it as well.
13     Q.  Okay.  And what do you base this allegation
14 on?
15     A.  The fact that when -- when -- what my
16 supervisor -- former supervisor, Cynthia Lamar,
17 accused me of not signing in the time that -- that --
18 or being away from the office.  She accused me of not
19 signing in by a certain time.  I feel like -- I'm
20 basing it on the fact that everything that I did was
21 questioned, even if it wasn't true.  Ms. Lamar
22 questioning or accusing me of not signing in the
23 office at the proper time and all of that, when they
24 would allow other employees to take leave, not sign
25 in, and it was not questioned.

Page 529

1      Q.  All right.  And how do you know that --
2  strike that.
3      When you left for lunch -- when employees left
4  for lunch, would they sign out for lunch?
5      A.  No.
6      Q.  And how do you know that these employees
7  weren't accurately reporting their lunch times?
8      A.  It was just talk around the office that they
9  were doing it.
10     Q.  Okay.  So you heard it from other people?
11     A.  Yes.
12     Q.  And who did you hear that from?
13     A.  From -- even to include Cynthia Lamar.  I
14 would have to name Cynthia Lamar as well as -- and
15 even though she's management, still she was to account
16 for her time.  And there were times when Cynthia Lamar
17 would get in the office, she would sign in one time --
18 and I think -- I think I mentioned that, where there
19 were three -- four of us, Christine Smith, Tresalyn
20 Collier, myself, and Cynthia Lamar pulled up
21 together.  All of us signed in at the same time.  And
22 Ms. Lamar signed in at 9:30.  But we all pulled up at
23 the same time.
24     People -- Michael Chamlee was the first person,
25 in fact.  Michael Chamlee was an individual that

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

34 (Pages 530 to 533)

| Page 530 | Page 532 |
|---|---|

**Page 530**

1  called me and asked me what time did Cynthia Lamar
2  sign in when he was at the agency.  And I got up and I
3  looked, and I gave it to -- told him the time.  He
4  called me and I told him the time.  And he said, oh,
5  okay.  And then there was conversation with him about
6  it once before.
7     Paul Reams, people who -- well, I sat -- where my
8  desk sat was at a window, and I could see people going
9  in and coming out.  I could see, you know; so I saw it
10 as well as other people saw it.
11    What was her name?  Louise Chevalier complained
12 to me about Laura Robinson doing it.  It was Louise
13 Chevalier.  Oh.  Tresalyn Collier and I have been in
14 conversation about how Mr. Reams allow certain people
15 to leave and not sign for leave.  And --
16    Q.  Did you ever talk to Mr. Reams about any of
17 this?
18    A.  No.
19    Q.  How about Ms. Lamar or Mr. Johnson?
20    A.  Mr. Johnson, you said?
21    Q.  Yes.
22    A.  No.
23    Q.  Paul Johnson.
24    A.  Yes, I knew who you were talking about.
25    Q.  Did you ever have your lunch -- did you ever

**Page 531**

1  take extended lunches?
2     A.  I took extended lunches that were -- that
3  Mr. Reams gave to everybody.
4     Q.  Were you ever --
5     A.  And we had to account for it.
6     Q.  When you took a long lunch, were you ever
7  questioned if you didn't report something?
8     A.  I heard that there were talk about -- well.
9  Although -- people -- okay.  On the day that Monique
10 Caffey and I went to lunch and we returned, everybody
11 knew the second we went to lunch and the moment we
12 returned.  Val Cooper discussed that information with
13 me.  So people were aware of the time where I would
14 walk out and come back.
15    Q.  My question is I believe the allegation is
16 you're saying that there were certain individuals that
17 took extended lunches.
18    A.  Yes.
19    Q.  Do you have any personal knowledge whether
20 the supervisors knew about these extended lunches?
21    A.  Yes.  Well, Mr. Reams was definitely aware of
22 the extended lunches because he would be with them.
23    Q.  You saw him?  How many times did you see him
24 with them?
25    A.  As many times as I was at work and was at my

**Page 532**

1  desk, which was often.
2     Q.  How do you know what they were doing?  I
3  mean, how do you know they were gone to lunch?
4     A.  People said they were gone to lunch.
5     Q.  And how do you -- you weren't involved in any
6  conversations between them on time sheets or how to
7  report it, were you?
8     A.  No.
9     Q.  And you never made any complaints about these
10 lunches to anyone?
11    A.  Not to them, no.
12    Q.  To them?
13    A.  No.
14    Q.  All right.  Is there any other -- referring
15 back to Defendants' Exhibits #9 and #31, these hostile
16 work environment claims, any other acts that you claim
17 made your work environment hostile that we have not
18 yet talked about?
19    A.  Yes.  Yes.  Monique Caffey.
20    Q.  Let me just get to -- list these out.
21 Besides Monique Caffey, is that the last one or is
22 there anything else?
23    A.  Let me see.  Oh.  Paul Reams made a
24 statement -- let me write before I forget.  Paul Reams
25 made a statement about Chattanooga, Tennessee, did not

**Page 533**

1  want me.
2     Q.  Okay.  Anything else?
3     A.  My retirement.  I felt that because of
4  retaliation, I was forced out.  I was forced to
5  retire.  I felt that that was a part of it.
6     Q.  You never retired from the Montgomery office,
7  did you?
8     A.  No.
9     Q.  All right.  My question relates to the claims
10 you have in the lawsuit here.  You allege you endured
11 a hostile work environment in the Montgomery Social
12 Security office.
13    A.  Right.  I --
14    Q.  So I'm trying to find out all the acts that
15 took place that you claim created that hostile work
16 environment in Montgomery.
17    A.  I understand.  I feel that -- well, that's
18 why I'm naming my retirement, because of what
19 Mr. Reams said when he said Chattanooga, Tennessee,
20 did not want me.
21    Q.  Okay.  Anything else?
22    A.  Not that I can think of.
23    Q.  Okay.  Let me quickly.  The lamp is the desk
24 lamp you talked about last October, right?
25    A.  Yes.

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

35 (Pages 534 to 537)

Page 534

1    Q.  Let's go to Ms. Caffey.  What is it about
2  Ms. Caffey that you allege created a hostile work
3  environment?
4    A.  After Ms. Caffey had given me copies of the
5  audit report, Ms. Caffey was -- received a proposal to
6  terminate.  I believe that the reason being is because
7  of what Ms. Caffey did and that Mr. Reams was making
8  an example, that Ms. Caffey was made an example to
9  other people who would socialize with me.
10    Q.  You weren't involved in any discussion with
11  management as to why Ms. Caffey was discharged, were
12  you?
13    A.  No.
14    Q.  So what -- what is your basis for claiming
15  the reason she was fired was because she gave you some
16  audit report?
17    A.  All of my basis that I'm claiming
18  regarding -- regarding retaliation and all of that is
19  because these things happened after I submitted EEO
20  complaints.
21    Q.  Okay.  So you're saying because these events
22  all took place after you filed EEO complaints, you're
23  claiming they're retaliatory?
24    A.  Yes, they are.
25    Q.  And do you know if Ms. Caffey grieved her --

Page 535

1    A.  Yes.
2    Q.  -- termination?  And was it upheld?
3    A.  She was terminated.
4    Q.  Were you involved in that process at all?
5    A.  No, I was not.
6    Q.  You weren't her union rep or anything?
7    A.  Oh, yeah.  Oh, no, I wasn't at that time.
8    Q.  So you weren't involved in any meetings
9  between her and management about her termination?
10    A.  No.
11    Q.  And let's go next to -- you made a statement
12  Paul Reams made some kind of comment to you about
13  Chattanooga not wanting you.
14    A.  That's correct.
15    Q.  When did that take place?
16    A.  In 2005.
17    Q.  Okay.  And what do you recall about that
18  conversation?
19    A.  Mr. Reams came to my desk and asked me could
20  I come into his office.  And the union steward was
21  with me.  I called the union steward.  And we went
22  into his office; and Paul Reams told me, he said, are
23  you trying to go to -- something like -- I'm not
24  quoting any of this -- are you trying to go to
25  Chattanooga?  I am.  He said, well, Chattanooga don't

Page 536

1  want you.
2    Q.  Who was the union rep present?
3    A.  Linda Tamplin.
4    Q.  Did he say anything else?
5    A.  He asked me did I make contact with anyone.
6  I said, yeah, I called someone, but it wasn't about
7  trying to get there or anything.
8    Q.  Anything else?
9    A.  I think that was it.
10    Q.  And you weren't involved with any -- do you
11  know how -- did Mr. Reams say how he knew that or what
12  he was relying upon?
13    A.  No.
14    Q.  You weren't involved in any conversations
15  between Mr. Reams and Chattanooga?
16    A.  With Mr. Reams and Chattanooga?  No.
17    Q.  Do you have any evidence that Mr. Reams
18  talked to anyone in Chattanooga?
19    A.  I don't know.  No, I don't.
20    Q.  So you have no idea what that statement was
21  based on?
22    A.  No, I don't.
23    Q.  And you were subsequently granted a hardship
24  transfer to Chattanooga?
25    A.  Yes.

Page 537

1    Q.  All right.  And the last thing when I asked
2  you about acts that made up the hostile work
3  environment you're alleging, you mentioned the
4  retirement from Chattanooga.
5    A.  Yes.
6    Q.  How do you claim that your retirement from
7  Chattanooga had anything to do with your workplace in
8  Montgomery?
9    A.  I believe that Mr. Reams influenced his
10  supervisor, Ms. Gloria -- Ms. Bozeman.  And that
11  Ms. Bozeman is also the supervisor of the director in
12  Chattanooga.  And with Mr. Reams making that
13  statement, I believe that he had some kind of
14  conversation about it and that they were -- they were
15  given heads up about me.  There was a meeting -- yes,
16  there -- and that's it.  That's why.
17    Q.  Okay.  But you have no personal knowledge of
18  any conversations between Mr. Reams and anyone in
19  Chattanooga or Mr. Reams and Ms. Bozeman or
20  Ms. Bozeman and Chattanooga?
21    A.  That is correct.
22    Q.  When did you retire from Chattanooga?
23    A.  November 30th.
24    Q.  Did anyone ask you to retire?
25    A.  No.

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

36 (Pages 538 to 541)

Page 538

1    Q.  November 30th of what year?
2    A.  2007.
3    Q.  So how long had you worked in Chattanooga
4  before you chose to retire?
5    A.  I worked there -- excuse me. I worked there
6  from 2003 -- I'm sorry -- from 2000 -- October 3,
7  2005, to November 2007, November 30, 2007.
8    Q.  And did you have any interaction with any of
9  the management officials in Montgomery after you left
10 on October 3rd, 2005?
11   A.  Yes.
12   Q.  What interaction?
13   A.  With Kim Leisiure. Kim Leisiure, my
14 supervisor. After --
15   Q.  Oh, I'm asking about --
16   A.  And that's it.
17   Q.  Did you have any interaction with any of the
18 supervisors you had worked for in Montgomery after you
19 left Montgomery on October 3rd, 2005?
20   A.  I think I may have e-mailed Mr. Reams and
21 asked him for something, and that was the only time.
22 He eventually gave me the name of an individual. I
23 cannot recall who that person was.  And that was --
24 that was how I would get the information.  And that's
25 the only interact -- interaction with management that

Page 539

1  I had that I can recall.
2    Q.  What kind of information were you requesting?
3    A.  I can't remember. I don't know if I -- I'm
4  not sure.
5    Q.  Okay. Were you provided it?
6    A.  He provided me with a name in order to get
7  that information.
8    Q.  Okay. And were you able to get that
9  information?
10   A.  I don't know. I don't think so.
11   Q.  Do you know what name he gave you?
12   A.  No. I don't recall.
13   Q.  All right. So have you told me about all the
14 acts that you claim made up or created a hostile work
15 environment due to retaliation in Montgomery?
16   A.  I have one last claim.
17   Q.  And what is that?
18   A.  That claim is when someone -- well, someone
19 reported that Bonita McWilliams and I had been talking
20 extensively. Mr. Reams called us into his office, and
21 his mind was already made up that what was told to him
22 was true. And also that Bonita McWilliams was removed
23 from the timekeeping position because of her
24 association with me. I felt that those were hostile
25 events that occurred.

Page 540

1    Q.  Okay. Let me go to the first one. You said
2  you were called into Mr. Reams' office?
3    A.  Yes.
4    Q.  With Ms. McWilliams?
5    A.  Yes.
6    Q.  And who is Ms. McWilliams again?
7    A.  Legal assistant.
8    Q.  Is she a lead legal assistant?
9    A.  No.
10   Q.  All right. Legal assistant.
11   A.  Yes.
12   Q.  Who did she report to, direct supervisor?
13   A.  I can't recall who she reported to at that
14 time because I think people switched supervisor. I'm
15 not sure.
16   Q.  And what did Mr. Reams -- was anyone else
17 present in the office besides the two of you and
18 Mr. Reams?
19   A.  No.
20   Q.  And what did Mr. Reams say?
21   A.  He told us that he had been informed that we
22 were talked -- we had talked four hours or five hours
23 or something like that.
24   Q.  Did he say who told him that?
25   A.  No.

Page 541

1    Q.  Did you ask him?
2    A.  I don't know if I asked him or not.
3    Q.  What else was said at that meeting?
4    A.  I think he asked us what did we do. And I
5  did inform him that we were talking, but it was
6  job-related, and I could show him some of the -- oh,
7  and -- yeah. And I told him that it was job-related,
8  that what we were discussing.
9    Q.  Okay. Do you recall anything else from that
10 meeting?
11   A.  That he was -- it was just the way he put the
12 information out and across to us.
13   Q.  You didn't -- you weren't disciplined in any
14 way?
15   A.  No.
16   Q.  Do you know when that meeting took place?
17   A.  I'm going to say maybe 2003, 2004, somewhere
18 like that.
19   Q.  Do you know the month?
20   A.  No.
21   Q.  And the next thing, you mentioned something
22 about Ms. McWilliams and her timekeeping duties?
23   A.  Yes.
24   Q.  What are you referring to there?
25   A.  Ms. McWilliams -- Mr. -- Mr. Reams offered

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

---

**Page 542**

1  Ms. McWilliams to do the timekeeping, but when he
2  realized that she -- well, she told me that he told
3  her because she associated herself with me, that he
4  was -- that he was removing her from --
5      Q.  Ms. McWilliams told you what, again?
6      A.  That Mr. Reams approached her and talked with
7  her regarding her association with me and the fact
8  that she was doing timekeeping duties and that he was
9  removing her from the position because of her
10 association with me.
11     Q.  And did you ever talk to Mr. Reams about
12 that?
13     A.  No.
14     Q.  When was that?
15     A.  Maybe 2000 -- oh, I'm not certain.  I would
16 say between 2002, 2003 maybe.
17     Q.  And what were the timekeeping duties, to your
18 understanding, that Ms. McWilliams had at the time?
19     A.  Excuse me?
20     Q.  What were Ms. McWilliams' timekeeping duties
21 at that time?  Do you know?
22     A.  I think she would just key in the employees
23 information as to the type of leave that was taken,
24 the amount that was taken, make sure that the person
25 who had to validate the time sheets would validate

---

**Page 543**

1  them.  And I think that -- I'm not sure of all what it
2  entailed because I've never done it.
3      Q.  Okay.  And how did that impact you as to who
4  handled timekeeping duties?
5      A.  Not who handled timekeeping.  Who associated
6  or talked with me.
7      Q.  All right.  Is there any other act that you
8  claim made your work environment in Montgomery a
9  hostile work environment?
10     A.  Whenever I reported to Mr. -- to management
11 something that was going on, I believe they never
12 investigated it or they would tell -- not that they
13 would not investigate it.  They would call the
14 individual and let the individual know Bernethia
15 Johnson has made a complaint about you.
16     Q.  Can you be more specific?  Are there specific
17 instances you're referring to?
18     A.  If I made a complaint -- a complaint about
19 Beverly Warner.
20     Q.  Okay.  All right.  Are you referring to a
21 specific complaint?
22     A.  Yes.  When she would leave the office and
23 without signing out, go and get her daughter, go -- go
24 take her daughter to school, go pick up her daughter,
25 go get breakfast, and not sign out.

