# EXHIBITS 1-14
# OF PLAINTIFF'S DEPOSITION

DX1

Acknowledgment Statement

1. Name _Bernethia Johnson_

2. Position _Legal Assistant_

This is to acknowledge that I have read and understand the attached document entitled revision to *Sanctions for Unauthorized System Access Violations*. I understand that the sanctions identified in the statement will be imposed for violations, including those sanctions stated for the first offense.

_____     _____
Employee's Signature                           Date

_Paul Johnson_                                    _10/21/03_
Manager's Signature                             Date

The original of this document will be placed in your SF 7-B Extension File.

I have reviewed these documents
with Bernethia Johnson, and she has
informed me that she will not sign
the acknowledgment statement.

_Paul Johnson_   10/21/03
_BJH_ 10·21·03

* GAVE Copy of Sanctions
http://eis.ba.ssa.gov/olmer/sanctions/acknowledgment_statement.htm

Exhi...
Pag...


DEFENDANT'S EXHIBIT
# 1

Revisions to Sanctions for Unauthorized Systems Access Violations

MEMORANDUM

Date: March 2, 2000 Refer To: S7C

To: All SSA Employees

From: Deputy Commissioner

for Human Resources

Subject: Revisions to *Sanctions for Unauthorized Systems Access Violations*–
INFORMATION

In June 1998, the Social Security Administration (SSA) established a uniform set of
*Sanctions for Unauthorized Systems Access Violations* to secure the integrity and privacy of
the personal information contained in SSA's computer systems and to ensure that any
violations of the confidentiality of our computer records are treated consistently. The
American public expects that the trust they place in our Agency to deliver high quality
service and to maintain the responsible stewardship of our programs is coupled with the
highest standards of protection of their most private and personal information. The
sanctions policy was designed to reassure the public of our commitment to that trust.

After the implementation of the sanctions policy, a number of concerns about Category II of
the sanctions policy were raised. Category II is defined as the unauthorized access of a
record with disclosure to an unauthorized source that does not involve personal or
monetary gain and was not made with malicious intent. The reservations raised about
Category II involved the fact that Category II did not distinguish between disclosure of data
to a person who was otherwise entitled to the information and the more serious violation of
disclosure of information to a person who was not entitled to the information.

The Commissioner listened to those legitimate concerns and has decided to revise
Category II to acknowledge the difference between the two actions. Category II has been
redefined to create two subcategories. The effect of these new subcategories is to reduce
the minimum penalty for violations in which the employee improperly accesses a record and
discloses information from that record to a person who is otherwise entitled to that
information.

In the revised *Sanctions* (attached), we also made some other changes to clarify the
language in all the categories. While these additional changes do not change the intent of
the *Sanctions*, we believe that the revised language will make it easier for all employees to
understand and follow the *Sanctions* and ensure the privacy and integrity of our records.

In addition, in August 1999 we sent out Additional Guidance for Employees on How to
Transact Social Security Business That Requires Systems Access. The guidance in that
document is current and employees should review that document carefully whenever they
have a question about conducting Social Security business. Whenever there is a doubt
about a specific situation, a member of management should be consulted before taking any
action. Many of the violations that have taken place since June 1998 could have been
avoided if management guidance and assistance had been requested.

Exhibit

Page ___1___ of ___31___

9/4/01

/s/

Paul D. Barnes

Attachment:

Revised *Sanctions for Unauthorized Systems Access Violations*

## SANCTIONS FOR
## UNAUTHORIZED SYSTEM ACCESS VIOLATIONS

The Privacy Act of 1974, the Computer Fraud and Abuse Act of 1986, the Computer Security Act of 1987, the Office of Management and Budget (OMB) Circulars A-123, A-127 and A-130, Appendix III, plus many other laws, guidelines and memorandums provide a body of regulations requiring the proper security of all Automated Information System (AIS) resources, including data.

The Privacy Act of 1974 provides guidance in the protection of personal information maintained in Government records. The act describes what degree of protection is to be provided and prescribes sanctions and penalties for violations.

The Computer Fraud and Abuse Act of 1986 defines the willful attempt to gain unauthorized access to or misuse of information stored in Government controlled computer resources and lists appropriate penalties for violations.

The Computer Security Act of 1987 establishes minimum acceptable security practices for providing the protection of sensitive information in Federal computer systems.

The Taxpayer Browsing Protection Act of 1997 provides a criminal misdemeanor penalty for the willful, unauthorized access or inspection of Federal tax return information. The Act also required that any Federal employee who is convicted under the Act be discharged from employment.

OMB Circular A-123 requires agencies to provide and maintain internal controls on all Government programs and administrative activities.

OMB Circular A-127 prescribes policies and procedures to be followed in developing, operating and maintaining Government financial systems.

OMB Circular A-130, Appendix III, describes a minimum set of controls to be applied to all Federal AIS.

POMS, Part 02, Chapter 33 (GN 03300.000) provides a summary of the statutes, regulations and SSA instructions regarding the disclosure and privacy of SSA records.

At the Social Security Administration (SSA), the most important resource entrusted to us by the public is the information we maintain. To ensure the integrity of that information, a set of

Pag  *1 of 31*

Revisions to Sanctions for Unauthorized Systems Access Violations

sanctions was prepared to inform employees and managers of the importance of maintaining the security of the information maintained in SSA computer systems records and to inform them of the consequences for various types of systems security violations.

Below are descriptions of the three major categories of systems security violations and required administrative actions for offenses.

### Category I – Unauthorized Access Without Disclosure

Where the employee improperly accesses a record that contains sensitive or protected information or obtains information not related to the employee's official duties, but does not disclose the information. Improper access occurs based on the employee's relationship with the requestor or because it is unrelated to the employee's official duties. For example, access is improper when the employee knowingly accesses information about himself/herself or about a relative, a friend or co-worker of the employee or a friend or relative of a co-worker. Access is also improper when it is for a purpose unrelated to official duties, such as "browsing" the records of a celebrity or another member of the public. The sanctions are:

**First Offense** - Minimum 2-day suspension

**Second Offense** - Minimum 14-day suspension

**Third Offense** - Removal

### Category II – Unauthorized Access with Disclosure

Where the employee improperly accesses a record, with a purpose other than personal or monetary gain or malicious intent, and discloses the information to anyone. Access may be improper based on the employee's relationship to the requestor or because it is unrelated to the employee's official duties. Some examples include verification or disclosure of information to relatives or friends, the generation of address lists for school reunions, or otherwise disclosing information concerning relatives, friends, co-workers, celebrities or someone with whom the employee does not have a relationship.

There are two types of Category II violations, depending on whether or not the disclosure is to an individual entitled to the information.

### Category IIA – where an employee improperly accesses a record and discloses information to a person who is entitled to receive that information.

The sanctions are:

First Offense – Minimum 2-day suspension

Second Offense – Minimum 14-day suspension

Third Offense – Removal

Exhibit 15
Page 4 of 31

http://sis.ba.ssa.gov/olmer/sanctions/sanctions.rev.pb.htm

Revisions to Sanctions for Unauthorized Systems Access Violations

**Category IIB** – where an employee **improperly accesses** a record and **discloses the** information to a person who is **not entitled** to receive that information.

The sanctions are:

> First Offense – Minimum 14-day suspension

> Second Offense – Removal

**Category III – Unauthorized Access for Personal Gain (including, but not limited to monetary gain) or with Malicious Intent**

Where the employee accesses, obtains, modifies or destroys information: (1) for the purpose of selling, disclosing or using the information for personal gain to himself or another; (2) with the intent of harming another or using the information in such a manner that harming another is a reasonably foreseeable consequence; (3) for the purpose of defrauding any SSA program or any other institution or individual; or (4) for any other purpose that results in material harm to another.

This category includes situations where there has been demonstrated or potential harm to the Government, a member of the public or an account holder, even if the employee involved did not personally profit from the incident. The sanction for this category is:

**First Offense** - Removal

While not intended to be an all inclusive list of employee abuses and possible administrative actions, this document is intended to advise employees of the various types of abuses most often encountered and the consequences for engaging in such abuse. This is not to preclude the possibility of further investigation and possible criminal prosecution in any of these categories or cases.

It should be pointed out that the categories and actions listed are not "sequential" in their application; i.e., it is not necessary to take action at the Category I level prior to development of a case at the Category II or III level if circumstances warrant.

These sanctions are not intended to change the access requirements of any particular computer system. Each system may have its own rules about what constitutes appropriate access. For example, on a system such as FPPS or MTAS, access to a co-worker's record may be authorized and necessary. Certain personnel systems may allow an employee to access his or her own record under some circumstances. Any access authorized by a particular system of records would not be considered unauthorized access.

Exhibit __15__
Page __20__ of __31__

DX2

## SANCTIONS FOR
## UNAUTHORIZED SYSTEM ACCESS VIOLATIONS

The Privacy Act of 1974, the Computer Fraud and Abuse Act of 1986, the Computer Security Act of 1987, the Office of Management and Budget (OMB) Circulars A-123, A-127 and A-130, Appendix III, plus many other laws, guidelines and memorandums provide a body of regulations requiring the proper security of all Automated Information System (AIS) resources, including data.

The Privacy Act of 1974 provides guidance in the protection of personal information maintained in Government records. The act describes what degree of protection is to be provided and prescribes sanctions and penalties for violations.

The Computer Fraud and Abuse Act of 1986 defines the willful attempt to gain unauthorized access to or misuse of information stored in Government controlled computer resources and lists appropriate penalties for violations.

The Computer Security Act of 1987 establishes minimum acceptable security practices for providing the protection of sensitive information in Federal computer systems.

The Taxpayer Browsing Protection Act of 1997 provides a criminal misdemeanor penalty for the willful, unauthorized access or inspection of Federal tax return information. The Act also required that any Federal employee who is convicted under the Act be discharged from employment.

OMB Circular A-123 requires agencies to provide and maintain internal controls on all Government programs and administrative activities.

OMB Circular A-127 prescribes policies and procedures to be followed in developing, operating and maintaining Government financial systems.

OMB Circular A-130, Appendix III, describes a minimum set of controls to be applied to all Federal AIS. POMS, Part 02, Chapter 33 (GN 03300.000) provides a summary of the statutes, regulations and SSA instructions regarding the disclosure and privacy of SSA records.

At the Social Security Administration (SSA), the most important resource entrusted to us by the public is the information we maintain. To ensure the integrity of that information, a set of sanctions was prepared to inform employees and managers of the importance of maintaining the security of the information maintained in SSA computer systems records and to inform them of the consequences for various types of systems security violations.

Below are descriptions of the three major categories of systems security violations and required administrative actions for offenses.



Exhib...

Page...

**Category I – Unauthorized Access Without Disclosure**

Where the employee improperly accesses a record that contains sensitive or protected information or obtains information not related to the employee's official duties, but does not disclose the information. Improper access occurs based on the employee's relationship with the requestor or because it is unrelated to the employee's official duties. For example, access is improper when the employee knowingly accesses information about himself/herself or about a relative, a friend or co-worker of the employee or a friend or relative of a co-worker. Access is also improper when it is for a purpose unrelated to official duties, such as "browsing" the records of a celebrity or another member of the public. The sanctions are:

**First Offense** - Minimum 2-day suspension

**Second Offense** - Minimum 14-day suspension

**Third Offense** - Removal

**Category II – Unauthorized Access with Disclosure**

Where the employee improperly accesses a record, with a purpose other than personal or monetary gain or malicious intent, and **discloses the information to anyone**. Access may be improper based on the employee's relationship to the requestor or because it is unrelated to the employee's official duties. Some examples include verification or disclosure of information to relatives or friends, the generation of address lists for school reunions, or otherwise disclosing information concerning relatives, friends, co-workers, celebrities or someone with whom the employee does not have a relationship.

There are two types of Category II violations, depending on whether or not the disclosure is to an individual entitled to the information.

**Category IIA** – where an employee **improperly accesses** a record and **discloses** information to a person who is **entitled** to receive that information.

The sanctions are:

**First Offense** - Minimum 2-day suspension

**Second Offense** - Minimum 14-day suspension

**Third Offense** - Removal

**Category IIB** – where an employee **improperly accesses** a record and **discloses** the information to a person who is **not entitled** to receive that information.

The sanctions are:

**First Offense** – Minimum 14-day suspension

**Second Offense** – Removal

Exhibit _15_
Page _12_ of _31_

**Category III – Unauthorized Access for Personal Gain (Including, but not limited to monetary gain) or with Malicious Intent**

Where the employee accesses, obtains, modifies or destroys information: (1) for the purpose of selling, disclosing or using the information for personal gain to himself or another; (2) with the intent of harming another or using the information in such a manner that harming another is a reasonably foreseeable consequence; (3) for the purpose of defrauding any SSA program or any other institution or individual; or (4) for any other purpose that results in material harm to another.

This category includes situations where there has been demonstrated or potential harm to the Government, a member of the public or an account holder, even if the employee involved did not personally profit from the incident. The sanction for this category is:

### First Offense – Removal

While not intended to be an all inclusive list of employee abuses and possible administrative actions, this document is intended to advise employees of the various types of abuses most often encountered and the consequences for engaging in such abuse. This is not to preclude the possibility of further investigation and possible criminal prosecution in any of these categories or cases.

It should be pointed out that the categories and actions listed are not "sequential" in their application; i.e., it is not necessary to take action at the Category I level prior to development of a case at the Category II or III level if circumstances warrant.

These sanctions are not intended to change the access requirements of any particular computer system. Each system may have its own rules about what constitutes appropriate access. For example, on a system such as FPPS or MTAS, access to a co-worker's record may be authorized and necessary. Certain personnel systems may allow an employee to access his or her own record under some circumstances. Any access authorized by a particular system of records would not be considered unauthorized access.

Exhibit _15_
Page _11_ of _31_

**Acknowledgment Statement**

1. Name _Bernethia Johnson_

2. Position _Legal Assistant_

This is to acknowledge that I have read and understand the attached document entitled revision to *Sanctions for Unauthorized System Access Violations.* I understand that the sanctions identified in the statement will be imposed for violations, including those sanctions stated for the first offense.

_____
Employee's Signature        Date

_Cynthia Sermon_  10/29/04
Manager's Signature        Date

The original of this document will be placed in your SF 7-B Extension File.

I have reviewed these documents
with Bernethia Johnson, and she
has informed me that she will
not sign the acknowledgment
statement

10/29/04  _Cynthia Sermon_

* gave copies of sanctions to Bernethia

Exhibit _15_
Page _14_ of _21_

DX3

# Application for Federal Employment—SF 171

Read the instructions before you complete this application. Type or print clearly in dark ...

**DEFENDANT'S EXHIBIT #3**

## GENERAL INFORMATION

**1** What kind of job are you applying for? Give title and announcement no. (if any)

Clerk Typist

**2** Social Security Number

**3** Sex — Male  [X] Female

**4** Birth date (Month, Day, Year)

**5** Birthplace (City and State or Country)
Knoxville, TN

**6** Name (Last, First, Middle)
Johnson, Bernethia

Mailing address include apartment number if any)

City                State    ZIP Code

**7** Other names ever used (e.g., maiden name, nickname, etc.)
Thompkins

**8** Home Phone   Area Code   Number

**9** Work Phone   Area Code   Number   Extension
205   416   4641

**10** Were you ... civilian by the Federal Government? If "NO", go to Item 11. If "YES", mark each type of job you held with an "X".

