



ORC/CREO/REGI

# <u>SOCIAL SECURITY</u>

2004 SEP -7 PM

Regional Office IV
Suite 22T64
61 Forsyth St., SW
Atlanta, GA 30303

August 10, 2004

<u>CERTIFIED MAIL # 70012510000855332046</u>

BERNETHIA JOHNSON
225 GARDEN HOMES CIR.
MONTGOMERY, ALABAMA 36116

Dear Ms. Johnson:

Re: EEO COMPLAINT FILED JUNE 29, 2004

This is to inform you that the matter brought to my attention has not been resolved. Enclosed are an original and three copies of the final counseling report for your review and signature on each copy. After review, **please return one signed copy of the entire report to the Atlanta CREO office at the following address:**

> **SSA**
> **Office of Civil Rights and Equal Opportunity**
> **61 Forsyth Street, SW**
> **Suite 22T64**
> **Atlanta, GA 30303**

Of the remaining copies, one is for you, one is for the complainant, and one is to be sent to the Office of Civil Rights and Equal Opportunity in Baltimore, Maryland should you decide to file a formal complaint of discrimination.

You are now entitled to file a formal complaint of discrimination under the statutory procedure. <u>**If you elect to file a formal complaint, you must do so within fifteen (15) calendar days after receipt of the enclosed final counseling report. You may use Page 3 of Form SSA-678 or your request can be in writing.**</u>  However, to file a discrimination complaint, you must submit a copy of the EEO Counseling Report, including all attachments, to the Office of Civil Rights and Equal Opportunity office in Baltimore. The address is:

> Office of Civil Rights and Equal Opportunity
> Social Security Administration
> P.O. Box 17712
> Baltimore, Maryland 21235-7712

The complainant may be able to elect participation in the Alternative Dispute Resolution (ADR) process at the formal stage although they chose not to participate at the informal stage.

If you have any further questions, please contact a member of the CREO staff located in Atlanta, Georgia at (404) 562-1387 or in Birmingham at (205) 801-1120.

Sincerely,

*Sheila S. Pepper*

SHEILA S. PEPPER
EEO Counselor

Enclosures:
SSA-675
ATTACHMENTS A,B AND C
NOTICE OF RIGHTS
ALTERNATIVE DISPUTE RESOLUTION FORM
DESIGNATION OF REPRESENTATIVE
NOTICE OF RIGHT TO FILE A FORMAL COMPLAINT ON DISCRIMATION

SOCIAL SECURITY ADMINISTRATION
EEO COUNSELING REPORT

1. TO: Heriberto Sanabria, Director
Civil Rights and Equal Opportunity/Diversity and Adjudicative Services
61 Forsyth Street, SW
Suite 22T60
Atlanta, GA  30303

2. FROM:   SHEILA PEPPER
EEO COUNSELOR
SSA
110 FREDERICK ST., STE. A
GREENVILLE, SC 29607

3. DATE COUNSELING FIRST SOUGHT:   JUNE 29, 2004

4. DATE OF INITIAL INTERVIEW: JULY 08, 2004

5. EMPLOYEE/APPLICANT NAME AND ADDRESS

NAME:      BERNETHIA  JOHNSON
ADDRESS:    225 GARDEN HOMES CIR., MONTGOMERY AL  36116
TELEPHONE: 334-284-9590
SSN: ▬▬▬▬▬
POSITION/TITLE: LEGAL ASSISTANT
SERIES/GRADE: GS-8

6.   ORGANIZATION AND ADMINISTRATIVE CODE:  TAH-F4Z26
(GIVE ADDRESS OF WHERE THE ALLEGED DISCRIMINATING ACT OCCURRED)

OFFICE OF HEARINGS AND APPEALS
3381 ATLANTA HWY.
MONTGOMERY, AL  36109

7. EMPLOYEE ELECTS A REPRESENTATIVE? ( ) YES  (X) NO

NAME:
ADDRESS:
TELEPHONE:
EMPLOYEE? ( ) YES  ( ) NO

COMPLAINANT'S NAME: BERNETHIA JOHNSON          SSN ▬▬▬▬▬

Form SSA-675-U5 (7/95) COPY DISTRIBUTION: EMPLOYEE/APPLICANT,
OCREO, EEO MANAGER, REPRESENTATIVE

8. **TYPE OF DISCRIMINATION (Basis)** - Select (X) from one or more of the following:

( ) Age ( ) years
( ) Color
( ) Conduct
( ) Equal Pay Act - Female
( ) Equal Pay Act - Male
( ) Marital Status
( ) Mental Handicap
( ) National Origin – Hispanic
( ) National Origin - Other
( ) Parental Status
( ) Political Affiliation
( ) Physical Handicap
( ) Race - American Indian
( ) Race - Asian/Pacific Islander
(X ) Race - Black
( ) Race - White
( ) Religion
(X ) Retaliation/Reprisal
( ) Sex - Female
( ) Sex - Male
( ) Sexual Orientation

9. **MATTER CAUSING COMPLAINT (Issue)** - Select (X) from one or more of the following:

( ) Appointment Hire
( ) Assignment of Duties
( ) Awards
( ) Conversion to FT/CC
( ) Demotion
( ) Duty Hours
( ) Evaluation/Appraisal
( ) Examination/Test
(X) Harassment (Non-sexual)
( ) Non-Selection
( ) Other
( ) Pay (Including Overtime)
( ) Promotion
( ) Reasonable Accommodation (Handicap)
( ) Reasonable Accommodation (Religion)
( ) Reassignment (Directed)
( ) Reassignment (Denied)
( ) Reinstatement
( ) Removal
(X ) Reprimand
( ) Resignation
( ) Retirement
( ) Sexual Harassment
( ) Suspension
( ) Terms/Conditions of Employment
( ) Time/Leave Attendance
( ) Termination
( ) Training

COMPLAINANT'S NAME: BERNETHIA JOHNSON    SSN ████████

Form SSA-675-U5 (7/95) COPY DISTRIBUTION: EMPLOYEE/APPLICANT, OCREO, EEO MANAGER, REPRESENTATIVE

10. HAS COMPLAINANT FILED UNDER THE NEGOTIATED GRIEVANCE
    PROCEDURE?     ( ) YES  (X ) NO

    IF YES, GIVE DATE:_____(ATTACH A COPY IF AVAILABLE)


    HAS COMPLAINANT FILED AN APPEAL WITH THE MERIT SYSTEMS PROTECTION
    BOARD?              ( ) YES  (X) NO

    IF YES, GIVE DATE AND STATUS:


11. DOES THE COMPLAINANT WISH TO REMAIN ANONYMOUS DURING COUNSELING?
    ( ) YES  (X ) NO


12. DETAILED DESCRIPTION OF COMPLAINT (Include specific allegation(s) with date(s) of
    occurrence; date employee/applicant became aware and indicate relief desired).

    DATE(S) OF OCCURRENCE: May 27, 2004

    On July 8, 2004, I had the initial interview with Ms. Bernethia Johnson, Complainant.
    Ms. Johnson believes that she is being discriminated against based on her race
    (Black) when she received a Reprimand on May 27, 2004 (attachment A) from Paul
    Reams (white), Hearing Office Director, Office of Hearings and Appeals (OHA),
    Montgomery, Alabama. Ms. Johnson feels that she is being subjected to retaliation
    because of her prior EEO complaints.

    ADR was explained and offered to Ms. Johnson and she declined.

    Complainant stated that the Reprimand was issued for entering items into the Hearing
    Office Tracking System (HOTS) as Ready-to-Schedule (RTS) but had not been worked.
    Mr. Reams indicated that there were several discrepancies in HOTS. Complainant
    stated that she did not understand how that could be happening.
    Ms. Johnson examined the material and the general query showed one date of creation
    but on the summary query another date of creation was shown. She stated that four
    documents showed they were created near 7:00 p.m. when she was not even on duty.
    Ms. Johnson asked the Computer Administrator about these differences and she could
    not explain them. Ms. Johnson said the Computer Administrator e-mailed
    Mr. Reams and brought these discrepancies to his attention. Mr. Reams notified
    Ms. Johnson that he would still go with the evidence he had.

    Ms. Johnson believes other employees also had cases on the listings that showed
    different creation dates and cases that showed up as RTS. She believes she is being
    singled out for this treatment as retaliation/reprisal due to her race and due to her prior
    EEO actions. Ms. Johnson believes that management is trying to find anything they
    can to reprimand and fire her. She believes co-workers have been fired and harassed
    and are afraid to deal with her. She feels very threatened. She feels her health is
    deteriorating. Ms. Johnson stated that she feels like people are hiding her work. She
    believes that the supervisors are discussing issues with her in the open rather than in
    private. Mr. Reams in one of the meetings told her he felt she was paranoid and gave
    her an EAP brochure. Mr. Reams recently told her that a sick leave statement was
    unacceptable and required her to present a more detailed statement.

Form SSA-675-U5 (7/95) COPY DISTRIBUTION: EMPLOYEE/APPLICANT,
OCREO, EEO MANAGER, REPRESENTATIVE

4

In early April 2004, Mr. Paul Johnson, Supervisor, denied Complainant request to work at home.
Ms. Johnson stated that is the office policy to allow employees to work at home two days per week after completing the front desk duties. Ms. Johnson stated that she completed her front desk duties and notified her supervisor, Paul Johnson, that she wanted to work at home and he told her she could not work at home. Ms. Johnson approached the HDO, Paul Reams, about working at home, after checking with Labor Management Relations Mr. Reams approved her working at home beginning April 13, 2004.

On April 19, 2004 , Ms. Johnson stated that she was typing some notes to herself and Mr. Johnson walked up behind her and yelled at her to meet with him in Cynthia Lamar's office. Ms. Johnson stated that she got her union steward to attend the meeting with her. Complainant stated that Mr. Johnson was upset that the union steward was present at the meeting.    Ms. Johnson told Ms. Hall that she did not want to talk during the meeting. Ms. Johnson stated that when she was in the office, Mr. Johnson began yelling more and more at her, so Ms. Johnson decided to bring this matter to the attention to management. Ms. Johnson along with her union representative, Linda Hall meet with Mr. Reams on 04/20/04 and she told Mr. Reams what was happening. Mr. Reams told her he would investigate. On 04/29/04, Ms. Johnson met with Mr. Reams and Carl Warren (Union VP in the Mobile OHA via telephone. At this meeting she was given an oral warning (Attachment B).

After the investigation, Mr. Reams found no evidence of Mr. Johnson yelling. He found that Ms. Johnson had been insubordinate to Mr. Johnson by refusing to talk to him in their meeting. Ms. Johnson said after this meeting, Mr. Reams kept her in the office and continued to talk to her despite her numerous requests for union representation. After much harassment he finally let her go.

The next day she received an e-mail informing her that her supervisor would now be Cynthia Lamar.

Ms. Johnson signed a statement withdrawing representation by Linda Tamplin (Attachment C ) in her case and declined further representation at this time.

### Redress:

Ms. Johnson wants the harassment to stop.  She wants the Reprimand and oral warning rescinded and removed from her Official Personnel File and SF-7B file. Ms. Johnson stated that since her health is being effected she would also like for the Agency to transfer her to the ~~Mobile~~ Alabama OHA office.  She would prefer for the Agency to pay for the cost of relocation.

*Transfer to Birmingham, AL, btj*

5

COMPLAINANT'S NAME:  Bernethia Johnson        SSN: ▓▓▓▓▓▓

ONLY THOSE ISSUES RAISED AND COUNSELED ON AS SET FORTH IN ITEM NUMBER 12
IN THIS EEO COUNSELING REPORT ARE THE ONES FOR SSA CONSIDERATION AND
ONLY THOSE ISSUES STATED IN ITEM NUMBER 12 WERE BROUGHT TO THE
COUNSELOR'S ATTENTION.

13.     COMPLAINANT'S SIGNATURE ACKNOWLEDGING RECEIPT OF
        RIGHTS, AND DESCRIPTION OF ISSUES TO BE COUNSELED:

        _Bernethia Johnson_                    _7/30/04_
        SIGNATURE                              DATE

14.     COUNSELOR'S SIGNATURE (Initial Interview)

        _Sheila Skipper_                       _7/20/04_
        SIGNATURE                              DATE

Form SSA-675-U5 (7/95) COPY DISTRIBUTION: EMPLOYEE/APPLICANT,
OCREO, EEO MANAGER, REPRESENTATIVE

COMPLAINANT'S NAME: Bernethia Johnson        SSN 

15.    CONTACTS DURING EEO COUNSELING INQUIRY:

NAME OF CONTACT:   Bernethia Johnson
TELEPHONE: 334-284-8590
ADDRESS:     225 Garden Homes Cir., Montgomery AL  36116
TITLE: Legal Assistant
GRADE: GS-8
DATE OF CONTACT: 07/08/04
REASON FOR CONTACT
 (Complainant, Witness, RMO, etc.): Complainant Initial Interview

TIME SPENT ON CONTACT: 2 hours (8:30 to 10:30)
-----------------------------------------------

NAME OF CONTACT:   PAUL REAMS
TELEPHONE: 843-727-4511
ADDRESS: 3381 ATLANTA HWY.
             MONTGOMERY, AL.  36109
TITLE: HEARING OFFICE DIRECTOR
GRADE: GS-14
DATE OF CONTACT: JULY 21, 2004
REASON FOR CONTACT: RMO
 (Complainant, Witness, RMO, etc.):

TIME SPENT ON CONTACT:M 2:00 P.M. TO 2:55 P.M.
-----------------------------------------------

NAME OF CONTACT:
TELEPHONE:
ADDRESS:
TITLE:
GRADE:
DATE OF CONTACT:
REASON FOR CONTACT
 (Complainant, Witness, RMO, etc.):

TIME SPENT ON CONTACT:
-----------------------------------------------

NAME OF CONTACT:
TELEPHONE:
ADDRESS:
TITLE:
GRADE:
DATE OF CONTACT:
REASON FOR CONTACT
 (Complainant, Witness, RMO, etc.):

TIME SPENT ON CONTACT:
-----------------------------------------------

COMPLAINANT'S NAME:  BERNETHIA  JOHNSON        SSN

Form SSA-675-U5 (7/95) COPY DISTRIBUTION: EMPLOYEE/APPLICANT,
OCREO, EEO MANAGER, REPRESENTATIVE

16.    INFORMATION DEVELOPED DURING INQUIRY

On July 21, 2004, I had an interview via telephone with Paul Reams, Hearing Office Director, Office of Hearings and Appeals, Montgomery, Alabama regarding complainant's allegations of discrimination. Mr. Reams provided the following:

Mr. Reams stated that he was aware of Ms. Johnson's prior EEO activity. He stated that he was contacted and interviewed as a witness. Mr. Reams informed me that he was not the Regional Management Official. He indicated that the Reprimand issued did not have anything to do with Ms. Johnson prior complaint.

Mr. Reams explained the discrepancies Ms. Johnson brought up but he did not find them reason to question their findings. Mr. Reams stated that they have a specific file cabinet and Ms. Johnson's cases were not in the file cabinet. He stated that they found cases with no exhibit lists that were claimed by her to be completed on earlier reports.  These were physical files and not listings. They checked the word document system and found her still entering work on cases the she had shown completed in earlier months. There was nothing presented by Ms. Johnson to overcome the physical files that were locate. Mr. Reams stated that other employees work was reviewed. He stated they routinely audit the ready to schedule cabinets for all cases for the office.

Mr. Reams stated that he has worked with Ms. Johnson for 10 years and she is convinced that management is out to get her. She bring up what she perceives as slights from 5 to 6 years ago. She seems not to be able to let go of anything in the past. He recited a recent incident of her accusing her accusing her supervisor of yelling and threatening her but after he investigated he found there were 2 supervisors and a union steward in this meeting and  the only one who perceived this conduct was Ms. Johnson. She falsely accused her supervisor or falsely perceived the situation. Her history of this type behavior led him to make the suggestion she contact the EAP for assistance.

I told Mr. Reams that Ms. Johnson feels that management is harassing other employees in the office who talk or associate  with her. Mr. Reams stated he was not aware of this. He stated that Ms. Johnson was a loner in the office. Ms. Johnson alleges that people are hiding her work. Mr. Reams was not aware of this but did state they recently had an incident where Ms. Johnson had accidentally combined two files into one. She refused to assist in locating the missing file and said someone was hiding her files. The file was later discovered combined with another file and Ms. Johnson's annotations on the file. That is the only incident he was aware of an allegation of work being hidden. Ms. Johnson says her supervisors are discussing items in the open with her rather than privately. Mr. Reams had not heard this as a problem and had not observed this happening.

Mr.. Reams stated he would not remove the oral warning of 04/29/04. He also declined to rescend the reprimand of 05/27/04. He stated that the only other incident they had of someone entering false information into the system was a white male and he was reprimanded for the same thing. This occurred several years ago. Mr. Reams does not believe management is harassing Ms. Johnson. He stated he believes Ms. Johnson is a very unhappy person and the quality of her work is being affected. Mr. Reams stated that he was not in a position to grant a transfer but was not aware that Ms. Johnson had ever formally requested one. He said he would not oppose a transfer for Ms. Johnson.

Form SSA-675-U5 (7/95) COPY DISTRIBUTION: EMPLOYEE/APPLICANT, OCREO, EEO MANAGER, REPRESENTATIVE

8

August 3, 2004 I conducted the final interview with Ms. Johnson.  I explained to her that I was unable to reach a resolution.  I informed her that I would mail her the EEO Final Counseling Report along with a copy of the Notice of Rights to File a Formal Complaint of Discrimination within fifteen (15) calendar days.  I thanked Ms. Johnson for her time and concluded the interview.

COMPLAINANT'S NAME:  Bernethia Johnson          SSN █████████

17.      DATE OF FINAL INTERVIEW: __August 3, 2004_____

18.      TOTAL HOURS SPENT COUNSELING: ___six (6)_____

19.      DATE REPORT SENT OR DELIVERED TO EMPLOYEE/APPLICANT:__August 10, 2004_____

20.      SIGNATURE OF COUNSELOR AND DATE OF REPORT:

_Sheila Slepper_____ __August 10, 2004_____
SIGNATURE                    DATE

21.      EMPLOYEE/APPLICANT ACKNOWLEDGES RECEIPT OF
         FINAL COUNSELING REPORT:

✓ _Bernethia Johnson_____ ✓ 9-3-04
SIGNATURE                    DATE

**Form SSA-675-U5 (7/95) COPY DISTRIBUTION: EMPLOYEE/APPLICANT, OCREO, EEO MANAGER, REPRESENTATIVE**

DX 31

**DEFENDANT'S EXHIBIT**
37

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

| | | |
|---|---|---|
| BERNETHIA JOHNSON, | ) | 2007 JAN 18 P 2: 29 |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEBRA P. HACKETT, CLK |
| v. | ) | U.S. DISTRICT COURT |
| | ) | CASE NO: 2:07CV059-M |
| JO ANN B. BARNHART, | ) | |
| Commissioner, | ) | JURY DEMAND |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW** Bernethia Johnson, and for her complaint against Defendants and their agents and representatives (Defendants) hereby complains as set forth herein below.