---

**Page 544**

1      Q.  Do you have any evidence that any of the
2  managers you talked to did not talk to Ms. Warner or
3  any other employees you complained about, about your
4  complaints?
5      A.  Well, it -- an e-mail was put out by Paul
6  Johnson saying don't do that.
7      Q.  Okay.  So you made a complaint about
8  Ms. Warner, and Mr. Reams sent out an e-mail saying
9  don't do that?
10     A.  A management official did send it.  I think
11 it was Paul Johnson.  A management official sent out
12 an e-mail saying don't do that.
13     Q.  And so you obviously -- you wouldn't be
14 involved in any conversations between management and
15 individuals you might have complained about.  Is that
16 a fair statement?
17     A.  I -- if I had to talk with individual in
18 order to conduct my daily task, then I conduct it in a
19 professional manner; and yes, I would have to talk
20 with them.
21     Q.  Let me rephrase the question.  You allege
22 that whenever you made a complaint about anybody to
23 management, they wouldn't do anything with it.  Is
24 that what is in the complaint you just told me?
25     A.  Yes.  It appears as though they would not do

---

**Page 545**

1  anything.
2      Q.  And you have no personal knowledge whether or
3  not they actually met or talked to these people
4  outside your presence; isn't that right?
5      A.  That is correct.
6      Q.  All right.  Is there anything else, referring
7  back to Defendants' Exhibit #9 and #31, that you claim
8  created a hostile work environment due to retaliation
9  in Montgomery?
10     A.  That may be it.
11     Q.  Now, you never heard Mr. Reams, Mr. Johnson,
12 Ms. Lamar make any negative or derogatory comments
13 about the EEO process, did you?
14     A.  About the EEO process?
15     Q.  Yes.
16     A.  I never heard it -- or did I ever read it or
17 just heard it?
18     Q.  The question was heard.
19     A.  No.
20     Q.  Now, are you saying you read something?
21     A.  Prior cases of the EEO, what their statements
22 were, whenever I received a file.
23     Q.  Are you talking about -- my question was they
24 never said to you or sent you an e-mail or anything
25 that was negative or derogatory about the use of the

Page 546

1  EEO process?
2      A.  No, they never did.
3      Q.  So have we talked about all the claims in the
4  two lawsuits that are sitting in front of you,
5  Defendants' Exhibit #9 and #31?
6      A.  I would think so.
7      Q.  Take one last glance.  And I'd like to move
8  quickly to damages, and I think I'll try to wrap up
9  soon.
10          (Brief pause)
11     A.  All right.  I have no further complaints.
12     Q.  Okay.  Let's move on, then, to the damages
13  you are seeking.  If you are successful in litigation
14  on any of these claims, what damages are you seeking
15  in these two lawsuits?
16     A.  What damages am I seeking?  I need to talk to
17  my attorney.
18          MR. DuBOIS:  Okay.
19          (Off-the-record discussion)
20     Q.  All right.  Back on the record.  I had asked
21  you a question what damages you're seeking in these
22  two lawsuits.
23     A.  I'm unprepared to give an answer to that
24  because I just really took no great -- I've lost a
25  lot, but I just -- I'm unprepared to answer that

Page 547

1  question at this time.
2      Q.  Okay.  Let me ask a couple of specific
3  questions.  First, is the only lost pay you claim you
4  suffered during your time in Montgomery related to the
5  three-day suspension without pay?
6      A.  Three-day suspension without pay, yes.
7      Q.  So for those three days, you didn't receive
8  any pay; is that right?
9      A.  That is correct.
10     Q.  Is there any other lost pay or monetary
11  amount that you claim you did not receive as damages?
12  For example, lost wages other than those three days?
13     A.  I would also -- I would like to get my
14  one-hour leave that I had to take.  Now, when you
15  start talking in that regard, the -- when I start
16  looking at that -- I'm just not prepared to answer
17  that at this time.  I just can't because -- no.
18     Q.  I had sent an interrogatory, and the
19  interrogatory wasn't answered and didn't describe it,
20  so I was going to discuss it here.
21          MS. BATTLE-HODGE:  Right.  And if we could go
22  off the record just for a second.
23          MR. DuBOIS:  Okay.
24          (Off-the-record discussion)
25     Q.  Okay.  I got a couple of questions.  Back on

Page 548

1  the record.  Let me give you Defendants' Exhibit #16.
2  Can you tell me if this --
3          MR. DUBOIS:  And I only have one copy.
4          MS. BATTLE-HODGE:  No.  That's okay.
5      Q.  Can you tell me if this is a notification of
6  personnel action that shows the annual salary you were
7  receiving in 2000 -- I guess in July of 2005 when you
8  served your three-day suspension?
9      A.  Yes.
10     Q.  And are you claiming you visited any doctors
11  because of any medical condition that you attribute to
12  the work environment in Montgomery?
13     A.  Yes.
14     Q.  Okay.  Can you give me the names of those
15  doctors and when you first saw them?
16     A.  Some of them are out of business or out --
17  they're no longer in practice.
18     Q.  Well, just go through your memory.  I just
19  want the names and the first time you saw them.
20     A.  Dr. Hall.
21     Q.  Can you spell that?
22     A.  H-A-L-L.
23     Q.  H-A-L-L.  Okay.
24     A.  2000 maybe.  2000, 2001.
25     Q.  Do you remember Dr. Hall's first name?

Page 549

1      A.  No.
2      Q.  What kind of doctor is Dr. Hall?
3      A.  I went to him when I first started having --
4  maybe like a general practitioner then.
5          MS. BATTLE-HODGE:  If you don't know, you
6  don't know.
7      A.  Okay.  Then, I don't know because -- yeah.  I
8  really -- I just don't know.
9          MR. DuBOIS:  Let's go off the record.
10          (Off-the-record discussion)
11          MR. DuBOIS:  Let's take a short break.  I may
12  be done.
13          (Brief recess)
14     Q.  Okay.  Back on the record.  I was asking some
15  questions about damages, and you didn't seem to recall
16  some of the information, so I just -- I request that
17  you supplement the initial disclosures.  I had asked
18  these questions previously.  And I don't know what the
19  answers were, but they weren't complete.  If you can
20  provide those answers as son as possible and the
21  documents to support your damages claimed.  And at
22  this point --
23     A.  I -- I briefly mentioned that I felt that I
24  was affected, that my retirement was affected, but
25  that the reason that I retired was because of the

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                        7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

39 (Pages 550 to 552)

Page 550

1   retaliation.  I just want to make sure that I did --
2   that we did talk about that.  Did we?
3        Q.   You did mention that.
4        A.   Okay.  I just wanted us to make sure that it
5   was mentioned.
6        Q.   And just -- since you brought that up again,
7   you submitted a request to take an early retirement;
8   isn't that right?
9        A.   Yes.
10       Q.   And did you miss the deadline for that early
11  retirement?
12       A.   Yes.
13       Q.   And they allowed you to take the retirement
14  anyway?
15       A.   Yes.
16       Q.   And what percentage of your annual income do
17  you receive under that retirement?
18       A.   I -- I don't know.
19       Q.   All right.  So as we're sitting here today,
20  are there any -- can you think of any previous
21  questions that I asked you and you couldn't remember
22  that you now remember the answer to?
23       A.   No, I can't think of that.
24       Q.   And do you believe you told me about all your
25  claims and all the evidence to support those claims in

Page 551

1   your two lawsuits?
2        A.   I believe I may have told you all.  I believe
3   I have told you all.
4        Q.   Sitting here right now, you can't think of
5   anything you haven't told me?
6        A.   That is correct.
7        MR. DuBOIS:  Well, I think I'm done.  The
8   only thing is I will say if there's something that
9   comes up in those initial disclosures I feel I need to
10  ask her about, I may seek leave to reopen.  I don't
11  anticipate that.
12       MS. BATTLE-HODGE:  I don't have a problem
13  with that.
14       MR. DUBOIS:  It will be solely on damages and
15  anything in this initial disclosure.
16       MS. BATTLE-HODGE:  No objection whatsoever.
17       MR. DUBOIS:  Well, then, I'm done for the
18  day.
19       MS. BATTLE-HODGE:  Great.
20            (The deposition concluded at
21             10:59 a.m.)
22       * * * * * * * * * *
23       FURTHER DEPONENT SAITH NOT
24       * * * * * * * * * *
25

Page 552

1            REPORTER'S CERTIFICATE
2   STATE OF ALABAMA
3   MONTGOMERY COUNTY
4        I, Mallory M. Johnson, Certified Court Reporter
5   and Commissioner for the State of Alabama at Large,
6   hereby certify that on July 8, 9, and 11 of 2008, I
7   reported the continuation of the deposition of
8   BERNETHIA JOHNSON, who was first duly sworn or
9   affirmed to speak the truth in the matter of the
10  foregoing cause, and that pages 157 through 551
11  contain a true and accurate transcription of the
12  examination of said witness by counsel for the parties
13  set out herein.
14       I further certify that I am neither of kin nor of
15  counsel to any of the parties to said cause, nor in
16  any manner interested in the results thereof.
17       This 30th day of July, 2008.
18
19
20
     _____
     MALLORY M. JOHNSON, COURT REPORTER
21   And Commissioner for the
     State of Alabama at Large
22   Alabama License Number: 443
     Expires 09/30/08
23
     MY COMMISSION EXPIRES:  2/24/09
24
25

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

Page 1

| A | | | | |
|---|---|---|---|---|
| **able** 403:1 463:23 464:1 522:15 539:8 | **ADS** 508:16 | 537:3 | 437:24 | 517:15 519:20 520:10,12,20 |
| **acceleration** 480:16 | **affirmed** 552:9 | **allow** 470:15 517:12,16 518:22 | **apply** 437:1,10 | 521:7,13 530:1 |
| **accidentally** 519:12 | **afternoon** 402:23 | 527:16 528:11,11 | **applying** 437:4 | 535:19 536:5 |
| **accompany** 460:23 460:25 | **agency** 444:11 445:1,12,23 | 528:24 530:14 | **appointment** 485:24 486:1 | 537:1 538:21 |
| **accomplished** 407:9 | 446:15 468:18 | **allowed** 424:2 426:3 429:9,16 | **approached** 468:21 504:3 | 541:2,4 546:20 |
| **account** 527:20 529:15 531:5 | 477:2 482:22,24 | 430:17,20 459:13 | 510:5 542:6 | 549:17 550:21 |
| **accurate** 552:11 | 492:22 503:14,16 | 459:22 460:1,3 | **appropriate** 494:18 496:16 | **asking** 403:3,23 |
| **accurately** 529:7 | 504:25 505:1,2,3 | 486:13 489:4,4 | **approved** 463:1 | 417:3 443:4 |
| **accused** 528:17,18 | 510:21 511:23 | 527:21,22,25 | **approximate** 473:21 | 450:4 453:24 |
| **accusing** 528:22 | 530:2 | 528:3,5 550:13 | **approximately** 417:14 487:21 | 455:22 462:19 |
| **acquaintance** 523:9,10 | **agitation** 488:12 | **amount** 542:24 547:11 | 494:4 504:20 | 478:8 522:16 |
| **act** 445:25 486:10 487:23 499:11,25 | **agreement** 401:17 | **anger** 429:23 | 505:13 | 538:15 549:14 |
| 503:10 516:19,22 543:7 | **ahead** 429:15 505:20 | **angry** 430:1,10 | **April** 406:9,9 407:9 449:7 | **asks** 444:3 |
| **acted** 454:22 | **al** 401:9 | **announcements** 436:24 438:15,17 | 462:6,6,7,25 | **assignment** 511:2 511:9,12 512:17 |
| **action** 508:23 548:6 | **Alabama** 401:2,19 401:21 402:5,8,9 | 550:16 | **area** 414:19,20,22 | **assistant** 402:7 412:12 425:25 |
| **actions** 489:2 | 552:2,5,21,22 | **annual** 548:6 550:16 | 415:13 419:12 | 427:13 437:5 |
| **acts** 447:17 483:22 489:8 491:11 | **alarm** 464:13 465:1 466:19,22 | **answer** 422:18 497:25 546:23,25 | 420:17 441:5 | 468:24 493:24,25 |
| 492:14 501:18 507:1,2 511:17 | 467:2,3,6,9,12,23 | 547:16 550:22 | 466:11 475:24 | 505:15,17 540:7 |
| 517:6,7 519:9 521:20 526:1,3 | 469:20,25 470:20 | **answered** 547:19 | 476:22 492:24 | 540:8,10 |
| 526:14 527:4 532:16 533:14 | 472:17,22 473:4 | **answers** 403:2 | 496:14,16 517:13 | **assistants** 451:22 451:23 508:17 |
| 537:2 539:14 | 473:12,17 474:7 | 522:16 549:19,20 | 518:23 519:18,21 | 509:5 515:1 |
| **add** 406:21 472:2 488:7 | **ALJ** 490:21 | **anticipate** 551:11 | **areas** 519:1,7 | 518:25 |
| **additional** 404:9 526:14 527:4 | **allegation** 436:11 445:15,24 450:4 | **anxiety** 488:8 | **arm** 409:3,9,12 | **associated** 542:3 543:5 |
| **Administration** 402:11 444:19 | 451:8 457:22 | **anybody** 403:12 425:18 427:22 | **arrests** 442:20 | **association** 539:24 542:7,10 |
| 467:17 514:21 | 528:13 531:15 | 486:16 503:17,25 | **arrived** 486:6,22 | **ASTRUE** 401:8 |
| **administrative** 444:18 | **allegations** 417:3 | 516:24 517:2 | **aside** 405:3 428:19 | **Atlanta** 402:13 |
| | **allege** 409:1,16 429:1 448:7 | 523:11 544:22 | 432:22 | 466:5 467:20 |
| | 475:15 483:17 | **anytime** 464:1 | **asked** 408:1 417:7 | 476:20,25 477:1 |
| | 488:6 503:10 | **anyway** 519:15 550:14 | 418:8 419:9 | 479:6 |
| | 511:18 528:2 | **apologize** 473:11 | 421:23 423:2,3,7 | **attached** 404:3,20 |
| | 533:10 534:2 | **Appeals** 467:17 | 424:17 425:1,22 | 405:19,21,22 |
| | 544:21 | **appear** 464:11 | 427:2 429:2,21 | 406:1 407:2,6,8 |
| | **alleged** 483:22 | **appearance** 509:6 | 431:5,14 435:7 | 407:12,14,16 |
| | 484:13 527:5 | 510:13 | 447:2,8 449:24 | 441:8 |
| | **alleging** 417:7 | **APPEARANCES** 402:1 | 451:12 453:20 | **attachments** 406:20,21 |
| | 438:9,13 439:3 | **appears** 544:25 | 457:12,22,23 | **attempt** 477:19 |
| | 455:25 458:9 | **application** 437:1 | 461:19 462:14 | **attending** 502:12 |
| | 461:13 464:16 | 437:7,19 438:3,4 | 481:17 483:21 | **attention** 403:19 |
| | 472:8 510:10 | **applied** 437:15,18 | 492:5,8 498:6,10 | 408:17 416:22 |
| | 515:3,8 518:14 | | 498:15 505:23,24 | 433:11 434:23 |
| | 524:2 526:3 | | 506:3 512:1 | |