[ ] Temporary   [ ] Career-Conditional   [X] Career   [ ] Excepted

What is your highest grade, classification series and job title?
GS-1102-07

Dates at highest grade: FROM 5 Nov 89 TO 20 Oct 90

## AVAILABILITY

**11** When can you start work? (Month and Year)
Immediately

**12** What is the lowest pay you will accept? (You will not be considered for jobs which pay less than you indicate.)
Pay $ _____ per _____ OR Grade 02

**13** In what geographic area(s) are you willing to work?
Alabama

**14** Are you willing to work:

| | YES | NO |
|---|---|---|
| A. 40 hours per week (full-time)? | X | |
| B. 25-32 hours per week (part-time)? | X | |
| C. 17-24 hours per week (part-time)? | X | |
| D. 16 or fewer hours per week (part-time)? | X | |
| E. An intermittent job (on-call/seasonal)? | X | |
| F. Weekends, shifts, or rotating shifts? | X | |

**15** Are you willing to take a temporary job lasting:

| | YES | NO |
|---|---|---|
| A. 5 to 12 months (sometimes longer)? | X | |
| B. 1 to 4 months? | X | |
| C. Less than 1 month? | | X |

**16** Are you willing to travel away from home for:

| | YES | NO |
|---|---|---|
| A. 1 to 5 nights each month? | X | |
| B. 6 to 10 nights each month? | | X |
| C. 11 or more nights each month? | | X |

## MILITARY SERVICE AND VETERAN PREFERENCE

**17** Have you served in the United States Military Service? If your only active duty was training in the Reserves or National Guard, answer "NO". If "NO" go to item 22.   YES [ ]  NO [X]

**18** Did you or will you retire at or above the rank of major or lieutenant commander?   YES [ ]  NO [X]

THE FEDERAL GOVERNMENT IS AN EQUAL OPPORTUNITY EMPLOYER
PREVIOUS EDITION USABLE UNTIL 12-31-90

Page 1

### FOR USE OF EXAMINING OFFICE ONLY

Date entered register _____  Form reviewed: _____  Form approved: _____

| Option | Grade | Earned Rating | Veteran Preference | Augmented Rating |
|---|---|---|---|---|
| | | | [ ] No Preference Claimed | |
| | | | [ ] 5 Points | |
| | | | [ ] 10 Pts. (30% Or More Comp. Dis.) | |
| | | | [ ] 10 Pts Less Than 30% Comp Dis) | |
| | | | [ ] Other 10 Points | |

Initials and Date   2-24-91
Chief ... [ ] Disallowed  [ ] Being Investigated

### FOR USE OF APPOINTING OFFICE ONLY

Preference has been verified through proof that the separation was under honorable conditions, and other proof as required.

[X] 5-Point  [ ] 10-Point-30% or More Compensable Disability  [ ] 10-Point-Less Than 30% Compensable Disability  [ ] 10-Point-Other

Signature and Title
Cheryl Snellgrove
CHERYL R. SNELLGROVE, PERSONNEL ASST.

Agency Regional Office
Personnel Division (25)
474 South Court Street
Montgomery, AL 36104

8-24-92

### MILITARY SERVICE AND VETERAN PREFERENCE (Cont)

**19** Were you discharged from the military service under honorable conditions? (If your discharge was changed to "honorable" or "general" by a Discharge Review Board, answer "YES". If you received a clemency discharge, answer "NO".) If "NO", provide below the date and type of discharge you received.   YES [ ]  NO [X]

Discharge Date (Month, Day, Year)   Type of Discharge
June 17, 80   Honorable

**20** List the dates (Month, Day, Year), and branch for all active duty military service.

| From | To | Branch of Service |
|---|---|---|
| 15 Feb 74 | 17 Jun 80 | U.S. Army |

**21** If all your active military duty was after October 14, 1976, list the full names and dates of all campaign badges or expeditionary medals you received or were entitled to receive.

**22** Read the instructions that came with this form before completing this item. When you have determined your eligibility for veteran preference from the instructions, place an "X" in the box next to your veteran preference claim.

[ ] NO PREFERENCE
[X] 5-POINT PREFERENCE -- You must show proof when you are hired.
[ ] 10-POINT PREFERENCE -- If you claim 10-point preference, place an "X" in the box below next to the basis for your claim. To receive 10-point preference you must also complete a Standard Form 15, Application for 10-Point Veteran Preference, which is available from any Federal Job Information Center. ATTACH THE COMPLETED SF 15 AND REQUESTED PROOF TO THIS APPLICATION.

[ ] Non-compensably disabled or Purple Heart recipient.
[ ] Compensably disabled, less than 30 percent.
[ ] Spouse, widow(er), or mother of a deceased or disabled veteran.
[ ] Compensably disabled, 30 percent or more.

NSN 7540-00-935-7150   171-110   Standard Form 171 Rev. 6-88
U.S. Office of Personnel Management
FPM Chapter 295

| Gunter Printing Plant c/o Defense Pr Gunter AFB, AL | Services | | Salary or earn Beginning $20,00        per Ending  $               per | Place of employment City  Montgomery State  AL |
|---|---|---|---|---|
| Exact title of your position Supervisory Supply Clerk | Name of immediate supervisor Ms. Brooks | Area Code 205 | Telephone number 416-4016 | Number and kind of employees you supervised  1 |
| Kind of business or organization (manufacturing, accounting, social services, etc.) Federal Government | If Federal service, civilian or military, series, grade or rank, and date of last promotion  GS-2005-05 | | | Your reason for leaving To care for family. |

Description of work (Describe your specific duties, responsibilities and accomplishments in this job)

As Supervisory Supply Clerk, I ensure the daily flow of the material requirements for the Field Pringing Plant operation. This includes determining, distributing and storing supplies and authorizing procurement. I plan and establishes general work flow, methods, and schedules of the Supply Section. I plan for and determine current cost of plant supply needs. I review GSA contracts, commercial catalogs, and special contracts covering such services as electrical motor maintenance of printing equipment, ,procurement of printing inks, papers, and other lithographics items. I coordinate Supply Section operations with other internal sections and base organizations in determining supply requirements.

I make certain that sufficient quantities are available to meet established needs. I plan, coordinates, and directs the distribution of material from sources to storage, arrangement, and protection of supplies. I direct the receipt and inspection of supplies the inspection of contractual services rendered. I inspects printing supplies for lithographic specifications as outlined in applicable contracts. I initiates receiving reports. I certifies as to satisfactory or unsatisfactory services rendered under contractual maintenance.

I directs the issuing of expendable supplies to eleven operating functions within the printing pland and two duplicating centers. I ensures the strict quantitative and monetary accounting of supplies procured, stored, and issued; and monetary accounting of services.

I recommends procurement of supplies by indicating types of items, quantities, and sources. I review and analyzes supply data to determine market conditions so as to maintain adequate support on a timely basis. I determine problems areas and pinpoints causes of material deficiencies based on material requirements, deviations, unfaborable market conditions, frequent price changes, or changing economic conditions to select the est method of procurement. I initiate action for the procurement of expendable supplies and services from commercial sources, GSA, and AF depots under the Air Force Stock Fund.

I exercise budget and fiscal control over the organizaton's distribution and storage program. I manage material with fund authorizations. I advise on overall financial/management control programs for supply operations such as planning, budgeting, and evaluating supply management performance.

I oversee the recovery and periodic turn-in of approximately $10,000 in scrap silver, film, paper, and other precious metals that are generated from Gunter AFB and parts of Maxwell AFB activities for disposal in the best interest of the Department of Defense.

SUPERVISOR: I supervise one Supply Clerk, GS-04 (vacant), and one Material Handler, WG-06. I assign and receive work. I reassign duties as necessary due to changes in workload. I resolve personnel problems.

| Squadron Officer School<br>Maxwell AFB, AL 3  2 | | From 3‹3‹91  To 4‹28‹91 | | 40 |
| --- | --- | --- | --- | --- |
| | | Salary or earnings<br>Beginning $17,800      er<br>Ending    $         per | | Place of employment<br>City Montgomery<br>State AL |
| Exact title of your position<br>Secretary | Name of immediate supervisor<br>Major Humphrey | Area Code<br>205 | Telephone number<br>953‹5844 | Number and kind of employees you super-<br>vised    None |
| Kind of business or organization (manufacturing,<br>accounting, social services, etc )<br>Federal Government | If Federal service, civilian or military series, grade or rank, and date of<br>last promotion<br>GS0318‹04, 4 Mar 91 | | | Your reason for leaving<br>Promoted |
| Description of work (Describe your specific duties, responsibilities and accomplishments in this job) | | | | |

I operated electronic equipment, ie., computer terminal, typewriter, and word processin
I typed from rough drafts, cut and pastes, and oral instructions. I finalized corres
pondence and reports using a variety of formats. I used judgement as to the propriety
form, arrangement, spacing and other administrative requirements based on the nature of
subject matter being typed and it intend use. I ensured accuracy of prepared material
respect to spelling, syllabification, or similar matters. I searched records, files, a
administrative aids to obtain data for inclusion.

I established and maintained office files and leave records for two student squadrons t
include temporary files covering up to 1,200 students per year. I developed annual fil
plan and established new files.

I provided quality control over a multi‹step process, to ensure information is accurate
correctly documented on AF Form 4375, Education/Training Report, which become a permane
part of the officer military records for up to 200 officers each class. I
organizedmaterial such as training reports, letters of excellence, and distinguished ·
graduate letters fro work processing center typing.

I received visitors and telephone calls for the faculty and student. I determined busi
of visitor of nature of call and took appropriate action. I coordinated student and
faculty appointments.

I picked‹up incoming correspondence, publications, regulations, and directives affectin
the student squadrons. I determined the office primary responsibility and took appropri
action. I established and maintained an office read file for faculty members. I
maintained the squadron publications and suspense file. ·

| Directorate of Contract¹ Bldg 08 Fort Stewart, GA 31314 | From Oct 88 To 90 40 | | |
|---|---|---|---|
| | Salary or earnings Beginning $ 17,638 per year Ending $ 20,848 | | Place of employment City Fort Stewart State GA |
| Exact title of your position Contract Specialist | Name of immediate supervisor Mr. Micheal Parker | Area Code 912 Telephone number 767-2964 | Number and kind of employees you supervised 0 |
| Kind of business or organization (manufacturing, accounting, social services, etc.) Federal Government | If Federal service, civilian or military, series, grade or rank, and date of last promotion GS-1102-07, Nov 89 | | Your reason for leaving Family Hardship |

Description of work (Describe your specific duties, responsibilities and accomplishments in this job)

I analyzed requirements for proper authorization and funding. I provided contractual guidance to customers to assure adequacy of the purchase description. I evaluated price data on the basis of comparative prices, standard price lists, or previous price. I summarized, analyzed, and evaluated data to prepare documentation and justification. Through informal open-market procedures and in strict compliance with Federal Government regulations i.e., Federal Acquisition Regulation (FAR), and Defense Federal Acquisition Regulation (DFAR), I purchased technical and non-technical supplies and services from Government and commercial sources. I performed market research via bidders mailing list, commercial business directory, mandated Government sources, and other catalogs. I solicited vendors and used other means available to procure supplies and services and/or insured the government received a fair and reasonable price on items procured. I performed price negotiation. I awarded large and small supplies and services firm-fixed-price contracts via Standard Army Automated Contract System (SAACONS). I used the SAACONS tracking system to develope, maintain, and generate contractual documents and forms. I revised, rewrote, and/or composed specifications that were ambiguous. I incorporated applicable clauses and special provisions.

I briefed Ordering Officers and Other Authorized Individuals with procedures to follow when using Simplified Small Purchasing methods. I provided advice and guidance to subordinate activities concerning a variety of procurement issues. I performed Contract Surveillance (on-site and desk audit) for approximately 315 authorized individuals located throughout the states of Georgia and Florida. I examined work for accuracy and adequacy of documentation compliance with regulations, justification of vouchers, invoices, claims, and other requests for payment for goods and services provided to the Government were appropriate and to insure purchases were supported by a valid request, purchases were not split to avoid monetary limitations, monthly reports were accurate and timely submitted, purchases were equitably distributed amohng qualified and interested suppliers, no after-the-fact purchases were made, local purchase authority and fund availability assured prior to making purchases, audit trail were established, proces determined were fair and reasonable, and that individuals were operating within the scope and limitations of authority. I interpreted procurement regulations such as Army Federal Acquisiton Regulation (AFAR), Federal Acquisiton Regulation (FAR), Defense Federal Acquisition Regulation (DFAR), Army Regulation 5-9, and Fort Stewart Regulation 715-1 for various type of delegated authority and regulatory guidance. I used Database III to maintain information concerning ordering officers.

I handled ratification for 24th Infantry Division and organizations receiving intraservice support by Fort Stewart. I resolved disputes and other problems concerning unauthorized obligations by the Government or the contractor via ratification or the Dispute Contract Act. I managed a program designed to minimize the occurrenced of unauthorized commitments.

I enjoyed working in the contracting field and performed the tasks with minimum supervision; and I consulted the supervisor only in unusual situations.

| BASE CONTRACTING OFFICE<br>ROBBINS AFB, GA 300 - 0 | | From 04-85 | to 08-85 | 40 |
|---|---|---|---|---|
| | | Salary or earnings<br>Beginning $ 14,578   per year<br>Ending $ 14,578   per " | | Place of employment City MARIETTA,<br>State GA |
| Exact title of your position<br>PROCUREMENT CLERK | Name of immediate supervisor<br>MR. COBB | Area Code  Telephone number | | Number and kind of employees you supervised<br>NONE |
| Kind of business or organization (manufacturing accounting social services etc.)<br>FEDERAL GOVERNMENT | If Federal service civilian or military series grade or rank and date of last promotion<br>GS-04 | | | Your reason for leaving<br>HUSBAND WAS REASSIGNED |
| Description of work (Describe your specific duties responsibilities and accomplishments in this job) | | | | |

I prepared and processed procurement and contracting documents ranging from routine lev of difficulty to complex level of difficulty such as Request for Proposal or Quotation, purchase orders, contracts, reports of sales, supplemental agreements, change orders, bonds deposit and transfer of funds, notices to proceed, vouchers, collection billings, etc. I determined standard clause to be used on orders by the content of the order. Fo example, delivery orders containing an estimated transportation charge, I annotated the transportation charge clause. Orders containing a not to exceed amount, I annotated th not to exceed clause. I distributed documents.

I maintained records and logs which consist of six ledgers and two files. I recorded information pertinent to purchasing and contracting transactions. I discussed controversial subject matter such as duplicate document numbers, the cost accounting data, etc., to personnel directly involved.

I received, reviewed and I logged incoming contract maintenance processing documents. computed maximum repair allowance and I determined amount that can be expended for repair. I notified requestor if maximum repair allowance would be exceeded. I obtaine approval to proceed with requested action or to cancel and return the request. I submitted allowable contract maintenance request documents to the Contracting Maintenan Representative for action by him to arrange for requested services. I maintained statu files on contract maintenance projects in progress and I finalized contract maintenance documents upon completion of required repairs.

I maintained register of expenditures for various types of projects utilizing informati furnished by other branch personnel. I compiled data and I developed information relative to dollar amounts expended by types of expenditures for inclusion in reports such as Monthly Procurement Summary by Purchasing Office, Base Procurement Management Report, and special or one-time reports.

I verbally communicated with a variety of military personnel of various grades, businessmen, prospective buyers, etc., in conveying information relative to the status bidding on requests and in answering questions. I informed prospect on the procedures the Standard Form 129.