## JURISDICTION

1.  This Court has jurisdiction over the litigation herein pursuant to 28 U.S.C. § 1331 and 1343, Retaliation, and Hostile Work Environment.

2.  Plaintiff has fulfilled all conditions precedent to the institution of this action.

## VENUE

3.  Defendants are located and/or doing business within this judicial district (Middle District and the Northern Division of Alabama). This

1

action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 28 U.S.C. Section 1391(b), Retaliation and Hostile Work Environment.

## PARTIES

4.    Plaintiff Bernethia Johnson, hereinafter referred to as "Plaintiff," is an African-American female resident of the United States, residing in Nashville, Tennessee.

5.    Defendant Jo Ann Barnhart, hereinafter referred to as "Commissioner" is the Commissioner for the Social Security Administration.

6.    Defendant, Social Security Administration, hereinafter referred to as "Agency/Management" is a federal agency and is authorized to do business in the State of Alabama, and employs at least fifteen (15) persons and otherwise meets the jurisdictional prerequisites of Title VII.

## FACTUAL BACKGROUND

7.    Plaintiff first began working for Defendants on or about September 26, 1993, in the Hearings and Appeals (OHA) division in Montgomery, Alabama as a Hearing's Office Clerk.

8.    Paul Reams is a member of management and was aware of Plaintiff's participation in statutorily protected activity.

9.    Cynthia Lamar is a member of management and was aware of

2

Plaintiff's participation in statutorily protected activity.

10. Plaintiff filed her first EEO complaint in 1997.

11. On or about May 14, 2003, Plaintiff initiated her second EEOC action for non-selection.

12. November 14, 2003, Mr. Reams denied Plaintiff 1 hour leave to vote. The Agency had always allowed its employees at least one hour leave to vote.

13. On July 21, 2004, Plaintiff found two time sheets of other employees – Teresa Weeks and Beverly Warner – in her work documents while she was working at home on alternate duty station. Plaintiff believes that she was being framed, as time sheets are always kept in a three (3) ring binder, which must be opened to remove the sheets. In other words, someone had to deliberately remove the documents from the three ring binder and place them within Plaintiff's work documents. Plaintiff informed management in the presence of the union steward, Lynda Tamplin, that the time sheets mysteriously appeared in her work documents.

14. On or about July 30, 2004, Plaintiff filed a formal complaint of discrimination and retaliation.

15. October 7, 2004, Mr. Reams denied Plaintiff's hardship transfer request to Birmingham, AL.

16. November 5, 2004, Cynthia Lamar, supervisor, conducted a pre-hearing and post-hearing audit of the files assigned to Plaintiff that

were located in the file cabinets near the receptionist's area. The audit also included those files that were on Plaintiff's desk and in a cart. As Ms. Lamar conducted the audit, Ms. Lamar threw Plaintiff's assigned cases on the floor. The Plaintiff expressed to Ms. Lamar that it was embarrassing to have the files thrown on the floor and suggested that there was a better way of conducting the audit. Plaintiff further informed Ms. Lamar that she had many years in the logistics field and could show her another way to conduct the audit. After making this statement, Ms. Lamar grabbed Plaintiff's upper left arm. Plaintiff asked Ms. Lamar to release her arm. Afterwhich, Ms. Lamar left Plaintiff's area.

17.  At the beginning of the audit, Plaintiff was writing the status of the files and Ms. Lamar assured Plaintiff that there was no need to duplicate the effort, because Ms. Lamar would give Plaintiff a copy of her report, which included the location of the cases. Plaintiff believed Ms. Lamar and stopped recording the status. After the completion of the audit, Ms. Lamar requested that Plaintiff tell her the location of each of the files that had just been audited. Ms. Lamar refused to give Plaintiff a copy of the report.

18.  November 9, 2004, Plaintiff responded to Ms. Lamar's November 5, 2004, audit request.

19.  November 10 through November 16, 2004, Plaintiff emailed correspondence referencing being subjected to a hostile workplace.

4

Plaintiff hand delivered a letter to Mr. Reams with a follow-up email dated November 15, 2004.

20.  January 27, 2005, Mr. Reams approached Plaintiff's work area in an irate manner demanding that Plaintiff move her vehicle from a handicap parking space.  Since the office had moved into the building in 2000, non-handicapped employees had always parked in any of the five handicap spaces.  It was brought to Plaintiff's attention that she was the only employee who had been asked to move her vehicle and all other bargaining union employees who were white were allowed to remain in the other handicap spaces. Shortly afterwards, Ms. Lamar issued an email only to group B that, "if you have not been issued a handicap placard, you are not authorized to park in OHA parking spaces designated for the disabled."

21.  January 28, 2005, as Plaintiff parked her vehicle in the employees' parking lot, Plaintiff noticed that white non-handicap bargaining union employees were parked in the handicap parking spaces. Plaintiff informed the union steward, Ms. Tamplin, who asked Mr. Reams why the other employees were allowed to park in the handicap parking spaces and Plaintiff was not.  As a result, Mr. Reams removed three of the handicap signs that were affixed to the office building.

22.  January 29, 2005, Mr. Reams followed up with an email to all

5

employees.

23.  February 2, 2005, while waiting to get approved for a hardship
     transfer, the following vacancy announcements were announced:

     OHA 59-2005 2-4-05 Chattanooga, TN Legal Assistant

     OHA 63-2005 2-17-05 Atlanta (North), GA Legal Assistant

     OHA 119-2005 7-14-05 Atlanta (Downtown) GA Legal Assistant

     Notwithstanding Plaintiff's request, Plaintiff's hardship transfer
     request, Plaintiff was not offered one of the vacancies.

24.  February 23, 2005, a car that Plaintiff purchased on February 19,
     2005, for Plaintiff's college-aged daughter was keyed on
     government property.  Plaintiff contacted the police and informed
     Mr. Reams by email.  Plaintiff requested that the Agency pay to
     have the vehicle repaired.

25.  April 4, 2005, Plaintiff was summoned to Ms. Lamar's office.  Ms.
     Brenda McAnally was present.  Plaintiff requested that Ms. Lamar
     call Lynda Tamplin, union steward.  Initially Plaintiff was denied, but
     was eventually allowed to call the union representative.  Ms. Lamar
     gave Plaintiff a box that contained some closed cases and
     correspondence that was supposed to have been mailed to
     Plaintiff.  In the box were two sheets of paper with Tammy Martin
     and Paula Jackson's names written on them.  Ms. Lamar refused to
     allow Plaintiff to copy or read the information on the documents.
     Ms. Lamar had Mrs. McAnally read the information to Plaintiff, as

6

though Plaintiff was not capable of reading for herself. This was extremely degrading, belittling and tremendously humiliating to Plaintiff.

26. April 11, 2005, a claimant's case (Ms. Ward – Claimant) was returned to Plaintiff by Ms. Lamar. Per a former supervisor for completion of development, consistent with Judge Thigpen's instructions issued on October 14, 2004, this same case had advanced to the next level.

27. May 10, 2005, an unfavorable judgment was rendered, regarding EEOC Number 130-2005-00007X and Agency Number 03-375.

28. June 3, 2005, while standing in the doorway of Mr. Reams' office, Plaintiff was discussing some general concerns with Mr. Reams. Plaintiff then entered Mr. Reams' office and shut the door behind her so that she could discuss a personal matter with Mr. Reams. Upon shutting the door, Mr. Reams exclaimed, "Open the door! Open the door!" Plaintiff instanteously opened the door and asked curiously, "What's wrong Paul?" Mr. Reams responded that Plaintiff might do something to him and that Plaintiff was not to come into his office without a witness. Plaintiff was stunned. Plaintiff replied, "Paul don't make me out to be something I am not." Plaintiff left out of Mr. Reams' office and returned with Ms. Lynda Tamplin, union steward. Plaintiff informed Ms. Tamplin in front of Mr. Reams that Mr. Reams requested that she (Plaintiff) not come into his office

without a witness. Plaintiff's concern was addressed followed by a verbal request by Plaintiff to allow Plaintiff to transfer to another office.   Mr. Reams stated that it depended on what Plaintiff's request contained.  Mr. Reams stated that if the request showed that he (Mr. Reams) was the reason for the transfer, he would not approve it.

29.    June 7, 2005, Ms. Ward's case was reassigned to Plaintiff for further development.  Ms. Lamar emailed Plaintiff stating, "After full review of the file, I see no indication that the mental RFC requested was secured or ever ordered."  When Plaintiff received the file, Plaintiff thoroughly reviewed the file and afterwards, requested that other employees review the file to determine if they could understand Ms. Lamar's request.   Since no one seemed to understand Ms. Lamar's request, Plaintiff went to Ms. Lamar's office to further discuss the case.  Plaintiff knocked on Ms. Lamar's door to secure permission to enter.  Plaintiff then entered and shut the door behind her.  Ms. Lamar asked Plaintiff if the door was locked.  Ms. Lamar then went to the door and opened it.  As Ms. Lamar was walking back to her desk, Plaintiff remembered the June 3, 2005, incident with Mr. Reams.  Plaintiff inquired as to why Ms. Lamar had a problem with her closing the door.  Plaintiff and Ms. Lamar discussed the case and Ms. Lamar instructed Plaintiff to leave the case with her because, she said that she really didn't look

8

at the case. Gathering the file, Plaintiff said, "Let me make a copy of this and I will get it to you." It appeared that Ms. Lamar had become angry and showed dissatisfaction with Plaintiff's statement. In a displeased voice, Ms. Lamar stated, "make a copy, make a copy, that's just a waste of time." Ms. Lamar is generally a low toned individual. Ms. Lamar's voice was clearly elevated and her tone was angry. When Plaintiff heard the anger in Ms. Lamar's voice and observed Ms. Lamar push back from her desk, Plaintiff quickly walked out of Ms. Lamar's office carrying claimant's file with her. To the best of Plaintiff's knowledge, with the exception of the one time Ms. Lamar distributed reports and stood outside of the entrance of Plaintiff's cubicle to give Plaintiff her reports, that was the last time Ms. Lamar came to Plaintiff's cubicle. Ms. Lamar began to deliver paperwork to Plaintiff from across the empty cubicle next to Plaintiff. Plaintiff corresponded with Ms. Lamar via email, because Plaintiff recalled the November 5, 2004, physical abuse by Ms. Lamar. Via email, Plaintiff informed Ms. Lamar that Ms. Ward's case had been placed on the table located in the receptionist's area.

30. June 9, 2005, Plaintiff gave Ms. Lamar an updated status of Ms. Ward's case via email. The email stated that, "Dr. Sack, has completed the interrogatory." Ms. Lamar stated that, "the interrogatory should have gone to a vocational expert instead of a

psychological expert.    Nonetheless, the evidence has been proffered to the attorney."    Plaintiff also received an email summoning her to a Weingarten meeting with Ms. Lamar.

31.    June 13, 2005, Plaintiff received a Proposal to Suspend from Ms. Lamar alleging that Plaintiff made "an offensive hand gesture" to her (Ms. Lamar) on June 7, 2005.    Upon asking both members of management, Ms. Lamar and Mr. Reams, to demonstrate the hand gesture, they both refused.

32.    June 16, 2005, Plaintiff responded to the Proposal to Suspend.

33.    June 21, 2005, Plaintiff was issued a Decision to Suspend from Mr. Paul Reams.

34.    June 28, 2005, Plaintiff responded to a note from Ms. Lamar instructing Plaintiff to, "Correct the T&A roster & your SSA-71 to reflect 4 ½ hours leave for 6-27."    Ms. Lamar in turn accused Plaintiff of lying about the time Plaintiff signed into the office on June 27, 2005.    Ms. Lamar stated that Plaintiff got into the office later than the time Plaintiff recorded on her time and attendance sheet.    Ms. Lamar stated that Plaintiff arrived after 10:00 a.m. Plaintiff maintained that her arrival was approximately 9:50. Plaintiff had a witness to the time of her arrival.

35.    June 29, 2005, Plaintiff submitted a request for an immediate transfer to Mr. Reams.

36.   July 1, 2005, Ms. Lynda Tamplin corroborated the witness' statement regarding Plaintiff's approximate arrival time.

37.   July 15, 2005, Plaintiff set off the alarm in the office, because she went to the bathroom before leaving the office for the day. Usually Ms. Laura Robinson and Ms. Chevalier remain in the office well after the office has closed. Periodically, Mrs. Renita Barnett-Jefferson, staff attorney, would remain at the office after 6:00 p.m. Nevertheless, when Plaintiff came out of the bathroom, she was unable to get out of the building. Plaintiff returned to her desk to make a telephone call to Mr. Reams, but saw Mr. Reams exiting the employee's driveway. Mr. Reams evidently spotted Plaintiff's vehicle parked next door and returned to the office. Plaintiff explained to Mr. Reams about her having to go the restroom.

38.   July 18, 2005, Mr. Reams emailed the employees about the 6:00 p.m. closing, informing them that, "Yesterday, our alarm was set off by an employee who was still in the building at 6:15." It was no secret that Plaintiff was the employee that Mr. Reams was referring to. Plaintiff was very embarrassed.

39.   July 18, 2005, Plaintiff responded to Mr. Reams' embarrassing email. Plaintiff reiterated her reason for being in the building after closing.

11

40.  July 22, 2005, Plaintiff emailed Mr. Reams about the challenge she was faced with regard to the placement of files in light of Plaintiff not being able to come into his office.

41.  July 23, 2005, Plaintiff sent an email to Mr. Jacy A Thurmond requesting an appointment by telephone between July 25, 2005, and July 28, 2005.  Mr. Thurmond's office contacted Plaintiff while she was on suspension.

42.  July 25, 2005, through July 28, 2005, Plaintiff was suspended from work.  This action (suspension) was displayed on Plaintiff's leave and earnings statement for many months.

43.  August 10, 2005, Plaintiff was summoned into Mr. Reams' office. Plaintiff was accompanied by Ms. Tamplin, union steward.  Mr. Reams stated that Chattanooga, Tennessee did not want Plaintiff. Plaintiff responded to an August 2, 2005, letter from Mr. Bozeman regarding Plaintiff's transfer.  Since Mr. Reams had just informed Plaintiff that Chattanooga did not want her, Plaintiff listed 11 other hearing offices located in six different states to be considered in allowing Plaintiff to transfer.

44.  September 1, 2005, after almost a year, Plaintiff was finally transferred to the Chattanooga, TN office.

45.  September 2, 2005, as Plaintiff was walking from her car to the office building she was almost hit by a vehicle on government property.  The vehicle was driven by Renita Barnett-Jefferson.  Ms.

Barnett-Jefferson told Plaintiff in front of the security guard, Mr. Marick Robinson, "I don't know if you have ever driven a stick shift before, but my foot got stuck on the accelerator." Ms. Barnett-Jefferson further stated that she immediately came into the office and reported the incident to Mr. Reams. Mr. Reams never mentioned anything to Plaintiff about the incident, and Mr. Reams never conducted an investigation. However, Mr. Reams told Mr. Robinson that Plaintiff was, "on her way out of here."

46. Plaintiff filed a Federal Protective Service Field Interview Report – Number 00556. An investigator came and questioned Plaintiff. However, Plaintiff has not heard anything else from the investigator. Plaintiff also left messages with Mr. Hudson, former security guard, and superior to the security guard at that OHA Montgomery office. Again, Plaintiff has not heard anything from anyone.

47. September 9, 2005, Plaintiff filed an EEO complaint, case number 05-395.

48. October 3, 2005, Plaintiff transferred to the Office of Hearings and Appeals, Chattanooga, TN.

49. At all times material hereto, the Agency (Mr. Reams and Ms. Lamar) was aware of Plaintiff's participation in statutorily protected activity.

50.    This harassment and retaliation taken against Plaintiff were based on Plaintiff's participation in statutorily protected activities. Plaintiff was subjected to a continuing hostile work environment.

## COUNT ONE

## RETALIATION

51.    Plaintiff adopts, realleges and incorporates by reference paragraphs one through fifty, the same as if more fully set herein, and further alleges anew.

52.    In taking the above described actions, Defendants retaliated against Plaintiff, because Plaintiff filed a number of EEO complaints against Defendants, in particular, Defendants retaliated against Plaintiff in suspending Plaintiff from her GS-8 Legal Assistant position for three (3) days from July 25, 2005 through July 27, 2005, and when on June 28, 2005, Plaintiff was charged an additional ¼ hour leave for June 27, 2005.

53.    As a direct result of the ongoing retaliation against Plaintiff, Plaintiff's constitutional rights have been abridged.

54.    As a proximate cause of the Defendants' actions, Plaintiff has been injured and damaged, as set forth in paragraphs above. Plaintiff suffered loss of time toward her tenure, wages, embarrassment, benefits and considerable mental and emotional anguish.

## COUNT TWO

## HOSTILE WORK ENVIRONMENT

55.   Plaintiff adopts, realleges and incorporates by reference paragraphs one through fifty-four, the same as if more fully set herein, and further alleges anew.

56.   In taking the above described actions, Defendants created a hostile work environment beginning as early as the filing of her initial EEO complaint in 1997 to present.

57.   As a direct result of the ongoing hostile work environment based on race, Plaintiff's constitutional rights have been abridged.

58.   As a proximate cause of the Defendants' actions, Plaintiff has been injured and damaged, as set forth in paragraphs above.  Plaintiff suffered loss of time toward her tenure, wages, embarrassment, benefits and considerable mental and emotional anguish.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Honorable Court grant the following:

(a)   Assume jurisdiction over this action;

(b)   A judgment declaring that Defendants retaliated against Plaintiff and subjected Plaintiff to a Hostile Work Environment;

(d)   All backpay and fringe benefits as a result of the Retaliation and Hostile Work Environment, with interest;

(e)   Attorney's fees;

(f)   Costs;

(g)   Prejudgment interest;

15

(h)     An award of such compensatory damages for any loss of wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present and future to which Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate or which she may be entitled, and

(i)     Punitive damages.

## Jury Demand

Plaintiff demands trial by jury on each and every cause of action.

Respectfully submitted,

_____
Juraldine Battle-Hodge (BAT033)

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

_____
**OF COUNSEL**

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL RETURN RECEIPT REQUESTED**

DX 32



# Memorandum

Date: June 13, 2005
From: Cynthia Lamar
Subject: Proposal to Suspend
To: Bernethia Johnson

This is notice of my proposal to suspend you from pay and duty status for 5 working days for willful and indecent conduct on the job, inconsistent with the Standards of Ethical Conduct for Government Employees.

More specifically, I am recommending your suspension for an offensive hand gesture which, by itself, constitutes obscene, disrespectful, and insubordinate behavior. This proposal follows an oral warning issued to you for inappropriate conduct towards your supervisor during your midyear review in April, 2005.