7/11/2008

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.
DEPOSITION OF BERNETHIA JOHNSON
Page 2

436:16 438:21
448:2 456:8
481:21 493:10
495:23
attorney 402:4,7,8
402:11 432:3,3
475:20 546:17
attorneys 474:17
Attorney's 401:20
attribute 548:11
audit 405:10 406:9
406:10 409:3,9
534:5,16
authorizing 446:2
automatically
465:19
avenues 446:16
award 503:14,14
503:16,18,25
504:5,7,14,16,22
505:6,11,14
506:1,16,18,21
aware 418:14
426:2,7,8 431:6
438:5 444:11,22
446:2,11 469:19
470:19 478:11
506:17 531:13,21
a.m 401:21 522:9
551:21

B

back 402:23
404:18 408:7,16
414:1 418:4
420:13 422:22
423:11,20 424:11
425:1 428:8
433:20 436:17
441:4 445:14
456:24 459:6
465:5,14,19
466:12,16 470:23
472:13 483:9
485:3,22,25
486:2,8 492:25
493:1 494:19

496:15 500:7
505:11 507:13
519:14,17 520:7
523:16 525:25
527:9,18 531:14
532:15 545:7
546:20 547:25
549:14
bargaining 509:24
527:16
Barnett-Jefferson
475:17,19 477:14
477:17 478:13,24
479:20 480:2
481:14 482:1
485:10
Barnett-Jefferso...
477:13
base 461:18 479:12
509:21 528:13
based 517:3
536:21
Basically 504:11
basing 528:20
basis 420:13
423:14 455:25
472:8 489:1
508:7 510:10
515:3,8 518:14
534:14,17
bathroom 453:11
BATTLE-BATT...
402:3 483:8
499:20
Battle-Hodge
402:3 547:21
548:4 549:5
551:12,16,19
believe 406:16
409:25 429:11,21
434:13 435:7
446:6,9 447:7,8
451:3 452:3,8
461:3 473:10
475:5 477:15
486:9 490:8,8
491:13 492:17

499:17 502:23
510:24 513:13
521:21 527:7,9
531:15 534:6
537:9,13 543:11
550:24 551:2,2
belittle 452:9
belittling 451:9,14
belonged 489:13
489:17 494:20
Bernethia 401:5
401:16 402:18
414:25 485:12
492:18 505:25
543:14 552:8
best 423:17 430:14
430:15 446:25
447:4 461:7
497:14 520:25
521:24
better 430:13
Beverly 411:23
412:6,11 413:20
414:21 422:9
432:23 493:4
494:22 496:19
543:19
bitty 499:16
500:16,16
Blake 402:10
blocks 417:15
Bobby 411:24
bodily 414:2,16
416:15
body 477:19 478:6
Bonita 427:11,12
480:1,1 492:17
492:20,24 493:23
495:15,19 496:13
496:13,14,15,17
498:4,6,10,10,12
498:13,15,15,17
510:17,21,22,23
510:23 539:19,22
book 519:11,12,18
519:25 520:2,19
520:20,22,22

bottom 442:4
443:17,23 468:9
469:25 470:6
471:9,19 472:6
475:6
Bozeman 524:9
537:10,11,19,20
brakes 480:14
break 404:16
456:6 483:6
522:5 549:11
breakfast 543:25
Brenda 448:23
449:15 454:6
503:14
Bridges 426:10,11
426:24
Brief 404:17
408:24 448:15
456:7 483:7
526:20,25 546:10
549:13
briefly 549:23
bring 460:14
brought 493:14,15
495:11,11,22
496:20 498:16
550:6
Brown 413:7,8,8
413:14,17 414:14
414:19,25 416:2
building 411:22
417:5,13 420:16
434:4,6 441:2,2
456:18 464:22
465:3,22 466:4
466:13 470:12,16
473:14,16 474:7
474:10,17,21
476:5,6 479:23
Burton 431:25
507:17,17
business 458:19
466:1 475:25
476:2,5,7 486:12
548:16

C

cabinets 494:22
496:19
Caffey 404:2,7,24
405:3,8,12 406:3
407:12,13,17
531:10 532:19,21
534:1,2,4,5,7,8
534:11,25
call 465:15,21
543:13
called 441:15
447:7,8 451:18
487:4 488:11
489:24 512:18
530:1,4 535:21
536:6 539:20
540:2
calling 499:16
camera 412:21,22
car 411:21 417:4,8
417:22 418:15,18
418:22 419:9,14
420:2 422:11,12
429:3,21 432:9
432:21 433:6,25
434:3,17 435:8
436:13 438:24
439:3,6,8,19,23
440:4,12,14,15
440:18,21,21
441:14,20 442:8
444:3 445:12,16
446:3 465:23
476:13 477:23,25
478:2,13 479:3,9
card 479:24
Carl 447:7
cars 420:14,24
421:4,8,11
422:20 431:15,15
434:23 436:3,6
441:11 476:23
479:14
case 401:7 489:25
491:3 492:5

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.
DEPOSITION OF BERNETHIA JOHNSON

493:1 498:7,7,11
498:13,16,16
502:11
**cases** 405:9,13,14
406:7 489:12,17
489:21 490:15
492:9,21,23,23
492:25 493:2
494:13,14,16,19
494:21,25 496:7
496:10,11,12,13
496:13,16,17
510:16,17,17,18
510:18,20,21,22
511:3,14 515:14
545:21
**cause** 471:22
552:10,15
**Cavalier** 439:10
440:5,8 442:5
**certain** 441:1
490:11,13,13
492:23 518:2
528:19 530:14
531:16 542:15
**certificate** 505:5,7
505:10 552:1
**Certified** 552:4
**certify** 552:6,14
**chair** 485:8
**Chamlee** 529:24
529:25
**chance** 408:22
**Chattanooga**
524:21,25 525:2
525:3,8,24
532:25 533:19
535:13,25,25
536:15,16,18,24
537:4,7,12,19,20
537:22 538:3
**check** 433:22
434:1
**checked** 473:15
474:15,17
**Chevalier** 470:15
528:1,9 530:11

530:13
**Chevrolet** 439:9
**Chevy** 439:10
440:5,7 442:5
**child** 415:1
**children** 477:13
**chose** 538:4
**Christine** 529:19
**circled** 466:4
**citation** 504:23,24
506:20,21
**claim** 429:1 430:20
442:22 453:19,23
455:21 457:15
468:9,15 471:7
471:11,13,18
484:3,11,17,18
486:10 489:8
492:14 495:9
499:12,25 501:18
503:23 507:3
517:7 519:10,10
521:15,16 525:5
525:16 526:2
532:16 533:15
537:6 539:14,16
539:18 543:8
545:7 547:3,11
**claimants** 466:11
475:24 476:16
**claimed** 549:21
**claiming** 409:8
410:24 411:1
438:6 444:25
445:7,10 448:20
451:13 452:21
453:4 454:7
457:18 464:16,19
464:20,24 477:6
477:9,21 489:1
490:10 491:2
515:23 516:9,13
520:17 527:25
534:14,17,23
548:10
**claims** 484:2 522:2
523:20,25 525:25

527:4 532:16
533:9 546:3,14
550:25,25
**clarify** 403:17
**Clayton** 401:20
402:9
**clean** 519:20,20
520:11,12,24
521:1,7,13
**cleaned** 519:18
520:20
**clear** 421:16
**clearly** 410:18
**close** 460:7 461:5
477:14,24
**closed** 458:11
461:14 462:12
463:9
**closer** 419:2 441:2
**code** 467:13
**college** 442:14
**Collier** 481:15
500:17 501:11,20
501:23 502:3,17
503:4 515:10,12
516:4 517:4
529:20 530:13
**come** 419:17
423:14 424:11
430:4 434:5
442:15 457:25
458:13 462:19
465:5 466:12
472:25 476:22
485:22 486:4,13
512:1,19 527:18
531:14 535:20
**comes** 551:9
**coming** 423:20
430:25 486:7
497:1,4 530:9
**commencing**
401:21
**comment** 500:14
500:19 501:8
502:18 503:2,8
504:7,13 507:13

507:15,16 508:2
508:5,8 535:12
**comments** 545:12
**COMMISSION**
552:23
**Commissioner**
401:9,19 552:5
552:21
**commit** 516:19
**communicated**
446:23
**communication**
444:15
**communications**
492:10
**complain** 421:20
451:25
**complained** 530:11
544:3,15
**complaining**
500:14
**complaint** 408:8
410:4 416:25
423:20 438:11,16
438:22 444:19
447:18 448:7
451:11 460:3
463:18 464:5
475:13 481:25
482:5,9,11,24
483:15,16 523:22
523:23 543:15,18
543:18,21 544:7
544:22,24
**complaints** 429:22
461:6,16 483:13
483:23 484:6,14
501:12 502:13
522:1,4 523:17
523:21 525:15
526:11,13 532:9
534:20,22 544:4
546:11
**complete** 403:2
484:25 487:5
494:15 549:19
**completed** 496:12

**completion** 405:9
**complies** 408:21
448:5 464:7
**computer** 419:21
484:23
**concerns** 456:14
486:15
**concluded** 503:13
**condition** 488:12
548:11
**conduct** 544:18,18
**conducted** 503:13
**conference** 511:24
**confirm** 410:1
**consider** 462:21
463:8,12 498:22
**constant** 472:2
**contact** 446:18
447:10 536:5
**contacted** 474:5
484:23
**contain** 552:11
**continual** 488:7
**continuation**
401:16 552:7
**continue** 518:22
**continued** 518:17
522:11
**continuing** 401:22
402:24 483:11
**conversation** 416:9
419:8,23 423:6
423:25 426:14,15
426:19 445:3
459:21 463:7
470:8 473:24
478:12 480:4,8
480:25 485:9,20
494:5 495:9
498:23 499:1
501:2 509:8
515:18 517:4
523:24 530:5,14
535:18 537:14
**conversations**
424:9 426:13
495:16,18 510:7

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON
Page 4

532:6 536:14
537:18 544:14
**Cooper** 531:12
**copies** 534:4
**copy** 428:5 437:19
482:8 548:3
**corner** 428:9
**correct** 417:17
421:6 425:3
427:7,21 432:18
442:7 443:19
444:13 465:25
466:6 467:21
470:22 476:12
498:2,25 522:20
524:18,23 535:14
537:21 545:5
547:9 551:6
**corrected** 490:22
490:23
**cost** 443:5 445:23
**counsel** 402:12
552:12,15
**count** 483:15,16
523:22,23
**counted** 433:7
**COUNTY** 552:3
**couple** 415:10
547:2,25
**course** 468:17
488:3
**court** 401:1,18
461:10 472:14
508:11 523:18
552:4,20
**cover** 493:20
**covered** 483:23
484:11 522:1
**created** 521:21
524:2 525:5,21
526:2,3 533:15
534:2 539:14
545:8
**criminal** 512:8,21
516:19,22
**cross** 525:10
**crossing** 476:16

**cry** 453:11,12,16
**crying** 453:9,10,14
**cubicle** 419:23
426:23 427:1
**Cynthia** 433:16
484:22 485:1,12
485:19 488:3
489:19 490:1,16
490:20,24 491:7
498:18,20 517:15
517:17,24 524:8
528:16 529:13,14
529:16,20 530:1
**Cynthia's** 489:22

**D**

**daily** 420:13 528:8
544:18
**damage** 441:25
444:20 478:5,6
**damaged** 444:23
446:3 454:7
**damages** 546:8,12
546:14,16,21
547:11 549:15,21
551:14
**dashboard** 433:24
**date** 406:8 411:8
432:7 502:21
**dated** 424:24
**dates** 434:20
**daughter** 438:25
442:10,13 543:23
543:24,24
**Davenport** 493:16
498:5,6,11,12
499:8,16 500:10
500:13 501:20
502:6,18 503:1
507:4,12,15
508:1 513:13,14
513:16,24 514:4
514:6,12 516:7
516:13 518:12
524:9
**day** 408:10 412:18
412:19 417:24

418:3 421:23
422:17,17 431:11
431:18 433:4
442:9,12 449:1
456:16 462:17
465:3 467:18
473:16 488:16,17
488:19 489:2
508:19 518:18
519:14,15 526:9
531:9 551:18
552:17
**days** 422:7 462:20
508:16,18,25
509:1,4,11 547:7
547:12
**deadline** 550:10
**deal** 482:14
**Debbie** 504:2
505:22,23,24
**Decatur** 402:4
**decide** 482:23
**decided** 508:15
**decision** 445:11
506:24 510:1,4,8
**decrease** 508:16
**decreased** 508:19
509:4,7
**Defendants** 401:10
402:6 403:19,24
404:20 405:7
406:4,8 407:5,8
407:15 408:7,18
409:19 410:2,3,7
411:14 414:3
416:23 424:15,23
428:5 436:22
441:18 443:13,16
443:18 444:7
446:22 448:3
456:9 464:5,9
468:3,5,10 470:1
470:4,24 471:9
471:20 472:6
475:6,14 482:7,8
483:12,13 500:8
523:16 532:15