I trained myself in the Operation of the A.B. Dick Word Processor. I read, interpreted and applied knowledge gained from the user manuals, reference guides, and through trial and error. I made formats of form such as the SF 30, Amendment/Modification, Dispositi Form, Continuation Sheet, and DD Form 1155. I created logs to process transaction on a 1348-6. I managed diskettes. I diagnosed processing and system failure. I used reference guide to identify messages and codes. I complied to reference guide in solvin problems. I inputted, merged, extracted, edited, purged, corrected, added, and deletec from data base files.

| DEPARTMENT OF THE NAVY GREAT NECK, NY 110 | From 01-84 | To 04-85 | 40 |
|---|---|---|---|

| | Salary or earning | | Place of employment |
|---|---|---|---|
| | Beginning $ 13,8⎵  per | year | City GREAT NECK |
| | Ending $ 13,837  per | " | State NY |

| Exact title of your position PROCUREMENT CLERK | Name of immediate supervisor MS LAUFMAN | Area Code 516 | Telephone number 574-3135 | Number and kind of employees you supervised 2, Procurement Clk. |
|---|---|---|---|---|

| Kind of business or organization (manufacturing, accounting, social services, etc.) FEDERAL GOVERNMENT | II Federal service, civilian or military, series, grade or rank and date of last promotion GS-05, 1106, 01-84 | Your reason for leaving HUSBAND ASSIGNED TO FORT BRAGG, NC |
|---|---|---|

Description of work (Describe your specific duties, responsibilities and accomplishments in this job)

I processed new contracts, price order entry data, Support Administration of Subcontractor, Contract Completion Statement, Industrial Division Physical Completion Notice, Invoices on Contract, Admendment of Solicitatin/Modification of Contract, etc. reviewed and analyzed incoming contractual documents, correspondence, and modification requests to determine accuracy of administrative details. I transmitted shipping instruction. I maintained liaison by telephone with field inspectors, representatives, and DCAS Offices in connection with request for information pertaining to processing of incoming and outgoing orders.

I inputted contractual data into the Contract Management Information System (CMIS) located in the Wange 2200 MVP to develope data for the maintenance of workload statisti for reporting and management purposes. I processed transactions such as Monthly Management Reports of Unpriced Orders, Orders and Changes Report, Monthly Reports of Co of Contracts, a variety of AdP Status Report, listings, and printouts that I distribut throughout the Divisions (Quality Assurance, Industrial Division, Contracting Divison, etc.). I received Contract Completion Statement from performing agency and I routed th to the cognizant NAVPRO personnel. I closed out physically completed and completed contracts through the entry of data into the system and I annotated information to the card and to the folder. I placed file in the closed section. I prepared index record incoming contracts. I prepared correspondence for the assignment of prime contracts to Administration Contracting Officers (ACO's) for delegating authority. I prepared Reque for Support Administration to Department of Defense Contract Administration Services (DCAS) for government transportation, property administration, source inspection, production surveillance, and security was required. I prepared the subcontralct files. I performed followed-up on problems involving monetary obligations and deobligations.

I exercised judgement in selecting regulatory guidance and the use of technical publication as guides in performing various task. I read, interpreted, and applied various regulations i.e., Naval Material, NPD, and NAVSEA, directives, supplementals, etc., to provide the basis for accumulating the data to prepare reports, maintenance of contract data and distribution of contractual data.

I received, assembled, compiled, and prepared manually the Monthly Management Report of Unpriced Orders from raw data furnished by the Contracting Specialist/Officers to determine the status and degree of delinquency by analyzing and reconciling feeder rkeports received. I manually prepared quarterly reports jof Orders and Changes requir by higher headquarters, NAVSEA, Washington, DC in which I researched past ADP printouts I investigated and I took initiative in ratifying problems. I questioned discrepancies reviewed past files, request records, and traced computer generated printouts.

I received and I reviewed invoices submitted for Fixed Daily Rate Contracts covering technical assistance and Field Engineering work. I analyzed and I verified manjhour an labor to determine the appropriate Certificates of Service. I ensured that the Certificates of Service were in agreement with the invoices and that charges were corre pursuant to the contract terms. If discrepancies were noted, I pulled the appropriate file and request backup documents from Sperry Rand Corporation to resolve discrepancies I everytning was correct, I validated the document.

I performed my work with minimum supervision and approached supervisor with unusual problems.

| CONTINUATION SHEET OR D.1 | | From | To | |
|---|---|---|---|---|
| | | Salary or earnings | | Place of employment |
| | | Beginning $ | per | City |
| | | Ending $ | per | State |
| Exact title of your position | Name of immediate supervisor | Area Code | Telephone number | Number and kind of employees you supervised |
| Kind of business or organization (manufacturing, accounting, social services, etc.) | If Federal service, civilian or military series grade or rank and date of last promotion | | | Your reason for leaving |
| Description of work. Describe your specific duties responsibilities and accomplishments in this job | | | | |

I acted as the supervisor, in the absence of the supervisor. I planned, organized, assigned and distributed the workload. I monitored work in progress. I inspected completed work. I answered inquiries. I coordinated administrative activities with other organizational elements and staff sections. I exercised judgement in applying policies to particular cases. I trained one Procurement Clerks in the operation of the Wang Computer that had been labled unable to learn. I executed and retrieve material from the Wang Word Processor. I solved problems among workers. I oversaw the file room. I reviewed the files to insure compliance with Filing regulation of the NAVPRO.. I investigated discrepancies. I talked to appropriate personnel in solving discrepanci

| DIRECTORATE OF INDUSTRIAL ORGANIZATION<br>·FORT KNOX, KY | | From 11-82 | to 05-83 | 40 |
|---|---|---|---|---|
| | | Salary or earni<br>Beginning $ 11,4 | per year | Place of employment<br>City RADCLIFF |
| | | Ending $ | per | State KY |
| Exact title of your position<br>SUPPLY CLERK | Name of immediate supervisor<br>MR. DUNN | Area Code | Telephone number | Number and kind of employees you supervised<br>NONE |
| Kind of business of organization (manufacturing<br>accounting social services etc)<br>FEDERAL GOVERNMENT | If Federal service Civilian or military series grade or rank and date of<br>last promotion<br>GS-04, | | | Your reason for leaving<br>TEMPORARY POSITION<br>HOSPITALIZED |

Description of work Describe your specific duties responsibilities and accomplishments in this job

I operated the Burrough Computer. I performed morning start ups, end of day reports, back ups, and end of month reports. I monitored the system to check for messages and indicators of systems problems. I identified messages and problems. I contacted the computer branch for problems beyond my knowledge. I resolved printer problem by insur that modem was connected properly, and cover was securely closed. The system would become inoperable if there were not ribbon, therefore, I checked the ribbon. I checke to see if anything had fallen into the mechanism that was physically obstructing the carriage movement.

I processed supply documents. I made inventory adjustments on supply items. I ordere items below stockage level. I assigned document numbers to supply documents unable to processed through the use of the Burrough System. I built new files, made daily up dates. I located and assembled information for various reports.

I posted, filed, and up-dated regulations such as CTA 50-900, SB 700-20, and TM 380-41 inserting new updated material and pages into prospective place. I discarded outdated material according to regulation. I filed and update microfilms relative to supply, s as Item Description Data, Federal Supply Classification, Federal Supply Code for Manufacturers, and many more. I used the Army Master Data File to verify information gain more knowledge on the type of tools, equipment and supply items being requested.

I edited computer generated printouts by checking balancing, quantity, nomenclature an unit of issued against records. I questioned discrepancies and traced error documents I processed and I routed the information to appropriate personnel, office, division, etc. I prepared and maintained Record of Demands of Supply by preparing a separate DA Form 2063-R for each type of equipment on hand in Shop Supply for which supply parts w stocked. I combined the Repair parts from these lists on another DA Form 2063-R annotating the word "Consolidated in the upper left corner. I reviewed the Record of Demands for Title inserts and I performed inventories of the Prescribed Load List (PLL stockage level. I adjusted the PLL authorized stockage quantities. I conducted inventories of bench stock item by making periodic checks and reviews of the shop stock supplies and equipments.

I performed technical edit by researching catalogs, manuals, publications, parts list, microfilms, and by other available means.

I established accounting records, posted receipts and turn-ins. I performed due-in an due-out accounting. I computed stockage objectives, reorder points, and requisitioned objectives. I posted inventories and I processed inventory documents. I interpreted supply documents in an automated environment with regard to input and out put processing. I adjusted stock records.

I retrieved and analyzed history and activity files pertinent to system rejected documents. I prepared list of items in short supply. I made recommended additions anc subtraction to authorized stockage list. I processed excess reports.

I located and assembled information for various end of the month reports and printed ou end of the month reports. I made end of the day report and back up.

CONTINUATION SHEET FOR G

| | | From | to | |
|---|---|---|---|---|
| | | Salary or earnings | | Place of employment |
| | | Beginning $ | per | City |
| | | Ending $ | per | State |
| Exact title of your position | Name of immediate supervisor | Area Code | Telephone number | Number and kind of employees you supervised |
| Kind of business or organization (manufacturing accounting, social services, etc.) | If Federal service, civilian or military, series, grade or rank, and date of last promotion | | | Your reason for leaving |

Description of work (Describe your specific duties, responsibilities and accomplishments in this job)

I maintained current published manuals, procedures and DPDS letters pertaining to demilitarization. I briefed supervisor on any changes in policies.

If item being requested was not available, I forwarded a notice of nonavailability to the screener. I processed RID for non-standard items by obtaining and typing descriptive data of items for add-on to JKP/XKP cards. I submitted the information to DPDS. I maintained the RID file to perform follow-up actions.

I received and date stamped all requisitions, sorting into proper categories. I validated requisitions by verification of data and comparison of appropriate DPDS Form, Local Area Screening List, etc. I notified customers through written communication that property was available for release. I maintained a suspense file for requisitions. I initiated follow-up action. I checked individual's authorization to receive property an made certain that the individual registered into the Defense Property Disposal Office, (DPDO). I located requisitions by editing listings such as Disposal Transaction Register, Front End, etc., to insure the accuracy of the information.

UNITED STATES ARMY

| | | | |
|---|---|---|---|
| | Salary or | ge | Place of employment |
| | Beginning $ | per | City N/A |
| | Ending $ | per | State |

| SUPPLY CLERK, SUPPLY SPECIA-LIST, SUPPLY SERGEANT | Name of immediate supervisor N/A | Area Code | Telephone number | Number and kind of employees you supervised VARIED |
|---|---|---|---|---|
| Kind of business or organization (manufacturing accounting social services etc) FEDERAL GOVERNMNET | If Federal service civilian or military series grade or rank and date of last promotion SGT, E-5 | | | Your reason for leaving END OF TERM |

Description of work - Describe your specific duties responsibilities and accomplishments in this job

I maintained property book accounting for installation and organization property li in the Modified Table of Organization and Equipment, Table of Distribution and Allo and Joint Table of Allowances, Common Table of Allowances, property authorized by a 70 5, and property listed in technical manual. I recorded management data, account data, authorization data and identification data to the property record and the Serial/Registration Number Record. I prepared Administrative Adjustment Report for reasons such as unit of issue of an item changed and the change affected the balanc hand, the Supply Bulletin 700-20, etc..

I managed property using Hand Receipt/Annex Number by comparing item serial numbers checked items for visible defect. I periodically inspected hand receipts and docum registers to make certain all information was up to date. I managed the operationa of class 2, ,3 4, and 8 supplies, based on allowances in CTA 50-970 and CTA 8-100. initiated inventory upon change of the hand receipt holder.

I maintained control of government property using AR 735-11 as my guide to account lost, damaged or destroyed property. I controlled components of end items by the DA Form 2062. I recorded shortages of non-expendable or durable component.

I maintained expendable/durable and non-expendable document registers to record sup transactions for property book items and to record supply expendable/durable items. used AR 340-2 and AR 340-18-14 for filing and extracting document registers. I maintained the due-in status file for each document register. I processed status c and listings according to their status codes.

I constantly prepared, processed and handled large quantities of DD Form 1348-6, a request for Non-Stock Number items, modified work orders and modification kits.

I often prepared and handled large amount of DA Form 3161 and 3161-1. I received, loaded, unloaded, segregated, stored, issued, and delivered organizational and installation supplies and equipment. I verified units of issued, description, and quantity of requested materiel against issued and turn-in documents. I moved proper issue or transfer points. I prepared storage facilities issue, inventory, and segregation by type of class within fires, safety, and security requirements. I inventoried supplies and equipment and recorded results. I identified, sorted, and cleaned supplies. I processed individual and organizational laundry.

I maintained the budget for the 702d Maintenance Battalion Supply which consisted o companies. I analyzed and evaluated the budget requirement and estimates for each company. I researched, compiled, and summerized data concerning the company's accou I checked the accuracy and adequacy of budget justification data submitted in suppor the Request for Transfer of Fund. I gathered and prepared paperwork needed for th approval or disapproval of the request. I adjusted accounts using the double-entry accounting procedures for each transaction. I placed relevant document (i.e., sale request for transfer of funds, request for increase of allocation, etc, in the appropriate file. I periodically, reviewed the budget files and I composed written communication to inform the company of their account balance.

| UNITED STATES ARMY | | | | | | |
|---|---|---|---|---|---|---|
| | | Salary or € | | | Place of employment | |
| | | Beginning $ | | per N/A | City N/A | |
| | | Ending $ | | per " | State " | |
| Exact title of your position | Name of immediate supervisor | | Area Code  Telephone number | | Number and kind of employees you supervised | |
| ADMINISTRATION SPECIALIST | N/A | | N/A | | | VARIED |
| Kind of business or organization (manufacturing, accounting, social services etc.) | If Federal service, civilian or military, series grade or rank and date of last promotion | | | | Your reason for leaving | |
| FEDERAL GOVERNMENT | SPECIALIST 4 | | | | END OF TERM OF SER | |

Description of work (Describe your specific duties, responsibilities and accomplishments in this job)

I processed personnel actions and records in support of various military personnel administration programs and system operations. I interviewed newly assigned military personnel, enlisted and officers, to obtain data to complete a variety of actions.

I established, I maintained, and I controlled central files. I managed current administrative records of approximately 210 military personnel, including periodic evaluation and disposal referring to AR 340-2 and governing regulations. I processed personnel actions and records pertaining to bar to reenlistment. I prepared the worksheet for the DD Form 214, Certificate of Release or Discharge from Active Duty Report of Separation from Active duty and I finalized it. I monitored and coordinated actions pertaining to reenlistment, hardship, or compassionate reassignment. I prepared the appropriate paperwork to process cases pertaining to adoption, legitimization of children, marriage, letter of indebtedness, etc. I prepared paperwork involving promotion, discharge, etc. I screened, reviewed, and verified and validated various documents pertaining to military personnel. I maintained roster for leave.

I used the 31 day suspense file system to ensure timely personnel actions and position control on personnel actions procedures. I established reading files. I circulated publications and other administrative communications to other functional offices, the commanders' office, 1SGs' office, and orderly room. I maintained a library of publications, monitored the publication of locally written regulations. I posted changes to regulations and directives.

I composed technical correspondence, obtained signatures, and forwarded accordingly. checked outgoing communications for administrative accuracy and authentication. I returned work needing correction to appropriate personnel. I developed Standard Operating Procedures as quick reference guide. I opened, sorted, routed, and delivered incoming correspondence and messages. I prepared suspense control documents and I maintained suspense files. I dated and dispatched outgoing correspondence and message. I prepared outgoing mail for registered or certified mail.

I prepared lists of selected file numbers, prepared file labels, and guides. I determined proper functional file and file numbers, posted to documents, and I filed documents in accordance with TAFFS. I destroyed or disposed of files in accordance disposition instructions. I conducted periodic review of files to insure proper fil of correspondence.

I received, disseminated and distributed Permanent Change of Station, and TDY orders according to local directive. I initiated Installation Clearance Forms.

I prepared change reports. I maintained automated suspense files as a source of information. I prepared personnel change sheets for update of SIDPERS file and forward to appropriate office. I assured that SIDPERS generated error suspense notice relating personnel actions functional responsibilities were resolved and that input to correct data and to eliminate error notices were provided to the SIDPERS Branch.

CONTINUATION SHEET FOR SECTION J

As supervisor in the administrative field, I supervised 1 SIDPERS Clerk, 1 Personnel Clerk, 1 Clerk Typist and 1 Unit Clerk. I was the command coordinator on technical matter such as personnel actions between finance office and MILPO. I managed paperwork flow. I assisted military personnel with problems.

I planned and I organized office operations to include general administrative, correspondence preparation, publications and forms administration and office administrative procedures. I determined requirement of office equipment, and supplies. I planned layout of office. I requisitioned, received, inventoried, and I signed hand receipts for office equipment. I coordinated administrative activities with other organizational elements and staff sections.