Specifically: On the afternoon of June 7, 2005, you came to my office seeking assistance in deciding the proper handling of a delayed development request assigned to you. After some discussion, I determined that I could better respond to your inquiry following a quick review of the case. You agreed to leave the file with me, but insisted upon making copies of the case before doing so. I advised you that taking time to copy a file already stagnated in process since October 2004, was a waste of time and resources. Showing obvious dissatisfaction with my statement, you concluded that you would proceed without my assistance. You then abruptly collected the file materials, rushed toward the middle of my office, and forcefully gestured your erect middle finger towards my face in a malicious and vindictive manner. There were no further expressions of any kind exchanged between the two of us during this encounter.

As a government employee you must conduct yourself with propriety in all dealings with supervisors, co-workers, and the public. In proposing this action, I have considered the severity of this breach of your duty to adhere to Agency guidelines regarding appropriate behavior on the job.

Your failure to exhibit courtesy and respect towards your supervisor constitutes insubordination, and is strictly prohibited by the Agency. It is my hope that this proposed suspension will be sufficient to correct your behavior and thereby promote the efficiency of the service.
If a decision is made to effectuate this suspension, it will occur no earlier that fifteen calendar days from the date of this notice.

You have the right to reply to the deciding official both orally and in writing within 10 calendar days after you receive this proposal. Any replies must be presented to Paul Reams, Hearing Office Director. You have the right to be represented in making your reply and to receive a written decision regarding the proposal. For a complete explanation of your rights, please refer to the attached Explanation of Rights.

ı -ı



Exhibit 12

Page 11 of 12

You may contact Paul Reams in writing or by telephone (334)223-7503, Ext. 3005.  Any written reply may be forwarded to the following address:

>Paul Reams
>Hearing Office Director
>Office of Hearings and Appeals
>3381 Atlanta Highway
>Montgomery, Alabama 36109

Cynthia Lamar,
Group Supervisor

Attachment:  Explanation of Rights

Exhibit 02
Page 2 of 2

## EXPLANATION OF RIGHTS
### (Bargaining Unit)

Entitlement to a Proposal

The advance notice is a proposal to take action. No
decision to effect the proposed action will be made until
there has been the opportunity for you to make written and
oral replies and the deciding official has considered any
reply.

Right to Representation

You have the right to be represented and advised by a union
representative.

Freedom to Prepare and Present

You and your representative are assured freedom from
restraint, interference, coercion, discrimination, or
reprisal in preparing and presenting your case in these
proceedings.

Right to Review Supporting Material

You and your representative have the right to review
material relied upon to support the reasons given in the
notice of proposed action.  To review this material contact
your first line supervisor to review this material.

Right to Make Written Reply

A written reply to the proposal may be made to the deciding
official within a time limit stated in the advance notice.
This right includes the right to submit affidavits and
other documentary evidence in support of your written
reply.  An affidavit is a sworn statement in writing by
yourself or by others.  Your reply may include any reasons
for requesting that the action not be taken.

Right to Make Oral Reply

The right to make oral reply means the right to make an
oral presentation to the deciding official within the time
limit stated in the advance notice.  The right to make an

Exhibit 02

Page 13 of 12

oral presentation in separate from and in addition to the
right to make a written reply.  You may submit affidavits
and other documentary evidence in support of your oral
reply.  You are not required to limit you oral answer to
refutation of the reasons given in the advance notice for
the proposed action.  You may, if you wish, set forth
mitigating circumstances and give other reasons why you
believe the proposed action should not be taken.  If you
wish to reply orally, you should contact the deciding
official for an appointment.

Official Duty Time

If you are in a duty status, you may request a reasonable
amount of official time to review the material relied on to
support the proposed action, prepare and present written
and oral replies, and secure affidavits and other evidence.
You should contact your first line supervisor to arrange
for such official time.

Time Limits

The time limits given you in the advance notice refer to
calendar days.  If the last day falls on a Saturday,
Sunday, or official holiday, the time limit is
automatically extended to the next calendar day that is not
a Saturday, Sunday, or official holiday.  The time limits
may be extended for good cause upon written request from
you or your representative.  They will not be extended
unless the reason is compelling.  Such a request may be
made to your first line supervisor.

1-4

Exhibit 02
Page 14 of 2

DX 33

DEFENDANT'S
EXHIBIT
33

TO:          Mr. Paul Reams, Hearing Office Director
FROM:        Bernethia T. Johnson
SUBJECT:     Response to Memorandum dated 6-13-05; Proposal to Suspend
DATE:        June 16, 2005

     In regard to paragraph 2, "This proposal follows an oral warning issued to you for inappropriate conduct towards your supervisor during your midyear review in April, 2005." and paragraph 3, "Specifically: On the afternoon of June 7, 2005, you came to my office seeking assistance in deciding the proper handling of a delayed development request assigned to you. After some discussion, I determined that I could better respond to your inquiry following a quick review of the case. You agreed to leave the file with me, but insisted upon making copies of the case before doing so. I advised you that taking time to copy a file already stagnated in process since October 2004, was a waste of time and resources. Showing obvious dissatisfaction with my statement, you concluded that you would proceed without my assistance. You then abruptly collected the file materials, rushed toward the middle of my office, and forcefully gestured your erect middle finger towards my face in a malicious and vindictive manner. There were no further expressions of any kind exchanged between the two of us during this encounter." **I deny the allegations and strongly demand that substantial evidence be provided.**

     I entered Ms. Lamar's office on June 7, 2005, and shut the door behind me. She asked if the door was locked. She immediately got up from her desk, opened the door, and returned to her desk. I asked, are you afraid of me?[1] She responded, afraid, afraid? Nonetheless, I proceeded to discuss the Amy Ward case. I presented two documents that revealed that a Medical Expert had neither been requested nor was present at the hearing. Ms. Lamar stated to me that she really didn't look at the case and to leave it with her. While gathering the material, I clearly stated, let me make a copy of this and I'll get it to you. It appeared that Ms. Lamar became furious and obviously, showed dissatisfaction with my statement, when she responded in a displeased voice saying, make a copy, make a copy, that's just a waste of time as her voice arose with anger[2]. When I heard the anger in her voice and simultaneously saw her push herself back from her desk, I quickly walked out of her office.[3] After leaving her office, I continued to work on the case and forwarded to her the attached e-mail.

     During Ms. Lamar's expression of anger, I truly believe that she may have mistakenly envisioned such action. Ms. Lamar also erred in writing a telephone number that she relayed to me, (see attached). I continue in my belief that there are acts of

---

[1] On June 3, 2005, while in a conversation with Mr. Reams, HOD, I entered his office and shut the door, Mr. Reams quickly said, "open the door, open the door." I quickly opened the door and asked what was wrong. He informed me that he was afraid of me because I might do something to him. I left out of his office and returned with Ms. Tamplin, the union steward. He informed me that I am not to come into his office without having another individual with me for witnessing purposes. This would include discussing confidential and personal matters which I believe is a violation of my privacy.

[2] Ms. Lamar is generally a low toned speaking person.

[3] The reason I left Ms. Lamar's office in such haste is because on November 5, 2004, during an inventory of my pre and post files, she grabbed my upper left arm, while standing in my cubical. I looked at her and firmly told her to "TURN ME ALOOSE." She then released my arm. I later discussed this incident with my attorney and possibly with my physician. This is why, when she pushed herself away from her desk, I immediately left her office, to prevent bodily harm from coming to me again.

Exhibit _12_
Page _18_ of _27_

2-1

discrimination gunned towards me and I am in a hostile work environment and I am constantly being tortured at this location because on several occasions I have exercised my Chapter 7 rights and was a former union steward in this office, where several transactions transpired that was displeasing to current management[4]. Only since I have exercised my rights have I encountered one problem after another.

One attempt to defame my character by management has already been made and I believe this is another attempt to defame my character. My name has been scandalized, my work distorted, my property vandalized, I have been lied on, and twice turned down for a transfer[5]. Even before Mr. Reams informed me to always be accompanied by another individual to discuss matters with him, management has made it extremely hard for me to discuss anything with them.

I strongly believe this allegation initiated by Ms. Lamar is an attempt to cause me to take an early retirement[6]. Nonetheless, the allegations are offensive, fictitious, and it defames my character. I highly insist on substantial evidence of paragraphs 1 and 2 to validate that which Ms. Lamar has alleged. **I emphatically deny allegations made by Ms. Lamar and highly insist that substantial evidence be provided.**

Benethia T. Johnson

---

[4] This information will be presented at a later time.

[5] On June 3, 2005, I was also informed by Mr. Reams that he will not approve or recommend a transfer if the reason is reflective on management. In other words, the truth for my reason for transfer must not be disclosed. Even for me to use the phrase "for personal reasons" he stated would be questionable as to whether or not he would approve or recommend the transfer.

[6] It is not my desire to take an early retirement, but, should I take an early retirement, it would only be because of the continual harassment, hostile work environment, and discrimination practices that are exemplified at OHA Montgomery.

Exhibit 02
Page 19 of 27

DX 34

HUG-01-2005  10:50          OHA MONTGOMERY                    P.02/04



## SOCIAL SECURITY



**MEMORANDUM**

Date:     July 21, 2005                                    Refer To:

To:       Bernethia Johnson
          Legal Assistant, OHA Montgomery

From:     Paul Reams
          Hearing Office Director, OHA Montgomery

Subject:  Decision to Suspend

By memorandum dated June 13, 2005, Cynthia Lamar, Group Supervisor, OHA, Montgomery, Alabama, proposed that you be suspended without pay, from your position of Legal Assistant, GS-8, Montgomery, Alabama, for five (5) work days. The reason for this proposal is your inappropriate and disrespectful conduct directed toward your supervisor. These actions represent a violation of the Social Security Standards of Conduct.

Specifically, on June 7, 2005, while discussing a work issue with your supervisor, Cynthia Lamar, in her office, you suddenly gathered up the file under discussion and, while standing in the middle of her office, you forcefully gestured your erect middle finger towards her face in a malicious and vindictive manner.

Given the above, I have determined that your misconduct is a violation of the Social Security Standards of Conduct, Appendix A Part 734b which states;

> "...Disruptive behavior, such as...discourtesy, disreputable conduct...to other individuals while on the job..."

In addition, your inappropriate conduct violated the Annual Personnel Reminders, Section F, which states;

> "You are responsible for observing the requirements of courtesy and consideration while dealing with coworkers or serving the public and must conduct yourself with propriety."

Furthermore, your misconduct violated the SSA/AFGE National Agreement, Article 3, which states;

> "The parties agree that in the interest of maintaining a congenial work environment, both supervisors and employees will deal with each other in a professional manner and with

Exhibit 12
Page 15 of 22

*courtesy, dignity, and respect. To that end, all Social Security employees should refrain from coercive, intimidating, loud or abusive behavior."*

Ms. Lamar's Proposal to Suspend dated June 13, 2005, informed you of your right to respond orally and/or in writing, and to furnish affidavits and other documentary evidence in support of your reply within ten (10) calendar days after the receipt of the proposal. You responded in writing on June 16, 2005. You denied that you made the offensive gesture and demanded that "substantial evidence be provided." The evidence of this occurrence was Ms. Lamar's immediate reporting of the incident to me, her supervisor. You included no substantive evidence or affidavits in your reply to support your contentions.

Having considered all the evidence before me and the points brought forth in your written response, I find that the reasons in Ms. Lamar's Proposal to Suspend are sustained in their entirety and for the efficiency of the service, warrant your suspension. You did not provide substantive evidence to refute the incidents or support your allegations made in your written response. Your disciplinary record reflects that you received an oral warning on April 22, 2005. On that date you were warned by Ms. Lamar, in my presence, after you snatched your personnel file out of Ms. Lamar's hand during your mid-year performance review discussion. She informed you that your conduct was rude and inappropriate and warned you about disrespectful conduct toward her.

You are required to follow <u>all rules, policy, procedures and regulations</u> that govern the Agency so as not to undermine the efficiency of the Federal service. Without question, your behavior violates the letter, spirit, and intent of the above regulations and policies and cannot be tolerated. There is no doubt in my mind that you have knowledge of what is expected of you.

Your conduct is considered egregious and reprehensible. This behavior will not be tolerated. Your actions were discourteous, disrespectful, and disruptive to the office setting. As a result of your poor judgment, our customers and employees were denied the level of dignity the Social Security Administration is committed to providing all customers and employees.

However, I do feel that reducing the number of days of your suspension is appropriate. I believe that a three (3) day suspension is sufficient to impress upon you the seriousness of your behavior and thereby deter future misconduct. By imposing this suspension, I hope to correct this problem and promote the efficiency of the Federal service. <u>**Be advised, however, that future acts of misconduct could lead to more serious forms of disciplinary action.**</u>

Therefore, it is my decision that you be suspended, without pay, for three (3) workdays from your position as Legal Assistant, Montgomery, Alabama. Your suspension will be effective July 25, 2005, and conclude at close of business on July 27, 2005. You should return back to work on July 28, 2005. I have considered all other options and find that suspension is the <u>minimum</u> penalty that will correct your conduct.

If you disagree with this decision, you may file a grievance in accordance with the provisions of Article 24 of the National Agreement between AFGE and SSA. Your grievance should be directed to Ollie L. Garmon, III, Regional Chief Administrative Law Judge, Social Security

Exhibit Q2
Page 16 of 21

Administration, Office of Hearings and Appeals, Atlanta Federal Center, 61 Forsyth Street, SW, Suite 20T10, Atlanta, GA 30303. If you wish to make an oral presentation, you should contact Aloma LaFrance at 404-562-1182. You have the right to be represented by an AFGE representative, an attorney, or other union-approved representative. You and your representative are entitled to review the material relied upon on this decision.

In closing, in your Response to the Proposal to Suspend you raise additional issues, including an allegation that on November 5, 2004, Cynthia Lamar grabbed your upper left arm while she was talking to you at your cubicle. Said written response, which is dated June 16, 2005, is the first time you mentioned that such an incident between you and Ms. Lamar took place. Prior to that, you never reported the alleged incident to me and to my knowledge never discussed it with anyone else in this office or in the Regional Office. You did report an earlier incident in which you alleged that your former supervisor, Paul Johnson, had yelled at you and had stood up twice during a meeting in a physically intimidating manner toward you. You said the latter conduct occurred in April, 2004 in the office of Cynthia Lamar. You said that Ms. Lamar and your union representative, Lynda Hall, were present at the time the alleged behavior occurred. I immediately conducted a thorough and exhaustive inquiry of these allegations. However, as I reported to you on April 30, 2004, with your union representative, Carl Warren, AFGE State Vice President, participating via conference call, none of the other participants in that meeting nor anyone else who may have been in close proximity to the events at the time, supported your version of events.

Paul Reams

cc:
SF-7B File
Ollie L. Garmon, III, Regional Chief ALJ
Sue Burton, RVP/President AFGE Local 3627
LMR

Receipt Acknowledgement: _____

Date: _____

3

5-3

Exhibit 2

Page 10 of 2

DX 35

**SERIAL, TIME AND ATTENDANCE ROSTER**
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

This form IS NOT to be used to record overtime or holiday work.

**1. DATE:** 6/27/05

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

**2. DIV/BRANCH/SECTION/UNIT**

**3. FLEXIBLE BANDS:**

**CORE HOURS:**

| 4. EMPLOYEE'S SIGNATURE / ORDER OF ARRIVAL | 5. TIME IN | 6. Flexitime FROM - TO | 7. Leave/Other Absence FROM - TO | 8. Leave | 9. COMP | 10. RC | 11. CH | 12. REG | 13. RC | 14. CH | 15. COMMENTS | 18. EMPLOYEE'S SIGNATURE / ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Ruth Jackson | 6:00 | | | | | | | 8 | | | | Ruth Jackson | 1 | 3:00 |
| 2. Beverly Warner | 6:35 | | | | | | | 8 | | | | Beverly Warner | 2 | 3:05 |
| 3. O Kemp-Sh | 740 | | | | | | | 8 | | 1¾ | | T Watt | 4 | 4:05 |
| 4. J Watt | 835 | 405-505 | 1SL | | | | | 8 | | | | Cross-Webb | 5 | 4:35 |
| 5. Cross-Webb | 8:55 | 4:35-5:25 | 1SL | | | | | 7 | | | | BJ | 7 | 6:00 |
| 6. A Charley | 9:25 | 4:30-4:45 | ¼ N | | | | | 7¼ | | | | A Charley | 6 | 6:00 |
| 7. BJ | 10:07 | 250-1003 620-405 | 4¼ | | | | | ¾ | ¼ | | | C Smith | 3 | 6:00 |
| 8. | | APS | | | | | | | | | | | | |
| 9. L Thomas | 7:00 | | | | | | | 8 | | | | L Thomas | 9 | 3:30 |
| 10. | | | | | | | | | | | | | | |
| 11. | | | | | | | | | | | | | | |
| 12. | | | | | | | | | | | | | | |
| 13. | | | | | | | | | | | | | | |
| 14. | | | | | | | | | | | | | | |

Exhibit 19
Page 8 of 8

TOTAL P.10

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Supervisor's Signature/Date _____    Timekeeper's Number/Signature/Date _____

37.504 1.75 = 55.25

DEFENDANT'S EXHIBIT 35
PENGAD-Bayonne, N.J.

Form SSA-30 (12/2000) Destroy Prior Editions

DX 36

APPLICATION FOR LEAVE

ions SF-71

NB: Please complete items 1-8 after reading the Privacy Act Statement shown below.

(or type—Last, First, M.I.)   Johnson Bernethra

| | | 2. Employee I.D. Number |
|---|---|---|

OHA

4-A
FROM:   Month 6   Day 27   Hour 450   A.M. ☐   4-C
        Total Number
        of Hours   12:20   P.M. ☐

4-B
TO:   Month 6   Day 27   Hour 4:05   A.M. ☐
                                      P.M. ☐   4/4

6. Remarks

7. Employee's Signature   B. McClin

nal Unit

quest (if more than one box is checked, explain in
Item 8, Remarks):

ave. (Annual leave requested may not exceed the
amount available for use during the leave year.)
. (Complete reverse side of form.)

out Pay.

tory Time.

cily)

OFFICIAL ACTION ON APPLICATION

☐ Disapproved   (if disapproved, give reason. If annual
               leave, initiate action to reschedule.)

Signature   (Annual leave approved may not exceed the
            amount available for use during the leave year.)

8. Date
(Month, Day Year)   6-22-05

Date
(Month, Day, Year)   6/29/05

DEFENDANT'S
EXHIBIT
36
PENGAD 800-631-6989

Exhibit _19_
Page _1_ of _2_

DX 37



DEFENDANT'S
EXHIBIT
37
PENGAD 800-631-6989

**Johnson, Bernethia**

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Tuesday, June 28, 2005 5:27 PM |
| **To:** | Lamar, Cynthia A. |
| **Subject:** | RE: T&A roster and SSA-71 |

My approximate arrival time in this office yesterday was 9:55, but because of a situation, I signed in at 10:00.

| | |
|---|---|
| **From:** | Lamar, Cynthia A. |
| **Sent:** | Tuesday, June 28, 2005 5:21 PM |
| **To:** | Johnson, Bernethia |
| **Subject:** | RE: T&A roster and SSA-71 |

Only you know when you arrived.  For timekeeping purposes you are responsible for making sure that the time you sign in matches the clock on the wall in the sign in area.