545:7 546:5
548:1
**definitely** 450:1
490:9 531:21
**Degraded** 453:7
471:14
**degrading** 451:9
451:14 452:11
488:21 506:8
**degration** 471:21
471:25 488:3,5
**DEPONENT**
551:23
**deposition** 401:16
402:15,24 483:10
499:11 501:17
507:2 517:7
522:2 551:20
552:7
**depositions** 523:12
**derogatory** 545:12
545:25
**describe** 430:13
547:19
**designed** 489:3
**desk** 415:21
419:12 465:14,15
465:20 468:18
476:11 485:22,25
489:20,22 490:16
496:15 519:11,12
519:13,17,18,20
520:1,11,13,24
521:1,7,13 527:8
530:8 532:1
533:23 535:19
**different** 417:15
422:5,5 489:16
505:24
**direct** 403:18
408:17 416:22
436:16 438:21
448:2 456:8
464:4 475:12
481:21 490:7
540:12
**director** 537:11

**discharged** 534:11
**discipline** 474:6
491:10
**disciplined** 466:18
495:2,4 541:13
**disclosure** 551:15
**disclosures** 549:17
551:9
**discover** 439:18
**discovered** 441:13
441:20 520:19
**discuss** 457:7,10
458:17,18 460:10
481:16 485:2
486:2 487:17
547:20
**discussed** 458:5
459:11 474:1
484:3 493:5
496:3 508:20
526:3,14 527:6,9
531:12
**discussing** 456:14
485:21 486:12
541:8
**discussion** 407:24
408:15 459:8
478:16 500:6
518:8 522:6
534:10 546:19
547:24 549:10
**disregard** 432:23
**DISTRICT** 401:1
401:2 402:8
**DIVISION** 401:3
**doctor** 549:2
**doctors** 548:10,15
**document** 404:19
408:11 447:24
450:5,8 451:7
452:22 455:23
456:2
**documents** 403:15
405:3,14,18,22
406:12,14,17
407:14,15,16
435:17 450:17

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.
DEPOSITION OF BERNETHIA JOHNSON

451:12,22 453:21
523:14 549:21
**doing** 429:4,12
435:8 444:4
445:3 448:8
452:12 477:20
483:2 517:2
529:9 530:12
532:2 542:8
**door** 419:2,5
456:17,18,19
457:6,12,13,23
458:10 459:18,23
460:5,7,11 461:4
461:14,22 462:3
462:13,15 463:9
463:24 464:2
465:11,13,13
466:1 475:23,24
476:14 485:8,11
485:18,19
**doorway** 456:13
**Dr** 548:20,25 549:2
**drawers** 493:4
**driven** 475:16
480:13
**driving** 412:1
442:12 478:13
**drove** 411:22
440:14
**DuBois** 402:7,22
404:16 408:14,16
456:6 461:9
472:13 483:6,11
499:21 508:10
522:12 526:18
546:18 547:23
548:3 549:9,11
551:7,14,17
**due** 489:10 491:14
492:16 499:14
501:19 511:19
515:5 517:9
521:21 539:15
545:8
**duly** 552:8
**duties** 541:22

542:8,17,20
543:4

**E**

**earlier** 445:16
468:7
**early** 550:7,10
**echelon** 446:19
**EEO** 404:4 405:21
406:22 429:22
461:6,16 501:11
502:13 534:19,22
545:13,14,21
546:1
**either** 420:16
424:13 442:14,15
470:19 491:11
492:10 498:8
500:16 502:3
516:19
**elaborate** 415:22
**else's** 444:22
521:13
**embarrassed**
452:20,24 471:12
515:24
**embarrassing**
452:11 472:19,20
516:16
**embarrassment**
471:22,25 472:21
488:5
**employee** 420:6,24
431:15 441:6
444:23 465:24
471:24 472:18,22
472:23 476:19
507:10 509:2,5
514:5 515:15
527:16
**employees** 411:20
418:14,25 420:9
422:5,6 424:3
425:22 429:17
430:22 435:2
440:23,24 441:12
454:2,3 456:21

464:21 469:19
504:11 507:6
508:16 509:25
512:10 517:12
527:17,24 528:24
529:3,6 542:22
544:3
**employee's** 432:21
**employment**
484:17
**empty** 479:14
**endured** 533:10
**entailed** 543:2
**enter** 420:16
**entered** 457:6
479:23
**entire** 464:23
468:18
**entrance** 428:10
**environment**
410:17 483:18
484:3,4,12,19
489:10 492:15,16
499:12,14,25
500:1 501:18,19
503:11 507:3
511:18,19 517:8
517:9 519:10
521:21 523:20
524:2,3 525:5,17
526:2,4,17 527:1
532:16,17 533:11
533:16 534:3
537:3 539:15
543:8,9 545:8
548:12
**erroneous** 507:10
**estimate** 433:8
**estimated** 441:25
442:1,1
**et** 401:9
**Evening** 522:7
**event** 409:1 520:17
**events** 447:17
534:21 539:25
**eventually** 442:25
486:7 487:18,20

490:15 538:22
**everybody** 509:6
531:3,10
**evidence** 409:11,15
420:8,12 433:13
434:10,22 436:10
445:15,17,20,24
478:19,23,25
479:1 536:17
544:1 550:25
**evidently** 498:8
506:7 507:21
516:3
**exact** 506:18,21
511:6 513:5
518:3
**exactly** 415:17
439:21 440:22
458:4,8 515:22
**examination**
402:21 522:11
552:12
**example** 534:8,8
547:12
**excuse** 438:8 488:7
496:8,8 512:3
513:12 538:5
542:19
**Exhibit** 403:19,20
403:24 404:21
405:7 406:4,8
407:5,8,15 408:7
408:18 409:20
410:2,3,7 411:15
414:3 416:23
424:16,23 428:5
436:23 441:19
443:13,16,18
444:7 446:22
448:3 456:9
464:6,9 468:3,5
468:10 470:1,5
470:24 471:9,20
472:6 475:7,14
482:7,8 483:12
483:13 500:8
525:16 545:7

546:5 548:1
**Exhibits** 523:17
532:15
**exists** 410:17
**exit** 411:22 465:6,7
465:13
**exiting** 411:25
465:17
**expert** 492:21
494:14,15 496:8
496:11,11,12
**Expires** 552:22,23
**explained** 423:10
**explaining** 470:24
**explains** 470:11
**express** 486:15
**expression** 419:13
429:7,8,9,11,20
430:9
**extended** 527:12
527:14,25 528:3
531:1,2,17,20,22
**extensively** 539:20
**extremely** 451:8,13
**eyes** 493:2 496:23
507:11
**e-mail** 405:4 406:3
406:6 410:16
411:7,15 414:1,4
414:17 424:13,14
424:16,25 425:4
425:11 428:6,16
443:4,6,10,17
444:4,6,14 445:4
445:11 446:21
464:21 468:8,9
468:12,15,22
469:24 470:2,4,6
470:9,10,24,25
471:8,19 472:5,9
472:22 475:6
500:22,24 512:14
544:5,8,12
545:24
**e-mailed** 464:23
538:20
**e-mails** 409:21

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON
Page 6

410:3,9 424:21
424:23 443:18,21
468:5 499:22
500:9,9

**F**
**face** 429:23
**facial** 419:13 429:7
429:8,9,10,20
430:9
**fact** 409:13,14
416:6 420:12
430:24 445:16
449:23 451:6,11
452:21 453:20
455:15 458:9,12
461:19 462:18
464:20 472:21
479:13 486:11,13
488:10,21 493:10
513:14,24 515:25
527:21 528:15,20
529:25 542:7
**fair** 544:16
**far** 420:22 492:13
**February** 443:25
**federal** 437:7
481:22 482:3,9
482:15,22,25
523:18
**feel** 435:24 446:8
491:3 525:8
527:19,21 528:19
533:17 551:9
**feeling** 512:6
**feet** 419:6
**felt** 462:23 503:18
512:24 520:24
533:3,5 539:24
549:23
**file** 404:4 405:21
441:16 442:22
444:18 447:5
481:25 482:5
483:3 490:21
491:5,7 494:16
494:22 496:16

545:22
**filed** 408:8 441:20
442:17 481:23
482:9,11 483:14
501:11 502:15
523:18 534:22
**files** 405:3 406:10
406:11 492:11
493:11
**filing** 496:19
**filling** 413:14
437:7
**finally** 486:7
489:19
**find** 405:8,9,13,20
446:12,19 482:23
489:25 501:22
521:4 533:14
**fine** 448:13 527:11
**finish** 448:10,12
485:9,14,20,21
485:23 486:12
**finished** 487:12
488:22
**fired** 534:15
**first** 403:18 406:3
406:6 410:8,14
410:15 423:14,14
424:19,20,24
429:19 431:23
432:2 443:15
445:14 475:8
483:15 489:18
490:19 491:3,23
492:4 500:12
523:22 524:1,15
529:24 540:1
547:3 548:15,19
548:25 549:3
552:8
**five** 407:3,4 417:14
417:14 540:22
**follows** 402:17,20
522:10
**forced** 533:4,4
**foregoing** 552:10
**forget** 532:24

**forgot** 473:18
506:11
**formal** 437:1
**former** 528:16
**Forsyth** 402:12
**found** 404:5
418:11 421:24
469:4 473:2
489:13,19,21
490:1 502:3
516:5 520:21
**four** 529:19 540:22
**frame** 438:19
485:17
**Freida** 468:21
469:7,8,11
**Friday** 401:23
522:8
**friend** 523:8
**friends** 403:9,10
522:25 523:2
**front** 433:25 434:6
456:17,18,19
458:19 466:13
475:23 476:1,2,4
476:9,14 479:9
479:15 487:25
546:4
**Frustrated** 453:5
**frustration** 488:4
**full** 403:2
**further** 402:20
441:2 442:18
444:15 447:22
459:8 471:21,25
481:5 487:24
488:9,11 489:6
492:9 510:7
546:11 551:23
552:14
**future** 458:21

**G**
**gas** 480:14,14
**general** 402:12
456:14 457:1
549:4

**generally** 466:21
**Georgia** 402:13
**getting** 456:17,17
465:20
**give** 403:2 424:15
432:7 433:8
434:20 441:18
443:15 468:3
473:21 487:15
492:21 498:15
503:16 506:24
508:21 512:5
513:5 517:11
522:15 546:23
548:1,14
**given** 404:3 438:9
447:20 467:11,11
467:22 473:13
496:11 503:14
515:4 523:12
534:4 537:15
**glance** 546:7
**Gloria** 524:9
537:10
**go** 404:18 408:6
409:19 411:20
412:25 414:9
420:2 421:14,19
423:4 425:18
428:18 429:15
433:20,21 436:22
445:22 460:4,19
465:14 481:7
483:9 485:22,25
486:2 499:7
500:4,5 505:20
506:10 511:8,24
512:16 515:6,7,9
515:11 520:14
526:18 527:17
534:1 535:11,23
535:24 540:1
543:23,23,23,24
543:25 547:21
548:18 549:9
**godmother** 477:12
**going** 408:8 414:1

414:23 415:20,23
419:19 441:18
442:15,16 444:9
468:1 469:23
472:2 474:5
481:1 483:9
492:19,22 493:4
493:9,12 494:6
494:22 496:19
499:2 503:21
508:15 509:9
511:4 512:3,15
512:16 525:25
530:8 541:17
543:11 547:20
**gold** 442:5
**Goldsmith** 468:21
472:4 473:2
**good** 402:23
504:20 522:13,14
**gosh** 419:16
465:10 493:8
**gossip** 454:12
**government** 439:1
443:4 475:16
**government's**
444:9
**grabbed** 409:8,12
409:13,14,16
**grabbing** 409:3
**granted** 536:23
**great** 546:24
551:19
**grieved** 534:25
**grounds** 466:11
**group** 448:24
450:16 451:20
454:22,24 455:10
494:2
**guard** 411:23
479:24 480:3,6
483:1 517:1
**guarding** 512:8
**guess** 405:2 424:18
438:1 440:1
451:8 456:10
459:21 466:3

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

Page 7

483:1 484:10
492:4 510:20
548:7

**H**
**half** 493:11
**Hall** 460:22 548:20
549:2
**Hall's** 548:25
**hand** 443:13,16
482:7 485:18
**handicapped**
417:4,11,18,21
417:24 418:1,15
418:18 419:3,10
419:15 420:9,15
420:20,25 421:4
421:7,11,12,21
422:3,21,25
423:6,11,13
424:4,4,18 426:4
428:8,13,20
429:3 430:18
431:3,9,16
432:15,16 433:22
434:12 436:18,20
441:5,7
**handled** 543:4,5
**hanging** 421:18
434:5
**hangs** 433:23
**happen** 489:5
**happened** 411:5
414:13 423:5
444:3 455:15
465:9,16 472:10
475:9 476:21
480:10 488:15
489:5,18 494:24
501:10 510:2
518:3 519:23
534:19
**happening** 411:11
478:21
**harassed** 410:22
**harassment** 483:23
**hardship** 438:18

438:20 536:23
**harm** 414:2,17
416:15 453:2
458:16 478:7
**harmed** 452:21
453:4,19,23
455:22 471:7,11
471:13 487:23
**harming** 453:25
**ha-ha-ha** 468:19
**heads** 537:15
**health** 471:16,16
471:18 472:1
488:5,12
**hear** 419:18
442:18 450:24
454:14,15,17,19
454:20,22 455:2
455:8 459:20
516:3 529:12
**heard** 415:23
429:23 438:1,3
454:12 455:5,6
455:15 481:17
507:14,15 529:10
531:8 545:11,16
545:17,18
**hearing** 490:25
502:4,9,10,12,21
**Hearings** 467:17
**higher** 446:19
**highest** 503:15
**Highway** 466:5
467:20 476:20,25
477:1 479:6
**hired** 437:21
438:10
**hit** 475:16,21
477:21,23,25
480:19
**hold** 432:1 472:16
**holding** 494:18
496:16
**home** 442:15
462:20,25 489:24
508:17,18 509:2
509:5

**honest** 403:2
522:16
**hood** 439:25
440:12,19,21
442:25
**Horak** 482:16,18
482:19
**Horek** 482:19
**hostile** 409:21
410:17 483:18
484:4,12,19
489:10 492:15
499:13 500:1
501:18 503:11
507:3 511:19
517:9 519:10
521:21 523:20
524:2,3 525:5,17
526:2,4,16 527:1
532:15,17 533:11
533:15 534:2
537:2 539:14,24
543:9 545:8
**hours** 540:22,22
**Hudson** 411:24,24
**humiliated** 452:25
453:3 471:12
515:24
**humiliating** 451:9
451:14 452:11
488:21 516:16,17
**humiliation** 471:21
471:25 487:24
488:4
**hurt** 512:22
**H-A-L-L** 548:22
548:23

**I**
**idea** 421:24 433:10
437:14 473:1
490:18 494:24
516:5 536:20
**identified** 410:18
**illiterate** 449:22,25
450:6 451:4
452:2