I read and interpreted regulations, directives, supplementaries, etc. I instructed personnel in the performance of administrative functions. I distributed workload to assigned personnel and I monitored work in progress. I reviewed and I edited correspondence prior to release, submission for signature, or other disposition. I conducted review of files to insure proper filing of correspondence.

CONTINUATION SHEET FOR SECTION J

| | | Salary or earning | | Place of employment |
|---|---|---|---|---|
| | | Beginning $ | per | City |
| | | Ending    $ | per | State |
| Exact title of your position | Name of immediate supervisor | Area Code | Telephone number | Number and kind of employees you supervised |
| Kind of business or organization (manufacturing accounting social services etc) | If Federal service civilian or military series grade or rank and date of last promotion | | | Your reason for leaving |

Description of work  Describe your specific duties  responsibilities and accomplishments in this job

I typed correspondence, messages, recurring and special reports, SOP, regulations, directives, forms, etc., for various reasons such as Unit Transmittal Letter, additiona duty appointment, etc., in final copy, using verbal instruction, written correspondence drafts or other sources to prepare copy. I complied with prescribed correspondence directive. I proofread material against source documents ensuring proper spelling, capitalization, grammar, punctuation, format, content accuracy, etc. I assembled fina product for review, signature, authentication or other disposition.

I prepared appointment slips, application for identification card, issued meal cards, a I assigned rooms. I provided a central source of information on the activity orally an by correspondence. I answered inquiries. I researched for files, publications, etc., provide factual and accurate information.

CONTINUATION SHEET FOR SECTION I

| | | |
|---|---|---|
| From | to | |
| Salary or earnings | | Place of employment |
| Beginning $ | per | City |
| Ending $ | per | State |

| Exact title of your position | Name of immediate supervisor | Area Code | Telephone number | Number and kind of employees you supervised |
|---|---|---|---|---|
| Kind of business or organization (manufacturing accounting social services etc ) | If Federal service civilian or military series grade or rank and date of last promotion | | | Your reason for leaving |

Description of work (Describe your specific duties responsibilities and accomplishments in this job)

I kept administrative files, posted supply regulations, publications, records, and forms. I requisitioned, picked-up, and maintained office supplies, blank forms, and publications. I used supply catalog in identification, assembly, and breakdown of supplies. I prepared request for turn-in documents. I processed supply requests. I initiated follow up on supply requests. I initiated cancellation on supply requests. prepared, reviewed, and corrected hand receipt property listings and annexes. I posted transactions to record of demand.

I inventoried and inspected clothing and equipment of newly assigned personnel to determine shortage and unauthorized items. I prepared abstract of organizational clothing and equipment record and I recorded the results of the inspection and inventory to the clothing and equipment record. I prepared laundry rosters and lists. I prepared payroll deduction form for laundry.

I performed research of doctrinal publications to determine adequacy of unit policy, procedures, and methods in requesting, receiving, accounting, issuing, storing, and preserving individual, organizational, and installation supplies and equipment.

I performed miscellaneous typing duties of military letters, correspondence, and reports such as annual command inventories, monthly and sensitive items Inventories, ammunition request, and ammunition turn-in. I maintained calendars of meetings, appointments, conferences, itineraries. I made certain that each report was at its prospective place in prompt time. I located, assembled, and compiled information to type reports of survey, Statements of Charge, cash collection vouchers, and inventory of property for AWOL's and hospital. I located, assembled, compiled, and composed information, for lateral transfers, turn-ins, change documents, requested by higher headquarters and I forwarded the reports to the appropriate personnel/offices.

CONTINUATION SHEET FOR SECTION I

| | | |
|---|---|---|
| Name and address of employers organization (include zip code if known) | Dates employed From    To | |
| | Salary or earnings | Place of employment |
| | Beginning $         per | City |
| | Ending    $         per | State |
| Exact title of your position | Name of immediate supervisor | Area Code | Telephone number | Number and kind of employees you supervised |
| Kind of business or organization (manufacturing accounting social services etc) | If Federal service civilian or military series grade or rank and date of last promotion | Your reason for leaving |

Description of work (Describe your specific duties responsibilities and accomplishments in this job)

As a supervisor in the supply field, I supervised numerous Supply Clerks, POL Clerk, Document Registers Clerks, and individual detailed to supply. I planned and organized schedules by establishing priorities and assigning work. I answered question and I instructed subordinates in proper work techniques and procedures to insure effective and efficient operations. I monitored work in process. I analyzed operational data and reports to ascertain degree of conformity with established policies, work standards, and procedural directives. I reviewed completed work for accuracy and compliance with established procedures. I coordinated logistical activities with service and motor transport units.

I assisted in development and execution of training programs to correct deficient areas and to enhance individual proficiency. I assisted and advised supply officers and commanders of processing procedures, account balance, etc. I analyzed statistical data and reports to ascertain trends, conformance to standards and directives to determine effectiveness of technical edit.

I complied with current regulations and directive pertaining to equipment inventory and property accountability. I posted transactions to organizational and installation property books and supporting documents. I maintained hand receipts and other related functions at unit supply level. I worked with the SAILS and SAILSPLUS automated supply system in maintaining accountability of organizational and installation supplies and equipment. I applied principles of ADP input, filing, processing and output techniques and capabilities to supply operations. I reviewed and annotated changes to unit equipment status report.

I conducted visits to subordinate element to determine degree of logistical preparedness and I provided assistance.

| ELIZABETHTOWN COMMUNITY COLLEGE ELIZABETHTOWN, KY | | From 09 | to 09-82 | 20 |
| --- | --- | --- | --- | --- |
| | | Salary or earnings Beginning N/A per Ending $ per | | Place of employment City ELIZABETHTH State KY |
| Exact title of your position FULL TIME STUDENT AND VA WORK STUDY, SECRETARY (STENO) | Name of immediate supervisor MR. SISK | Area Code Telephone number N/A | | Number and kind of employees you supervised NONE |
| Kind of business or organization (manufacturing accounting, social services etc ) OCMMUNITY COLLEGE | If Federal service civilian or military series grade or rank and date of last promotion | | | Your reason for leaving TRANSFERRED TO DIFFERENT SCHOOL |

Description of work. Describe your specific duties, responsibilities and accomplishments in this job

I enrolled full time in the Secretary Study. While I was enrolled, I worked as a Secretary Stenography. I took dictation and transcribed it. I proofread for accura grammar, punctuation, completeness, etc. I returned the finished product to the Guidance Counselors for reviewing and signatures. I mailed correspondence. I poste updated information to different location of the college. I maintained files on al students enrolled in the Veterans Administration program. I assisted in enrolling qualified students for Veterans Assistance. I alphabetized and filed the approved l and grants received from the approving authority. I answered the telephone. I made appointment arrangements for the Guidance Counselors. I reproduced material.

PROPERTY DISPOSAL OFFICE
·FORT KNOX, KY

From 11-8_   to 05-83   40

Salary or earnin

Beginning $ 1. ,90   per year City RADCLIFF

Ending $   per   State KY

Exact title of your position: PROPERTY UTILIZATION CLK (TYP)   Name of immediate supervisor MR. BENNETT   Area Code   Telephone number   Number and kind of employees you supervised NONE

Kind of business or organization (manufacturing, accounting, social services etc.) FEDERAL GOVERNMENT   If Federal service, civilian or military series grade or rank, and date of last promotion GS-04, 1107   Your reason for leaving ACCEPTED POSITION WIT HOST ACTIVITY

Description of work (Describe your specific duties, responsibilities and accomplishments in this job)

I received computer generated IDMS output listings and cards related to reutilization screening lists. I received the Front End, Local Area, Donation, IDMS Property Frozen List, Disposal Transaction Register, Monthly Inventory-On-Hand Status Listing, Reutilization Reportable Excess Locator Listing and XS4 Cards. I edited each listing ensure the accuracy of the listing with information received from the Defense Property Disposal Services. I provided authorized screeners access to appropriate screening lists. I assisted in the interpretation of the data. I helped customers determine th availability of items through the use of layman's description. I verified quantities condition codes.

I processed freeze actions on items screened according to governing       regulations I annotated appropriate screening list with screener's activity identification, quant desired, and the type of freeze action code. I reviewed DPDS Forms for over-due requisitions and initiated freeze cancellations. I reviewed the IDMS Property Frozen listing to determine whether further freeze action was required and I initiated accordingly. I researched Disposal Transaction Registers to determine current status troubled items on the computer generated printout. I research the Inventory-on-Hand Status Listings to determine current status of troubled items on the computer generate printout. I received DPDS Forms from Headquarters to match item in RID and to determ availability of the item. If item was available, I contacted Property Management function and coordinated release of property. I received signed release document, and forwarded advance copy to the ordering agency. I annotated DPDO record copy with accounting data. I forwarded to keypunch for input into IDMS. If quantity shortage, customer denial or condition code discrepancies were noted, I prepare appropriate DPDS Forms, Inventory Adjustment Voucher, and Property Disposal Communiques.

I prepared shipment documents and I forwarded the documents to Property Management Function. I maintained suspense file of shipping document until mode of transportatic had been returned by transportation office. I followed up on those not returned withi specified time frame.

I received and processed request for withdrawal of an item from the sales cycle. I processed all MEFREES, NORS, and Foreign Military Sales requisitions and performed the various validation, follow-up, freeze, notification and other specific processing acti required by standing operation procedures for each category of requisition.

I processed sales referral computer cards. I reviewed and edited Feeder Report each month to see if it was in balance. If I found an error, I notified the Region Office within three workdays after receipt of report. I initiated corrective action. I pull XS4 cards for shipments from suspense file and coded with correct information and forwarded to keypunch. I made adjustment on scrap donations and sales. I checked inventory on hand and transaction register for on-hand balance before shipping scrap.

I monitored all demilitarization coded property received by the DPDO. I determined if property should be demilitarized or challenge the demil code. I initiated demil challenges accordingly. I maintained surveillance over items being demilitarized. I coordinated with generating activities and advised them on proper demil codes and on demilitarization prior to turn-in to DPDO.

| E | Name and address of employer | (such as Internet address and code, if known) | | | | | |
|---|---|---|---|---|---|---|---|
| | DEPARTMENT OF THE NAVY GREAT NECK, NY | | From | To | | | |
| | | | Salary or earnings | | | Place of employment | |
| | | | Beginning $ | per | City | |
| | | | Ending $ | per | State | |

| Exact title of your position | Name of immediate supervisor | Area Code | Telephone number | Number and kind of employees you supervised |
|---|---|---|---|---|
| CLERK TYPIST | MS. GUERRIO | | | NONE |

| Kind of business or organization (manufacturing, accounting, social services, etc.) | If Federal service, civilian or military, series, grade or rank, and date of last promotion | Your reason for leaving |
|---|---|---|
| FEDERAL GOVERNMENT | GS-03, 322 | HUSBAND REASSIGNED |

Description of work. Describe your specific duties, responsibilities and accomplishments in this job.

I type professional and technical reports, instructions, correspondence, memoranda extracts of printed material from rough handwritten material. I prepared my work f entry into the Wang Terminal by logging and labeling the material. I set my work u priority and completed my work by priority to insure timely and satisfactory comple of the task. I proofread work for accuracy, clarity, spelling, punctuation, completeness, capitalization, and grammar. I exercised judgement to comply with regulatory and procedural requirements. I planned my work so that during the up-ti would continuously input data into the system to keep workload flowing fluently. O the system shut down for the day, I used the remaining time to proofread long, exte material, such as a drafted instruction, that carried not suspense date. I took initiative in making corrections and I discussed material with the author or the supervisor. I also used judgement to determine the most effective method for accomplishing voluminous typing assignments while achieving high quality work.

| D | Name and address of employers or par... include ZIP code if known | | | Dates employed month and year ... | | |
|---|---|---|---|---|---|---|
| | DEPARTMENT OF THE NAVY GREAT NECK, NY 11. | | | From 10-83  to 01-84 | | 40 |
| | | | | Salary or earning Beginning $ 1. .45 per year Ending $ " per " | | Place of employment City GREAT NECK State NY |
| Exact title of your position MANAGEMENT ASSISTANT | Name of immediate supervisor MS. WETTERHAUN | | Area Code 516 | Telephone number 574-3135 | Number and kind of employees you supervised NONE | |
| Kind of business or organization (manufacturing accounting social services etc) FEDERAL GOVERNMENT | If Federal service civilian or military series grade or rank and date of last promotion GS-03, CROSS TRAINED, | | | | Your reason for leaving PROMOTED IN THE PROCUREMENT FIELD | |
| Description of work (Describe your specific duties responsibilities and accomplishments in this job) | | | | | | |

I crossed trained as Management Assistant, and I performed duties of that position. I coordinated and monitored the employees training program between the organization and Consolidated Civilian Personnel Office (CCPO) of Employee Development Department. I maintained liaison with CCPO Office for coordinating all programs and reports regardir civilian personnel, personnel regulations and procedures, availability of training, me promotion, leave, health benefits, etc. I referred questioned that I could not answer CCPO.

I reviewed Individual Development Plans (IDP's) and approved completed IDP's for the coming fiscal year to the Employee Development Department, CCPO. I distributed the Activity Training Plan. I analyzed and evaluated training programs to develope full effectiveness of individuals within the organization. I ensured implementation of the Activity Plan by notifying employees of all available training course. I reviewed anc evaluated tuition reimbursement allowance application for conformances to company policy. I maintained incoming and outgoing control of documentations. I established filing systems provided for receiving, classifying, cataloging, storing, and maintaini documentation. I analyzed documents to trace errors and to collect data. I audited, verified, and interpreted data processing output records. I analyzed data and publications to extract information for reporting and maintaining records. I performe in-depth independent analysis and maintenance of records. I analyzed changes in local directives and SOP. I revised the Detachment Management Instructions and SOp. Based analysis and coordination with other organizational branch, I developed operating policies, procedures, and changes for submission to the Directorate of Administration.

I prepared and typed Vacancy Announcement for NAVPRO, DD Form 1556, Request, Authorization, Agreement, Certification of Training and Reimbursement, and I forwarde to CCPO. I prepared and typed DD Form 1256, Incentive Award Nomination and Approval; 52, Request for Personnel Action, DD 1610, Request for TDY. I posted SF50 to the SF7 Cards.

I received reports from Management Control group involved in Trident, Poseiden Technic Assistance Programs. I performed calculations and analysis of Program Management Data I inputted specification and Data Management Tabular Report into the Wang system. I developed approaches for controlling and solving various technical problems such as tracing errors and collecting data. I assisted Program Management personnel in variou contract monitoring, forecasting and quote preparation activities. I composed letters memoranda, and reports of routine nature from outlined information and information received verbally, from notes, and other data. I audited, verified, and interpreted c processing output records.

I assisted the Director of Administration by performing administrative and management projects, which included liaison with other activities, research of data and publicat limited independent analysis and maintenance of records. I studied reports to determ wether the instruction, forms, and procedures for reports were being followed. I stu and reviewed reports to clarity and concise of information.

| Support Division<br>Fort Bragg, NC 28307-0120 | | Salary or earnings<br>Beginning $ 14.578  per year<br>Ending  $          per | Place of employment<br>City Fayetteville,<br>State NC |
|---|---|---|---|
| Exact title of your position<br>Procurement Clerk | Name of immediate supervisor<br>Ms. O'Brien | Area Code Telephone number<br>1919  1396-3537 | Number and kind of employees you super-<br>vised Acting Supervisor,<br>appx 7 procurement cle |
| Kind of business or organization (manufacturing accounting, social services, etc.)<br>Federal Government | If Federal service, civilian or military, series, grade or rank, and date of last promotion<br>GS-05, 1106, April 1987 | | Your reason for leaving<br>Accept Contract Spec-<br>ist Position (Career |

Description of work (Describe your specific duties, responsibilities and accomplishments in this job)

As Procurement Clerk at Fort Bragg, I received drafts of general information to inserted in contract documents to form solicitation for large and small construction, supply and service type contracts. I inputted sections B, C, and J into the Standard Army Automated Contract System to assist in formulating solicitations. I inputted data into the system to formulate 1707, SF 33, and 1442. I generated complete solicitations and forward to Staff Judge Advocate (SJA) Office for legal review. I made changes per SJA and forwarded copy of the solicitation to the printing plant. I developed and maintained mailing list for solicitations. I distributed solicitation. I wrote presolicitation notices. I developed Amendment of Solicitation for reasons such as to extend opening date or to cancel solicitation. I developed synopsis for presolicitation, to change information, to cancel solicitation, and to make award. I typed purchase and delivery orders.