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Tuesday, June 28, 2005 5:13 PM |
| **To:** | Lamar, Cynthia A. |
| **Subject:** | RE: T&A roster and SSA-71 |

The only thing that I ask from you regarding this matter is  for you to please express the time that you are suggesting that I arrived to work yesterday.

| | |
|---|---|
| **From:** | Lamar, Cynthia A. |
| **Sent:** | Tuesday, June 28, 2005 5:02 PM |
| **To:** | Johnson, Bernethia |
| **Subject:** | RE: T&A roster and SSA-71 |

We follow an honors systems for sign in purposes.  At 10:00A.M. yesterday, your name was not on the sign in roster.  Keep in mind that the flex band ends at 9:30AM

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Tuesday, June 28, 2005 4:48 PM |
| **To:** | Lamar, Cynthia A. |
| **Subject:** | RE: T&A roster and SSA-71 |

Please express the time that you are implying that I arrived to work yesterday.

| | |
|---|---|
| **From:** | Lamar, Cynthia A. |
| **Sent:** | Tuesday, June 28, 2005 12:16 PM |
| **To:** | Johnson, Bernethia |
| **Subject:** | RE: T&A roster and SSA-71 |

This is a reminder to be sure to sign in when you arrive.  On June 27, you actually arrived after 10:00A.M.  All leave and duty time should be properly entered on the time and attendance roster.

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Tuesday, June 28, 2005 11:34 AM |
| **To:** | Lamar, Cynthia A. |
| **Subject:** | T&A roster and SSA-71 |

Regarding the SSA-71 returned to me today, 6-28-05, with an affixed note which states, "Correct the T&A roster & your SSA-71 to reflect 4-1/2 hrs leave for 6-27."  I believe they should reflect a total leave time of

1

4-1/4 hours:  from 9:30 to 10:00 (1/2); 12:20 to 4:05 (3-3/4).
Nonetheless, thank you for allowing me the opportunity to add 1/4 hour
to the stated forms.

DX 38

AUG-19-2005  10:05     CRED SEFSC

DEFENDANT'S
EXHIBIT
38

PENGAD 800-631-6989

## INDIVIDUAL EEO DISCRIMINATION COMPLAINT FORM

You may use the form below to file your complaint. Use of the form is not required. However, to file a discrimination complaint, you must submit a copy of the EEO Counseling Report, including all attachments.

1. Complainant:

BERNETHIA JohNSON
Name

Social Security Number

225 Garden Homes Cir.
Home Address – Street, RD, P.O. Box

Montgomery, AL 36116
City, State Zip Code

Home Phone  : Area Code ( 334 ) 284 - 8590

Business Phone: Area Code ( 334 ) 223 - 7077 ext 3052

2. Complainant's Representative:

_____
Name

_____          _____
Business Address – Street, RD, P.O. Box                City, State Zip Code

Business Phone: Area Code (_____) _____ - _____

If representative is employed by SSA, state where and give telephone number to be used during normal working hours.

3.    I wish to file a formal EEO Complaint, a copy of the completed EEO Counseling Report outlining the issues and bases in my complaint is attached.

4.    I have / have not (circle one) filed a complaint under the negotiated grievance procedure or filed an appeal with the Merit Systems Protection Board on the same issues(s)

5.    I am / am not (circle one) interested in participating in the Agency's ADR Process.

Bernethia T Johnson
Complainant's Signature

8.9.05

AGGRIEVED'S NAME:     Bernethia Johnson     SSN: ~~██████~~

## SOCIAL SECURITY ADMINISTRATION
## EEO COUNSELING REPORT

| 1. TO:<br><br>Heriberto Sanabria, Director<br>Social Security Administration<br>Civil Rights & Equal Opportunity/<br>Diversity & Adjudicative Services<br>61 Forsyth Street, SW<br>Suite 22T 60<br>Atlanta, GA 30303 | 2. FROM:<br><br>Paul William Ellis,<br>EEO Counselor<br>Social Security Administration<br>Civil Rights& Equal Opportunity/<br>Diversity& Adjudicative Services<br>Southeastern Program Svc Ctr<br>2001 12th Ave North<br>Birmingham, AL 35285-<br>0001 | 3. DATE COUNSELING FIRST SOUGHT:<br><br>06/29/05<br><br>4. DATE OF FIRST INTERVIEW:<br><br>06/30/05 |
|---|---|---|
| 5. AGGRIEVED'S (Employee/Applicant)<br>    NAME:         Bernethia Johnson<br>    ADDRESS:     225 Garden Homes Circle<br>                        Montgomery, AL 36116<br>    TELEPHONE:  334-223-7077 X3052 work<br>                        334-284-8590 Home<br>    SSN:             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<br><br>POSITION/TITLE:     Legal Assistant<br><br>SERIES/GRADE:     962/GS-8 | 6. ORGANIZATION AND ADMINISTRATIVE CODE:<br>(Where the alleged discriminatory act occurred)<br><br>Social Security Administration<br>Office of Hearing Appeals<br>3381 Atlanta Highway<br>Montgomery, AL 36109<br><br>TAH-F4Z26 | 7. CHECK IF AGGRIEVED ELECTS REPRESENTATIVE:<br><br>☐<br><br>REPRESENTATIVE'S NAME, ADDRESS:<br><br><br>EMPLOYEE? ☐ YES   ☐ NO<br><br>TELEPHONE: |

| 8. TYPE OF DISCRIMINATION (Basis) – Select from one or more of the following: | | 9. MATTER CAUSING COMPLAINT (Issue) – Select from one or more of the following: | |
|---|---|---|---|
| ☐ Age (in years):<br><br>____ DOB: ____ | ☐ Race – Black<br>☐ Race – White | ☐ Assignment of Duties<br>☐ Awards | ☐ Reassignment<br>☐ Reinstatement |
| ☐ Color | ☐ Race – Amer. Indian | ☐ Conversion to FT/CC | ☐ Reprimand |
| ☐ Mental Disability | ☐ Race – Asian/Pac. Is. | ☐ Duty Hours | ☐Non-Selection |
| ☐ Physical Disability | ☐ Race – Other | ☐ Evaluation/Appraisal | ☐ Retirement |
| ☐ National Origin –<br>     Hispanic | ☐* Other: ____ | ☐ Examination/Test<br>☐ Initial Appointment | ☐ Separation<br>☒ Harassment (Non-Sexual) |
| ☐ National Origin –<br>     Other | *Sexual Orientation;<br>Marital Status; Parental<br>Status; Political<br>Affiliation; Conduct<br>Which Does Not<br>Adversely Affect<br>Performance | ☐ Pay (Including Overtime)<br>☐ Equal Pay Act<br>☐ Promotion | ☐ Sexual Harassment<br>☒ Suspension<br>☐ Time/Leave Attendance |
| ☐ Sex – Male<br>☐ Sex – Female | | ☐ Reasonable Accommodation<br>     (Disability) | ☐ Training<br>☐ Work Conditions |
| ☐ Religion<br>☒ Retaliation/Reprisal | | ☐ Reasonable Accommodation<br>     (Religion)<br>☐ Demotion | ☒ Other: Disparate<br>Treatment |

(handwritten, vertical, right margin) 2005 SSA. OCREO 8

(handwritten) * "Complaint amended via telephone call 8/11/05 with Aggrieved to add suspension as an issue"

| 10. HAS AGGRIEVED FILED A GRIEVANCE?   ☐ YES   ☒ NO     IF YES, GIVE DATE:<br>        STATUS IF GRIEVANCE FILED: |
|---|

Form SSA-675 (February 2005)                    1

Exhibit 02
Page 1 of 27

VED'S NAME:                    Bernethia Johnson                SSN:

AGGRIEVED FILED AN APPEAL WITH THE MERIT SYSTEMS PROTECTION BOARD?
☐ YES  ☒ NO    IF YES, GIVE DATE:

STATUS IF APPEALED:

11. CHECK HERE IF AGGRIEVED WISHES TO REMAIN ANONYMOUS DURING COUNSELING: ☐

12. DETAILED DESCRIPTION OF COMPLAINT (Include specific allegation(s) with date(s) of occurrence and indicate relief desired).

DATE OF OCCURRENCE:   June 15, 2005

On June 30, 2005, I Paul William Ellis, EEO Counselor, talked with Ms. Bernethia Johnson, Aggrieved, to discuss her EEO complaint based on Retaliation/Reprisal. After explaining the basic facts of the EEO process, advising her of her rights and offering her the opportunity to participate in the Alternative Dispute Resolution (ADR), which she declined, I asked that she give me a basic outline of the issue at hand.

Ms. Johnson alleges that she is being harassed (non-sexually) and being subjected to disparate treatment by Ms. Cynthia Lamar, Group B Supervisor. According to Ms. Johnson, Ms. Lamar gave her a proposal to suspend stating that Ms. Lamar had given Ms. Johnson an oral warning for inappropriate conduct toward a supervisor. Ms. Johnson said she never received an oral warning. Ms. Johnson would like to know what date the oral warning was given; what was the inappropriate conduct, along with the date and time; if she asked for union representation, and if so, did Ms. Lamar deny her union representation.

Ms. Johnson stated that on June 7 she went into Ms. Lamar 's office for assistance with a case. Ms. Lamar asked her to leave the file and Ms. Johnson agreed to leave it after making a copy, according to Ms. Johnson. According to the memo dated June 13, 2005, Ms. Johnson forcefully gestured her erect middle finger toward Ms. Lamar's face in a "malicious and vindictive manner." (See Attachment #1) Concerning the gesturing with the middle finger, Ms Johnson stated that she denies this ever happening. (See Attachment #2)

Ms. Johnson stated that on June 3, 2005, she went to Mr. Paul Reams, Hearing Offiice Director, to discuss getting a key for the front door. Ms. Johnson said that she closed the door behind her and Mr. Reams told her to open the door because he will be was not allowed to talk to her alone in his office she needed someone in the office with her. Ms. Johnson stated that this is a violation of privacy. Ms. Johnson said she was accused of being violent or 'something like that', and she asked Ms. Linda Tamplin, Union Steward, to go in Mr. Reams' office with her to talk with him.

Ms. Johnson said that she was out for a week due to surgery and on Monday, June 27 she took leave from 9:30 - 10:00 and 12:20 - 4:05p.m.; she miscaluated by 1/4 hour. On June 28, Ms. Lamar asked her to correct the the T & A roster to reflect 4 1/2 hours and returned the SSA-71 (Application for Leave) to Ms. Lamar. Ms. Johnson stated that Ms. Lamar said that she (Ms. Johnson) arrived after 10 a.m. which was not true, according to Ms. Johnson. When Ms. Johnson confronted Ms. Lamar about the time, Ms. Lamar stated that it was on the honor system and that only Ms. Johnson knew what time she

Exhibit D2

Page 2 of 5

AGGRIEVED'S NAME:      Bernethia Johnson                SSN: ▮▮▮▮▮▮

arrived.  Ms. Johnson stated that she was accused of stealing time.Ms. Johnson stated that Ms. Lamar is "just grabbing at anything".

As a redress Ms. Johnson would like to be transferred to Chattanooga, Tennessee as a Legal Assistant at the agency's expense and that the agency purchase her present house.

| 13. AGGRIEVED'S SIGNATURE ACKNOWLEDGING RECEIPT OF RIGHTS AND DESCRIPTION OF ISSUES TO BE COUNSELED: | 14. COUNSELOR'S SIGNATURE (Initial Interview). |
|---|---|
| *[signature]*  7.15.05 | *[signature]*  7/7/05 |
| SIGNATURE AND DATE | SIGNATURE AND DATE |

Form SSA-675 (February 2005)                     3

Exhibit 02
Page 3 of 27

AGGRIEVED'S NAME:    Bernethia Johnson    SSN:    

## 15. CONTACTS DURING EEO COUNSELING INQUIRY:

| DATE(S) OF CONTACT | NAME, TITLE GRADE, TELEPHONE, ADDRESS | ORG. CODE | REASON FOR CONTACT (Aggrieved, Witness, RMO, Personnel, etc.) | TIME SPENT |
|---|---|---|---|---|
| 6/30/05 | Bernethia Johnson Legal Assistant GS - 8 334-223-7077 X3052 225 Garden Homes Circle Montgomery, AL 36116 | TAH-F4Z26 | Aggrieved | 1 Hour |
| 7/19/05 | Cynthia A. Lamar Group B Supervisor GS -13 334-223-7503 SSA/OHA 3381 Atlanta Highway Montgomery, AL 36109 | TAH-F4Z26 | RMO | 1 Hour |
| July 26, 2005 | Paul E. Reams Hearing office Director GS - 14 334-223-7503 SSA/OHA 3381 Atlanta Highway Montgomery, AL 36109 | TAH-F4Z26 | RMO | 1/2 Hour |
| August 1, 2005 | Bernethia Johnson | TAH-F4Z26 | Aggrieved | 1/2 Hour |
| August 1, 2005 | Paul E. Reams | TAH-F4Z26 | RMO | 1/4 Hour |

## 16. INFORMATION DEVELOPED DURING INQUIRY:

On July 19, 2005, I, Paul William Ellis, EEO Counselor, interviewed Ms. Cynthia A. Lamar, Group B Supervisor, where the complainant is presently assigned as a Legal Assistant. I informed Ms. Lamar about an EEO complaint filed by Ms. Bernethia Johnson alleging harassment (Non-Sexual) and being subjected to disparate treatment by Ms. Lamar.

Ms. Lamar stated that there was no harassment or disparate treatment. According to Ms. Lamar during a mid-year review on April 27, 2005, Ms. Johnson was offered the opportunity for Union Representation and Ms. Johnson declined. She had Ms. Johnson's 7B file in her hand and Ms. Johnson asked for the file to copy something; Ms. Lamar was willing to let her see it, but Ms. Johnson snatched it out of her hand and proceeded out the door. Ms. Lamar stated that prior to this incident,

Form SSA-675 (February 2005)    4    **Exhibit** (2)
**Page** 4 of 5

AGGRIEVED'S NAME:    Bernethia Johnson    SSN: 

Ms. Johnson had jerked the telephone receiver out of her hand. While Ms. Johnson was making copies, Ms. Lamar called her supervisor in, Mr. Paul E. Reams, Hearing Office Director. At this time she informed Ms. Johnson that her behavior was inappropriate and would not be tolerated. According to Ms. Lamar, this was an informal statement and she was not trying to document anything, just reminding Ms. Johnson that it was inappropriate behavior.

In regard to the proposal to suspend, according to Ms. Lamar it has not been put in place because Ms. Johnson sent in a rebuttal and a response has not been given at this time. A five -(5) day suspension was proposed because Ms. Johnson had expressed herself in a violent manner, stated Ms. Lamar. According to Ms. Lamar, Ms Johnson forcefully gestured her erected middle finger toward Ms. Lamar's face in a malicious and vindictive manner and walked out of the office. Ms. Lamar stated that she was appalled at this behavior. Immediately, Ms. Lamar went next door to Mr. Reams' office and told him what had happen.

Concerning the Time and Attendance sheet, Ms. Lamar stated that she never talked with Ms. Johnson in person but through email (see attachment #3).

Ms. Lamar stated that she does not have the authority to grant Ms. Johnson's redress.

On July 26, 2005, I, Paul William Ellis, EEO Counselor, interviewed Mr. Paul E. Reams, Hearing Office Director, where the complainant is presently assigned as a Legal Assistant. I informed Mr. Reams about an EEO complaint filed by Ms. Bernethia Johnson alleging harassment (Non-Sexual) and being subjected to disparate treatment by Ms. Lamar.

Concerning the incident in April 2005, Mr Reams stated that he was aware of it and that Ms. Lamar had informed him of what had taken place. According to Mr. Reams, Ms. Lamar was giving Ms. Johnson her midyear evaluation and at the end of the meeting, Ms. Johnson wanted to copy her 7B file. While Ms Lamar was holding the file, Ms. Johnson forcefully snatched it out of her hand and went to copy it. Ms. Lamar came to his office and informed Mr. Reams of the incident and wanted him to come to her office while she talked with Ms. Johnson. According to Mr. Reams, when Ms Lamar told Ms Johnson that she had snatched the file from her hand and that Ms. Johnson needed to treat Ms. Lamar with respect, Ms. Johnson replied, "Cynthia you gave me that folder." Ms. Lamar would say something one way and then Ms. Johnson would say it another way. The oral warning was that Ms. Johnson needed to treat people with respect.

On June 7th Mr. Reams was in his office when Ms. Lamar knocked on the door and entered and told him that Ms. Johnson had given her the finger, according to Mr. Reams. Mr. Reams stated that Ms. Lamar was really astounded at what had happened. Mr. Reams and Ms. Lamar discussed the situation to decide what should be done. Both thought that it was incredible behavior. Neither could think of a time when they had been faced with this kind of behavior. It appears that Ms. Johnson had no courtesy or respect for a supervisor. This was the third time within three months that Ms. Johnson had not shown respect for Ms. Lamar, according to Mr. Reams: once when Ms. Lamar was on the phone and Ms. Johnson had grabbed the receiver from her; second, when Ms. Johnson snatched the 7B file from Ms. Lamar; and third when given Ms. Lamar the finger. It was decided that an employee could not continue to treat a supervisor in a disrespectful manner. A reprimand was discussed, but it was thought that this action was serious enough to warrant a suspension. After discussing this with Labor Relations, it was decided that a suspension would be given.

Mr. Reams stated that the incident on June 7th did not take place as stated by Ms. Johnson; however, he did tell her to leave the door open. This was due to the fact that a series of conversations with Ms. Johnson ended with Ms. Johnson stating that something had happened that he did not recall at all, according to Mr. Reams. Mr. Reams also stated that this occurred not only with him but with other supervisors as well. According to Mr. Reams, in April 2004, Ms. Johnson accused her supervisor of being physically aggressive with her. She stated that he yelled at her and stood close to her and this caused her to feel intimidated. There were two other people in the meeting besides Ms. Johnson and the supervisor; neither said that is what happened, according to Mr. Reams. On April 30, 2004, Mr. Reams met with Ms. Johnson concerning this incident to share his findings with her. Ms. Lamar and a Union Representative was present. After the meeting Ms. Johnson stated that she left the meeting feeling that Ms. Lamar and Mr. Reams had raped her and felt they had terrorized her. Therefore, Mr. Reams stated that he felt that he did not need to put himself in positions of been accused without having someone in the room or the door open, since management is falsely accused of doing or saying something that has not taken place. Mr. Reams feels this will take place again.

Form SSA-675 (February 2005)                5

Exhibit 02
Page 5 of 7

AGGRIEVED'S NAME:          Bernethia Johnson          SSN:

Concerning Ms. Johnson's redress, Mr. Reams does not have the authority to grant her redress. Ms. Johnson requested a hardship transfer on June 29 and Mr. Reams stated that he did write a supporting letter. (See attachment #4).