**impact** 543:3
**implied** 450:1
509:14,22
**implying** 450:6
**improperly** 422:25
**incident** 410:20,25
411:6,16 413:4
416:13 426:21
445:6 447:6,11
450:2 452:1
455:13 456:10
468:8 474:23
475:1 477:7
478:20 479:20
481:8,11,13
482:1 483:4
495:7 497:6
498:3 501:3
**incidents** 410:19
422:24
**include** 525:12
529:13
**includes** 440:21
**income** 550:16
**incomplete** 490:22
**incorrect** 442:6
**individual** 524:6
527:15 529:25
538:22 543:14,14
544:17
**individuals** 443:24
444:1 470:20
472:24 473:1
527:16 531:16
544:15
**inflicted** 416:15
**influenced** 537:9
**inform** 541:5
**information** 405:2
411:9 423:18
446:10 484:24
485:2,3,23 487:5
487:14,19 490:21
493:5 497:13
507:9,10 520:2,3
531:12 538:24
539:2,7,9 541:12

542:23 549:16
**informed** 410:16
445:5 490:1
492:18 497:21
498:17 507:21
515:10 516:4
519:19 540:21
**informing** 509:25
**initial** 549:17
551:9,15
**injured** 477:25
478:3,9,10
**injury** 478:4
**inside** 466:16
478:5
**instance** 430:5
432:20 446:20
463:6 464:12
**instances** 490:2
491:1 492:8
543:17
**insurance** 442:22
**intended** 454:15
**interact** 538:25
**interaction** 538:8
538:12,17,25
**interested** 552:16
**intern** 415:6
**interrogatory**
547:18,19
**introduce** 500:7
**investigate** 411:3
446:12 543:13
**investigated**
543:12
**investigation**
497:18
**involved** 415:1
416:9 478:16
495:16,18 532:5
534:10 535:4,8
536:10,14 544:14
**isolated** 410:19
**issue** 444:16
446:24 458:21
459:9 460:14,18
493:15,17 495:20

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                                      7/11/2008
DEPOSITION OF BERNETHIA JOHNSON
Page 8

| | | | | |
|---|---|---|---|---|
| 495:21,23 | **journal** 520:4,5 | **know** 404:12,13 | 541:16,19 542:21 | **largest** 510:20 |
| **issued** 510:16 | 521:4 | 412:15,22,23 | 543:14 549:5,6,7 | **late** 469:21 |
| **issues** 463:22,24 | **Judge** 524:9 | 414:6 415:9,11 | 549:8,18 550:18 | **laughing** 454:16 |
| 464:2 | **July** 401:22,23,23 | 416:5,6,8,19 | **knowledge** 405:1 | 455:3 468:19 |
| **IVT** 511:25 512:16 | 402:16 464:12,25 | 418:9,11,20 | 405:13 411:3 | 469:14 472:25 |
| 513:7 514:11 | 522:9 548:7 | 419:7 420:1 | 420:19,22 423:18 | **laughter** 455:6 |
| 515:1 516:15 | 552:6,17 | 421:10 422:3,18 | 431:1 434:10 | **Laura** 470:15 |
| 517:15,16,17 | **jump** 479:8 | 424:2 425:8 | 446:25 447:4 | 528:1,5 530:12 |
| 518:6,9,16,21 | **June** 410:20 411:5 | 426:19 431:20 | 497:14 521:1,12 | **law** 402:3,4,11 |
| 519:4 | 411:11,12,16 | 432:4,17 434:14 | 521:24 531:19 | 415:3 |
| | 456:10 457:3 | 435:24 436:18,20 | 537:17 545:2 | **lawsuit** 429:2 |
| _____ J _____ | 462:1,4 463:7 | 437:12,20,21,24 | **K-I-M** 524:17 | 448:20 483:14 |
| **J** 401:8 402:7 | **Juraldine** 402:3,3 | 438:2 439:6 | | 526:23 533:10 |
| **James** 402:7 | | 440:25 442:20 | _____ L _____ | **lawsuits** 484:13 |
| **January** 417:11 | _____ K _____ | 443:1 446:16,17 | **Lamar** 409:2,8 | 503:12 527:5 |
| 424:24 425:11 | **Karen** 431:25 | 446:18 448:8 | 418:17 433:16,17 | 546:4,15,22 |
| 428:6,7 435:8 | 507:17,17,19 | 451:2,5,19,21 | 434:11 435:1 | 551:1 |
| **Jefferson** 476:18 | **keep** 493:2 496:23 | 453:13 454:25 | 448:23 449:10,17 | **laying** 433:24 |
| 477:11,15 479:19 | 510:13 | 455:10,12,16,16 | 449:23 450:5,8 | 434:7 |
| 486:6 487:9 | **kept** 440:20 520:2 | 455:17,19 456:15 | 450:13,24 451:6 | **lead** 448:24 505:16 |
| 488:22 | **key** 456:17,18,19 | 456:22 458:18 | 451:11,21 452:1 | 505:17 540:8 |
| **Jimmy** 413:7,8,8 | 456:20,21,23 | 461:20 465:4 | 453:20,24 454:5 | **leave** 466:24 |
| 414:25 416:2 | 467:11,12,22 | 466:21 467:8,8 | 455:22 477:12,14 | 471:24 485:5 |
| **job** 410:22 412:17 | 473:13,13 542:22 | 467:25 471:23,24 | 478:12,20 481:10 | 517:20 519:25 |
| 412:20 438:15,17 | **keyed** 438:25 | 473:19 478:11 | 485:9,18 486:4 | 527:18,21 528:24 |
| 467:5,8 | 439:3,6 445:16 | 479:5,17 480:12 | 487:2,11 488:21 | 530:15,15 542:23 |
| **jobs** 437:5 | **keying** 443:5 | 481:1 482:14,21 | 490:24 492:2 | 543:22 547:14 |
| **job-related** 541:6 | **Kim** 524:9,16,17 | 483:1,2 486:17 | 495:7 497:6 | 551:10 |
| 541:7 | 524:19,20 525:7 | 486:20 487:3 | 498:10,15,16 | **left** 411:19,19 |
| **Johnson** 401:5,17 | 525:23 538:13,13 | 489:22 490:3,14 | 499:7 505:21,21 | 441:3 453:9,11 |
| 401:18 402:18,24 | **kin** 552:14 | 490:15,19 491:24 | 517:15,17 518:5 | 459:1,3 466:11 |
| 413:7,16 414:14 | **kind** 405:21 | 494:8 496:24 | 518:24 524:8 | 466:22 474:9,10 |
| 414:24,25 416:1 | 412:21,22 413:10 | 497:8,19 498:18 | 528:16,21 529:13 | 476:5,8 506:8 |
| 416:7 462:19 | 415:4,5 439:8 | 498:19 499:3,15 | 529:14,16,20,22 | 519:11,11,12,25 |
| 463:1 483:10,11 | 444:18 461:12 | 501:11,14,15 | 530:1,19 545:12 | 523:19 526:8 |
| 489:18,20,21 | 497:18 502:4 | 502:21 505:4,9 | **Lamar's** 434:8,17 | 529:3,3 538:9,19 |
| 490:7,12,14 | 505:5,11 520:3 | 505:10 506:18,23 | 449:4 450:20 | **legal** 412:12 |
| 491:18 492:5 | 535:12 537:13 | 507:18,23 508:23 | 456:1 484:22 | 425:25 427:13 |
| 495:6 497:6 | 539:2 549:2 | 509:9,10,19,19 | 485:2,15,17 | 437:4 451:21,23 |
| 499:8 501:5 | **knew** 420:8 436:3 | 511:6 513:14,18 | 486:22 487:6 | 468:24 493:24,24 |
| 507:22,24 510:16 | 469:3,8,16 | 513:22,24 514:17 | 489:2,13,20 | 493:25 505:15,17 |
| 511:8 518:11 | 472:19,23 478:20 | 518:3 519:15 | 490:1,16 491:8 | 508:17 509:5 |
| 522:13 524:8 | 491:7 492:1 | 526:13 527:3 | 517:24 518:15 | 514:25 518:24 |
| 530:19,20,23 | 515:20 519:12 | 529:1,6 530:9 | **lamp** 527:8,8 | 540:7,8,10 |
| 543:15 544:6,11 | 530:24 531:11,20 | 532:2,3 534:25 | 533:23,24 | **Leisiure** 524:10,12 |
| 545:11 552:4,8 | 536:11 | 536:11,19 539:3 | **Large** 401:19 | 524:19,20 525:7 |
| 552:20 | **knocked** 485:16,18 | 539:10,11 541:2 | 552:5,21 | 525:24 538:13,13 |

let's 404:16,18
   410:7 424:15
   436:22 445:14,22
   456:6 481:21
   483:6 523:21
   534:1 535:11
   546:12 549:9,11
level 460:4
liar 506:6 507:11
License 552:22
lie 506:2
lied 507:7,7
lights 474:16,18
limited 425:6
   428:13
Linda 449:11
   484:23 485:3
   486:20 487:3,4
   487:15 536:3
list 404:6,20,23
   532:20
listed 405:8 437:15
   438:10,15,17
   440:4 526:11
listen 449:15
litigation 546:13
LMR 446:18
local 505:2
locate 405:5 406:7
   406:10,11
located 490:16
   496:14
location 467:19,20
   507:5
locked 465:13
long 412:13,15
   415:8 418:7
   442:8 451:1
   453:12 459:18,19
   528:10 531:6
   538:3
longer 524:22
   548:17
look 410:1 411:9
   411:12 421:14
   435:15,17 465:16
   483:14 484:15

520:21 526:12
looked 404:4
   405:20 429:25
   430:11 440:11,19
   440:20,20,21
   466:7 481:4
   530:3
looking 463:14,21
   476:4,11 489:17
   489:19,24 490:12
   494:15 510:13
   547:16
looks 406:6 459:5
   526:19
lost 546:24 547:3
   547:10,12
lot 411:21 418:23
   418:25 420:6,15
   420:15,25 422:22
   424:4 428:8,9
   440:23,23,24
   444:23 465:24
   476:16,19,23
   479:14 488:14
   493:9 497:1
   546:25
loud 408:20 449:24
   450:22 452:22
Louise 528:1
   530:11,12
lunch 411:20
   439:20 440:12
   527:11,17 529:3
   529:4,4,7 530:25
   531:6,10,11
   532:3,4
lunches 527:12,14
   527:25 528:4
   531:1,2,17,20,22
   532:10
L-E-I-S-I-U-R-E
   524:14

_____
**M**
M 401:18 552:4,20
mail 474:17
majority 432:6

making 423:19
   474:10 507:13
   534:7 537:12
male 514:8,8,9,10
   514:12,14,15,17
   514:20 516:8,10
   516:14
Mallory 401:18
   552:4,20
management
   410:16,18 411:1
   411:12 426:2
   471:23 472:3,3
   489:16 491:17
   495:12,12,17
   497:13,14,16,17
   512:4,19 514:14
   514:22 515:4,22
   516:11,14 517:11
   517:12 519:20
   520:12,14,23
   521:9 524:5,6
   525:4,20,21,22
   529:15 534:11
   535:9 538:9,25
   543:10 544:10,11
   544:14,23
manager 446:8
managers 503:7
   544:2
manner 460:8
   544:19 552:16
MAR 484:25 487:5
mark 439:18 478:4
marked 404:19
Martin 425:23,24
   426:1,17 468:18
   468:23 472:4
   473:2 504:3
   505:22 519:19
   520:10,23,25
   521:6,12
matter 457:7,9
   461:22 462:2,13
   462:22 463:8,12
   463:20,22 479:25
   485:21 495:12

496:2,20 508:20
   509:2 518:12
   552:9
matters 460:11
   462:16 463:15
McAnnally 448:23
   448:25 449:10,16
   449:17,20,24
   450:5,12,22
   451:3,7,12
   452:22 453:20
   454:4,6 455:22
   456:1 503:14
   504:5 505:8,14
   506:16
McDonough 507:6
McWilliams
   427:11,12 492:17
   493:23 495:15,17
   495:22 498:4,6
   498:10,24 510:17
   539:19,22 540:4
   540:6 541:22,25
   542:1,5,18,20
mean 415:8 424:4
   429:6 430:7
   433:23 437:7
   441:6 445:9
   525:2 526:9
   532:3
meant 443:14
medical 548:11
medication 403:5
   522:21
meeting 423:9,16
   423:17,22,24
   425:5,7,10,13,16
   425:19 426:2,7,8
   427:6,20,23
   449:4,14 451:15
   451:16 452:14
   453:10 486:18,23
   487:12 488:23
   503:13,16,20
   504:8,10 506:15
   512:12,14 537:15
   541:3,10,16

meetings 535:8
member 482:22
memory 411:17
   435:18 447:25
   548:18
mention 457:5
   468:12 506:13
   550:3
mentioned 404:1
   405:17 469:7
   472:21 486:20
   498:4 515:19
   522:23 527:8
   529:18 537:3
   541:21 549:23
   550:5
merely 410:19
met 545:3
Michael 401:8
   529:24,25
middle 401:2
   402:8 410:7,13
   470:1,3,4
mind 436:2,2
   448:12 539:21
mine 489:25
minute 432:11
   483:6 526:12
missing 493:2
   494:13,21 496:17
   497:1,4
moment 531:11
monetary 505:6
   547:10
Monique 531:9
   532:19,21
Montgomery
   401:21 402:5,9
   403:8 410:17
   412:14 437:6
   484:18 489:10
   499:13 500:2
   517:8 521:23
   522:24 524:4
   525:6,7,8,13,14
   525:18,23 526:5
   533:6,11,16

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON
Page 10

537:8 538:9,18
538:19 539:15
543:8 545:9
547:4 548:12
552:3
**month** 494:8 499:3
511:6 513:5
518:3 541:19
**months** 415:10
**month's** 405:10
**morning** 403:5
418:10 440:14,16
490:25 522:13,14
522:21
**Morris** 484:25,25
**mother** 481:2,2
**move** 417:8 418:8
419:14,19 420:2
420:4,11 421:23
423:2,3,7 429:21
431:5 435:7
436:13 546:7,12
**moved** 429:2
**M-A-R** 484:25

**N**

**name** 431:23 432:2
468:12 482:17
487:3 504:22
506:18,21 523:4
524:11,15 529:14
530:11 538:22
539:6,11 548:25
**named** 527:7
**names** 404:2,7,23
422:6,19 432:24
523:2 548:14,19
**naming** 533:18
**nature** 504:15
**Nearly** 433:4
**necessary** 412:17
472:18
**need** 419:21
448:11 485:23
486:1 546:16
551:9
**needed** 484:24