I attended bid openings to record bids. I verify extensions of bids. I composed communiques to the Contracting Officer referencing discrepancies in mathematical computation, notification of lowest bidder, etc.

I prepared award contract (multiple award, partial, etc.) according to regulation. I prepare the contract folder, award letters, letters to unsuccessful bidders, notification to the Contracting Officer Representative, award synopsis, partial successful, payment bond, and performance bond. I prepared distribution for the award and returned the award contract to the Contracting Officer or Contract Specialist.

Upon return of the official payment and performance bonds, I sent notice to proceed to the contractor. I forwarded an original copy of the payment and performance bond to Fall Church, Virginia along with a duplicate original copy of the award for approval. I composed finalize correspondence to Falls Church, VA., referencing payment and performance bonds.

I compile data to prepare invitation to bid mailing list. I assisted customers in obtaining solicitations and I answered inquiries referencing the bidders mailing list. I communicated with employees of all level to discuss controversial subject matter.

I was promoted from GS-4 to GS-5 because of the complexity of material handled.

| Name and address of employer's organizer. (include ZIP code) | | | | | |
|---|---|---|---|---|---|
| Furnishing Management Office<br>Maxwell AFB, AL | | | From 21 Oct __ To 2 Mar 91 | | 40 |
| | | Salary or earnings | | Place of employment | |
| | | Beginning $ 16,__ ) per yr | | City Montgomery | |
| | | Ending $ 17,574 per yr | | State AL | |
| Exact title of your position | Name of immediate supervisor | Area Code | Telephone number | Number and kind of employees you supervised | |
| Clerk Typist | Ms. Anne Bétes | | | 0 | |
| Kind of business or organization (manufacturing, accounting, social services, etc.) | If Federal service, civilian or military, series, grade or rank and date of last promotion | | | Your reason for leaving | |
| Federal Government | GS-0322-03 | | | Promoted | |

Description of work (Describe your specific duties, responsibilities and accomplishments in this job)

I posted and maintained inventory balance of approximately 110 buildings located on
Maxwell Air Force Base, AL and Gunter Annex, AL. I extracted information from the
Custodian Authorization/Custodian Receipt Listing as indicated by AF Form 1297 (Tempora
Issue Slip). I adjusted inventory accordingly. I inputted information into the Wang
computer to maintain inventory control. I assisted in conducting physical inventory.
I posted physical inventories to AF Form 228, Furnishing Custody Receipt and Condition
Report.

I typed a variety of letters to different orgasnization concerning supply type transact
and general correspondence.

I set up the file system and maintained it as well. I posted regulations and I maintai
time cards for the unit.

Johnson, Bernethia

Continuation of 31

| | SCHOOL NAME | FROM | TO | SUBJECT | TNG COMPLET |
|---|---|---|---|---|---|
| 3. | FORSCOM FCJ4-PR | 3/1/90 | 3/2/90 | FORSCOM Negotiation Workshop | Yes |
| 4. | ALMC, Fort Lee. VA | 8/31/89 | 1/9/89 | Base Contract Law | Yes |
| 5. | US Naval Acquisition Support Center | 3/6/89 | 3/17/89 | Defense Cost and Price Analysis Course | Yes |
| 6. | ALMC, Fort Lee, VA | | 7/88 | Management of Defense Acquisition Contracts (Basic) | Yes |
| 7. | ALMC (Career Knowledge Test) | | 8/87 | Contract Administration (Basic) | Yes |
| 8. | Intel Corporation (Fort Bragg, NC | | 7/87 | Office Automation I | Yes |
| 9. | Fort Bragg, NC | | 6/87 | Preparing & Managing Correspondence | Yes |
| 10. | Fayetteville Tech Institute | | 1/87 | Introduction to Electron. Data Processing | Yes |
| 11. | ALMC, Fort Lee, VA | | 6/86 | Defense Small Purchase | Yes |
| 12. | Fort Lee, VA | | 8/76 | Unit Supply Specialist Primary Course | Yes |
| 13. | Fort Benning, GA | | 2/75 | Unit and Organization Supply Procedures | Yes |

ATTACH ANY ADDITIONAL FORMS AND SHEET HERE

## EDUCATION

**25** Did you graduate from high school? *If you have a GED high school equivalency or will graduate within the next nine months, answer "YES".*

**26** Write the name and location *(city and state)* of the last high school you attended where you obtained your GED high school equivalency.

Austin-East, Knoxville, Tennessee

| YES X | If "YES", give month and year graduated or received GED equivalency: | May 1973 |
| NO | If "NO", give the highest grade you completed: |

**27** Have you ever attended college or graduate school? YES X / NO — If "YES", continue with 28. If "NO", go to 31.

**28** NAME AND LOCATION *(city, state and ZIP Code)* OF COLLEGE OR UNIVERSITY. *If you expect to graduate within nine months, give the month and year you expect to receive your degree.*

| Name | City | State | ZIP Code | MONTH AND YEAR ATTENDED From | To | NUMBER OF CREDIT HOURS COMPLETED Semester | Quarter | TYPE OF DEGREE (e.g. B.A., M.A.) | MONTH YEAR |
|---|---|---|---|---|---|---|---|---|---|
| 1) Univ of the State of NY | Albany | N.Y. | | 1984 | | 132 | | BS | |
| 2) Same as block 28.1 | | | | | | | | AS | 0 |
| 3) | | | | | | | | | |

**29** CHIEF UNDERGRADUATE SUBJECTS *Show major on the first line*

| | NUMBER OF CREDIT HOURS COMPLETED Semester | Quarter |
|---|---|---|
| 1) Business Administration | 132 | |

**30** CHIEF GRADUATE SUBJECTS *Show major on the first line*

| | NUMBER OF CREDIT HOURS COMP Semester | Qr |
|---|---|---|
| 1) | | |
| 2) | | |
| 3) | | |

**31** If you have completed any other courses or training related to the kind of jobs you are applying for *(trade, vocational, Armed Forces, business)* give information b

| NAME AND LOCATION *(city, state and ZIP Code)* OF SCHOOL | | | MONTH AND YEAR ATTENDED From | To | CLASSROOM HOURS | SUBJECT(S) | TRAINING COMP YES |
|---|---|---|---|---|---|---|---|
| School Name 1) Army Logistic Management College | | | 4 June 1990 | 21 June 1990 | 120 | Management of Defense Acquisition Contracting (Advance) | X |
| City Fort Lee, | State V A | ZIP Code | | | | | |
| School Name 2) Same as 31.1 | | | 23 Apr 1990 | 3 May 1990 | 80 | Management of Installation Level Contracts | X |
| City | State | ZIP Code | | | | | |

## SPECIAL SKILLS, ACCOMPLISHMENTS AND AWARDS

**32** Give the title and year of any honors, awards or fellowships you have received. List your special qualifications, skills or accomplishments that may help you get a job. examples are: skills with computers or other machines; most important publications (do not submit copies); public speaking and writing experience; members professional or scientific societies; patents or inventions; etc.

Exceptional Performances, 21 March 1988 and 13 May 1988.
Data Base III, Lotus 1-2-3.
TYPE OF COMPUTERS USED: Wyse, Lyrix, Burrough, Wang, IBM, Tandy, and Vector.
Lanier Word and AB Dick Word Processors; 10 Key Calculator, Dictaphone, Memorywrite a variety of Copier machines and a variety of typewriters

**33** How many words per minute can you:

| TYPE? | TAKE DICTATION? |
|---|---|
| 80 | 80 |

Agencies may test your skills before hiring you.

**34** List job-related licenses or certificates that you have, such as: *registered nurse; lawyer; radio operator; driver's; pilot's; etc.*

| LICENSE OR CERTIFICATE | DATE OF LATEST LICENSE OR CERTIFICATE | STATE OR OTHER LICENSING AGENC |
|---|---|---|
| 1) Medical Terminology | August 1992 | Alabama |
| 2) Driver License | July 1990 | Alabama |

**35** Do you speak or read a language other than English *(include sign language)?* Applicants for jobs that require a language other than English may be given an interview conducted solely in that language. YES / NO X — If "YES", list each language and place an "X" in each column that applies to you. If "NO", go to 36.

| LANGUAGE(S) | CAN PREPARE AND GIVE LECTURES Fluently | With Difficulty | CAN SPEAK AND UNDERSTAND Fluently | Passably | CAN TRANSLATE ARTICLES Into English | From English | CAN READ ARTICLES FOR OWN USE Easily | With Diffic |
|---|---|---|---|---|---|---|---|---|
| 1) | | | | | | | | |
| 2) | | | | | | | | |

## REFERENCES

**36** List three people who are not related to you and are not supervisors you listed under 24 who know your qualifications and fitness for the kind of job for which you are apply At least one should know you well on a personal basis.

| FULL NAME OF REFERENCE | TELEPHONE NUMBER(S) *(include Area Code)* | PRESENT BUSINESS OR HOME ADDRESS *(Number, street and city)* | STATE | ZIP CODE |
|---|---|---|---|---|
| 1) Ms. Lenell Brown | (912) 767-8420 | Directorate of Contracting, Bldg 08 Fort Stewart, | G A | 3 1 3 1 |
| 2) Ms. Beverly Brown | (913) 552-7780 | 8 Pick Avenue Ft Leavenworth, | K S | 6 6 0 2 |
| 3) Ms. Dora Davis | (912) 396-8613 | Directorate of Contracting Fort Bragg, | N C | 2 8 3 0 |

**Page 3**

**37** Are you a citizen of the United States? ... (In most cases you must be a U.S. citizen to be hired. You will be required to submit proof of identity and citizenship at the time you are hired.) If "NO", give the country or countries you are a citizen of: ____ | YES | 
| | X |

**NOTE: It is important that you give complete and truthful answers to questions 38 through 44.** If you answer "YES" to any of them, provide your explanation(s) in Item 45. Include convictions resulting from a plea of nolo contendere *(no contest)*. **Omit:** 1) traffic fines of $100.00 or less; 2) any violation of law committed before your 16th birthday; 3) any violation of law committed before your 18th birthday, if finally decided in juvenile court or under a Youth Offender law; 4) any conviction set aside under the Federal Youth Corrections Act or similar State law; 5) any conviction whose record was expunged under Federal or State law. We will consider the date, facts, and circumstances of each event you list. In most cases you can still be considered for Federal jobs. However, **if you fail to tell the truth or fail to list all relevant events or circumstances, this** may be grounds for not hiring you, for firing you after you begin work, or for criminal prosecution (18 USC 1001).

| | | YES |
|---|---|---|
| **38** | During the last **10 years**, were you **fired from any job** for any reason, did you quit after being told that you would be fired, or did you leave by mutual agreement because of specific problems? | |
| **39** | Have you **ever** been convicted of, or forfeited collateral for **any felony violation?** *(Generally, a felony is defined as any violation of law ... imprisonment of two years or less.)* | |
| **40** | Have you **ever** been convicted of, or forfeited collateral for **any firearms or explosives violation?** | |
| **41** | Are you **now** under charges for **any** violation of law? | |
| **42** | During the **last 10 years** have you forfeited collateral, been convicted, been imprisoned, been on probation, or been on parole? Do not include violations reported in 39, 40, or 41, above. | |
| **43** | Have you **ever** been convicted by a military **court-martial?** If no military service, answer "NO". | |
| **44** | Are you **delinquent** on any Federal debt? *(Include delinquencies arising from Federal taxes, loans, overpayment of benefits, and other debts to the U.S. Government plus defaults on Federally guaranteed or insured loans such as student and home mortgage loans.)* | |

**45** If "YES" in: **38** - Explain for each job the problem(s) and your reason(s) for leaving. Give the employer's name and address.
    **39 through 43** - Explain each violation. Give place of occurrence and name/address of police or court involved.
    **44** - Explain the type, length and amount of the delinquency or default, and steps you are taking to correct errors or repay the debt. Give identification number associated with the debt and the address of the Federal agency involved.
    **NOTE:** If you need more space, use a sheet of paper, and include the item number.

| Item No. | Date (Mo./Yr.) | Explanation | Mailing Address |
|---|---|---|---|
| | | | Name of Employer, Police, Court, or Federal Agency |
| | | | City / State / ZIP Code |
| | | | Name of Employer, Police, Court, or Federal Agency |
| | | | City / State / ZIP Code |

| | | YES |
|---|---|---|
| **46** | Do you receive, or have you ever applied for retirement pay, pension, or other pay based on military, Federal civilian, or District of Columbia Government service? | |
| **47** | Do any of your relatives work for the United States Government or the United States Armed Forces? Include: *father; mother; husband; wife; son; daughter; brother; sister; uncle; aunt; first cousin; nephew; niece; father-in-law; mother-in-law; son-in-law; daughter-in-law; brother-in-law; sister-in-law; stepfather; stepmother; stepson; stepdaughter; stepbrother; stepsister; half brother; and half sister.* If "YES", provide details below. If you need more space, use a sheet of paper. | X |

| Name | Relationship | Department, Agency or Branch of Armed Forces |
|---|---|---|
| ▮▮▮ Johnson | Sister-In-Law | (Not Certain) Texas |
| ▮▮▮ Johnson | Sister-In-Law | (Not Certain) Charleston, SC |

## SIGNATURE, CERTIFICATION, AND RELEASE OF INFORMATION

## YOU MUST SIGN THIS APPLICATION. Read the following carefully before you sign.

- A false statement on any part of your application may be grounds for not hiring you, or for firing you after you begin work. Also, you may be punished by fine or imprisonment (U.S. Code, title 18, section 1001).
- If you are a male born after December 31, 1959 you must be registered with the Selective Service System or have a valid exemption in order to be eligible for Federal employment. You will be required to certify as to your status at the time of appointment.
- I understand that any information I give may be investigated as allowed by law or Presidential order.
- I consent to the release of information about my ability and fitness for Federal employment by *employers, schools, law enforcement agencies and individuals and organizations, to investigators, personnel staffing specialists, and other authorized employees of the Federal Government.*
- I certify that, to the best of my knowledge and belief, all of my statements are true, correct, complete, and made in good faith.

**48** SIGNATURE (Sign each application in dark ink) — *Beructhia J. Johnson*

**49** DATE SIGNED (Month, day, year) — *August 21, 1992*

Page 4

DX4

Document 5

# Montgomery Workflow
### Revised March 25, 2004

1. Master docket brings case into the HOTS system. Prehearing development package is sent at this initial step to unrepresented claimants.

2. Adult Case then goes for senior attorney review if it meets the profile in our office. The senior attorneys basically review all adult cases. All adult cases are in UNDW at this step. The child cases go directly into UNWK.

3. If the case is not an OTR allowance the senior attorney will put the case in UNWK and place it in stacks with a third going to each group. Case is filed in UNWK by the Lead or designee.

4. Case is assigned to a LA by using the pending list of UNWK cases, 10 at a time. The case will be placed into WKUP with the initials of the LA by a supervisor. The case will be kept in the LA's work station.

5. LA works up the case.

6. LA places the case in RTS with initials RTH and physically files the case in the unassigned RTS file cabinets. Later, the case is pulled by a supervisor and is assigned to the ALJ.

7. ALJ reviews the case and decides whether additional development is needed or if the case is ready to hear. If no development is needed, the Lead or Supervisor moves the case to RTS.

8. If additional development is needed the case is picked up from his office by the lead or supervisor and taken to the Development Unit, where it is assigned to a LA on a rotational basis.