On August 1, 2005, I attempted to conduct the final interview with Ms. Johnson, she stated she wish to amend her complaint to add suspension as an issue (See attachment #5) and suspension removed from file with back pay to the three days she was suspended. She would also like to add to her redress that if she could not be immediately transferred to Chattanooga, Tennessee that she be transferred to Group A.

On August 1, 2005, I contacted Mr. Paul Reams with Ms. Johnson amendment. Mr. Ream denied granting Ms. Johnson's amended redress.

On August 2, 2005, I talked with Ms. Johnson to give her the final interview. I informed Ms. Johnson that this concluded the informal EEO Complaint Process, I would forward the final EEO Counseling Report and Notice of Rights to file a formal complaint and the interview was concluded.

CHECK HERE IF CONTINUED ON ATTACHED FORM ☐

| 17. DATE OF FINAL INTERVIEW | 18. TOTAL HOURS SPENT COUNSELING: | 19. DATE REPORT SENT OR DELIVERED TO AGGRIEVED: |
|---|---|---|
| August 2, 2005 | 5 Hours | August 2, 2005 |

| 20. SIGNATURE OF COUNSELOR AND DATE OF REPORT | 21. AGGRIEVED ACKNOWLEDGES RECEIPT OF FINAL COUNSELING REPORT |
|---|---|
| _Elvin S_  8/2/05 | _Bernethia J. Johnson_  8·9·05 |
| Signature and Date | Signature and Date |

Form SSA-675 (February 2005)          6

Exhibit 2
Page 6 of 2

# NOTICE OF RIGHTS

Informal pre-complaint EEO counseling is voluntary. It is, however, a mandatory requirement for filing a formal EEO complaint. You must contact an EEO Counselor within 45 calendar days of the incident, decision, event or action giving rise to the complaint. You have the right to remain anonymous during informal EEO counseling. Anonymity may unduly restrict the EEO Counselor in achieving an informal resolution of the claim(s) you have raised. If you choose to remain anonymous, your name will appear only on this form and the EEO Counseling Report, of which only you and the EEO Manager where your counseling matter(s) arose will have a copy. However, if you file a formal complaint there is no right to anonymity and the formal complaint will not be regarded as confidential.

The EEO Counselor is a neutral party in the discrimination complaint process and does not serve as a representative for you or management. You have the right to be accompanied, represented, and advised by a representative of your choosing at every stage of your complaint. You, your representative, and your witness shall be free from restraint, intimidation, interference, coercion, discrimination, or reprisal in the presentation and processing of a complaint, including EEO counseling, or any time thereafter. If you have a representative, it is your responsibility to provide written notice of his/her name, address, and business telephone; and it is also your responsibility to provide written notice of all changes in your representation.

If you do not receive EEO counseling beyond the initial interview, nothing more will be done than that which is reported to you today. If you do receive further EEO counseling, the Counselor will have 30 calendar days from the date of your initial contact to attempt to informally resolve your claim(s). The 30-day period may be extended to 90 days if you agree. On or before the 30th day, the EEO Counselor shall inform you of the right to file a formal discrimination complaint if you have not agreed to an extension.

You have the right to choose between Alternative Dispute Resolution (ADR) and EEO counseling, where the Agency agrees to offer ADR in the particular case. Participating in ADR is voluntary and if both parties (you and management) elect ADR, the pre-complaint process period will be extended to 90 calendar days or until completion of the ADR process. After ADR or EEO counseling is complete, you will have the right to file a formal complaint. If you file a formal complaint, ADR may also be available.

Your or your representative will receive the investigative file within 180 days from the date your formal complaint is accepted, or if your complaint is amended, within 180 days after the last amendment, not to exceed 360 days. You will have 30 days from the date your or your representative receive the file to request a hearing and decision from an administrative judge (AJ) or an immediate final agency decision. Your request for a hearing should be made directly to the appropriate Equal Employment Opportunity Commission (EEOC) office.

## Notice to Members of Collective Bargaining Units

Members of collective bargaining units may be entitled to elect between filing a formal EEO complaint and filing a grievance. If the agreement with your union covers equal employment and discrimination matters, you may elect to file a formal EEO complaint of discrimination under 29 CODE OF FEDERAL REGULATIONS (CFR) PART 1614 or to file a grievance in writing, under the negotiated grievance procedure. **You may not do both.** Whichever one you file first will constitute your election.

When you file a formal discrimination complaint with the Agency; i.e., the Office of Civil Rights and Equal Opportunity, or when you file a grievance with your union, you have exercised your election. Consequently, merely obtaining EEO counseling will not indicate your election of the EEO complaint process instead of the grievance process. However, if the contract with your union allows, you may omit pre-complaint EEO counseling and file your grievance in writing without EEO counseling; or, you may file your grievance in writing while EEO counseling is in progress. In either case, filing your grievance in writing will constitute your irrevocable election to give up the right to file an EEO complaint of discrimination on the same matter, whether or not you allege a protected discriminatory basis. The election to file a formal EEO complaint or grievance, as described, applies only to bargaining unit members; it does not apply to employees who must file grievances under 5 CFR Part 771 and who are not bargaining unit employees.

## Mixed Case Complaint

If you have been subjected to an action appealable to the Merit Systems Protection Board (MSPB), and you believe the basis for that action is discriminatory, you may elect to file a mixed case complaint with MSPB. You have 20 calendar days from the date of the alleged discriminatory act to file a mixed case appeal with MSPB or 15 calendar days from the date of the final counseling interview or 30 calendar days from the date of your initial contact with the EEO counselor. **You may not file both** an MSPB and a formal EEO complaint on the same matter. Whichever one you file first will constitute your election.

Exhibit 02
Page 7 of 5

### Right to File a Civil Action Under the Age Discrimination in Employment Act (ADEA)

If you believe you have been subjected to prohibited age discrimination, you may file either a grievance if appropriate, an administrative complaint, or a civil action in the appropriate U.S. District Court. If you file an administrative complaint based on age alone, you must exhaust the administrative processing of your complaint before filing a civil action; and, the administrative processing and appeal cannot include attorney fees should you prevail. If you elect to file a civil action initially, you must, <u>within 180 calendar days</u> of the alleged discriminatory act, give the EEOC at least <u>30 calendar days</u> prior notice of your intent to sue before filing the civil action.

### Equal Pay Act

You have the right to file directly with a U.S. District Court on claims of sex-based wage discrimination under the Equal Pay Act even though such claims are cognizable under Title VII. (Sex-based claims of wage discrimination may also be raised under Title VII; individuals so aggrieved may thus claim violations of both statutes simultaneously.)

### Right to Court-Appointed Attorney

If you elect to file a civil action under ADEA, Title VII, or the Rehabilitation Act, you may appeal to the U.S. District Court for appointment of an attorney to represent you in the court proceeding. The court may appoint an attorney to represent you and may permit commencement of the civil action without payment of fees, costs or security.

### Privacy Act Notice

### General

This information is provided pursuant to the Privacy Act of 1974 for individuals supplying information for inclusion in a system of records.

### Authority

The authority to collect the information requested by the EEO Counselor is derived from one or more of the following: 42 USC 2000e; 29 USC 633a; PL 95-602 as amended; 5 USC 1303 and 1304; 5 CFR 5.2 and 5.3; 29 CFR 1614.105; and Executive Order 11478 as amended.

### Purposes and Uses

The information supplied will be used to resolve the EEO counseling matter(s) you have raised during counseling. This information may be discussed with designated officers and employees of SSA in order to resolve the matters you have raised. If you file a formal EEO complaint, this form and all enclosures will be made part of your EEO complaint file and will be available to any person having a need to know its contents. Formal complaints are neither anonymous nor confidential. Whether or not you file a formal EEO complaint, this form and enclosures, if any, may be used in a depersonalized manner as a database for program analysis, review, evaluation, and statistics. If you have not chosen anonymity and there is a need to disclose information from your EEO counseling report(s) for reasons other than those which have been cited or for reasons cited in the Privacy Act (5 USC 522 a (b)), your prior consent will be solicited.

### Effects of Non-disclosure

Disclosure of the information sought is voluntary. However, since informal pre-complaint EEO counseling is mandatory, failure to disclose information may result in rejection of the formal EEO complaint in whole or in part.

*The signatures affixed below affirm complainant has been given his/her rights and a notice of ADEA rights.*

Complainant : _____    Date: 7·15·05

Representative : _____    Date: _____

EEO Counselor : _____    Date: 7/7/05

Form SSA-677  (Revised 05/02)                    PAGE 2
(Destroy Prior Editions)

Exhibit 02
Page 8 of 27

AUG-01-2005  11:15          GPA MONTGOMERY

# EXTENSION AGREEMENT

I, Bernethia Johnson, agree to extend the counseling period for no more
than 60 days, from date of my original request for counseling of
06/29/05.

**Reason for Extension:**

Ms. Johnson could not be contacted for final interview.


_____                    8·1· 0 5
Complainant                                       Date


_____                    _____
Representative                                    Date


_____                    8/1/05
EEO Counselor                                     Date


Exhibit 02
Page 5 of 7

TOTAL P.01
TOTAL P.01



**COMPLAINANT'S NAME: Bernethia Johnson**

1. Memorandum – Proposal to Suspend
2. Response to Proposal to Suspend
3. Emails between Ms. Johnson and Ms. Lamar
4. Request for Transfer
5. Suspension

Exhibit 02
Page 1 of 2

DX 39





## SOCIAL SECURITY

### SEP 2 1 2005

CERTIFIED MAIL--RETURN RECEIPT REQUESTED

Ms. Bernethia Johnson
225 Garden Homes Cir.
Montgomery, AL 36116

05-0395-SSA
DOF: 08-09-05

Dear Ms. Johnson:

The Social Security Administration (SSA) has accepted the above-referenced complaint of discrimination, which was officially filed on August 9, 2005.

1.    You claim that based on reprisal, you were subjected to harassment (non-sexual) and disparate treatment when you were suspended from your GS-8 Legal Assistant position for three (3) days from July 25, 2005 through July 27, 2005.

2.    You claim that based on reprisal, you were subjected to harassment and disparate treatment when on June 28, 2005, you were charged an additional ¼ hour of leave for June 27, 2005.

Please be advised that the above claims will be investigated and the complaint will be processed pursuant to the provisions of Title 29 of the Code of Federal Regulations (CFR), Part 1614. The Investigator assigned to the complaint will notify you before the investigation begins. You must cooperate with the Investigator. Your failure to cooperate may result in the complaint being dismissed, pursuant to 29 CFR § 1614.107(a)(7). The enclosed notice provides important information concerning the investigation of the complaint. Please read this notice carefully.

Equal Employment Opportunity Commission (EEOC) Regulation 29 CFR § 1614.106(d) provides for additional claims (amendments) of discrimination. Therefore, if you experience an incident you believe is discriminatory and the incident is like or related to the accepted claims, immediately notify the Associate Commissioner, Office of Civil Rights and Equal Opportunity (OCREO), P.O. Box 17712, Baltimore, Maryland 21235-7712, in writing, if you wish to include the like or related incident in the current complaint. If you want to file a complaint regarding a new incident which is not like or related to the claims identified in the current complaint, please seek counseling within 45 days of the date of the incident.

If a complaint is amended to include a claim that is like or related to an accepted claims, the **180-day** deadline is adjusted so that the investigative file must be received within the earlier of 180 days after the last amendment to the complaint or **360 days** after the filing of the original complaint.

Exhibit 03
Page 1 of 4

If you do not receive a copy of the investigative file and Notice of Rights within **180 days** from the date the complaint was filed, you have the right to request a hearing and decision from an EEOC Administrative Judge (AJ) or the right to file a civil action in the appropriate United States District Court. Within **30 days** of receipt of the investigative file, a complainant has the right to request a hearing and decision from an EEOC AJ or a final agency decision by SSA. You may send a request for a hearing to: District Director, EEOC, Birmingham District Office, Ridge Pk. Pl., Ste. 2000, 1130 22nd St. S., Birmingham, AL 35205-2870.

We have notified the appropriate offices and responsible management officials to preserve all existing records pertaining to the complaint.

You may withdraw the complaint at any time during the complaint process by notifying OCREO in writing. If you have any questions regarding the claims identified, please contact Ms. Catherine Jones, Intake and Investigations Team, at (410) 965-6205, **within 10 days** of receipt of this letter. If you do not contact us, we will conclude that the claims have been properly identified.

Sincerely,

Mark A. Anderson
Associate Commissioner
  for Civil Rights and Equal Opportunity

Enclosure

cc:
Heriberto Sanabria
B. J. Thomas

Exhibit 03
Page 2 of 4

## NOTICE TO COMPLAINANTS REGARDING COMPLAINT INVESTIGATIONS

An Investigator will be assigned to conduct an investigation of your complaint(s). The Investigator will contact you to obtain a statement of your claim(s) and legible copies of any pertinent documents which you possess. You should have these materials ready. Moreover, if there are persons who can provide relevant information concerning your claim(s), you should have available their full name, position, office location and telephone number, as well as a summary of the information which they could be expected to provide. The Investigator will determine which interviews and documentation are necessary; unduly repetitious or immaterial testimony and/or documentary information will not be obtained.

Although your disclosure of information is voluntary, your failure to disclose requested information may result in the complaint(s) being dismissed for noncooperation. While you may delegate to a representative the authority to act on your behalf, it is your responsibility to prosecute the complaint(s) in a timely manner. Further, a representative's failure to prosecute the complaint(s) will not excuse you from your obligation to prosecute the complaint in a diligent manner.

It is your obligation to keep the Office of Civil Rights and Equal Opportunity (OCREO) informed of your current mailing address and telephone number to be used for contact during the complaint process. Also, you must notify OCREO, in writing, if you designate a representative or attorney, or change a designated representative/attorney. Failure to keep OCREO so informed may cause a delay in processing the complaint(s) and may, where appropriate, lead to dismissal of the complaint(s). Failure to do so may result in a denial of fees or costs to which an attorney might otherwise be entitled.

The Investigator may obtain testimony under oath or affirmation without a pledge of confidentiality; or, a written statement may be obtained under penalty of perjury. You have the right to be represented during your testimony; however, your designated representative may neither direct the course of the investigation, nor be present during the interviews of other witnesses during the course of the investigation.

The following information is furnished pursuant to the Privacy Act of 1974:

> The authority to collect the information derived from one or more of the following: 42 USC 2000e ff; 29 USC 621 ff; 29 USC 791 ff; 29 CFR Part 1614; 5 CFR 5.2; and EO 11478 as amended by EO 12106.

> The equal employment opportunity discrimination complaint is neither anonymous nor confidential. The information you provide as well as information developed by investigation will be used to resolve or make a decision on your complaint. The information is available to any person having a need to know its contents and may be used for program analysis, review, evaluation and statistics. However, should there be a need to disclose information from the complaint file for reasons other than those cited above, or as stated in the Privacy Act, 5 USC 552a(b), and in the routine uses published in the Federal Register, Vol. 47, No. 198, October 13, 1982 (pages 45743-45772), your prior consent will be solicited.

Upon completion of the investigation, the EEO office will furnish you with a copy of the investigative file (IF) which will contain an investigative summary. Based on the information developed during the investigation, an effort may be made to resolve your complaint(s). If resolution of the complaint(s) is reached, the terms of the settlement agreement will be put in writing and you will be provided a copy. If the complaint is not settled/resolved, you will have 30 days, after your receipt of the IF, to request a final agency decision with or without a hearing. The hearing, if requested, will be conducted by the Equal Employment Opportunity Commission. At each stage of the administrative processing of the complaint(s), you will be notified of all applicable appeal rights to which you are entitled.

If your complaint is based on age discrimination and you decide to pursue the complaint in a United States District Court, please notify OCREO, in writing.

November 1999

Exhibit _B_
Page _3_ of _4_



# SOCIAL SECURITY

### November 3, 2005

### LETTER OF AUTHORIZATION FOR INVESTIGATIVE SERVICES

TO ALL SOCIAL SECURITY ADMINISTRATION EMPLOYEES:

An Equal Employment Opportunity (EEO) discrimination complaint has been filed against Social Security Administration (SSA). Pursuant to the Equal Employment Opportunity Commission (EEOC) Regulation, 29 C.F.R. Part 1614.108 (Investigation of complaints), the following individual is authorized to conduct an investigation for complaint number 05-0395-SSA:

Ms. Darlene K. Duke
EEO Investigator
JDG Associates
27 Scenic Loop
Boerne, TX  78006

The purpose of the investigation is to gather facts upon which to base a determination as to whether the Agency has violated an EEO statute, and if a violation is found, to have sufficient factual information from which to fashion an appropriate remedy. The investigative process is non-adversarial, meaning that the investigator is obligated to collect evidence regardless of the parties' positions with respect to the items of evidence.

The investigator must show picture identification and appropriate security clearance, when necessary, prior to your release of any information or documentation relating to the complaint. You are expected to provide your complete cooperation since the investigator has been given authority to conduct such investigation, inquiry or review into matters raised in an EEO complaint. You are, therefore, required to furnish sworn or affirmed testimony by affidavit, without a pledge of confidence, about matters pertaining to the complaint and to provide access to files/records of SSA when necessary, to answer the complainant's allegations(s). You may have a representative (union or other) present at any time during the investigation if you so desire.

Any information obtained during this investigation is protected by the Privacy Act of 1974 (P.L. 93-5 79). The information will be incorporated into a report of investigation to be distributed to the Agency and the complainant, and possibly the EEOC and Federal appeal and court systems. Information and/or documentation collected by the investigator will be done in accordance with contract requirements.

A complainant who does not provide the information required is advised that such refusal can result in termination of the investigation process and possible dismissal of his/her complaint. A Federal employee who does not provide the information requested is advised that such refusal may result in disciplinary action. In either situation, the investigator will advise the appropriate EEO official of such refusal(s). The EEO official will attempt resolution of such action(s) and advise the investigator of the result of his/her efforts.

Mark A. Anderson
Associate Commissioner
for Civil Rights and Equal Opportunity

Exhibit 03
Page 4 of 4

DX 40

**Johnson, Bernethia**

PENGAD 800-631-6989

40

| From: | . | Johnson, Paul Whitson  OHA Montgomery HQ |
|---|---|---|
| Sent: | | Friday, October 17, 2003 3:45 PM |
| To: | | Johnson, Bernethia |
| Subject: | | Denial of voting leave |

Bernethia, I received your request for 1 hour of voting leave this week.  Paul Feams did not approve voting leave for Tuesday's city election.  Please see the time roster & your leave slip to note the changes that I made b/c of the denial of leave.  Let me know if you want to change the type of leave that was charged or have any questions.

Paul J.