**490:22,23 498:14
517:14
**negative** 545:12,25
**neither** 491:17
552:14
**nerves** 478:6
**never** 416:15,20,21
421:12,12 422:24
429:17 431:2,5
433:7 438:1,3
446:22 447:2
464:23 467:5
473:4 491:10
492:19 497:5,21
497:21,23,25
503:17 509:23
510:2 520:25
521:9 532:9
533:6 543:2,11
545:11,16,24
546:2
**new** 514:7
**next-door** 475:25
476:2
**night** 403:12,15
**nonwork-related**
460:18
**non-handicapped**
432:21 435:2
**normally** 485:5
**North** 402:4
**NORTHERN**
401:3
**note** 490:24
**noted** 496:18
**noticed** 416:20,21
440:11 493:8
494:21 496:17,18
496:25
**notification** 548:5
**notify** 485:25
498:19
**November** 409:2
409:22,22 410:15
411:7,15 414:4
537:23 538:1,7,7
**number** 443:24

444:1 484:14
508:16,19,24
509:4,11 552:22

**O**

**oath** 402:25 522:19
**objection** 471:4
551:16
**objectionable**
471:2,5,6
**obligation** 444:11
446:11
**obviously** 544:13
**occasion** 462:1
515:5,23
**occur** 490:2,6,9
516:23,25 517:2
517:23
**occurred** 410:20
436:1 456:3
502:1 508:13
509:23 510:12
515:6 521:16
539:25
**October** 499:18
527:9 533:24
538:6,10,19
**offensive** 504:12
**offered** 541:25
**office** 401:20 402:8
402:12 412:14
413:11 415:8
418:14 423:10
425:18 430:25
437:6 449:5
451:18 456:14
457:6 458:1,10
458:14 459:4,14
459:22 460:1
461:14 462:3,12
462:14 463:9
464:14 465:5
466:14,22 467:17
468:2 469:8,20
473:18 476:1,14
483:19 484:18,22
485:2,6,15,17

**486:22 487:6
489:9,13 490:1
491:5,8,17,20
492:15 499:13
500:1 511:19
513:8 514:19
517:9 519:17
520:7 521:22
524:4 525:17
526:4 528:11,18
528:23 529:8,17
533:6,12 535:20
535:22 539:20
540:2,17 543:22
**officer** 441:22
442:2
**offices** 402:3 438:4
438:18 474:15,18
**official** 437:7
514:14 544:10,11
**officials** 495:17
514:22 521:10
524:5,7 525:4,21
525:21,22 538:9
**Off-the-record**
408:15 500:6
522:6 546:19
547:24 549:10
**oh** 408:13 414:10
414:25 432:23
436:2 459:1
461:2 474:4,4
476:9 487:3
490:11,22 493:22
498:12 509:9
512:2 515:15
518:13,21 525:7
530:4,13 532:23
535:7,7 538:15
541:6 542:15
**OHA** 410:18
**okay** 404:11,15
405:7,25 406:6
406:19 408:11,25
409:14 410:6
411:5,19,19
412:13 414:1,5

414:10,12 415:22
416:1,22 417:1
422:15 423:3,5
424:8 426:11,22
428:18 429:14,19
429:25 430:16
431:22 432:25
435:6 438:14,21
438:23 441:18
443:16 444:2
445:6,14 446:21
448:5,14,16
449:4 452:20
455:21 457:1,12
457:21 458:16
459:5 461:2
462:21 463:13,16
463:19,19,23
464:7,8,25
465:10,10 467:5
468:3,7 469:6
470:3 471:7,18
472:11 473:19
476:3,11 477:6
478:11 481:5
483:20 484:9,21
487:2,6 488:20
489:15 490:22
491:6 493:22
495:8 496:10
497:5,25 498:13
498:21 499:19,19
500:3,21 501:22
502:12,23 504:4
507:12,20 508:9
508:21 509:3
511:2 513:12
514:6,16 515:16
516:11 521:3
522:3 525:19,25
526:7,16,17,24
526:24 527:7,10
527:10,11,13,24
528:13 529:10
530:5 531:9
533:2,21,23
534:21 535:17

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.
DEPOSITION OF BERNETHIA JOHNSON

537:17 539:5,8
540:1 541:9
543:3,20 544:7
546:12,18 547:2
547:23,25 548:4
548:14,23 549:7
549:14 550:4
**once** 467:11 530:6
**ones** 408:1 425:6
427:24 437:12
507:19
**one-hour** 547:14
**ooh** 505:23 506:3
**open** 457:13,22
459:18,19 460:11
461:4 463:24
464:2
**opened** 457:23
**OPM** 437:5
**opposite** 476:12
**order** 539:6 544:18
**ordered** 498:9
**organization**
411:20
**outside** 485:8,11
545:4
**overlook** 420:14
**owned** 442:8
**o'clock** 464:22
466:22,25

**P**

**page** 404:2 410:8
410:14 424:19
428:4 443:15
448:9,9,10,11,11
500:12,13,25
523:22,23 526:16
526:21,21
**pages** 406:1 407:1
407:6,7,11
552:10
**Pam** 493:15 498:4
498:6,11,12,19
498:20 499:15
501:20 507:4,6,9
507:19 513:13,14

513:16,18,24
514:4 524:8
**paperwork** 404:9
**paragraph** 408:18
408:19,22 409:1
409:19 410:4,7
410:15 416:23
417:2,2 436:17
436:22,23 437:16
438:11,16,22,24
447:18 448:2,4,6
448:17,19 451:10
456:9 457:5,15
457:21 463:18
475:13,14 481:22
**paragraphs** 408:9
464:4,6,8,11,17
526:11
**park** 417:24 418:2
418:4,4,22
420:20 422:9,10
423:13 426:3
429:17 430:17,20
**parked** 417:18
418:3,7,11
420:13,14,25
421:4,8,24 422:3
422:4,7,12,25
431:8,17 432:4
432:10,12,14
433:2,11,15,17
433:21 434:17,23
435:3 436:7
440:22 441:1
465:23 466:1
475:25 476:13,23
**parking** 411:21
417:4,12 418:23
418:25 419:3,3
419:15 420:6,9
420:15,15,25
421:4,20 422:22
423:1,6 424:4,5
424:18 426:4
428:8,13 429:3
429:17 431:2,3
434:3,18 440:23

440:23,24 441:5
441:6,7,8,9,10
444:23 465:24
466:10,11 475:24
476:16,19,23
479:14,14,15
**part** 440:24 484:12
486:18 499:23
503:11 505:3
519:10 527:4
533:5
**particular** 420:10
431:11 467:18
474:9 482:24
486:23 488:16,17
488:19 491:1
495:20,21 498:7
511:2
**particularly**
427:24 491:3
**parties** 552:12,15
**pass** 420:17,24
**Paul** 410:9 413:7
414:24,25 416:1
416:6 419:16
462:18 465:15,16
465:18,21 467:12
473:12,16 475:2
479:25 480:10
489:18,20,21,24
490:7,12,14
491:18 492:5,6
493:3,3,6 495:19
496:2,4,21
503:13 506:7
507:21,24 508:15
509:18,23 510:16
511:1 512:14
513:21,24 514:1
524:8,8 530:7,23
532:23,24 535:12
535:22 544:5,11
**pause** 408:24
448:15 526:20,25
546:10
**pay** 443:5 444:3,10
444:11 445:1,12

445:23 446:1,15
547:3,5,6,8,10
**paying** 433:11
434:22
**payment** 444:20
446:3
**pedal** 480:14,15,16
**pending** 461:11
508:12
**people** 421:20
422:2,5 423:12
427:25 428:2
430:4,5,17
454:11 458:18,19
459:20 469:6
471:23 472:19
507:11,18 510:5
516:3 518:17
528:3 529:10,24
530:7,8,10,14
531:9,13 532:4
534:9 540:14
545:3
**people's** 422:20
511:23
**percentage** 550:16
**periodically**
461:23
**person** 436:4,7
443:8,12 450:16
451:20 458:14
468:1 470:9
484:23 511:15
514:16 529:24
538:23 542:24
**personal** 420:18,22
457:7,9 461:22
462:2,13,15,21
463:8,8,12,14,20
463:22 520:5
531:19 537:17
545:2
**personnel** 548:6
**person's** 485:6
**phone** 485:4,13
487:8
**physical** 478:4

**pick** 512:17 543:24
**picked** 448:10
**picture** 411:24
412:2,18,23
413:1,4,20,25
414:16,20,23
476:3 485:17
**pictures** 415:21
416:18,21
**placard** 417:21
421:18 433:22
434:12 436:19,21
**placards** 418:15,18
**place** 409:2 426:20
426:22 445:4,4
449:14 454:18
455:4 480:4
484:17 492:23,25
502:10,25 507:4
509:8 511:4
513:2,3 533:15
534:22 535:15
541:16
**placed** 491:19
**places** 493:1
494:18
**plaintiff** 401:6
402:2 451:10
457:24,25
**plaque** 505:5,7,9
505:10
**please** 415:1 459:2
459:2 461:7
472:12 508:22
517:11
**point** 417:10 420:2
431:20 434:12,13
447:25 458:6
463:21 465:23
476:21 479:17
502:2 549:22
**police** 440:2,4
441:15,16,19,22
442:2,17,18
483:3,4
**policy** 467:2,4
469:25

**position** 507:8
539:23 542:9
**positions** 437:2,22
438:7,10
**possibility** 435:25
**possible** 549:20
**possibly** 435:22
446:10,17 452:12
455:19 458:20,23
503:15 511:5
516:2
**practice** 548:17
**practitioner** 549:4
**premises** 477:2
**prepare** 407:11,12
**prepared** 407:16
547:16
**presence** 450:18
450:19,20 545:4
**present** 419:25
423:9,16 424:8
426:16 427:8,16
449:9,12 452:16
454:3 460:5
461:5,15 469:17
473:23 480:5
486:21 487:1
494:10 499:5
504:10 513:10,17
514:25 536:2
540:17
**presented** 406:17
497:13
**presumably** 425:6
**pretty** 481:4 506:4
**Prevacid** 488:11
488:13,14,16
**previous** 550:20
**previously** 402:19
431:14,19 483:21
522:23 526:10
549:18
**prior** 412:18
429:22 461:6,15
462:1,4 463:6
478:20 545:21
**privately** 458:21

**probably** 411:8
413:24,24 427:25
455:14 503:5
**problem** 551:12
**problems** 493:9
**Proceedings** 522:8
**process** 535:4
545:13,14 546:1
**produced** 499:22
**professional**
544:19
**program** 413:10
415:5
**promises** 414:2
**prompted** 493:10
**pronounce** 482:16
**proper** 493:1
528:23
**property** 412:1
439:1 446:4
475:16
**proposal** 534:5
**protective** 481:22
482:3,9,15,22,25
**prove** 506:9
**provide** 446:10
451:22 487:18
549:20
**provided** 539:5,6
**pull** 494:12,14
**pulled** 466:9
492:20 493:11
496:7,10 529:20
529:22
**purchased** 438:25
442:10,13
**purpose** 478:24
479:2
**purposes** 429:12
477:16,18
**pursuant** 401:17
**pursuing** 503:12
**put** 423:18 426:3
439:22 464:21
467:13 477:11
490:20 492:23
494:19 496:13

508:22 509:24
512:14 520:22
541:11 544:5
**p.m** 402:17 522:7

---
### Q

**question** 405:5
410:6 414:12
427:2 447:9
461:11 472:24
484:10,16 508:9
508:12 515:21
516:12 524:1
525:15,20 531:15
533:9 544:21
545:18,23 546:21
547:1
**questioned** 528:21
528:25 531:7
**questioning**
487:13,15 528:22
**questions** 403:3,23
522:16 526:15
547:3,25 549:15
549:18 550:21
**quickly** 533:23
546:8
**quoting** 535:24

---
### R

**raining** 440:16
**raise** 430:3
**raised** 430:6,6,7
**Rambo** 504:2
505:22
**rang** 485:4,7 487:8
**read** 408:19,19,20
408:22 409:20
411:14 448:3,9
448:17,24,25
449:2,3,16,17,24
450:5,8,10,12,14
450:16,17,22
451:1,7,12,19,22
452:22 453:20
455:22 456:1
461:10 463:17

464:6,8 472:13
472:14 483:10
484:5 508:11
521:25 522:4
527:1,2 545:16
545:20
**reading** 448:10,12
449:20
**ready** 465:21
**realized** 542:2
**really** 405:6 410:8
415:25 481:4
546:24 549:8
**Reams** 406:17,24
407:22,25 410:9
410:10,11,14
413:11 417:3,7
418:8 419:9,11
420:8,19 421:19
422:15,22 423:10
423:21,24 424:7
424:9,18 425:2
428:7,19 429:2
431:15 432:9,21
433:5 434:17
435:4,7 443:4,6
443:24 444:6,15
444:25 445:5,22
446:2,9 456:14
457:2,24 458:22
459:13,17 461:4
461:13 462:3,9
462:12,14 463:1
463:9 465:5,6,15
465:16,18 466:3
466:21 467:12
468:8 469:24
470:5,23 471:8
472:9 473:10,13
473:16 475:2,3,5
479:25 480:10
481:7 489:24
492:6 493:6
495:6,19 496:2,4
496:21 497:5
499:8 501:5
503:13,17,24

504:7,13 506:7
506:10 508:4,15
509:18,24 510:8
512:14 513:21
514:1 518:11
524:8 527:15
528:3 530:7,14
530:16 531:3,21
532:23,24 533:19
534:7 535:12,19
535:22 536:11,15
536:16,17 537:9
537:12,18,19
538:20 539:20
540:2,16,18,20
541:25 542:6,11
544:8 545:11
**reason** 403:1
409:11 438:12
450:15 452:8
473:9 474:9
475:5,10 509:7
522:15 534:6,15
549:25
**reasons** 435:6
438:7 447:16,19
484:4,19
**reassign** 512:15
**reassigned** 512:12
**reassigning** 511:23
**recall** 407:24 408:4
413:19,22 415:25
416:5 419:8
422:18,19,20
423:19,25 425:13
427:6,20 428:1,3
431:7 437:3,4
443:3,6,11,11
444:17,17 452:19
456:25 457:1
458:4,5 459:11
459:16 462:2
469:15 473:6,8
480:7,20 481:12
481:20 487:22
503:6 513:14,15
513:20,22 514:23

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.
DEPOSITION OF BERNETHIA JOHNSON

527:10 535:17
538:23 539:1,12
540:13 541:9
549:15
**recalled** 427:22
**receive** 428:5,16
438:6 474:6
504:18 506:5,6
512:17 547:7,11
550:17
**received** 404:7
424:16 428:18
500:10 503:18,25
504:5,14,16
505:8,9,10,11,14
506:1,19 512:6
534:5 545:22
**receiving** 444:14
446:21 548:7
**reception** 492:24
496:14,15
**recess** 404:17
456:7 483:7
522:7 549:13
**recognize** 443:21
468:4
**recognized** 506:15
**reconvened** 402:15
522:8
**record** 402:23
404:18 405:19
408:14,16 472:15
483:9 499:24
500:5,7 526:18
546:20 547:22
548:1 549:9,14
**records** 498:9
**reduced** 509:11
**refer** 425:9 456:10
483:12 523:16
**reference** 414:2,16
414:18 425:4
436:23 438:14,24
470:14 481:22
499:17
**referenced** 447:17
**referred** 411:16