9. When the case is ready for a hearing it goes into an RTS file cabinet located in the centralized scheduling unit. The LA who is doing the centralized scheduling contacts the VE, the ME, and the Contract hearing reporter. The scheduler changes the case status from RTS to SCHD and assigns to a LA in the Hearings Unit on a fair and equal rotational basis.

10. The Hearings Unit LA mails the notices and does any required development, like contractor invoices and adding exhibits. The cases are placed in a file drawer and then taken to the ALJ prior to the hearing. After the hearing the file will be placed into ALPO by the LA, or if additional development is needed the case will be taken to the Development Unit. There, any POST will be requested and the file will be held in that unit, unless the development request is to merely hold the case for a designated number



DEFENDANT'S
EXHIBIT
#4

of days awaiting evidence.  If that is the situation, then the case will remain with the LA in the Hearings Unit at her work station.

11.  After the ALJ has reviewed the case and written the writing instructions the case will go to UNWR until it is assigned to an AA or PA.  At that time the case will be put into DWPC with the writer's initials by a supervisor.

12.  After the decision is written the case is placed into EDIT and then SIGN by the AA or PA and given to the ALJ for review.

13.  The ALJ makes any necessary corrections.  Favorable cases are verified.

14.  The case is picked up and CLSD by a supervisor.

15.  The case goes to a central location where the decision and the exhibit list is copied.

16.  The case is separated and mailed to the correct location by a LA in the Mailing Unit.

17.  The case is placed in a central closed location and is placed in the closed files.

Exhibit __/ 2__
Page __2__ of __2__

DX5

Johnson, Paul Whitson   OHA Montgomery HO

| | |
|---|---|
| **From:** | Johnson, Paul Whitson   OHA Montgomery HO |
| **Sent:** | Wednesday, October 29, 2003 12:31 PM |
| **To:** | #AT AL OHA Mon Sr Case Techs; #AT AL OHA Mon Lead CTs |
| **Cc:** | #AT AL OHA Mon Mgt Team |
| **Subject:** | Ready to Hear File Cabinets |
| **Importance:** | High |

Legal Assistants:

We have recently completed an audit of the Ready-to-Hear file cabinets.  I'm please to report that we have been able to locate all files placed in RTH as of October 15th.

It is important to remember that you should <u>not</u> move a case from WKUP status unless you have <u>completely</u> worked up the file.  This includes typing the exhibit list and completing the information on the ALJ folder.  This procedure has been in place for a very long time and would not be changed without written notice.

Since this is the last week of the month, many of you will likely be moving cases to RTH over the next few days.  Again, you should not change the status of a case to RTH unless you are putting the file in the RTH cabinets.  If you have any questions, see your supervisor.

Exhib
Page



DX6

**Johnson, Bernethia**

| | |
|---|---|
| From: | Reams, Paul E. |
| ~nt: | Monday, January 26, 2004 3:56 PM |
| /: | #AT AL OHA Mon Case Techs; #AT AL OHA Mon Lead CTs; #AT AL OHA Mon Mgt Tea |
| | #AT AL OHA Mon Sr Case Techs |
| Subject: | Case assignment for pulling |

The way cases are assigned for pulling is being changed.  This new method should be more fair and more orderly.  T
routine will be that each Friday the group supervisor or lead will distribute 10 cases to the legal assistants who need c
The need for cases will be determined by the number of cases pending for the legal assistant, but will always be pulle
groups of 10.

In addition, beginning with February (next week) each legal assistant who works at home is required to turn in a list of
cases pulled to the group supervisor.

Please let me know if you have any questions or concerns.

Paul Reams

DEFENDANT'S
EXHIBIT
#6

DX7



DEFENDANT'S
EXHIBIT
#7

# PARTNERSHIP AGREEMENT

As part of the partnership process, this Agreement is entered into by and between the American Federation of Government Employees (AFGE), Council 215, National Council of Social Security Administration, Office of Hearings and Appeals Locals (hereinafter called the Union) and the Social Security Administration, Office of Hearings and Appeals (hereinafter called the Agency or Management) and collectively called Parties.

The purpose of this Agreement is to set forth the establishment of a flexible workplace program for the Office of Hearings and Appeals. It is recognized by the Parties that the primary mission of the Agency is to serve the needs of its customers and partners.

The Parties have determined that the implementation of the OHA Component Flexible Workplace Program shall be in April 2001 for all eligible employees in HPI Hearings Offices, OHA Headquarters and OHA employees working in Woodlawn. The Parties have determined that the positions identified by Exhibit 5 have duties and job functions which can be performed at an Alternative Duty Station.

## Section 1.    General

A.    "Flexiplace" is defined as a voluntary program which enables an employee to work at an Alternative Duty Station (ADS) with management approval.

B.    "Alternative Duty Station" for the purpose of this Agreement is defined as a specific room or area within an employee's primary residence.

C.    "Core Days" are Thursday and Friday. Employees are not authorized to work at an ADS for these two days.

D.    Management may approve alternative work schedule requests which depart from the core day requirement noted in "C" above in order to meet special circumstances, or bona fide needs of employees or the office. For bona fide needs, the Parties recognize educational purposes and medical treatment arrangements as examples. This exception to the regular core day requirement does not affect the three (3) day maximum per week an employee may work at his/her primary residence.

## Section 2.    Eligibility

All employees who meet the following criteria are eligible to participate in the Flexiplace Program. Eligible full-time employees will be authorized at least one day per week to work at an ADS. Eligible part-time employees will be authorized one day per pay period to work at an ADS.

DEC-19-2000  10:28        HA ASSOC CMMR                        7033050208    P.04/28

(2)

a.   The employee is in good standing and is not on a
     Performance Assistance Plan (PAP) or Performance
     Enhancement Plan (PEP).

b.   The employee must be at an acceptable level of
     competence in each of the job-related activities
     that are to be performed at the ADS.

c.   The employee is not on leave restriction.

d.   The employee is not in a probationary period or
     formal training status. If an employee is in a
     position at GS-10 or above or in a career ladder
     commencing at GS-9, the employee must have two
     years of experience in his/her current position
     (including time in that position's predecessor).
     If an employee is in a position at GS-9 or below,
     the employee must have 120 days of experience in
     his/her current position (including time in that
     position's predecessor).

e.   The employee will not use duty time for providing
     dependent care or for any other purpose other than
     for performing Agency assigned work. If dependent
     care is an issue, the Agency may require evidence
     of other care during the time the employee is
     performing Agency assigned work at the ADS.

f.   The employee must have and maintain a flexiplace
     home work site with adequate work space, proper
     lighting, basic residential telephone service,
     power and other utilities, adequate environmental
     conditions, adequate security and smoke alarms.
     The employee must have and maintain his/her own
     personal equipment necessary to perform Agency-
     assigned work at the flexiplace work site,
     including a personal computer, if necessary, desk,
     chair, locking file cabinet or desk drawer for
     storage of confidential material, and reference
     materials suitable for the work to be performed at
     the designated ADS as specified in the Flexiplace
     Program Agreement (Exhibit 1 A).

g.   The employee will sign and abide by the Flexiplace
     Program Agreement.

h.   The Parties agree that the positions identified by
     Exhibit 5 have duties that are suitable to be
     worked at an ADS without impairment to the mission
     of the Agency.

(3)

i.    On a case-by-case basis, the immediate supervisor may approve requests to work at an ADS by employees in other covered positions (Exhibit 5), noting fair and equitable approval consideration to like employees.

**Section 3.     Requests**

Employees will have a one (1) month period beginning two (2) months before the start of the Flexiplace period (i.e. February is the employee's request period for April through September Flexiplace period. August is the request period for the October through March Flexiplace Period). Each employee requesting to work under Flexiplace must submit Forms **Exhibit 1** and **Exhibit 1A** to his/her immediate supervisor during the request period. Employees may also request at any time to work at an ADS on an irregular basis (episodic) to work on a specific assignment(s) (**Exhibit 3**). Regular basis means up to three (3) regularly scheduled days per week, Monday, Tuesday and Wednesday. Management may approve alternate work schedule requests as noted in Section 1 D.

**Section 4.     Workplan**

Employees requesting to work at the ADS on a regular basis and their immediate supervisor will jointly develop a Workplan (**Exhibit 2**).  Such Workplan will be developed within 15 workdays of the request and may be reviewed monthly (or as needed).

The Workplan should include the following:

-    the employee is bound by all terms and conditions of employment as outlined in the National Agreement.

-    the employee's responsibilities to ensure the safeguard and protection of Government and/or Agency records in his/her possession.

-    the employee's overall assignment(s) and priorities, if applicable.

-    an inventory of necessary equipment and/or resource material(s).

-    the scheduled day or days the employee will be performing work at the ADS.

DEC-19-2000  10:28       ⌐  ASSOC CMMR                      7033050208    P.06/28

(4)

Employees will be required to maintain at least the same
level of performance at the ADS while participating in the
flexible workplace program as they perform at their official
duty station (ODS).

Each participating employee will meet with his/her immediate
supervisor at least the day before the scheduled flexiplace
day or days to discuss assignment(s) to be worked at the
ADS. The supervisor will then assign the work to be
performed by the employee at the ADS. If during this
discussion, the immediate supervisor determines that there
is insufficient work for an employee to work at the ADS for
the next scheduled day(s), the employee will be informed in
writing that his/her participation in flexiplace is
temporarily suspended until work is available. The employee
will then be required to work at the ODS.

Upon return to the office, the employee will return all
assigned work, whether completed or not to his/her immediate
supervisor. In addition, the employee will submit to his/her
immediate supervisor a day card briefly describing the
activities and accomplishments for each day worked at the
ADS.

All laws, rules and regulations governing employee conduct
at the official duty station continue to apply with full
force and effect at the ADS including, but not limited to,
the Privacy Act and the Standards of Ethical Conduct for
Employees in the Executive Branch.

The Agency is not liable for any loss, harm or damage to the
employee's real or personal property and equipment that
occurs in the course of the employee's participation in the
Flexiplace Program, except to the extent established under
the law.

Section 5.    Approval

A.   Employee requests that meet the requirements of this
     Agreement will be approved in full or part, noting that all
     eligible employees should have the opportunity to
     participate in the program as defined in Section 2.



DEC-19-2000  10:29        DHA ASSOC CMMR                    7033050208    P.07/28

(5)

B.   If more than 33 1/3% of AFGE bargaining unit employees under the same timekeeper number request the same day or days to work at the ADS, the employees will attempt to resolve the scheduling problem. The final approval still rests with the employee's immediate supervisor who may change the day(s) the employee may work at the ADS site. If unresolved, management will determine the specific day(s) that each employee will be approved to participate in the flexiplace period based on employee's preference, Service Computation Date, workload considerations and to allow all eligible employees one day per week at the ADS.

C.   All employees participating in the Flexiplace Program agree to permit an Agency representative to inspect the home ADS site, in advance of final approval, if a timely request is made. An Agency representative may inspect the ADS site, at any time, during the employee's normal working hours at home. Reasonable advance notice of at least two hours will be given to the employee.


Section 6.     Call Backs

Employees may be required to report to their official duty station for previously scheduled training, conferences, other meetings, or to perform work on a short term basis that cannot otherwise be performed at the ADS or accomplished via telephone or other reasonable alternative methods.

Employees may also be required to report to their official duty station for emergency operational exigencies to perform Agency work which cannot otherwise be performed on another workday, at the ADS, via telephone, or other reasonable alternative methods.  In such cases, employees will be provided reasonable advance notice and be provided a reasonable time to report.  Employees should make every effort to report as soon as possible.  With good and sufficient reason, the employee will be permitted up to two (2) hours to report.


Section 7.     Removal

Management may remove an employee from the Flexiplace Program due to one or more of the following:

-     the employee is placed on a leave restriction. The employee is eligible to re-request participation upon lifting of the leave restriction.



(6)

- the employee is placed on a PAP.  The employee is eligible to re-request participation 90 calendar days after expiration of the PAP.

- the employee is placed on a PEP.  The employee is eligible to re-request participation one (1) year after expiration of a PEP.

- the employee's failure to adhere to the requirements specified in the Flexiplace Program Agreement and/or Flexiplace workplan.

- the employee has proven to be non-accessible fcr coverage requirements while working at the ADS and/or working at the ADS has proven to place an undue burden on other office staff.

- the employee has not met the level of performance identify by the new workplan as established by Exhibit 2A.

Normally, employees will not be removed from participation for single or minor infractions of Flexiplace Program requirements.  Management will make a _bona fide_ effort to counsel employees about specific problems before effecting removal. If an employee demonstrates a decrease in performance at the ADS for at least 90 days, the employee will be given the option of terminating his/her participation in the program or signing a new workplan as jointly developed by the employee, management and the Union

If an employee demonstrates a decrease in performance at the ODS, over a one month period, with no improvement two months after counseling, the employee will be removed from participation in the flexiplace program.

When a decision is made to remove an employee from the Flexiplace Program, the employee must be given written notice indicating the reason(s) for removal, using the format in Exhibit 4.  Unless otherwise specified, the employee may reapply for Flexiplace Program participation 90 calendar days after removal from the Program, provided that her/his performance is at least fully successful.

DEC-19-2000 10:29          'A ASSOC CMMR                    7033050208    P.09/28

(7)

Section 8.      Problems Affecting Work Performance

Employees will promptly inform their immediate supervisors
whenever any problems arise which adversely affect their
ability to perform work at the ADS.  Examples could include
situations such as equipment failure, power outages,
telecommunications difficulties, etc. The supervisor will
decide if the employee may continue to work at the ADs or
should report to the ODS. The affected employee may request
annual leave, LWOP, or to use credit hours until the
situation is corrected.

Section 9.      Hours of work and Leave

A.    Employees will be required to certify their hours worked at
      the ADS by use of a Time and Attendance Roster (Individual).
      This Roster will be provided to the employee's immediate
      supervisor before the end of a pay period.

B.    Employees performing work at the ADS are subject to the same
      workday requirements as they would be if they were
      performing work at the official duty station. Each employee
      must be available at his/her ADS by telephone for all
      scheduled working hours. Employees performing work at the
      ADS are not authorized or permitted to work the 5/4/9 or
      4/40 work schedule, overtime, credit hours or compensatory
      time for any day they work at the ADS.

C.    Employees performing work at the ADS will follow established
      procedures for requesting and obtaining approval of leave,
      credit hours or compensatory time consistent with Article 31
      of this Agreement.

Section 10.      Travel Reimbursement

Employees will be reimbursed for official travel consistent
with Agency travel policy. Transportation between the ADS
and the official duty station is considered commuting and
does not entitle the employee to reimbursement for official
travel.

(8)

**Section 11.      Emergency Closing/Late Openings/Early Dismissals**

On a day when an employee is scheduled to work at the ADS and his/her official duty station building is closed for all or part of a day, the following rules apply:

     a.    Full Day Closing

         The employee is not required to perform work at the ADS.;

     b.    Late Openings/Early Dismissals

         On days when the employee's official duty station has a late opening or early dismissal, the employee is required to perform his/her full ADS schedule.

**Section 12.      Additional Requirements**

Employees participating in the Flexiplace Program will be required to:

-    observe existing policies for requesting leave;

-    utilize any government owned/leased equipment for official purposes only and will safeguard government owned/leased equipment and documents as currently required at their official duty station;

-    adhere to applicable government regulations governing information management and electronic security procedures for safeguarding data and data bases; and,

-    ensure that the tracking system is utilized when cases are taken to the ADS and returned to the office.

**Section 13.      Equipment and Support**

The Parties agree that an employee must have, maintain and use a personal computer at the ADS, if the work assignment requires decision drafting, typing and/or like types of related casework or work normally done on a computer at the employee's duty station. The employee's personal computer must have a Window NT 4.0 environment with Microsoft Word 97. Management will provide each employee the necessary macros to perform assigned work.