1

# APPLICATION FOR LEAVE

**INSTRUCTIONS:** Please complete items 1-8 after reading the Privacy Act Statement shown below.

SSA-71 (12-98)
Approved Exceptions SF-71

**1. Name** (Print or type—Last, First, M.I.)

Johnson Bernethia

**2. Employee I.D. Number**

**3. Organizational Unit**

OHA

| | 4-A | Month | Day | Hour | A.M. / P.M. | 4-C Total Number of Hours |
|---|---|---|---|---|---|---|
| 5. I hereby request: (If more than one box is checked, explain in item 6, Remarks): | FROM: | 10 | 14 | 9:30 | A.M. | |
| | 4-B | Month | Day | Hour | A.M. / P.M. | |
| | TO: | 10 | 14 | 11:00 | A.M. | 1 1/2 |

☒ **Annual Leave.** (Annual leave requested may not exceed the amount available for use during the leave year.)

☒ **Sick Leave.** (Complete reverse side of form.)

☐ **Leave Without Pay.**

☐ **Compensatory Time.**

☒ **Other** (Specify) Leave Granted 10:30 - 11:00 Annual Leave

**6. Remarks** 9:30-10:30 Voted HR Admin

**7. Employee's Signature**

**8. Date** (Month, Day, Year) 10/14/03

---

## OFFICIAL ACTION ON APPLICATION

☒ **Approved** ☐ **Disapproved** (If disapproved, give reason. If annual leave, initiate action to reschedule.)

no voting leave granted by HR/Admin

**Signature** (Annual leave approved may not exceed the amount available for use during the leave year.)

**Date** (Month, Day, Year) 10/14/03

---

**1. Name** (Print or type—Last, First, M.I.)

Johnson Bernethia

**2. Employee I.D. Number**

**3. Organizational Unit**

OHA

| | 4-A | Month | Day | Hour | A.M. / P.M. | 4-C Total Number of Hours |
|---|---|---|---|---|---|---|
| 5. I hereby request: (If more than one box is checked, explain in item 6, Remarks): | FROM: | 10 | 15 | 7:30 | A.M. | |
| | 4-B | Month | Day | Hour | A.M. / P.M. | |
| | TO: | 10 | 15 | 4:45 | P.M. | |
| | | | | | | 1 3/4 |

☒ **Annual Leave.** (Annual leave requested may not exceed the amount available for use during the leave year.)

☐ **Sick Leave.** (Complete reverse side of form.)

☐ **Leave Without Pay.**

☐ **Compensatory Time.**

☒ **Other** (Specify) C.H.

**6. Remarks**

FROM: 10:00 A.M.
TO: 6:00 P.M.

**7. Employee's Signature**

**8. Date** (Month, Day, Year) 10/15/03

---

## OFFICIAL ACTION ON APPLICATION

☒ **Approved** ☐ **Disapproved** (If disapproved, give reason. If annual leave, initiate action to reschedule.)

**Signature** (Annual leave approved may not exceed the amount available for use during the leave year.)

**Date** (Month, Day, Year) 10/15/03

DX 41

Bernethia T. Johnson

225 Garden Homes Circle
Montgomery, AL 36116



August 9, 2004

Ms. Gloria Bozeman
61 Forsyth Street S.W
Suite 20T10
Atlanta, GA 30303

Dear Ms. Bozeman:

I Bernethia T. Johnson, ~~███████~~, OHA, Montgomery, AL (334) 223-7077, ext. 3052, request that I be granted an immediate transfer.

Since my initial EEO action against the agency in 1997 and my being a former union steward at this location, management has increasingly been hostile to me. I find myself constantly seeking fair treatment from management and quietly accepting their harassment strategies. This is my third EEO action; I believe that only way I will escape retaliation and unfair treatment is to leave OHA Montgomery.

Though I have mentioned hostile work environment to my former supervisor, Mr. Paul Johnson, the root of the hostile work environment lies within management. The hostile work environment has risen to a new height to the point that I am extremely frightened by management. Trying extremely hard to overlook management's accusations, plots, and their unfair treatments, it has now come to the point where it affects my ability and my health.

Through their masked depiction, I am made to look as though I do not pull my share of workload. (This information will be disclosed at the upcoming EEO hearing.) According to a local policy, I had the right to work at home two days weekly out of the month of April 2004, to perform front desk duties. On April 12, 2004, I requested to work at home on Tuesday and Wednesday, but the request was denied by Mr. Paul Johnson, former supervisor. Mr. Paul Reams, Hearing Office Director, spoke with me about the incident. After he spoke with Labor Management Relations on April 13, he rectified the April 12, 2004, event. See exhibit 1. Ms. Cynthia Lamar, current supervisor, issued me cases and informed me that I did not have to wait until Fridays to get cases.

On April 19, I went to Ms. Cynthia Lamar, current supervisor, person in charge of issuing cases for the month of April to get additional cases. Mr. Johnson was in her office and made statements against me being issued cases on Monday, April 19, instead of Friday, April 16. getting cases issued to me on that day. I told him that it was not a problem and I declined to work at home. After I reviewed the cases that were currently assigned to me, I returned to Ms. Lamar's office and informed them that I had decided to

1

Exhibit 18
Page 59 of 65

Bernethia T. Johnson

work at home with the cases that were in my possession.

While in the process of typing the event that had occurred earlier in Ms. Lamar's office, Mr. Johnson stood behind me and in a loud and harsh voice called out my name. Because of the tone of his voice, fear did not allow me to turn around to face him. Nonetheless, he began to question me and demanded that I return to Ms. Lamar's office. I returned with a union official.

On April 20, 2004, in the presence of a union official, I informed the director that I had called regional seeking safety measures, and I informed him of the April 19 incident. I requested that Mr. Johnson control his emotional behavior. Mr. Reams informed me that he would conduct an investigation.

As a result of the investigation (exhibit 2), a meeting was held on April 30, where Ms. Lamar and Mr. Carl Warren (via telephone) was present, I received an oral warning for insubordination for refusing to answer question(s) asked by Mr. Johnson. The questions asked by Mr. Johnson and Ms. Lamar were answered through a union official that was present at the meeting (exhibit 3). At the conclusion of the meeting after Mr. Warren had hung up the telephone, I was directed by Mr. Reams to stay in the hearing room.

Upon Mr. Reams continual conversation with me, I immediately and repeatedly asked for union representation but was denied the Weingarten Rights (see exhibit 4) through Mr. Reams action(s). I became extremely fearful and was tremendously stressed at being hemmed in the hearing room alone with two management officials. Finally after asking approximately four to six times for representation, I began to speak out loudly as I wrote a letter (exhibit 5) regarding Mr. Reams denying me the Weingarten Rights. I was allowed to go to the restroom. While being momentarily free from the hearing room, I made copies of the letter and presented a copy to each of them to sign; both declined. It was only then that Mr. Reams, in an exceedingly s—l—o—w motion reached for the telephone to contact Mr. Warren, while he repetitively asked me the same question as to whether I was sure that I wanted representation.

I relentlessly answered his cyclical questions until I became annoyed and gave no response. Mr. Reams reminded me that I failed to answer his questions in a tone that implied that he had the authority to issue me disciplinary actions at a more progressive level. I told him that this scenario was similar to the one that had occurred in Ms. Lamar's office with Mr. Johnson. Therefore, to prevent receiving other disciplinary actions, I was FORCED to respond to each of Mr. Reams posed questions without union representation. I turned and asked Ms. Lamar to tell Mr. Reams what she told me last week about getting cases. She repeatedly replied to me, "You tell me what I said. When I mentioned about getting cases other than on Fridays, she stated that she had "no recollection."

The intimidation continued until he gave me permission to leave. I was very shaken and

2

Exhibit 8
Page 55 of 269

Bernethia T. Johnson

distressed about what had happed. I was mentally terrorized and abused by Mr. Reams and his accomplice, Ms. Lamar. I walked out of that hearing room feeling as though I had been abducted and raped all over again, but not by a stranger but by well known and respected management.

On May 3, 2004, I presented Mr. Reams with a medical statement issued from my physician,, Dr. Davis. Mr. Reams declared it as "unacceptable." Therefore, upon returning to my physician's office on May 4, 2004, to get an "acceptable" medical statement (exhibit 6), I was informed that the statement previously given to me was a statement issued to all of Dr. Davis' patients when needed. Nonetheless, they would gladly meet Mr. Reams' demand. This clearly exemplifies harassment and shows unfair treatment.

On May 27, 2004, I was issued a reprimand (exhibit 7) by Mr. Reams where he presented no evidence of what was being discussed. Throughout the meeting I repeatedly asked for case histories. He continued to badger me and insisted that I admit to cheating as all other employees do when caught. Later that day, I told Ms. Monique Caffey, management has terminated her, about my reprimand. She presented me with copies of documents that she had recently given to management of audits she conducted (exhibit 8). I presented these documents to Mr. Reams and asked if these were what he was referring to in the meeting. He reviewed them and stated that he would give me case histories by close of business the next day.

On June 3, 2004, Ms. Caffey and I went to lunch together. I was amazed to learn that employees could tell me what time Ms. Caffey and I left going to lunch and the time that we returned. Shortly after returning from lunch, Ms. Caffey was given a "Proposal to Terminate. I believe management's action steamed not only from the documents I presented to Mr. Reams but also from the documents that Ms. Caffey had given me (exhibit 9).

On June 21, 2004, a meeting with Mr. Reams, a union official, and myself was held. In the opening of the meeting , Mr. Reams admitted that the evidence he thought he could used was deemed "unreliable (exhibit 10)." He stated that since it was "unreliable" he would go back to the supervisors for new evidence. He stated that some of the case histories he had given to me on May 28, were not of cases that were on my desk, but were gathered from a computer research that he had conducted. To this day, he has not yet differentiated between the cases that were supposed to have been found on my desk in RTH category opposed to those cases that were not on my desk, but derived from his computer research. The evidence he deemed "unreliable" is the evidence he used to issue me the reprimand.

Although, for some unknown reason, I am no longer able to produce snapshots from the "general and summary property profile." Therefore, I produced tables for each legal assistants and lead case technicians, along with some cases that were created by the computer administrator which contains similar information for which Mr. Reams has given

3

Bernethia T. Johnson

me a reprimand.

I have been singled out, discriminated, and disciplined in a matter that the computer system clearly shows the histories of other employees that work-up cases are similar to the case histories of cases worked by me. Because I have limited knowledge of the computer arena, I requested that the computer administrator and the director explain the difference in the findings of **creation date and date created**. Unfortunately, they were unable to give any explanation. As of this date, no explanation has been given. A review of the information I gathered from the profile shows that some exhibits were created in 2003 while the **date of creation were** dated in the 2004. I informed management that although I did not like speculating; all I could do was speculate; too much time had elapse for me to try to detail the histories of the cases Mr. Reams presented.

At this point, Ms. Lamar has prohibited me to communicate with her by e-mail. She has informed me that she "will not communicate to me by e-mail." I informed her that I had discussed the matter with Mr. Carl Warren, union official, but was informed to do so anyway. I fear that because if I e-mail Ms. Lamar, I may at anytime be call into another meeting with management officials and be issued a more progressive disciplinary action for failing to adhere to direct order(s).

Ms. Lamar makes appointments with employees which apparently overrides those employees waiting to speak with her at her door. In June, while waiting outside of Ms. Lamar's door, Ms. Barnett-Jefferson walks up and ask me if I am waiting for Ms. Lamar. I replied, "yes." Ms. Barnett-Jefferson is asked to come into Ms. Lamar's office and Ms. Barnett-Jefferson shuts the door in my face. Although I knock on Ms Lamar's door and informs her that I was waiting to speak with her first. She informs me to return to my desk and that she will talk with me later. Later, Ms. Lamar informs me that Ms. Barnett-Jefferson had made an appointment with her and that appointments take precedence over non-appointment employees.

This office is known for employees hemming one another in corners, taking other employees property and hiding it. I believe it is no different with my work; coming up missing, moved from one location to another, and things being planted on my desk. Because of the afore mentioned, I can no longer pride myself on keeping up with cases that were/are assigned to me. It appears that nearly several times weekly I find myself spending hours or even days searching for my assigned cases.

I also believe that a part of management's retaliatory actions against me stem from when I was union steward of this local agency. Numerous times when there were unresolved conflicts between local management and the local union, the conflicts were presented to next level in the American Federal Government Employee (AFGE) . The majority of the time, management were found at fault and had been made by AFGE to cease and desist their unfair labor practices and activities, such as pre-selection, setting employees training time, and following AFGE national agreement. It is useless for me to

4

Exhibit
Page ___ of ___

Bernethia T. Johnson

report anything to management, because it seems to always backfire. Even when employees do not complete their work process and when management is made aware of employees incompleted work process, I am made to complete it or I am told to overlook it.

On July 21, 2004, while working at my Alternate Duty Station (ADS), the July 20, 2004, Serial Overtime or Holiday Work Attendance Roster, was found intermingled with my case workload. I don't know how it got there, but I believe it was planted. Nonetheless, I returned it to management.

As recent as Friday, July 23, 2004, as I passed Ms. Warner's desk leaving for lunch, we glimpsed at one another. I existed to the employees' pack parking lot located behind the building. As I was leaving the facility in my car with the windows rolled down, I heard a click. Looking in the direction of the click, I saw Ms. Warner standing in the front of the building with a camera to her face. Because she stood next to the security guard, Mr. Bobby, I telephoned him and asked why did she take my picture. He was uncertain as to why she had taken the picture but stated that she did take it. Because I felt uncomfortable about this situation, I reported this matter to my supervisor, Mr. Brown.

I am being constantly discriminated and harassed beyond measures. Although in the redress of my initial EEO action, I request that there be no retaliation from management, this I find is a non-applicable request. I would prefer to work comfortably without wondering about management's next scheme. I believe I will always receive harassment and unfair treatment and that I will continue to be disadvantaged even by the assignment of work. With the way local management has rigged its environment, it is impossible for me to prove my worth to the Social Security Administration, Office of Hearings and Appeals, Montgomery. I am a good employee with good potential but all have been masked by management. Therefore, with all said, I believe the only thing that is left for me to do is to request an immediate hardship transfer to Office of Hearings and Appeals, Atlanta, North, GA.

I have enclosed a copy of a letter dated July 21, 2004, from Dr. Smith, enclosure 1, and a copy of my application, enclosure 2. Please give this matter your immediate attention and your assistance in this matter is indeed greatly appreciated.

Sincerely,

*Bernethia J. Johnson*
Bernethia T. Johnson
Legal Assistant

5

Exhibit
Page

TOTAL P.05

DX 42





# SOCIAL SECURITY

## MEMORANDUM

Date:    October 7, 2004April 6, 2006                    Refer To: Request for
                                                          Hardship Transfer

To:    Bernethia Johnson
       Legal Assistant
       OHA – Montgomery, AL

From:  Gloria Bozeman
       Regional Management Officer
       OHA – Region IV

Subject:   Request for Hardship Transfer - Response

This is in response to your request for hardship transfer to the Birmingham Hearing Office (HO).
Your initial request was to the Atlanta North HO and you subsequently changed your request to
Birmingham. I wish to express my regret in the delay in responding to your request.

In addition to an employee's reason(s) for the request, one of the fundamental factors I consider
in reviewing any request for hardship transfer is the workload and current staffing of both
affected HOs. Currently, the Birmingham HO has an adequate number of staff to meet Agency
goals and mission. The ratio of Legal Assistants (LAs) to ALJs is 2.18 in Birmingham.
Conversely, the Montgomery HO has a ratio of 1.55 LAs to ALJs. It is apparent that
Montgomery has a greater need for LAs than Birmingham.

Relative to your statements that your local management team has created a hostile work
environment, I requested a response from your Hearing Office Director to these concerns. A
careful review of the response did not disclose a conclusion that a hostile work environment in
fact exists in the Montgomery HO. If you have additional evidence to substantiate your claim of
a hostile work environment, I would strongly encourage you to submit it to the Regional Office.
I will be happy to review any documentation you may have in support of your claim.

Unfortunately, I am unable to honor your request to transfer to the Birmingham HO at this time.


                                    /s/
                              Gloria Bozeman

DX 43

## Johnson, Bernethia

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Friday, October 08, 2004 4:02 PM |
| **To:** | Bozeman, Gloria |
| **Subject:** | Immediate Transfer Request to Atlanta North HO |



Immediate Transfer
Request to ...



43

Bernethia T. Johnson
225 Garden Homes Circle
Montgomery, AL 36116

October 8, 2004

Ms. Gloria Bozeman
Regional Management Officer
OHA -- Region IV

Dear Ms. Bozeman:

Thank you for your response to my hardship transfer request to Birmingham Hearing Office (HO). In early August 2004, I contacted Atlanta North's Hearing Office prior to submitting my initial hardship transfer request. I spoke with Verley Spivey, Hearing Office Chief Administrative Law Judge (HOCALJ), regarding transferring to the Atlanta North office. He designated Ms. Kathy Palmer, Supervisor, to contact me for further discussion. Ms. Palmer revealed to me the shortage of legal assistants in their office and also stressed their office's need for additional employees. Actually, a legal assistant was in the process of relocating to California at that particular time.

After receiving an unfavorable response for a hardship transfer request to Birmingham on yesterday, I once again contacted Atlanta North HO. While waiting to speak with Ms. Palmer, I spoke to another employee who informed me that effective October 15, a legal assistant will be leaving Atlanta North's HO moving to Texas. Nonetheless, upon speaking with Ms. Palmer, I asked whether there was still a need for legal assistants in their office. She stated, "We definitely still need people. We have lost people and have not replaced them." She further stated that I would have to get the approval from your office, region IV. Resulting from their office's "strong need," Ms. Palmer stated that they would have no problem justifying the need to have me on board.

Also, in your response, you stated that your "careful review" of management's response did not reveal a conclusion that a hostile work environment exists in the Montgomery HO; however, that does not change my current retaliatory/hostile environment situation. I believe that I should have the right to know management's response; therefore, please fax me a copy at your earliest convenience. Since it is the expertise of EEOC to discern such matters, I have elected to use SSA's prescribed EEO process in an attempt to bring the retaliatory/hostile environment to an end; it has been going on entirely too long.

Last and most important, I am **DESPERATELY PLEADING** to you for relief from the unwarranted and unfair practices and treatments occurring at Montgomery HO. **PLEASE** grant me an **IMMEDIATE** transfer to the Atlanta North's HO where there is "still" a need for legal assistants. I have two extremely wonderful daughters, and I certainly would not want Montgomery HO tactics jeopardizing my future with them. Based upon the information I have addressed, I request that the regional office honor my request for an <u>IMMEDIATE HARDSHIP TRANSFER</u> to Atlanta North HO.

Your effort, immediate attention, and compassion during this apprehensive time is intensely appreciated.

Sincerely,

/s/

Bernethia T. Johnson

```
**************** -IND. XMT JOURNAL- **************** DATE OCT-08-2004 ***** TIME 16:26 ********
```

```
        DATE/TIME       = OCT-08-2004 16:24

        JOURNAL No.     = 06

        COMM.RESULT     = OK

        PAGE(S)         = 002/002

        DURATION        = 00:00'40

        FILE No.        = 107

        MODE            = MEMORY TRANSMISSION

        DESTINATION     = 912052527787

        RECEIVED ID     =                    /

        RESOLUTION      = STD
```

```
                                          -OHA MONTGOMERY
**************************************** -334 223 7069   - ***** -            - **********
```

DX 44



This is a transcript of the message left by Ms. Bozeman on October 7, 2004.