423:21,24
**referring** 404:8
406:7 410:4
411:6,18 414:6
451:10 457:21
458:2 462:24
463:2 489:15
495:14 524:7
527:13 532:14
541:24 543:17,20
545:6
**refers** 406:8 409:1
409:20 425:8,10
**refresh** 435:17
447:25
**refreshes** 411:17
**regard** 414:3
547:15
**regarding** 409:2
409:21 412:17
417:3 443:7
499:23 507:24
510:11 534:18,18
542:7
**regular** 419:3
483:4
**Reiterated** 470:13
**relate** 464:11
**related** 455:12
547:4
**relates** 533:9
**relied** 409:15
**relying** 536:12
**remain** 424:3
470:16
**remember** 425:5,7
427:24 506:21
515:13 539:3
548:25 550:21,22
**remind** 402:25
**remove** 417:4
419:9
**removed** 539:22
**removing** 542:4,9
**Renee** 426:10
468:20 469:7,13
485:10,10

**Renita** 476:18
485:10,14,16,24
486:5 487:9
488:1,22
**reopen** 551:10
**rep** 535:6 536:2
**repair** 444:12
445:12,23 446:3
**repaired** 442:24
**repairing** 445:1
**repeat** 460:16
461:8,9 472:12
508:10
**rephrase** 461:12
512:4 544:21
**report** 413:4 440:2
440:4 441:16,19
442:17 481:23
483:3 485:1
487:5 531:7
532:7 534:5,16
540:12
**reported** 414:24
422:24 539:19
540:13 543:10
552:7
**reporter** 401:18
461:10 472:14
508:11 552:4,20
**REPORTER'S**
552:1
**reporting** 529:7
**representative**
460:15,19
**reputation** 453:22
453:23,25 454:7
**request** 436:13
456:1 461:4,13
462:24 519:6
549:16 550:7
**requested** 497:23
498:1
**requesting** 456:19
456:20,23 487:4
539:2
**require** 483:9
**reserved** 423:12

**resolution** 482:12
**responded** 457:24
**response** 411:2
426:5 427:4,18
444:6 450:11
452:18 469:24
470:5 471:3
500:25
**rest** 411:14
**restroom** 464:13
465:1,6,12,12
**result** 491:11
**results** 552:16
**retained** 437:18
**retaliate** 409:9,12
409:16 417:8
429:4 435:8
439:4 456:2
472:9 475:7
489:3 508:8
**retaliation** 429:12
429:22 436:14
445:2 448:7
461:5,15 477:7
477:15,18 489:11
491:15 492:16
499:14 501:19
511:20 515:5
517:10 518:16
521:22 527:23
533:4 534:18
539:15 545:8
550:1
**retaliatory** 410:25
438:7,12 445:7
445:10,17,18,25
446:7 447:19
448:20 452:9
457:16,18 458:9
464:17,19,24
468:9,16 477:10
483:17 484:4,12
484:19 486:3,10
486:11,14 489:2
491:2,6 495:10
497:12 498:22
501:9 502:24

503:19,23,24
510:11 512:24
516:9,15 520:18
520:24 521:15,17
524:3 534:23
**retire** 533:5 537:22
537:24 538:4
**retired** 533:6
549:25
**retirement** 533:3
533:18 537:4,6
549:24 550:7,11
550:13,17
**return** 493:12
494:17
**returned** 494:16
496:12 531:10,12
**review** 403:15
523:14
**reviewing** 496:12
**Richard** 402:10
**rid** 452:13
**right** 403:17,21
404:18,21 405:1
407:6 408:6
409:4 411:19
413:3,6 428:4
429:1 432:19
435:10,10,14,20
436:9 440:10
441:3 447:21,23
454:4 458:24
459:18,21 460:11
460:15,20 461:3
461:16 463:25
465:24 469:23
470:2,21 473:9
475:11,12 476:7
479:3 483:24
484:1 487:22
491:20 492:6
497:11,23 501:16
502:2 507:1
511:17 512:11
513:7 514:11
518:1 519:9
522:25 523:8

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON
Page 14

527:2 528:9
529:1 532:14
533:9,13,24
537:1 539:13
540:10 543:7,20
545:4,6 546:11
546:20 547:8,21
550:8,19 551:4
ring 485:5
Robinson 431:22
431:24 432:1
470:16 528:1,5
528:10 530:12
Roger 523:3,4
rolled 411:21
rolls 526:23
room 474:17
511:25 512:16
513:7,8,11,15
514:11 515:1
516:1,7,15,20
517:15,16,18
518:6,9,16,22
519:4,4
Rudolph 523:5,6

S

SAITH 551:23
salary 548:6
sat 465:15 479:3
494:17 530:7,8
saw 413:3 420:19
420:25 422:2,7,7
422:15,21 429:10
429:23 431:8
432:9,20 433:20
434:17 435:4
439:20,23 440:13
465:16,18 466:8
474:21 478:25
479:5,9,10,11,17
480:3 493:4
494:22 496:18
512:6 530:9,10
531:23 548:15,19
saying 406:1,14
411:10 415:19,23

420:18 421:12
434:16 435:12,16
435:19 440:5,7
442:4 446:10
449:23 455:2
458:8,20 469:15
474:12,14 477:17
478:9 488:20
491:6 502:2
508:7 509:1,11
509:14 512:13
518:5,20,24
531:16 534:21
544:6,8,12
545:20
says 425:5 444:9
444:10 456:13
500:22
scheduled 490:25
school 543:24
scratch 439:24
441:13,20 443:9
525:23
second 404:1,6
408:8,14 410:4
410:10 428:4
430:16 438:11,16
438:22 447:18
448:7 451:11
460:4 463:18
464:5 475:13
483:16 490:12,20
492:6 498:3
499:24 500:12,25
512:5 517:11
523:23 526:22
527:20 531:11
547:22
secured 473:15
security 401:9
402:11 412:14
417:12 437:5
444:19 464:14
466:13 467:16
469:20 476:1,5,6
476:14 479:24,24
480:3,6 483:1,18

484:18 489:9
492:15 499:13
500:1 505:1
511:19 513:8
514:20 517:9
521:22 524:4
525:17 526:4
533:12
see 405:10 407:5
408:7 409:22
410:7,11,22
411:17 414:3,10
414:11 417:5
421:15,17,17
422:11,12 424:15
425:11 431:15
433:2,5,14,17,22
434:4,5,6,7,9
436:24 439:1,21
442:15 443:14
453:14 456:11
457:9 470:14,17
470:25 474:20
475:17 481:22,23
504:4 507:17,19
523:21 527:11
530:8,9 531:23
532:23
seeing 420:22,23
420:24
seek 551:10
seeking 444:20
546:13,14,16,21
seen 415:12 418:17
421:1,2 431:13
466:3
selected 511:14
send 443:10 470:9
544:10
sending 443:3,6,11
471:8
senior 432:2,3
475:20,20
sent 424:13,14
428:23 468:8,17
469:24 470:10,25
472:9 475:6

500:9 544:8,11
545:24 547:18
separate 426:13,15
493:17
September 475:15
series 409:20 468:4
serve 423:14
served 548:8
Service 481:23
482:3,9,15,25
set 417:16,16 418:5
418:5 421:7
422:12 423:12
428:19 432:17,18
432:22 441:8,9,9
464:13 466:21
467:5,9,12,23
472:17,22 473:4
473:7,12,17
552:13
sets 421:9
setting 466:18
469:19 470:20
474:6
shaking 478:6
sheets 532:6
542:25
shift 480:13
short 404:16 456:6
522:5 549:11
shortly 479:25
482:6
show 510:25 541:6
showed 429:8
510:22,23,23,25
showing 445:3
shows 548:6
shut 457:6,12
459:23 460:4
461:22 462:3,15
sic 440:15 471:21
side 411:11 419:11
420:16 441:1
sight 479:7
sign 527:18 528:24
529:4,17 530:2
530:15 543:25

signed 529:21,22
signing 483:10
528:17,19,22
543:23
similar 405:23,23
405:25 406:1
sit 449:15
sitting 546:4
550:19 551:4
situation 431:7
445:5 454:18
455:3 488:24
493:6
situations 488:14
six 464:22 466:22
466:24 470:17
size 510:18
smaller 510:21
Smith 529:19
snapped 411:24
social 401:9 402:11
412:14 417:12
437:5 444:19
464:13 466:13
467:16 469:20
476:1,4,6,14
483:18 484:18
489:9 492:15
499:12 500:1
505:1 511:18
513:8 514:20
517:8 521:22
523:9,10 524:3
525:17 526:4
533:11
socialize 501:21
502:7,19 534:9
solely 517:3 551:14
son 549:20
soon 546:9
sorry 412:8,9
414:8 419:7
428:15 431:18
447:8 448:8
460:16 461:7
472:12 490:11
493:22 496:25

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.     7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

505:19 508:9
512:25 513:3,12
538:6
sought 446:9
sound 430:12
space 417:4,19
418:1,24 424:5
429:17 434:2,3
479:15
spaces 417:12
426:4 428:8,12
428:20 441:6,7,8
441:9,10
speak 402:20
552:9
specific 434:20
455:12 528:7
543:16,16,21
547:2
specifically 454:19
455:5
spell 524:13
548:21
spoke 446:22
453:16 521:9
spoken 523:11
spot 417:25 418:3
418:4 419:3,4,10
419:15 420:5
421:5,24 423:1
429:3 431:9
432:10,12 433:15
spots 420:10,20
421:7,21 422:3,4
422:7,13,21
423:7,11 430:18
430:21,25 431:3
431:16,17 432:5
432:22 433:3,18
433:21 434:18
435:3
spread 517:19
518:15,22,25
519:7
stack 403:21
staff 425:5,10,13
425:15,19 464:23

stand 459:19
502:17
standing 411:23
454:21 456:13
476:9,10,11
485:11,19
stared 479:3
start 443:17
453:10 486:22
523:24 547:15,15
started 483:8
487:13,15 493:7
497:2 511:23
517:25 549:3
starts 410:9 526:23
state 401:19
410:16 552:2,5
552:21
statement 420:21
444:10,25 445:11
445:22 504:1,2
507:24 509:21
518:15 532:24,25
535:11 536:20
537:13 544:16
statements 545:21
states 401:1,20
402:8 405:4
stating 405:12
428:7 503:24
Stats 402:7
status 405:2,14
stay 424:3
staying 403:7
469:20 522:24,24
steal 512:22
step 436:17
stepped 485:8
487:8
steward 449:12
452:3 463:11
508:21,25 535:20
535:21
stick 480:13
stickers 421:11
423:13
stipulation 401:17

stood 419:11
stop 513:1
stopped 408:10
465:11 477:4,23
477:24
straight 476:24
477:3
Street 401:20
402:4,9,12 507:6
stretch 517:13
strike 406:15
423:4 431:1
465:8 529:2
stuck 480:15,16
student 415:3,4
stuff 499:10
subjected 483:17
submit 437:1
440:1
submitted 404:12
406:21 438:2
534:19 550:7
subsequently
416:7 423:4
424:11 440:1
536:23
successful 546:13
sudden 493:8
497:3
suffered 491:10
547:4
suggests 449:25
supervision 517:24
supervisor 413:9,9
460:4 489:20
490:7 516:8,10
516:11 524:20,22
524:24 528:16,16
537:10,11 538:14
540:12,14
supervisors 512:1
512:2,3 515:25
525:1 531:20
538:18
supplement 549:17
support 549:21
550:25

supports 436:10
445:24
supposed 498:9
sure 411:8,9 430:7
449:2 455:17,19
457:11 474:10,11
474:12,14,18
479:10 484:11
485:1 514:2
516:2 522:1
539:4 540:15
542:24 543:1
550:1,4
surely 480:18,21
suspension 547:5,6
548:8
switched 540:14
sworn 402:19
552:8
system 467:14

—————————
T
—————————
table 494:17
496:13
take 404:16 416:18
442:16 445:4,4
445:14 456:6
483:6 509:8
513:2 521:25
522:4 526:12
527:14,18,25
528:3,5,24 531:1
535:15 543:24
546:7 547:14
549:11 550:7,13
taken 401:17
414:15 447:18
455:4 493:12
496:1,2,20
542:23,24
talk 403:12 408:2
410:21 412:16
416:12 421:19
424:7,7,17 425:1
425:18,21 426:9
426:25 428:19
430:5 441:22

443:8 447:10
454:11 458:10,21
459:13,17 460:4
460:8,13,17
461:13 462:17
463:23 464:1
465:6 469:8
472:5 474:22,25
479:19,22 481:7
481:10,13 486:4
489:12 492:2
495:6 499:7
501:5 503:1,4,7
506:10 508:1,4
511:8 518:11
520:14 529:8
530:16 531:8
542:11 544:2,17
544:19 546:16
550:2
talked 403:18
409:6 412:17,19
413:16 416:7
423:23 424:12
425:22 426:16
427:8 429:25
431:2,14 452:3
461:21 462:2,13
462:15,18 463:4
468:20 475:2
479:21 484:5
488:22 489:11
497:5,8,21
499:15 518:13
532:18 533:24
536:18 540:22,22
542:6 543:6
544:2 545:3
546:3
talking 404:5
408:2 414:11,22
417:11 420:23
431:19 432:14,15
440:25 443:12
454:16 455:18,20
456:15,25 457:2
463:16 479:24

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                    7/11/2008
DEPOSITION OF BERNETHIA JOHNSON
Page 16

486:5 515:19
519:19 523:18,19
526:1 530:24
539:19 541:5
545:23 547:15
**talks** 414:18
**Tamika** 414:21
415:1,2,3
**Tamika's** 419:12
**Tammy** 425:23,24
468:17,18,23
504:2 505:21,21
505:22 506:3,5
510:25,25,25
519:19 520:23,23
520:25 521:6
**Tamplin** 423:19,20
423:20,23 424:1
424:6,17,25
425:10,15 428:22
449:11 451:3
452:5,10,14,18
453:17 454:3,5
459:6,15 460:22
460:24 484:23
485:4 486:18,20
486:21 487:4
536:3
**Tamplin's** 487:3
**task** 544:18
**tasks** 407:9
**telephone** 485:5,7
**tell** 404:6 407:7
410:2 413:6,21
415:17 421:19
422:6 423:4
424:12,16 430:8
431:5 432:20
441:19 443:17
452:7 455:5
465:8 468:4,25
476:21 482:8
490:4 493:17
496:4 500:8
501:25 504:22
510:3,5 515:12
515:17 527:24