DEC-19-2000  10:30          4R ASSOC CMMR                    7033050208     P.11/28

(9)

Management agree to provide each employee general office
supplies to be used at the ADS (e.g. writing and typing
paper, folders, pens, pencils, rubber bands, stapler,
diskettes, etc.).

The employee will be responsible for operating costs, home
maintenance, or any other incidental costs (e.g., utilities)
associated with the use of the ADS.  The employee does not
relinquish any entitlement to reimbursement for
appropriately authorized expenses incurred while conducting
business for the Agency as provided for by law and
implementing regulations.

**Section 14.     Diskette Screening**

The employee must assure that the central screening unit of
the office screens any diskette brought into the office. The
location/person may differ from office to office, but the
procedure will involve the following minimal requirements:

  a. Any diskette prepared at an ADS will be given to a
     central screening unit before inserted or used in
     any Agency computer.

  b. The diskette will be provide to the local System
     Administrator (e.g. HOSA or COSA), who will ensure
     that the diskette is free of viruses by using a
     virus scan program.

  c. The information on the diskette will be forwarded to
     the employee electronically. The diskette will stay
     with the central screening unit until the day prior
     to the next Flexiplace day.

  d. An employee may e-mail his/her agency assigned work
     product to his/her office e-mail account (firstname.
     lastname@ssa.gov). Material sent in this fashion is
     automatically scanned by the system when it is
     received.

  e. The above procedures do not sanction any prohibited
     material that may be on any diskette and employees
     are responsible for ensuring that the diskette(s)
     are only used for Agency work.

(10)

**Section 15.    Staff Coverage**

When it is determined in advance that coverage is an issue at the ODS on any given day, consideration will be given to allow bargaining unit employees to continue participation in the Flexiplace Program when both bargaining unit and non-bargaining unit employees provide the coverage in question. If management believes that staff coverage will not be adequate (i.e. less than 50% in a position of AFGE bargaining unit staff in the office or group on a Flexiplace Day) the employee(s) with the most recent SCD for the position needed will be required to work in the ODS until the staffing issue is resolved.

**Section 16.    Suspension of Flexiplace/Adverse Impact**

The Agency reserves the right to temporarily suspend the Flexiplace Program for an individual employee or group of employees where operational exigencies require a return to the traditional 5-day workweek. Where this occurs, only the OHA Associate Commissioner (or designee) can approve the suspension. Management will then notify the employee of the expected date for resumption of the suspended schedule. Prior to extension of the suspension beyond one pay period, the Union will be notified, and the Agency agrees to fulfill its obligation in accordance with 5 U.S.C. 71.

Occasionally, an employee may also be required to arrive at a specific time on a particular day for special activities (e.g., to attend a class, to attend a meeting where personal appearance is necessary, etc.).

If the circumstances requiring such a change permit, management will, to the maximum extent possible, provide the employee with at least twenty-four hours written notice explaining the reason(s) for the change.

Should adverse impact result from the implementation of Flexiplace (e.g., computer server capacity, etc.), the Parties nationally will meet immediately to attempt to resolve the matter. The provisions within this Agreement may be adjusted to resolve the adverse impact.

Staff coverage issues will be determined as defined in Section 15.

DEC-19-2000  10:30          IA ASSOC CMMR                    7033050208    P.13/28

(11)

## Section 17.    Monitoring/Evaluation

The Co-Chairs will Charter a Partnership Workgroup composed of three (3) management officials and three (3) union representatives on/or before June 1, 2001 to monitor, survey and prepare an evaluation report due to the Co-Chairs by July 15, 2002. The Workgroup will seek the advice and guidance of the Office of Workforce Analysis (OWA) in determining the criteria for monitoring and evaluating the flexible workplace program. The OWA will conduct the surveys and information gathering in coordination with the workgroup. The Co-Chairs will meet before October 1, 2002 to evaluate the report and determine if any modifications should be made to the program. If modifications are identified, the Co-Chairs will discuss the proposed modifications at the next scheduled AFGE/OHA Component Partnership meeting on or before October 31, 2002.

Thereafter, if the Co-Chairs still mutually agree that modifications are necessary, this Agreement will be reopened to address the affected section(s) by negotiating appropriate changes through partnership. If there is disagreement regarding reopening a section(s), the Parties will utilize Mediation/Arbitration. The moving party will make a request for an Arbitrator from the Panel I Roster on or before November 15, 2002. If the matter is still unresolved after mediation, the parties shall participate in arbitration and the Arbitrator shall have the authority to render a final and binding decision on the disputed issue(s).

## Section 18.    Effective Date and Duration

The Parties agree that this Agreement will become effective upon approval of the CPC Co-Chairs. In addition, the Parties agree that this Partnership Agreement shall remain in full force and effect through the term of the current National Agreement. This does not preclude the Parties from mutually changing this Agreement and/or resolving a dispute through an agreed to Alternate Dispute Resolution Process consisted with the CPC Charter.

DEC-19-2000  10:31         U   ASSOC CMMR                              7033050208    P.14/28

(12)

IN WITNESS WHEREOF, the Parties hereto have entered into this
Flexiplace Partnership Agreement on this __19__ day of December
2000.

FOR THE AGENCY                      FOR THE UNION

*Exhibit 1A*

## AFGE/OHA FLEXIPLACE PROGRAM REQUEST

*The following constitutes an agreement between the Office of Hearings and Appeals (OHA), and _____ on the terms and conditions of the OHA Flexiplace Program, consistent with the National Agreement:*

*(1)    The address of the employee's residence within which the alternate duty station (ADS) is located is:*

*_____*

*_____*

*Telephone #_____*

*(2)    The ADS meets the following which are required by the government for its convenience and to ensure a safe workplace and the security of records and files:*

- *telephone line(s) and instrument(s) are present and working to ensure that the employee is accessible for coverage requirements during the agreed upon hours at the ADS;*
- *records and files must be secure in order to minimize the opportunity for unauthorized access; and*
- *a smoke detector and readily accessible fire extinguisher are in the residence where the ADS is located.*

*(3)    The employee's participation in this program is voluntary. Both parties agree to adhere to the applicable Flexiplace Program polices outlined in the Partnership Agreement and National Agreement.  This Agreement is in effect until canceled by either the employee or the immediate supervisor.  The employee may withdraw from the program at any time.*

*(4)    Employees performing work at the ADS are subject to the same starting and ending times as they would be if they were performing work at the official duty station.  The employee will designate a*

*starting and ending time at the ADS and will notify his/her immediate supervisor of any changes.*

(5)     *Employees performing work at the ADS are subject to the same maximum workday limits.*

(6)     *An employee's time and attendance for work performed at the ADS will be recorded by use of a Time and Attendance Roster (Individual). This roster will be provided to the employee's immediate supervisor before the end of each pay period.*

(7)     *Consistent with Article 31, the employee will follow established procedures for requesting and obtaining approval for leave at the ADS.*

(8)     *Employees performing work at the ADS on a regular basis and their immediate supervisor will jointly develop a Workplan (see Exhibit 2) and the employee will be required to submit a day card upon return to the ODS to his/her immediate supervisor. The day card will include the employee's name, date(s) worked at the ADS, and briefly describe the activities and/or accomplishments for each day worked at the ADS.*

(9)     *The employee will be responsible for operating costs, maintenance, or any other incidental costs (e.g., utilities) associated with the use of the employee's ADS. The employee does not relinquish any entitlement to reimbursement for appropriately authorized expenses incurred while conducting business for the Agency as provided for by law and implementing regulations.*

(10)    *If the employee is given at least 2 hours advance notice, an Agency representative may conduct periodic inspections of the ADS during the employee's normal working hours to ensure work site is in conformance with safety standards and other specifications in the guidelines. Such inspections will occur only on days when the employee is working at the ADS.*

(11)   The Agency will not be liable for damages to an employee's personal or real property during the course of performance of official duties or while using Agency equipment at the employee's ADS, except to the extent the Government is held liable by the Federal Tort Claims Act or claims arising under the Military Personnel and Civilian Employees Claims Act.

(12)   The employee is covered under the Federal Employee's Compensation Act if injured in the course of actually performing official duties at the ADS (designated work site). Any accident or injury occurring at the ADS must be brought to the attention of the employee's immediate supervisor. Because an employment-related accident sustained by an employee during a Flexiplace Program assignment will occur outside the premises of the official duty station, the Agency must investigate all reports immediately following notification. The provisions of the National Agreement apply to all ADS-related on-the-job injuries.

(13)   The ADS is the location enumerated in Section 1A of the Flexiplace Program Agreement and may not be changed without prior approval of the immediate supervisor.

(14)   All government-borrowed equipment is for official business only.

(15)   The terms of the National Agreement continue to apply to the employee at the ADS.

(16)   The employee will through use of a locking device such as a brief case, satchel, or other locking device ensure that all Government and/or Agency records in his/her possession are safeguarded and protected from theft and damage while transporting assigned work to and from the ADS. In addition, the employee will ensure that these records are protected from unauthorized disclosure in accordance with the requirements of the Privacy Act, 5U.S.C.A. section 552a, the regulations implementing the Privacy Act, including those at 20 CFR section 401 et seq., section 1106 of the Social Security Act (42

U.S.C.A. section 1306), and all other statutes and regulations prescribing the disclosure of government and/or Agency records. Unauthorized disclosure of such records may result in the employee being subject to disciplinary and/or criminal sanctions.


Employee:_____   Date:_____
        (Signature of Employee)


Approved:_____   Date:_____
        (Signature of Immediate
        Supervisor)

## SUPERVISOR FORM

_____Approved

_____Disapproved (reasons stated below)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____        _____
Signature of Immediate          Date
Supervisor

Note:   A copy of this request should be maintained by both the
employee and the immediate supervisor.

*Exhibit 2*

### AFGE/OHA FLEXIPLACE PROGRAM REQUEST

<u>Note:</u> *This workplan is to be completed jointly by the employee and the immediate supervisor.  The workplan will be updated as necessary.*

*(1)     The employee's assignments and priorities (if applicable) are as follows:*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(2)   The employee is authorized the following day(s) of each pay period to work at the ADS (circle as appropriate):

First Week:      Monday    Tuesday    Wednesday
Second Week:     Monday    Tuesday    Wednesday

(3)   The employee may request a variance of one day to depart from the core day requirement for a bona fide need or need of an office, pursuant to Section 1D of the Flexiplace Partnership Agreement.  If authorized Thursday or Friday, it will constitute a substitute day as defined in item 2 above.

(4)   The following is an inventory of equipment and/or reference material required by the Agency in order for the work to be performed at the ADS.  The inventory is guided by the responsibilities, assignments, or portion thereof, that the employee will perform at the ADS.  It is understood that the employee may be required to provide some or all of the required inventory at his/her own expenses.

_____

_____

_____

_____

_____

_____

_____


_____          _____
Signature of Employee                  Date

*Exhibit 1*

## *AFGE/OHA FLEXIPLACE PROGRAM REQUEST*

*I request to participate in the flexiplace program. I request to work at the ADS on Monday, Tuesday, and/or Wednesday (circle as appropriate).*

*If all days are acceptable to you to work at the ADS, please circle all three days and management will select the day(s). The employee must complete and attach Exhibit 1A with this request.*

_____

*Signature of Employee*

<u>*Note:*</u> *A copy of this request should be maintained by both the employee and the immediate supervisor.*

DX8

*Exhibit 1*

## AFGE/OHA FLEXIPLACE PROGRAM REQUEST

I request to participate in the flexiplace program. I request to work at the ADS on Monday, Tuesday, and/or Wednesday (circle as appropriate).

If all days are acceptable to you to work at the ADS, please circle all three days and management will select the day(s). The employee must complete and attach Exhibit 1A with this request.

_____  4/26/04
Signature of Employee

<u>Note:</u> A copy of this request should be maintained by both the employee and the immediate supervisor.

Exhibit
Page



DX9

IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2006 MAY -2 P 4: 38

BERNETHIA JOHNSON,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )    CASE NO. 2:06cv397-CSC
                                  )
JO ANN B. BARNHART,               )
Commissioner,                     )    JURY DEMAND
                                  )
SOCIAL SECURITY                   )
ADMINISTRATION,                   )
                                  )
        Defendants.               )

## COMPLAINT

**COMES NOW** Bernethia Johnson, and for her complaint against Defendants and their agents and representatives (Defendants) hereby complains as set forth herein below.

## JURISDICTION

1.    This Court has jurisdiction over the litigation herein pursuant to 28 U.S.C. § 1331 and 1343, 42 U.S.C. Section 2000e, Retaliation, Hostile Work Environment.

2.    Plaintiff has fulfilled all conditions precedent to the institution of this action.

## VENUE

3.    Defendants are located and/or doing business within this judicial district (Middle District and the Northern Division of Alabama). This

1



DEFENDANT'S
EXHIBIT
#9

action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 42 U.S.C. Section 2000(e)-5(f) (3), 28 U.S.C. Section 1391(b) and Retaliation.

## PARTIES

4.    Plaintiff Bernethia Johnson, hereinafter referred to as "Plaintiff," is an African-American female resident of the United States, residing in Montgomery County, Alabama.  Plaintiff is a resident of this judicial district, and has been employed by Defendants at all times material hereto.  Plaintiff is a member of the protected class for race within the meaning of Title VII.  Plaintiff is also an employee of Defendants within the meaning of Title VII.

5.    Defendant Jo Ann Barnhart, hereinafter referred to as "Commissioner" is the Commissioner for the Social Security Administration.

6.    Defendant, Social Security Administration, hereinafter referred to as "Agency/Management" is a federal agency and is authorized to do business in the State of Alabama, and employs at least fifteen (15) persons and otherwise meets the jurisdictional prerequisites of Title VII.

2

## FACTUAL BACKGROUND

7.    Plaintiff first began working for Defendants on or about September 26, 1993, in the Hearings and Appeals (OHA) division in Montgomery, Alabama as a Hearing's Office Clerk.

8.    On or about August 28, 1997, the Agency posted vacancy announcement SSA-167-97.

9.    On or about September 17 1997, five temporary vacancies in the position of Legal Assistant, GS 986-6/7/8 OHA became available.

10.    On or about September 11, 1997, Plaintiff applied for the positions. Plaintiff made the well qualified list for one of the five positions advertised as a GS 6/7/8 Legal Assistant.  However, on or about October 25, 1997, five white females were selected.

11.    On or about October 28, 1997, Plaintiff initiated her first EEO action against Agency for racial discrimination and non-selection.

12.    On or about June 17, 1999, the EEO hearing was held on Plaintiff's charge.

13.    On or about August 18, 1999, Plaintiff received a favorable decision.  Plaintiff was awarded the position of Legal Assistant, GS-8 with a retroactive date of October 25, 1998.

14.    On or about January 16, 2003, two Paralegal Specialist positions were announced - Vacancy Announcement -OHA 32-03.

15.    On or about January 29, 2003, management required medical

3

summaries on remands and cessation cases with specific instruction. According to the instruction, Plaintiff performed many summaries, while Ms. Simmons performed only one.

16. On or about April 21, 2003, Plaintiff's name was placed on the referral list.

17. On or about May 13, 2003, Ms. Simmons, was selected. Management did not fill the other position.

18. On or about May 14, 2003, Plaintiff initiated her second EEOC action for non-selection.

19. Plaintiff was one of approximately thirteen (13) legal assistants in her office. In Plaintiff's twenty-nine (29) years of employment with the agency, she was never disciplined until she participated in protected EEO activities.

20. On or about February 27, 2004, Paul Johnson (Mr. Johnson) came to Plaintiff's desk and informed her that she was to work the front desk for the next month.

21. Plaintiff was assigned front desk duties during the month of March. Legal assistants who are assigned to front desk duties for a specific month are allowed to work at home two days, the month after their assignment to the front desk.

22. On or about April 12, 2004, Plaintiff made a request to Mr. Johnson, former supervisor, to work at home on Tuesday and Wednesday due to front desk assignment in March, but the request was denied.