"Bernethia:

This is Gloria Bozeman and I owe you an absolute apology. When you called me yesterday and I was really busy and          and didn't get out of here until late and I knew that everybody was gone so I said I would call you this morning. Ah, after I talked with the staff, to get a copy of the reply that we had sent you, only to discover that this morning when I finally caught up with someone that it never came out to you. Ah, they had done the staff work on it and brought me the memo a while back, and ah you know you had raised some concerns about management and things that was said and done and I said we need to find out from management what actually happened from their prospective on this because I want to respond to this.

And ah anyway I sent it back to the staff and said go ahead and get that done and get a reply out if I am not in the office. Presuming that you had gotten a reply, I was confident that you had. So ah, this morning I got up with the supervisor and said give me a copy because Bernethia is calling me on something else and only to discover you had not gotten a reply. So I have told them today by 4:00 I will sign a reply out to you and I do apology.

I, I, you know I don't like this ah failing to be responsive to people. So at any rate, you will get something today and please accept my apology. It is no way we should have taken this long to get it done. Take care."

DX 45

**Johnson, Bernethia**

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Tuesday, November 16, 2004 5:37 PM |
| **:** | Bozeman, Gloria |
| **Subject:** | Follow-up to my Request to Transfer to Atlanta North OHA |

On October 7, 2004, I received your response for my request to transfer to Birmingham OHA.  On October 8, 2004, I requested an immediate transfer to Atlanta North via e-mail.  Approximately three weeks ago, upon contacting your office to ask for the status of my request, I was told that Mrs. Sheila Parsons would call me back.  Currently, I have not heard from her.  It is my understanding that a response is usually given at a minimum of two weeks after a transfer request is made.

Since my second request, another violent incident has occurred.  An employee has threatened to bring a gun into this organization to shoot employee(s).  This confirms the hostile work environment that I previously mentioned to you in my initial request.

I am desperately seeking a lateral transfer to Atlanta North OHA to escape the hostile work environment.  Although I have worked for the Federal Government for 30 years which includes time spent in the United States Armed Forces, I have never encountered the high level of hostility in any United States Federal Government work place as to what has occurred here in Montgomery OHA.   Therefore, I am requesting that an immediate transfer be granted.  Please notify me about my immediate transfer request.  Your immediate attention to this matter is to the highest degree appreciated.

Sincerely

/s/
Bernethia T. Johnson

1

DX 46

**Johnson, Bernethia**

PENGAD 800-631-6989

46

From:       Reams, Paul E.
Sent:       Monday, November 08, 2004 5:05 PM
To:         Johnson, Bernethia
Subject:    RE: request for a statement

To:     Bernethia Johnson
From:   Paul Reams

One of the jobs of management is to investigate disputes between employees. You have made statements to our security guard about an employee who is a party to an incident that I am currently investigating, which involves the safety and security of the staff. Arriving at the facts in such a situation often depends on the cooperation of employees who have knowledge of the events being investigated. I regret that you choose not to cooperate.

-----Original Message-----
From:       Johnson, Bernethia
Sent:       Monday, November 08, 2004 12:23 PM
To:         Reams, Paul E.
Subject:    RE: request for a statement

1. Although at numerous times in the past, I have informed management of the hostile work environment that exists at Montgomery OHA, but management has clearly identified these incidents as merely "isolated." The most recent incident occurred around June 2004. I informed Paul Johnson and Mr. Jimmy Brown about my being harassed on the job by Beverly Warner, i.e., her taking my picture and being in my work area and of promises to do me bodily harm. As you are well aware that shortly after my reporting the incident to management, Beverly turned herself into the Montgomery authority for beating her teenage daughter. Nonetheless, in Paul Johnson's and my present, Tameka Watkins verbally corroborated a statement that I had made to Paul Johnson. In Judge Thigpen's hearing room, Paul Johnson asked me to not get Tameka involved because she was so young and a student.

The former security guard, Mr. Bobby Hudson, was asked to come into Judge Thigpen's hearing room, and he too validated a statement different from that of Tameka's statement. Was this matter ever investigated? I have not heard from management regarding the matter. Please enlighten me.

2/ As you are aware, I am desperately trying to leave this hostile environment and am currently awaiting a reply to my request for an emergency transfer.

2. In regard to the subject matter, I have no statement.

/s/

Bernethia Johnson

-----Original Message-----
From:       Reams, Paul E.
Sent:       Friday, November 05, 2004 4:32 PM
To:         Johnson, Bernethia
Cc:         #AT AL OHA Mon Mgt Team
Subject:    request for a statement

Bernethia,

The management of the Montgomery OHA is gathering statements from all parties involved in the incident between Valerie Cooper and Tresalyn Collier. You are involved in this investigation because you have, on at least two occasions, told the security guard in this office that Valerie Cooper represented a threat to an employee in this

1

**Johnson, Bernethia**

| | |
|---|---|
| From: | Reams, Paul E. |
| Sent: | Friday, November 05, 2004 5:32 PM |
| To: | Johnson, Bernethia |
| Cc: | #AT AL OHA Mon Mgt Team |
| Subject: | request for a statement |

Bernethia,

The management of the Montgomery OHA is gathering statements from all parties involved in the incident between Valerie Cooper and Tresalyn Collier. You are involved in this investigation because you have, on at least two occasions, told the security guard in this office that Valerie Cooper represented a threat to an employee in this office. Please write out a statement explaining why you think that Valerie is a threat, and also if there are other employees who may be able to furnish information relevant to this investigation. I would also like to know if you have any suggestions concerning the proper way to respond to this threat.

Thank you,

**Paul Reams**
**Hearing Office Director**
**Montgomery, Alabama**

1

**Johnson, Bernethia**

**From:**            Johnson, Bernethia
**Sent:**            Tuesday, November 16, 2004 9:57 AM
**:**                'lightsalt@charter.net'
**Subject:**         followup

This e-mail serves as a follow-up of your November 8, 2004, 4:05 p.m. e-mail. On November 10, 2004, I hand delivered to you a letter. This e-mail reiterates the letter as follows:

"Ms. Bernethia T. Johnson
225 Garden Homes Circle
Montgomery, AL 36116

November 9, 2004

Mr. Paul Reams, Director
Montgomery Office of Hearings and Appeals
3381 Atlanta Highway
Montgomery, AL 36109

Dear Mr. Reams:

This letter is in response to your November 8, 2004, 4:05 P.M., e-mail. No one in this office is more concerned about employees' safety than I am. I did give a statement regarding the broader issue. It is clear that management has taken complaints of this nature in the past and has failed to act on them. Therefore, I had no reason to believe that suddenly you cared. So I plead with you to look at the entire environment in the Montgomery Office of Hearings and Appeals for the hostility that exists. The problem is not isolated to this single event.

It is grossly unfair to suddenly take this incident seriously when you have ignored my complaint of an even more serious nature. Having given a complete statement, I regret that I used the phrase, "I have no statement."

Sincerely,

Bernethia T. Johnson"

1

DX 47





# SOCIAL SECURITY

**MEMORANDUM**

Date:     December 3, 2004

To:       Bernethia Johnson
          Legal Assistant
          OHA – Montgomery, AL

From:     Gloria Bozeman
          Regional Management Officer
          OHA - Region IV

Subject:  Request for Hardship Transfer – Response

This memorandum is in response to your request for hardship transfer to the Atlanta North Hearing Office.

We have investigated your allegations and taken signed statements from all parties involved. We have concluded that there is no threat and no basis for the allegations of a hostile work environment in the Montgomery Hearing Office.

In light of the above, we are confident that you will have a safe work environment in the Montgomery Hearing Office. Therefore, at this time, we are taking no further action in reference to your relocation to the Atlanta North Hearing Office.

/s/
Gloria Bozeman

DX 48

**Johnson, Bernethia**

PENGAD 800-631-6989

$48$

| | |
|---|---|
| ⌐rom: | Johnson, Bernethia |
| ent: | Thursday, February 17, 2005 11:32 AM |
| To: | Bozeman, Gloria; Parsons, Sheila; Johnson, Trudy; Belt, Leon; Scott, Betty   OHA Atlanta RO |
| Subject: | Immediate Transfer |
| | |
| Importance: | High |
| Sensitivity: | Personal |

Please allow me an immediate transfer to OHA Atlanta North, GA., for financial and health reasons.  More importantly, this transfer will also allow me to be closer to my elderly and ill mother, and I will be able to give assistance to her in time of her crisis.


/s/
Bernethia T. Johnson
Tracking:

| Recipient | Delivery | Read |
|---|---|---|
| Bozeman, Gloria | Delivered: 2/17/2005 11:32 AM | Read: 2/18/2005 4:40 PM |
| Parsons, Sheila | Delivered: 2/17/2005 11:32 AM | Read: 2/17/2005 11:34 AM |
| Johnson, Trudy | Delivered: 2/17/2005 11:32 AM | Read: 2/24/2005 1:54 PM |
| Belt, Leon | Delivered: 2/17/2005 11:32 AM | Read: 2/22/2005 4:56 PM |
| Scott, Betty   OHA Atlanta RO | Delivered: 2/17/2005 11:32 AM | Read: 2/22/2005 9:31 AM |
| 'lightsalt@charter.net' | | |

DX 49




# SOCIAL SECURITY

## MEMORANDUM

**Date:** February 25, 2005

**To:** Bernethia Johnson
Legal Assistant
OHA – Montgomery, AL

**From:** Gloria Bozeman
Regional Management Officer
OHA - Region IV

**Subject:** Request for Hardship Transfer – Response

This memorandum is in response to your request for hardship transfer to the Atlanta North Hearing Office.

Unfortunately, we are unable to accommodate your request at this time. The Atlanta North Hearing Office has critical staffing shortages in the CT position, not SCTs. Any recruitment strategy is targeted toward CTs. Once we receive our FY 05 staffing allocation, we will be happy to revisit your request.

I regret my response could not be more favorable at this time.

/s/
Gloria Bozeman

DX 50



TO:        Paul R. Reams, HOD
FROM:      Bernethia Johnson
DATE:      June 29, 2005
SUBJECT:   Request for an Immediate Transfer

As you are aware, this is my third attempt to transfer to another
location. I request that I be granted an immediate hardship transfer to
OHA Chattanooga for personal reasons. Your consideration in this matter
is appreciated.

DX 51

JUL-26-2005 14:50     OHA MONTGOMERY



# SOCIAL SECURITY ADMINISTRATION

Refer To:
Bernethia Johnson
Transfer Request



Office of Hearings and Appeals
3381 Atlanta Highway
Montgomery, Alabama 36109
Tel: (334) 223-7503 / Fax: (334) 223-7069

June 30, 2005

Bernethia Johnson has requested a hardship transfer to the Chattanooga office for personal reasons. I understand that she is trying to get closer to her mother who is ill and needs her family to help look after her.

Many of us can relate to the need to look after an aging parent and I fully support the transfer request and I certainly appreciate any consideration given to granting it.

Paul E. Reams
Hearing Office Director

4 - 2

Exhibit 02
Page 25 of 27

DX 52



Ms. Bernethia T. Johnson
225 Garden Homes Circle
Montgomery, AL 36116

August 10, 2005


Social Security Administration
Office of Hearings and Appeals
ATTN: Ms. Gloria Bozeman
61 Forsyth Street
Suite 20T10
Atlanta, GA 30303

Dear Ms. Bozeman:

In responding to your August 2, 2005, letter, where you request that I "forward more specific information concerning your hardship transfer," the following is provided.

You are aware from my initial request for an immediate hardship transfer around August 2004, that there are several uncomfortable reasons why I have requested an immediate hardship lateral transfer. One of the most important reasons at this time is my mother's failing health and my need to assist in caring for her. While my mother was staying with me, in June 2005 she had approximately three strokes, all within one week. She was seen in the emergency rooms at Jacksonville Hospital (AL) and Baptist South Hospital in Montgomery. At these hospitals, the physicians were concerned about the type of medications she had been prescribed of many years. They informed me that it would take at least two weeks of hospitalization for them to study my mother and to regulate her medications. Therefore, it was befitting for me to get my mother back to Tennessee, so that she could receive treatment from her treating physician (Dr. E. Davidson) of many years and who specifically knows of my mother's medical history. Upon getting her back to Tennessee, she was immediately taken to Baptist Hospital where she was admitted and was hospitalized for two weeks under her own treating physician's care. She has numerous health problems and the ones that I am familiar with are: thyroids, stroke (weak on one side of her body from the stroke), diabetes, heart problems, shortness of breath, overweight, tightness around her stomach, legs problem, blind in one eye, and when swallowing her food, she has a tendency of choking. There are other surrounding problems that affect my mother's health, but I believe the information provided is sufficient.

I have been traveling back and forward to Tennessee to give relief to my sister and to give assistance with cooking, washing clothes, shopping for mama's personal needs and giving weekend baths. My sister has recently had open-heart surgery and is in no condition to care for mother.

Should you need additional information regarding my mother's health, I am certain that I can secure the medical evidence needed to accommodate you in making an informed decision about whether the agency will allow me an immediate hardship lateral transfer.

Also, although initially I requested to relocate to OHA Chattanooga, I am not limited to OHA Chattanooga only. I am willing to transfer to any of the following SSA, OHA offices, all of which are a better commute than Montgomery.

> Atlanta (downtown), GA
> Atlanta North, GA
> Birmingham, AL
> Charlotte, NC
> Columbia, NC
> Greenville, SC
> Kingsport, TN
> Lexington, KY
> Louisville, KY
> Middlesboro, KY
> Nashville, TN

Please correspond to my above-cited home address. Too, I may be contacted by telephone numbers (334) 223-70077 ext. 3052 (office) and (334) 284-8590 (home). Thank you for your assistance in this matter.

Sincerely,



Bernethia T. Johnson

DX 53

 

## SOCIAL SECURITY

September 1, 2005

Ms. Bernethia Johnson
3381 Atlanta Highway
Montgomery, AL 36109

Dear Ms. Johnson:

This is in response to your letter dated August 10, 2005, requesting a hardship transfer from the Montgomery, AL hearing office to the Chattanooga, TN hearing office.

I am happy to inform you that I have approved your transfer request from Montgomery to Chattanooga. By this letter, I am requesting that Paul Reams, HOD, in your current office and Gayle Lyell, HOD, in Chattanooga, TN, work out an effective date and reporting date. This will require a memo from you stating that the relocation will be at no cost to the agency. Once the dates have been established, please forward this information to Janis Hargrave in our office, prior to your effective transfer date.

Sincerely,


 /s/
Gloria Bozeman
Regional Management Officer

cc: Paul Reams, HOD
     Montgomery, AL

    Cynthia Lamar, GS
    Montgomery, AL

    Gayle Lyell, HOD
    Chattanooga, TN

    Shelia Parsons
    Regional Office

DX 54

**DEFENDANT'S EXHIBIT 54**

**Johnson, Bernethia**

From:           Tamplin, Linda S.
Sent:           Friday, January 28, 2005 11:46 AM
To:             Johnson, Bernethia
Subject:        Handicapped Parking

Bernethia,
I spoke with Paul Reams per your request, and asked him to send an email specifying exactly which spaces are reserved for handicapped parking; since you do not remember the staff meeting whereby he limited only the west end ones, presumably others also may not remember the meeting.   He indicated that he had no intent to convey hostility nor to do anything other than to ask you to move.

*Linda Tamplin,*
*Hearing Office Systems Administrator*
*SSA, OHA   Montgomery, AL  (5139)*
*Ring 7BE      Site X42*
**Voice: (334) 223-7080     Fax: (334) 223-7069**

1

**Johnson, Bernethia**

| | |
|---|---|
| From: | Reams, Paul E. |
| Sent: | Saturday, January 29, 2005 12:14 PM |
| To: | #AT AL OHA Mon All |
| Subject: | handicapped parking |

The only handicapped parking in the back lot are the two spaces on the west corner of the lot next to the west entrance.  These are the same two spaces that have been limited to handicapped parking only for the last two years.

**Paul Reams**
**Hearing Office Director**
**Montgomery, Alabama**

DX 55

DEFENDANT'S
EXHIBIT
55

## ALABAMA UNIFORM INCIDENT/OFFENSE REPORT

# 6337

| 1 ☐ INCIDENT ☒ OFFENSE ☐ SUPPLEMENT | 2 CASE # | 3 SFX |
|---|---|---|

| 4 ORI # | 5 DATE AND TIME OF THIS REPORT | | 6 AGENCY NAME | 7 SUPPLEMENT CRIMINAL OFFENSE DATE |
|---|---|---|---|---|
| 20.30, 1, 00 | 0 2 2 3 0 5 | 13 50 ☒PM | Montgomery Police Dept. | M I D I Y |

REPORTED BY ☐ VICTIM OR

| 8 ADDRESS (STREET, CITY, ZIP) | 9 PHONE ( ) |
|---|---|

| 12 VICTIM (LAST, FIRST, MIDDLE NAME) | J P 2 B 3 S | 16 ADDRESS (STREET, CITY, STATE, ZIP) | 14 PHONE |
|---|---|---|---|
| Johnson, Bernethia | | 225 Garden Homes Cr. Mtgy. AL. 36116 | (334) 284-8590 |

| 15 EMPLOYER/SCHOOL | 16 OCCUPATION | 17 ADDRESS (STREET, CITY, STATE, ZIP) | 18 PHONE |
|---|---|---|---|
| Social Security off Legal Ass't | | 3381 Atlanta Hwy. AL. 36109 | 658-352 / (334) 223-7097 |

| 19 ☐ RESIDENT ☐ NON-RESIDENT | 20 INJURY | 21 RACE | 22 SEX | 23 HGT | 24 WGT | 25 DOB | 26 AGE | 27 WAS OFFENDER KNOWN TO VICTIM? | VICTIM WAS (EXPLAIN RELATIONSHIP) |
|---|---|---|---|---|---|---|---|---|---|
| | | W | ☒MALE ☐FEMALE | 5'4 | 150 | 10 11 61 | 55 59 | ☐Y ☒N | |

| 30 TYPE INCIDENT OR OFFENSE ☐ FEL. ☒ MISD. | 31 DEGREE (CIRCLE) 1  2  3 | 32 STATE CODE/LOCAL ORDINANCE |
|---|---|---|
| Criminal Mischief | | |

| 34 TYPE INCIDENT OR OFFENSE ☐ FEL. ☐ MISD. | 35 DEGREE (CIRCLE) 1  2  3 | 37 STATE CODE/LOCAL ORDINANCE |
|---|---|---|

| 38 PLACE OF OCCURRENCE | | 39 SECTOR |
|---|---|---|
| 3381 Atlanta Hwy Mtgy. AL. 36109 (Social Security #2) | | 05 |

| 40 POINT OF ☐ DOOR ☐ ROOF ☐ WINDOW ☐ OTHER | 41 METHOD OF ENTRY ☐ FORCIBLE ☐ NO FORCE | 42 ☐ ATT. FORCIBLE | ASSAULT ☐ SIMPLE ☐ AGGR. | 43 TREATMENT FOR ☐ Y ☐ N | ASSAULT INJURY |
|---|---|---|---|---|---|

| 44 OCCURRED-ON/OR BETWEEN | 45 TIME | | 46 LIGHTING | 47 WEATHER | 48 PREMISE |
|---|---|---|---|---|---|
| 0 2 2 3 0 5 | 08 00 ☒AM | | ☒ NATURAL | ☒ CLEAR | ☐ HWY.—ST.—ALLEY ☐ BANK |
| 0 2 2 3 0 5 | 13 30 ☒PM | | ☐ MOON ☐ ART. EXT. ☐ ART. INT. ☐ UNK. | ☐ CLOUDY ☐ RAIN ☐ FOG ☐ SNOW ☐ HAIL ☐ UNK. | ☐ RAILROAD ☐ DRUG STORE ☒ RESIDENCE ☐ APT./TWN. HSE. ☐ CHURCH ☐ SHOPPING CENTER ☐ SCHOOL ☐ PARKING LOT ☐ CONVENIENCE ☐ OTHER COMMER. ☐ INDUSTRIAL ☐ OTHER ☐ SERVICE STA. |

| 49 VERIFY FOR ☐ Y | 50 TREAT. FOR ☐ Y | 51 CIRCUMSTANCES HOMICIDE & ASSAULT |
|---|---|---|
| RAPE EXAM ☐ Y | RAPE INJURY ☐ Y | LOCATION: RAPE |

| 58 WEAPON USED ☐ FIREARM ☐ HANDS, FISTS, VOICE, ETC. ☐ KNIFE ☐ OTHER DANGEROUS | 59 DESCRIPTION OF WEAPONS/FIREARMS/TOOLS USED IN OFFENSE DESCRIBE: | ☐ HANDGUN ☐ RIFLE ☐ SHOTGUN ☒ UNKNOWN |
|---|---|---|