**telling** 413:19
414:15 423:21
428:1 502:18
**tells** 444:2
**temporary** 413:9
**ten** 510:16,17,18
510:20,21
**Tennessee** 524:21
525:24 532:25
533:19
**Teresa** 436:19
473:17
**terminate** 534:6
**terminated** 535:3
**termination** 535:2
535:9
**testified** 402:20
501:25
**testimony** 403:13
502:3 523:12
**Thank** 465:10
thereof 552:16
**Thigpen** 524:9
**thing** 403:17
426:12 427:15
430:16 465:14
506:4 537:1
541:21 551:8
**things** 415:15
436:1 447:20
459:18 467:13
484:14 494:23
504:21 534:19
**think** 404:4 405:22
407:1 408:3
410:8 424:14
430:9 431:9,22
435:10,13,16,19
435:21,23 436:1
436:10 439:17
443:14 447:17,20
447:22,24 450:13
463:6,20 469:13
475:11 480:18
482:16 486:3,19
486:21 495:22

497:11,17 499:22
500:4 501:8
506:22 507:16
513:18 516:21
523:21 526:6,22
529:18,18 533:22
536:9 538:20
539:10 540:14
541:4 542:22
543:1 544:10
546:6,8 550:20
550:23 551:4,7
**thinking** 411:10
497:2
**thought** 404:2
405:18 422:25
430:1 431:18
432:14 449:25
450:13 451:4,5
452:1,1 458:12
468:25 469:2
473:14 505:25,25
516:21
**Threats** 415:17
**three** 407:3,3
410:9 417:16
418:5 423:14
432:18 436:24
437:15,21 438:7
438:10,15 454:8
464:6,17 483:15
523:22 529:19
547:7,12
**three-day** 547:5,6
548:8
**time** 406:20,23
413:12,17 417:10
418:9 419:25
428:3 431:21
432:6 434:12,13
435:3,13 438:19
440:11 463:24
466:24 467:11,22
473:11,12 475:8
487:11 489:18
491:22,23,24
494:2 495:25,25

497:3 508:17
515:19 519:3
521:25 528:17,19
528:23 529:16,17
529:21,23 530:1
530:3,4 531:13
532:6 535:7
538:21 540:14
542:18,21,25
547:1,4,17
548:19
**timekeeping**
539:23 541:22
542:1,8,17,20
543:4,5
**times** 421:1,10
431:13 432:11
433:5,7 463:10
470:15 489:16
491:19,21 505:24
529:7,16 531:23
531:25
**today** 403:1 522:17
523:14 550:19
**told** 413:24 414:14
414:21 415:12
416:1,2 435:6,12
435:13 436:9
446:17 447:16
450:10 452:14
455:23 458:12,24
459:1,12 465:20
465:21 468:20
473:16 480:9,9
481:1 487:16
489:21 490:24
491:14 492:13,20
493:3 494:12
495:24 496:2,4,5
496:5,20,22,22
496:25 498:12,20
499:10 501:17,20
501:23 502:6
506:4 507:1,6,12
515:21 517:6,17
517:19 520:10
521:20 530:3,4

535:22 539:13,21
540:21,24 541:7
542:2,2,5 544:24
550:24 551:2,3,5
**tone** 419:14 429:7
429:11,20
**top** 410:11 444:6
470:24
**touch** 509:3
**touched** 409:25
**town** 403:7 522:24
**training** 451:22
**transcription**
552:11
**transfer** 438:18,20
536:24
**transferred** 524:25
525:2
**tremendously**
451:9,14
**Tresalyn** 481:15
501:20,23 515:10
529:19 530:13
**trick** 436:2
**tried** 438:18
480:18 510:5
**trip** 436:2
**true** 522:16 528:21
539:22 552:11
**truth** 402:20 552:9
**try** 446:12 495:13
503:5 506:9
510:13 546:8
**trying** 414:13
438:19 446:12
477:21 487:14,16
533:14 535:23,24
536:7
**Tuesday** 401:22
**turn** 407:21 419:21
466:4 497:3
**turned** 448:10,11
465:19 474:16
476:25 477:1
479:6
**turning** 428:4
466:8

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.            7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

two 406:12 416:10
 417:15,16 418:5
 418:6 420:10
 422:14,15 423:11
 423:12 424:21,23
 428:8,12,13,20
 431:17 432:4,17
 432:22,24 433:3
 433:23 434:18
 435:3 442:9
 443:18,21 462:20
 478:17 481:16
 483:13,16,23
 484:13,14 489:16
 490:2 491:1,11
 492:8 500:9
 503:12 508:18
 509:12 515:25
 516:2,2 522:4
 523:17,20,23
 525:15,25 526:11
 527:5 528:3
 540:17 546:4,15
 546:22 551:1
type 503:18 504:16
 542:23
typed 404:2
types 407:6 433:23

**U**
uh 510:23
unable 486:12
unbelievable
 510:19
understand 405:5
 414:13 430:4
 432:23 489:23
 491:4,16 492:20
 504:4 517:3
 522:19 533:17
understanding
 406:12 467:1,3
 512:9 516:23
 542:18
unh-unh 506:2
unidentified 516:8
 516:14

union 447:5,10,11
 447:13 449:12
 452:3 460:14,19
 463:11 507:8
 508:20,25,25
 509:1,25 535:6
 535:20,21 536:2
unit 509:25 527:17
United 401:1,20
 402:7,8
unknown 514:20
unprepared
 546:23,25
upheld 535:2
upset 450:2
upsetting 505:18
use 446:16 478:25
 519:4 545:25
usually 418:22

**V**
vacancy 436:24
vacant 418:2,24
 420:5,5
Val 531:12
validate 542:25,25
vehicle 421:3
 434:4,6,8 436:7
 439:25 440:14
 443:7,9 444:22
 445:1 465:18
 475:16,22 477:20
vehicles 421:16
 422:4
visited 548:10
visualize 436:4,6
voice 419:14 429:7
 429:20,24 430:3
 430:7,9
vs 401:7

**W**
wages 547:12
wait 432:11 485:8
 486:2
waiting 442:14
 485:12,13,20

walk 421:1,2,7
 422:2,15 430:25
 431:8,16 432:9
 432:21 433:5,25
 434:2,3,5,17
 435:4 441:3
 516:18 531:14
walked 419:22
 421:10,15 433:12
 434:24 440:12
 454:22 455:1
 485:14,15,16,16
 506:2 512:2,4,5,7
 517:1
walking 422:8,22
 440:20 475:23
 476:13 479:8
 512:20,21 516:20
want 403:17 408:6
 408:17 410:1,13
 431:20 432:17
 446:14 457:10
 458:18,21 483:12
 484:1,6,10,15
 496:9 497:16
 512:25 513:21,22
 517:14 522:1
 523:24 526:13
 533:1,20 536:1
 548:19 550:1
wanted 424:2
 430:22 450:12
 460:13,17 462:19
 489:22 517:14
 527:2,3 550:4
wanting 535:13
Warner 410:22,24
 411:5,23 412:7,8
 412:11,16 414:15
 414:19 415:12,15
 415:18,19,23
 416:7,12,15
 422:9 432:23,25
 433:2,14,20,21
 435:1 493:4
 494:22 496:19
 497:9 543:19

 544:2,8
Warner's 422:11
 422:12
Warren 447:7
wasn't 426:7
 439:14 446:11
 468:19 474:13
 479:7 528:21
 535:7 536:6
 547:19
watch 496:23
watchful 496:23
watching 512:20
water 496:9
Watkins 414:21
 415:2,3,22 416:2
Watson 412:4,6,6
 412:9
way 429:5,5,6
 430:5,11,11,13
 434:11 439:20,23
 452:21 453:4,19
 455:21 458:16
 465:11 471:13
 472:16 485:1
 488:24 497:19
 515:15 541:11,14
Wednesday 401:22
 402:16 523:19
week 462:20
 499:23 500:20
 508:19
Weeks 418:17
 436:18,19 473:17
 474:12,14,20,22
wench 499:16
wenches 500:16,17
went 404:4 405:19
 411:20 416:7
 440:18 448:9
 453:11 459:6
 462:9,12 463:10
 463:19 465:1,11
 465:13 468:20
 473:14 474:16
 484:22 485:1
 487:6 488:25

 493:3,15 494:19
 496:15 498:10,14
 498:15 511:14
 513:7,11 514:6
 514:11 515:1,13
 531:10,11 535:21
 549:3
weren't 416:9
 420:9 423:16
 438:9 460:3
 466:18 477:25
 529:7 532:5
 534:10 535:6,8
 536:10,14 541:13
 549:19
west 425:6 428:9,9
we'll 500:4 522:4,5
we're 402:24
 417:10 550:19
we've 484:11
 523:18 526:1
whatsoever 551:16
window 411:21
 421:16 434:7
 465:15,16 466:7
 530:8
windows 421:16
 421:17
witness 402:19
 408:21 448:5
 458:1,11,15
 459:25 460:2
 464:7 492:21
 494:15,15 552:12
wondering 493:7
word 429:18 506:7
 506:8
words 507:9
work 410:17
 414:19,20,22
 415:13 418:9
 419:12 440:15
 441:12 462:20,25
 463:14 483:18
 484:3,4,12,19
 489:9,10 491:4
 491:16 492:14,16

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.
7/11/2008
DEPOSITION OF BERNETHIA JOHNSON
Page 18

493:9 497:1,4
499:12,13,25
501:18,19 503:11
507:3 508:17,18
509:2,5 511:18
511:19,25 512:1
512:12,15,17,18
514:7 515:1,4
517:8,9,13,15,16
517:17,18,20,20
518:6,9,16,21,22
518:25 519:6,7
519:10,14 521:21
523:8,20 524:2,3
525:5,17 526:2,4
526:17 527:1
531:25 532:16,17
533:11,15 534:2
537:2 539:14
543:8,9 545:8
548:12
**workdays** 466:23
**worked** 412:13
498:8 503:17,25
510:19 514:19
524:24 525:1
538:3,5,5,18
**working** 415:5
437:6 490:6,14
492:24 496:15
517:13,25 518:23
518:25
**workload** 511:24
**workplace** 409:21
537:7
**work-related**
460:8,10,18
462:23 463:13,21
463:24 464:2
**wouldn't** 445:1,23
458:10 466:24
518:9 544:13,23
**wrap** 522:5 546:8
**write** 532:24
**writes** 405:8
**writing** 508:22,22
509:24

**wrong** 440:5
449:20 457:23
**wrote** 410:14
411:15 414:4
425:1 443:23
446:23 469:23
470:5,23 471:3
500:13,24,24
507:24

--- X ---
**xerox** 500:5

--- Y ---
**yeah** 422:10
430:22 436:2,2
454:13 473:18
488:11,18 490:22
499:20,21 506:1
506:5 526:22
535:7 536:6
541:7 549:7
**year** 439:16 473:21
490:4 538:1
**years** 428:14
429:16 430:17
504:21
**yesterday** 402:25
403:18,24 404:8
408:9 409:6,25
463:4 472:17
526:9,9
**you-all** 404:12

--- $ ---
**$150** 441:25

--- # ---
**#16** 548:1
**#26** 403:19,20,24
404:21 406:4,8
406:17,19 407:5
407:8,15
**#26A** 404:6,19
405:7,17 406:10
406:17,19,20
407:16

**#30** 408:13
**#31** 408:7,12,18
409:20 416:23,24
436:23 448:3
456:9 464:6,9
475:14 483:13
523:17 525:16
532:15 545:7
546:5
**#46** 410:2,3,8
411:15 414:3
**#54** 424:16,23
428:5
**#55** 441:19
**#56** 443:13,16,18
444:7 446:22
**#57** 468:3,5,10
470:1,3,5,24
471:9,20 472:6
475:7
**#58** 482:7,8
**#59** 500:8
**#9** 483:12 523:17
525:16 532:15
545:7 546:5

--- 0 ---
**03** 502:11
**0375** 502:11
**09/30/08** 552:22

--- 1 ---
**10th** 409:22
**10:12** 522:9
**10:59** 551:21
**11** 401:23 522:9
552:6
**13** 462:7
**13th** 462:6,6
**131** 401:20 402:9
**14** 407:9 526:23
**15** 523:23 526:21
526:23
**15th** 464:12,25
**157** 552:10
**16** 408:18,22 409:1
**16th** 409:22

**19** 409:19,20,20
410:4
**1991** 439:10,11
440:5 442:5,5
**1999** 507:5,13

--- 2 ---
**2nd** 475:15
**2/24/09** 552:23
**2:06-CV-397-W...**
401:7
**2:07** 402:17
**2:07-CV-59-WK...**
401:7
**20** 416:23 417:2
**2000** 538:6 542:15
548:7,24,24
**2001** 439:17 440:7
504:19 505:12,13
509:10 548:24
**2002** 503:22
504:19 505:12,13
509:10 513:3
542:16
**2003** 500:20
502:15 503:21
511:5 513:4
519:24 538:6
541:17 542:16
**2004** 407:10 409:2
409:22 410:15,20
411:6,7,11,12,16
411:16 414:4
462:10,25 494:6
499:2 511:5
517:25 541:17
**2005** 417:11 428:6
428:7 435:8
449:7 456:10
457:3 462:1,7,10
463:7 464:12,25
475:15 494:6
499:2 503:21,22
513:4 519:24
535:16 538:7,10
538:19 548:7
**2007** 538:2,7,7

**2008** 401:22,23,23
402:16 522:9
552:6,17
**23** 436:17,22,23
437:16 438:11,16
**23rd** 443:25
**24** 438:22,24
447:18
**25** 448:2,6,17,19
451:10
**26th** 500:20
**27th** 435:8
**28** 456:9 457:15,21
463:18
**28th** 424:24 425:11
**29th** 428:6,7

--- 3 ---
**3** 538:6
**3rd** 456:10 457:3
462:1,4 463:7
538:10,19
**30** 538:7
**30th** 500:20 537:23
538:1 552:17
**30303** 402:13
**318** 402:4
**36104** 402:5,9
**37** 464:4,8
**39** 464:5,8

--- 4 ---
**4th** 449:7
**4:57** 522:7
**443** 552:22
**45** 475:13
**46** 481:22

--- 5 ---
**5th** 409:2
**551** 552:10

--- 6 ---
**6** 448:9,11
**61** 402:12

--- 7 ---

BERNETHIA JOHNSON v. MICHAEL J. ASTRUE, ET AL.                          7/11/2008
DEPOSITION OF BERNETHIA JOHNSON

**7** 448:11
**7th** 417:11

---

**8**

**8** 401:22 448:9
552:6
**8th** 410:15 411:7
411:15 414:4

---

**9**

**9** 401:23 402:16
523:22 526:16,21
552:6
**9:16** 401:21
**9:30** 529:22
**91** 439:14

RECEIVED

2000 JUL 30  P 1: 38

U.S. ATTORNEY
MIDDLE ALABAMA