4

Plaintiff was called into Mr. Reams' office to discuss the matter. Plaintiff mentioned to Mr. Reams that since she was not allowed to work at home on that Tuesday that she would like to work at home the following Wednesday and Thursday. Mr. Reams stated that Plaintiff's request was out of the question. Only after great debate and contacting Labor Management Relations was Plaintiff reluctantly allowed to work at home. Yet, Ms. Simmons was not faced with the same or a similar ordeal when attempting to schedule her at-home work days after she had front desk duties. Plaintiff is left to believe that she was being punished and harassed and subjected to a hostile work environment due to her race and the fact that she had filed EEO complaints.

23.   On or about April 19, 2004, Plaintiff asked Ms. Cynthia Lamar for work-up cases to work on while she was working at home. At that time, Mr. Johnson was in Ms. Lamar's office and informed Plaintiff that she was to get her cases on Fridays. Ms. Lamar was the work-up supervisor for issuing work-up cases and she had told Plaintiff the prior week that Plaintiff did not need to wait until Fridays to get cases. In response to Mr. Johnson stating that Plaintiff was to get cases only on Friday, Plaintiff said, as usual, "No problem" and exited the room. The action taken by Mr. Johnson was just another act of harassment, retaliation and the creation of a hostile work environment due to Plaintiff's EEO activity and her race. Ironically,

5

management allowed other employees to get cases before Fridays.

24.    Later, Mr. Johnson came to Plaintiff's desk and summoned her to Ms. Lamar's office.  While walking to Ms. Lamar's office, Plaintiff informed Ms. Simmons that management was rather upset and Plaintiff indicated that she would not be speaking in the meeting.

25.    On or about April 20, 2004, Plaintiff informed Mr. Reams of Mr. Johnson's disposition, and requested that Mr. Johnson be required to control his emotional behavior.  On April 21, 2004, Plaintiff reported to Mr. Reams that Mr. Johnson's attitude toward Plaintiff was getting worse.

26.    On or about April 29, 2004, Plaintiff was issued an oral reprimand, because according to management, Mr. Reams felt that Plaintiff was insubordinate to Mr. Johnson.  Mr. Johnson stated that Plaintiff failed to answer questions asked by Plaintiff's supervisor in the April 19, 2004, meeting.  Plaintiff did in fact answer Mr. Johnson's questions through Ms. Simmons, who also was the acting representative at that time.  Ms. Simmons was the acting representative.  Ms. Simmons also had a close relationship with Mr. Johnson.  Mr. Reams and Ms. Lamar represented management and Mr. Carl Warren represented Plaintiff via telephone.  After the meeting was adjourned and Mr. Warren was no longer on the telephone, Mr. Reams requested that Plaintiff stay in the hearing room.  Plaintiff immediately requested representation.  Mr. Reams

6

failed to act on Plaintiff's request until Plaintiff asked to be excused to go to the restroom.  When Plaintiff returned to the meeting, Plaintiff requested that Mr. Reams and Ms. Lamar sign a handwritten request stating that they refused her representation. Defendants were continuing their harassment, retaliation and the continuation of a hostile work environment toward Plaintiff due to Plaintiff's involvement in protected activity.

27.    On or about May 27, 2004, Plaintiff was again reprimanded. Plaintiff was issued a written reprimand from Mr. Reams; Mr. Reams presented no evidence of what was being discussed.  Mr. Reams accused Plaintiff of cheating on her work.  It was clear that Mr. Reams had no basis for this reprimand.  Once again, Plaintiff was harassed and retaliated against due to her race and the EEO activity that she participated in.

28.    On or about July 30, 2004, Plaintiff filed her formal complaint of discrimination and retaliation.

29.    This discrimination, harassment and retaliation taken against Plaintiff were based on her race (black) and for participating in protected activities.  Plaintiff was subjected to a continuing hostile work environment.

## COUNT ONE

## RACE DISCRIMINATION – TITLE VII

30.   Plaintiff adopts, realleges and incorporates by reference paragraphs one through twenty-nine above, the same as if more fully set herein, and further alleges anew.

31.   In taking the above described actions, Defendants intentionally discriminated against Plaintiff on the basis of her race when they due to prior participation in protected activity and her race, black. Plaintiff describes the acts of harassment as denial of the right to work at home during April 2004, receipt of a reprimand on April 29, 2004 and a written reprimand on May 27, 2004. As a proximate consequence of the violations of Title VII based on race by Defendants, Plaintiff has suffered and will continue to suffer damage to her professional life and current and future career opportunities.    Further, Plaintiff has suffered future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life and non-pecuniary damages.

## COUNT TWO

## RETALIATION

32.   Plaintiff adopts, realleges and incorporates by reference paragraphs one through thirty-one, the same as if more fully set herein, and further alleges anew.

33.  In taking the above described actions, Defendants retaliated against Plaintiff, because Plaintiff filed two EEO complaints against Defendants, in particular, Defendants retaliated against Plaintiff in denying her the right to work at home during April 2004, receiving an oral reprimand on April 29, 2004 and receiving a written reprimand on May 27, 2004.

34.  As a direct result of the ongoing retaliation against Plaintiff, Plaintiff's constitutional rights have been abridged.

35.  As a proximate cause of the Defendants' actions, Plaintiff has been injured and damaged, as set forth in paragraphs above.  Plaintiff suffered loss of time toward her tenure, wages, loss of health insurance, embarrassment, benefits and considerable mental and emotional anguish.

## COUNT THREE

## HOSTILE WORK ENVIRONMENT

36.  Plaintiff adopts, realleges and incorporates by reference paragraphs one through thirty-five, the same as if more fully set herein, and further alleges anew.

37.  In taking the above described actions, Defendants created a hostile work environment beginning as early as the filing of her initial EEO complaint in 1997 to present.

38.  As a direct result of the ongoing hostile work environment, Plaintiff's constitutional rights have been abridged.

9

39.   As a proximate cause of the Defendants' actions, Plaintiff has been injured and damaged, as set forth in paragraphs above.  Plaintiff suffered loss of time toward her tenure, wages, loss of health insurance, embarrassment, benefits and considerable mental and emotional anguish.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Honorable Court grant the following:

(a)   Assume jurisdiction over this action;

(b)   A judgment declaring that Defendants violated 28 U.S.C. Sec. 1331, 42 U.S.C. Sec. 2000(e), et seq. and Retaliation;

(d)   All backpay and fringe benefits as a result of the discrimination and retaliation, with interest;

(e)   Attorney's fees;

(f)   Costs;

(g)    Prejudgment interest;

(h)   An award of such compensatory damages for any loss of wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present and future to which Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate or which she may be entitled, and

10

(i)      Punitive damages.

## Jury Demand

Plaintiff demands trial by jury on each and every cause of action.

Respectfully submitted,

Juraldine Battle-Hodge (BAT033)

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

OF COUNSEL

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL RETURN RECEIPT REQUESTED**

11

DX10

Johnson, Bernethia

**From:** Reams, Paul E.
**Sent:** Tuesday, April 13, 2004 1:06 PM
To: Johnson, Bernethia
    #AT AL OHA Mon Mgt Team
Subject: work at home on Thursday

Bernethia,

I'm sorry for the confusion about the extra ADS day for you this month. Since you worked the front desk last month, yo
are entitled to work an extra day each week this month. In order to try to rectify the situation, I have decided that you r
work at home this Thursday, April 15.

Be sure to let Paul Johnson know on Friday, which cases you pulled on Wednesday and Thursday. Since you only ha
cases assigned to you presently, please see Cynthia Lamar today, so management can assign some cases to you be
you leave. I expect you to use this extra day productively. You should give particular attention to the 3 "over 50 days
cases on your workup report.

Also on Friday, please tell Paul Johnson whether you plan to work at home an extra day for the rest of the month and,
so, which additional ADS day you want to work.

Thanks,

Paul



DEFENDANT'S EXHIBIT #10

1

DX11

# SERIAL TIME AND A...R

SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

**1. DATE** 04/14/04

**2. DIV/BRANCH/SECTION/UNIT**

This form IS NOT to be used to record overtime or holiday work.

**3. FLEXIBLE BANDS:**

CORE HOURS:

| 4. EMPLOYEE'S SIGNATURE ORDER OF ARRIVAL | 5. TIME IN | PERIODS OF ABSENCE | | PERIODS OF ABSENCE CHARGED TO | | | | HOURS WORKED | | | | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE ORDER OF DEPARTURE | 17. Sign h Ine # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 6. Flextime FROM - TO | 7. Leave/ Other Absence FROM - TO | 8 Leave | 9. COMP | 10. RC | 11. CH | 12. REG | 13. RC | 14. CH | | | | | |
| 1. | 7:00 | | | | | | | 8 | | | | | 1 | 8:3... |
| 2. | 7:00 | | | | | | | 8 | | | | | 2 3:30 | |
| 3. | 745 | | | | | | | 27 | | | | | 3 5:... | |
| 4. | 9:30 | | | | | | | 1 | | | | | 4 6:... | |
| 5. | 9:30 | 930-330 | SL | | | 2 | | | | | | | 5 1:00 | |
| 6. | | 830 10:30 | LWE | | 1 | | | 7 | | | | | 6 | |
| 7. | | | | | | | 7 | | | | | 7 | | |
| 8. | | | | | | | 8 | | | | | 8 | | |
| 9. | 6:30 | | | | | | 8 | | | | | 9 | | |
| 10. | 7:00 | | | | | | 8 | | | | | 10 3 3... | | |
| 11. | 7:00 | | | | | | 8 | | | | | 11 | | |
| 12. | 8:30 | | | | | | 8 | | | | | 12 4 7:13... | | |
| 13. | 8:30 | | | | | | 8 | | | | | 13 5:... | | |
| 14. | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | |

Supervisor's Signature/Date

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Timekeeper's Number/Signature/Date

Form SSA-30 (10/83)    (Supersedes SSA-3530 and SSA-3531)

SERIAL TIME AND ATTENDANCE ROSTER
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

1. DATE  4/5/04

2. DIV/BRANCH/SECTION/UNIT

This form IS NOT to be used to record overtime or holiday work.

3. FLEXIBLE BANDS:

CORE HOURS:

| 4. EMPLOYEE'S SIGNATURE ORDER OF ARRIVAL | 5. TIME IN | 6. Flextime FROM - TO | 7. Leave/ Other Absence FROM - TO | 8. Leave | 9. COMP | 10. RC | 11. CH | 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE ORDER OF DEPARTURE | 17. Sign In line | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Form SSA-30 (10/83)    (Supersedes SSA-3508 and SSA-3531)

Supervisor's Signature/Date

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Timekeeper's Number/Signature/Date

# DX12

**SERIAL TIME AND ATTENDANCE RECORD**
SEE REVERSE SIDE FOR PRIVACY ACT AND PAPERWORK REDUCTION ACT PROVISIONS

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

This form IS NOT to be used to record overtime or holiday work.

1. DATE   *(handwritten)* 4/26/04

2. DIV/BRANCH/SECTION/UNIT

3. FLEXIBLE BANDS:

CORE HOURS: *(handwritten)*

| # | 4. EMPLOYEE'S SIGNATURE — ORDER OF ARRIVAL | 5. TIME IN | 6. Flextime FROM-TO | 7. Leave/Other Absence FROM-TO | 8. Leave | 9. COMP | 10. RC | 11. CH | 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE — ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | *(sig)* | 8:30 | | | | | | | 8 | | | | *(sig)* | 1 | 3:00 |
| 2. | *(sig)* | 8:00 | | | | | | | | | | | *(sig)* | 2 | 5:00 |
| 3. | *(sig)* | 8:30 | | | | | | | 8 | | | | *(sig)* | 4 | 4:30 |
| 4. | Renee O. Crews | 9:00 | | 8:15-10:15 ESC | | | | | 8 | | | | Renee O. Crews | 7 | 4:30 |
| 5. | | | | | | | | | | | | | *(sig)* | 3 | 3:30 |
| 6. | | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | | |
| 8. | *(sig)* | 10:30 | | | | | | 1/2 | | | | | *(sig)* | 8 | 3:00 |
| 9. | V W. Evans | 7:00 | | | | | | | 8 | | 1/2 | | V W. Evans | 9 | 3:30 |
| 10. | *(sig)* | 7:00 | | | | | | | 8 | | | | *(sig)* | 10 | 3:30 |
| 11. | Sheila Kammm | 7:00 | | | | | | | | | | | Sheila Kammm | 11 | 3:30 |
| 12. | | 7:00 | | | | | | | | | | | *(sig)* | 12 | 5:30 |
| 13. | *(sig)* | 6:30 | | | | | | | | | | | *(sig)* | 13 | 3:30 |
| 14. | | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | | |

Supervisor's Signature/Date *(handwritten)* 4/26/04

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Timekeeper's Number/Signature/Date *(handwritten)* 4-22-04

Form SSA-30 (10/83)   (Supersedes SSA-3528 and SSA-3531)

# SERIAL TIME AND ATTENDANCE ROSTER
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

2. DIV/BRANCH/SECTION/UNIT

This form IS NOT to be used to record overtime or holiday work.

3. FLEXIBLE BANDS:

1. DATE

CORE HOURS:

| ORDER OF ARRIVAL | 4. EMPLOYEE'S SIGNATURE | 5. TIME IN | 6. Flextime FROM - TO | 7. Leave/Other Absence FROM - TO | 8. Leave | 9. COMP | 10. RC | 11. CH | 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 6:30 | | | | | | | | | | | | 3 | 3:25 |
| 2 | | 6:10 | | | | | | | 8 | | 1¾ | | | 1 | 4:50 |
| 3 | | 6:55 | | | | | | | 8 | | | | | 3 | 5:30 |
| 4 | | 2:30 | | | | | | | 8 | | | | | 4 | 4:00 |
| 5 | | 7:50 | | | | | | | 8 | | | | | 3 | |
| 6 | | 7:45 | 7:30-10:15 | | | | | 1½ | 8 | | | | | | 6:00 |
| 7 | | | | | | | | | 1 | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | | | | | 8 | | 8 | | | | | 9 | 4:30 |
| 10 | | 7:00 | | | | | 8 | | 8 | | | | | 10 | 3:50 |
| 11 | | 7:0 | | | | | | | | | | | | 11 | 3:50 |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | | |

Supervisor's Signature/Date

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Timekeeper's Number/Signature/Date

Form SSA-30 (10/83)    (Supersedes SSA-3336 and SSA-3331)

DX13



4/19/04
3:45

Bernethia came into my office and asked that I call Cynthia and ask her if she (Bernethia) had requested more files. I called Cynthia and she said no, that Bernethia had not requested more files. She said to tell Bernethia to come back by her office and they would straighten it out. Bernethia declined. Bernethia said she went to Cynthia's office to request more files so she could work at home two days to make up for her month of working on the front desk, but that Paul Johnson was in Cynthia's office and told Bernethia she needed to get her files on Fridays. Bernethia came to me to have me make a report of the incidence.

DX14

4/19/04
4:00

Bernethia returned to my office to request my presence in a meeting she was summoned to by Paul Johnson with he and Cynthia. She related that she would not speak during the meeting.

Paul Johnson stated that the meeting was regarding ADS. He stated that he asked Bernethia last week if she wanted to participate in ADS, and she waved him off and did not answer. He asked her this week, and she answered that she would participate. He explained that the ADS rules state that you are entitled to one day off per week, with one extra day per week the week following your tour at the front desk. He stated that you must request your cases on Fridays, and that Bernethia did not follow the process, but that Cynthia did offer to pull cases, and Bernethia declined. He stated that you either participate in the program or you don't.

Cynthia stated that Bernethia replied that she would not go home.

Paul stated that Bernethia left not wanting any cases. He stated that there would be exceptions such as sickness, but she would have to follow procedure.

Bernethia did not speak during the meeting, but acknowledged to me that she did not want any more cases, and I let Paul and Cynthia know when they asked Bernethia.

*Lynda N. Hall*



DEFENDANT'S
EXHIBIT
#14

Exhibit No. **3**

Page 1 of _____ / __ pa