### PROPERTY DESCRIPTION

| 60 QUANTITY | 61 STOLEN, RECOVERED, LOST, FOUND OR DESTROYED (INCLUDE MAKE, MODEL, SIZE, TYPE, SERIAL NUMBER, COLOR ETC.) | 62 DOLLAR VALUE | | 63 RECOVERED | |
|---|---|---|---|---|---|
| | | STOLEN | DAMAGED | DATE | VALUE |
| 1 | Hood | | 150 00 | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

☐ CONTINUED IN NARRATIVE

### DOLLAR VALUE

| 64 MOTOR VEHICLE | 65 CURRENCY, NOTES | 66 JEWELRY | 67 CLOTHING/FURS | 68 FIREARMS | 69 OFFICE EQUIPMENT |
|---|---|---|---|---|---|
| S 150 00 R D | S R D | S R D | S R D | S R D | S R D |

| 70 ELECTRONICS | 71 HOUSEHOLD | 72 CONSUMABLE GOODS | 73 LIVESTOCK | 74 MISCELLANEOUS |
|---|---|---|---|---|
| S R D | S R D | S R D | S R D | S R D |

| 75 CHECK CATEGORIES | ☐ STOLEN ☐ RECOVERED ☐ SUSPECTS VEH. ☐ VICTIMS VEH. ☐ UNAUTH. USE ☐ ABANDONED |
|---|---|

### VE

| 76 # STOLEN | 77 LIC. | 78 LIS. | 78 LIV. | 82 TAG COLOR | 79 VIN |
|---|---|---|---|---|---|
| | No Tag | | | | 1 G 1 1 D 1 F 1 5 2 T 1 5 1 7 1 1 7 1 2 5 7 9 |

| 79 VYR 1991 | 83 VMA CHEV | 84 VMO CAV | 85 VST 4 DR | VCO: | TOP: Gold BOTTOM: | 87 ADDITIONAL DESCRIPTION |
|---|---|---|---|---|---|---|

| STOLEN MTR. VEH ONLY | 88 AREA STOLEN ☐ BUS. ☐ RES. ☐ RUR. | 90 OWNERSHIP VERIFIED BY: | ☐ TAG RECEIPT ☐ BILL OF SALE ☐ TITLE ☐ OTHER | 89 WARRANT SIGNED M D |
|---|---|---|---|---|

| 91 AUTO INSURER NAME (COMPANY) ADDRESS (STREET, CITY, STATE, ZIP) | 92 PHONE ( ) |
|---|---|

| MOTOR VEH. RECOVERY ONLY | 93 STOLEN IN YOUR JURISDICTION? ☐ Y | 94 RECOVERED IN YOUR JURISDICTION? ☐ Y ☐ WHERE? |
|---|---|---|

DX 56

**DEFENDANT'S EXHIBIT**
56

**Johnson, Bernethia**

| | |
|---|---|
| **From:** | Reams, Paul E. |
| **Sent:** | Wednesday, February 23, 2005 5:56 PM |
| **To:** | Johnson, Bernethia; Tamplin, Linda S. |
| **Cc:** | Thigpen, Charles A.  OHA Montgomery HO; Warren, Carl L. |
| **Subject:** | RE: Request Permission to Park in the Front Parking Lot |

**Sensitivity:**     Confidential

I understand that you believe your car was damaged while in the back parking lot. Although your car was parked in the open and in plan view of the building, as far as I know there are no witnesses to your vehicle being damaged and even if you first noticed the damage while parked here, that is not proof that it was damaged in our parking lot. However, assuming the car was damaged by a criminal act in the parking lot, I am not aware of any obligation for the agency to pay for its repair.

Your request for a personal parking space in the visitor's parking lot is denied.  Often this lot is completely filled with our customers and parking there could be an inconvenience to the public.  Parking there also reduces the security of our staff.  We try to keep employees from commingling with the public as much as possible for security reasons and have separate employee entrances to the building from the back parking lot.

Your report is the first incident of its kind that I have received in the five years that we have worked in this building.  I believe that our back parking lot is a safe place for the employees of the agency to park their vehicles.  Please let me know if you have any further problems.

Paul Reams

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Wednesday, February 23, 2005 3:53 PM |
| **To:** | Reams, Paul E.; Tamplin, Linda S. |
| **Cc:** | Thigpen, Charles A.  OHA Montgomery HO; Warren, Carl L. |
| **Subject:** | Request Permission to Park in the Front Parking Lot |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

This is to inform you that my vehicle purchased on February 19, 2005, was damaged while parked in the employees' parking lot today.  As you are aware, the incident has been reported to the Montgomery Police Department.  This e-mail is to inform you of the incident and to request that the agency pay for the cost of the repair since it happened on Federal Government property.

For the safety of my vehicle, I have taken it off of the premises until I can secure a safe parking space. Therefore, I request to park my vehicle in the front parking lot in the parking space located just outside of my cubical window.  Please accommodate me in this matter so that I may drive my vehicle to work as all other employees.  Thank you for your assistance in this matter.

DX 57

**Johnson, Bernethia**

DEFENDANT'S
EXHIBIT
57

| | |
|---|---|
| From: | Reams, Paul E. |
| ent: | Tuesday, July 19, 2005 4:54 PM |
| To: | Johnson, Bernethia |
| Cc: | Tamplin, Linda S. |
| Subject: | RE: 6:00 closing |

The objective of the e-mail was to remind all employees that the building closes at 6:00pm. Part of my job is to make sure that the building is properly secured at night and that the Federal Protective Service is only called when there is an actual emergency.

| | |
|---|---|
| From: | Johnson, Bernethia |
| Sent: | Monday, July 18, 2005 6:01 PM |
| To: | Reams, Paul E. |
| Cc: | Tamplin, Linda S. |
| Subject: | RE: 6:00 closing |

This response is to reiterate to you the reason that I was still in the building on the day I set off the alarm. After signing out for the day, as I was on my way out of the building, I stopped to relieve myself of an upset stomach. I felt that I was unable to contain myself for such time that it would have taken me to walk to my vehicle an then to drive to another location with a public facility. To that extent, I went to the restroom before leaving the building. I was shocked to see that even after giving you the reason why I was still in the building that you would send such an e-mail. This is only another embarrassing situation. I could see such e-mail if I were still working. Anyway, I can recall many time when you allow Louis Chevalier or Laura Robinson and possibly others, who are not judges, to remain in this building after 6:00 p.m., for chatting purpose and you did not respond to them in such manner, that is to send an e-mail to "AT AL OHA Mon AL."

| | |
|---|---|
| From: | Reams, Paul E. |
| Sent: | Friday, July 15, 2005 5:03 PM |
| To: | #AT AL OHA Mon All |
| Subject: | 6:00 closing |

The end of the workday is at 6:00pm. Hourly employees are not allowed to donate free labor to the government (That's everybody except the judges.) Stop working at 6:00pm and leave the building. Yesterday, our alarm was set off by an employee who was still in the building at 6:15. Failure to follow these instructions will be treated as a conduct issue.

**Paul Reams**
**Hearing Office Director**
**Montgomery, Alabama**



Statement made to Federal Protective Service when Ms. Renita Barnett-Jefferson attempted to hit me or run me over with her vehicle.

**FEDERAL PROTECTIVE SERVICE**
**FIELD INTERVIEW REPORT**          00556

| AGENCY | DATE | TIME | DR NUMBER |
|---|---|---|---|
| OHA | 9·2·05 | 1:57 | |

LOCATION OF INTERVIEW

NAME (LAST NAME FIRST)
Johnson, Bernethia

NICKNAME / AKA                    PHONE #
                                  284-8590 (H)

RESIDENCE ADDRESS (CITY/STATE)
225 Garden Homes Cir., Montgomery, AL

SOC. SEC. NO.

| | RACE | SEX | HAIR | EYES | HT. | WT. |
|---|---|---|---|---|---|---|
| | B | F | B | Br | 5'4 | 165 |

D.O.B.                    DRIVER'S LICENSE                    STATE

PHYSICAL ODDITIES (SCARS, ETC.)

CLOTHING WORN                              VEH. LIC. NO./STATE
SAlmon colored shirt w/ Floral Pants

| V E H | YEAR | MAKE | MODEL | COLOR | | TYPE |
|---|---|---|---|---|---|---|
| | | | | / | | |

COMPANION 1 (LAST NAME FIRST)

| RACE | SEX | D.O.B. | | HAIR | EYES | HT. | WT. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

COMPANION 2 (LAST NAME FIRST)

| RACE | SEX | D.O.B. | | HAIR | EYES | HT. | WT. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

CRIME POTENTIAL (2 VIOL. MAXIMUM)          REMARKS (REASON FOR CONTACT)

An employee attempted to Hit me
with her vehicle.

**VEHICLE**
- ☐ DAMAGE - FRONT
- ☐ DAMAGE - REAR
- ☑ DAMAGE - RIGHT
- ☐ DAMAGE - LEFT
- ☐ FRONT LOWERED
- ☐ FRONT RAISED
- ☐ REAR LOWERED
- ☐ REAR RAISED
- ☐ RUST/PRIMER
- ☐ CUSTOM WHEELS
- ☐ VINYL TOP
- ☐ DECAL/EMBLEM
- ☐ UNIQUE EXT.
- ☐ UNIQUE INT.
- ☐ CUSTOM COLOR
- ☐ CAMPER SHELL

INT. COLOR (

**HAIR LENGTH**
- ☐ LONG
- ☐ SHORT
- ☐ BALD/THINNING

**HAIR STYLE**
- ☐ AFRO/NATURAL
- ☐ WAVY/CURLY
- ☐ BRAIDED/PONY TAIL

**FACE**
- ☐ MUSTACHE
- ☐ BEARD
- ☐ GOATEE

**COMPLEXION**
- ☐ LIGHT
- ☐ DARK
- ☐ ACNE

**BUILD**
- ☐ THIN
- ☐ HEAVY
- ☐ MUSCULAR

- ☐ GLASSES

OFFICER(S)                    I.D. NO.(S)    LOCATION

## S T A T E M E N T

I, _Bernethia Johnson_ hereby make this voluntary
    **(print)**

statement to _Mr. Maurice Robinson_ at _3381 Atlanta Highway_
    **(Officer's Name)**         **(Location)**

At approximately 1:57 on September 2, 2005, as I was
walking from my car to the building, it appeared
as though Mrs. Benita Barnett Jefferson intentionally
attempted to hit me with her car. She speeded towards
~~the~~ left side of me with her car and stopped her car
approximately 4 inches away from my body. I was
extremely frightened and was unable to move from where
I stood. I took my glasses and looked at her for
approximately three to six seconds. Mrs. Barnett
Jefferson said nothing, she just sat in her car and
looked at me. ① When I finally began to walk again,
I was barely out of the way of her vehicle when
she speeded off. I reported the incident to Mr.
Maurice Robinson, our security guard. He asked
if she could have been joking with me. I informed
him, ~~that it bore~~ ~~that onmay~~ time I ~~sphen to her~~

"I declare (or certify, verify, or state) under penalty of
perjury that the foregoing is true and correct.

Executed on (date) _September 2, 2005._

    (Signature)" _Bernethia T. Johnson_

① She made no attempt to apologize.

2 of 2

**U.S. Federal Protective**
**Service Police**
**Statement**

that she does not speak to me. It is my belief that she intentionally attempted to hit me with her car.

Shortly after reporting the incident, I wanted to ask Mr. Robinson a question. While talking with him Mrs. Barnett-Jefferson appeared and stated that her foot got stuck on the accelerator and that she did not attempt to hit me. I told her I did not understand any of it because she has children just like I have children. She said she came in and reported it to Mr. Reams, Leasing Office Director and was walking to return to my work area, she asked if I thought she tried to hit me. I responded by telling her how pretty she looked. Mrs. Barnett Jefferson replied well you must have thought I did. END of statement.

J. Johnson

Sometime S.

DX 59

Johnson, Bernethia

DEFENDANT'S
EXHIBIT
59
PENGAD 800-631-6989

From:                    Johnson, Bernethia
ent:                     Thursday, June 05, 2003 5:39 PM
                         Davenport, Pam
                         Collier, Tresalyn
     ject:               Appropriate Address

Pam, I thought I sent this letter earlier today, but I am uncertain.
Therefore, I am sending it again.

This letter is in reference to your calling Tresalyn Collins and me
"bitty winches" or "bidding wenches" during the week of May 26, through
May 30, 2003. It is my understanding that you approached a few
employees about your offending me. I do not see why you felt that other
employees had a need to know, especially after your discussing the
matter with me a second time. Because I somewhat understand the heart
of man, I am careful in disclosing information to others. Nonetheless,
I believe, your going to other BUEs tend to encourage unwarranted
conversations concerning me.

In an attempt to get a better understanding of "bitty wenches" or
"bidding wenches," I found the following definitions:

"winch > noun 1 a hauling or lifting device consisting of a rope or
chain winding around a horizontal rotating drum, turned by a crank or by
motor. 2 the crank of a wheel or axle. > verb hoist or haul with a
winch."

"wench > noun 1 a young woman or girl; especially, a peasant girl, Now
used familiarly or humorously; "and brawny country wenches, laughing,
draw near to bandy ale-house jest" (Jerome K. Jerome). 2 a female
servant. 3 a wanton woman; a prostitute."

   cause of the environment of this office and to avoid any
     understanding, I ask that you discontinue disclosing matters
    garding me to disinterested employees. To address me by Bernethia is
very appropriate.

| Tracking: | Recipient | Read |
|---|---|---|
| | Davenport, Pam | Read: 6/6/03 6:58 AM |
| | Collier, Tresalyn | Read: 6/6/03 9:27 AM |

1

## Johnson, Bernethia

**From:**
**Sent:**
:
:

Davenport, Pam
Friday, June 06, 2003 9:02 AM
Johnson, Bernethia
Collier, Tresalyn

It was certainly not my intention to offend either you or Tresalyn last week. My words were simply meant to be an informal, humorous, and friendly greeting between long-time co-workers. I will be glad to refrain from using such greetings if you found them offensive. Any conversations I had regarding this matter were simply an attempt to understand any concerns you or Tresalyn had so that I could address any potential problems.

Pam Davenport

DX 60

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| JOHNSON, BERNETHIA T | | | 05/15/05 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code | 5-B. Nature Of Action | 6-A. Code | 6-B. Nature of Action |
| 893 | WITHIN-GRADE INC | | |
| 5-C. Code | 5-D. Legal Authority | 6-C Code | 6-D. Legal Authority |
| 27M | REG 531.404 | | |
| 5-E. Code | 5-F. Legal Authority | 6-E. Code | 6-F. Legal Authority |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| PARALEGAL SPECIALIST HEARING ANALYST | PARALEGAL SPECIALIST HEARING ANALYST |
| TAH-F4Z26   067158B   4001139 | TAH-F4Z26   067158B   4001139 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0950 | 09 | 05 | $ 47340 | PA | GS | 0950 | 09 | 06 | $ 48732 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| 42374 | $ 4966 | $ 47340 | $ 0 | $ 43620 | $ 5112 | $ 48732 | $ 0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| SOCIAL SECURITY ADMINISTRATION DISAB&INCM SCRTY PRGMS OFC HRGS & APPLS OFC REGNL CH ADMINV LAW JUDGE ATL HRG OFC, MONTGOMERY, AL | SOCIAL SECURITY ADMINISTRATION DISAB&INCM SCRTY PRGMS OFC HRGS & APPLS OFC REGNL CH ADMINV LAW JUDGE ATL HRG OFC, MONTGOMERY, AL |

## EMPLOYEE DATA

| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1 - None    3 - 10-Point/Disability    5 - 10-Point Other<br>2 - 5-Point   4 - 10-Point Compensable   6 - 10-Point/Compensable/30% | 1 | | |
| WAIVED FEGLI COVERAGE | 0 - None    2 - Conditional<br>1 - Permanent   3 - Indefinite | | YES ___ NO ___ |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| | 9   NOT APPLICABLE | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| CSRS | 05/21/76 | F   FULL-TIME | |

## POSITION DATA

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career Reserved | N   E - Exempt<br>N - Nonexempt | 4001139 | 1535 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 01-2130-101 | MONTGOMERY, MONTGOMERY, ALABAMA |

| 40. Agency Data | 41. VET-STAT | 42. EDUC LVL | 43. SUPV STAT | 44. POSITION SENSITIVITY |
|---|---|---|---|---|
| NC  00 | V | 13 | 8 | NONSENSITIVE/LOW RI |

45. Remarks

CURRENT DATE OF LAST EQUIVALENT INCREASE 05-15-05.
WORK PERFORMANCE IS AT AN ACCEPTABLE LEVEL OF COMPETENCE.

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| SOCIAL SECURITY ADMIN | IRIS N. WALLACE |
| 47. Agency Code   48. Personnel Office ID   49. Approval Date | DIRECTOR, HR CENTER, ATLANTA |
| SZ00   1166   12/15/06 | 062343414 |

2 - OPF Copy - Long-Term Record - DO NOT DESTROY