# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BERNETHIA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 2:06-cv-397-WKW |
| v. | ) | 2:07-cv- 59-WKW |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF PAUL REAMS

I, Paul Reams, pursuant to 28 U.S.C. § 1746(2), declare under penalty of perjury that the

following statement is true and correct based on my personal knowledge:

1.

I am the Hearing Office Director ("HOD") with the Social Security Administration

("Agency" or "SSA"), Office of Disability Adjudication and Review ("ODAR" or "Hearing

Office"), in Montgomery, Alabama, and I have held this position since 1999. The Hearing Office

handles cases filed by claimaints who file claims for Social Security Disability benefits and

provides support to Administrative Law Judges who conduct hearings on these cases and issue

decisions. I supervise, among other employees, three Group Supervisors, who in turn supervise

Lead Legal Assistants and Legal Assistants. Bernethia Johnson was a Legal Assistant in our

office. While I never directly supervised her, she did work for two of my Group Supervisors

(Paul Johnson and Cynthia Lamar) during different time periods and I was her second-line

Page 1 of 17

supervisor.

2.

Pursuant to an Alternative Duty Station ("ADS") Agreement with the AFGE Union that

was in place in 2004, Legal Assistants could work at home one day a week on a Monday,

Tuesday, or Wednesday. Thursday and Friday were considered core days under the Agreement

when all employees should be in the office. At some point in late 2003/early 2004, we began

having Legal Assistants rotate through spending a month performing front desk duties. When

they were working the front desk, they could not participate in ADS. To make up for this, I

adopted a practice of allowing Legal Assistants who worked the front desk for a month to have

an extra ADS day the following month. Ms. Johnson rarely participated in the ADS Program.

3.

On or about April 12 or 13, 2004, I talked to Ms. Johnson about a request she made to

work at home for two days that week. Ms. Johnson had apparently told Mr. Johnson, that she

wanted to work at home for two days that week and there had been some confusion as Mr.

Johnson had forgotten about my policy that Legal Assistants who worked the front desk could

work an extra ADS day the following month. I told her she could work at home for two days.

Ms. Johnson then told me that she wanted to work at home on a Wednesday and Thursday. I told

her that Thursdays were core days when all employees were supposed to be in the office, and she

replied that under the ADS Agreement employees could work at home on core days under

unusual or special circumstances. I have never had a Legal Assistant ask to work at home on a

Thursday. I told her I would look into it and get back to her. After reading the ADS Agreement,

which did permit Legal Assistants to work at home under special circumstances on core days, I

allowed Ms. Johnson to work at home on Wednesday and Thursday and sent her an email to that

effect. A true and accurate copy of my email is attached as Exhibit A. Ms. Johnson worked at

home on Wednesday and Thursday, April 14 and 15, as she requested. No other Legal Assistant

has ever worked at home on a Thursday.

4.

On or about April 20, 2004, Ms. Johnson came into my office with Ms. Hall, an AFGE

union representative, and told me that Mr. Johnson had yelled at her and stood up the prior day.

This was the first time Ms. Johnson had complained to me about Mr. Johnson, and she did not

give me any reason why she thought Mr. Johnson might have done this. In fact, Ms. Johnson had

told an auditor, BJ Thomas, in November 2003 during a routine office audit that she loved

working for Mr. Johnson, and Ms. Thomas had passed this information on to me when giving her

audit report. I asked Ms. Johnson if she wanted to change supervisors, and she told me she did

not want to do so. Ms. Johnson also told me she was perfectly happy. She told me she just

wanted Mr. Johnson to stop yelling at her. I told her I would investigate.

5.

The next day, I investigated the complaint. I asked all the employees around Ms.

Johnson's work area and Ms. Lamar's office if they had heard a disturbance on April 19, and I

took statements from them. I also talked to Mr. Johnson, Ms. Lamar, and Ms. Hall, who had

been present in the meeting with Ms. Johnson on April 19, and took statements from them. Mr.

Johnson denied yelling or standing. Ms. Lamar and Ms. Hall told me there was not yelling or

standing. The other employees I talked to denied hearing any raised voices. I found no

corroboration of Ms. Johnson's complaint. In addition, I found her complaint to be contradictory

to her statement to me that she wanted to continue working for Mr. Johnson and that she was happy. As a result, I wrote a report, concluding that Ms. Johnson's complaint was unsubstantiated and false. A true and accurate copy of my report, and the seven statements I obtained, is attached as Exhibit B.

6.

During my investigation, I learned from Ms. Lamar, Mr. Johnson, and Ms. Hall, that Ms. Johnson had refused to answer direct work related questions from Mr. Johnson about whether she needed additional work during the meeting in Ms. Lamar's office. Ms. Lamar and Mr. Johnson told me they thought it was insubordination. Ms. Tamplin, the union representative, also told me that she had talked to Carl Warren, the Union Vice President, and he had mentioned that he thought it was insubordination for an employee not to answer direct work-related questions. In my opinion, an employee cannot hide behind a union representative at a meeting that does not involve discipline and refuse to directly talk to a supervisor about work. I had never head of any other employees refusing to answer work-related questions. I concluded this act was insubordinate.

7.

On April 30, 2004, I held a meeting with Ms. Johnson and had Carl Warren, the Union Vice President for Alabama, present by speaker phone. I also had Ms. Lamar attend as a witness. I went over my findings with Ms. Johnson and told her that none of the employees had heard yelling or screaming and that Ms. Lamar and Ms. Hall had both told me that Mr. Johnson had not stood up or yelled during the meeting. I also told her that I had learned that she had failed to answer work-related questions during the meeting in question. I told her that she could not

refuse to answer work-related questions from her supervisor and that to do so was insubordination.

8.

After I had hung up the telephone, I told Ms. Johnson that I wanted to speak with her about a private matter and gave her an Employee Assistance Program ("EAP") brochure. I told her I was concerned about her perception of events and the fact that everyone that I talked with had a different impression of what had happened than she did. She asked me to call Mr. Warren back because she wanted union representation. I told her that this was a private matter, not a disciplinary matter, and she was not entitled to it. Ms. Johnson then left the room and returned with a statement saying that I had denied her union representation. I did not sign it because it was not accurate. I tried to call Mr. Warren, but he did not answer the telephone. The meeting then ended.

9.

In meeting with Ms. Johnson, without Mr. Warren on the telephone, and giving her the EAP brochure, I was trying to respect her privacy and offer any assistance if she might require it. She was not entitled to union representation at this meeting because there was no disciplinary action being contemplated and I was just giving her an EAP brochure.

10.

During most of my time as HOD, including 2003-2005, the Hearing Office used a computerized case tracking system known as HOTS. Employees had specific PIN numbers and passwords to access this system. When an employees changed the case status of a case in HOTS, the computer would automatically enter the employee's initials to indicate she had moved the

Page 5 of 17

case to the next status. The system also tracked how old the cases that had been assigned to a Legal Assistant for work-up were and how many cases a Legal Assistant had worked up each month. According to the HOTS records, Ms. Johnson was consistently the least-productive Legal Assistant in the Office when it came to working up cases.

11.

Prior to Ms. Johnson accusing Mr. Johnson of yelling at her, he had told me that he was having trouble with Ms. Johnson claiming credit in HOTS for cases that had not been fully worked up and was thinking about disciplining her. He indicated that he thought she was trying to boost her production numbers. I had told him to hold off while I investigated Ms. Johnson's complaint against him. After I finished my investigation, I reassigned Ms. Johnson to Ms. Lamar's Group because I was concerned that Mr. Johnson's ability to supervise Ms. Johnson had been compromised by the false allegations. At my request, in late April Mr. Johnson gave me a report regarding multiple cases that Ms. Johnson had indicated in HOTS had been worked-up but that he had seen on her desk missing exhibit lists. The report also included HOTS case histories for the cases at issue and WORD screen shots showing "dates of creation"and "date last saved" for the exhibit lists. A true and accurate copy of the report, and attached records, is attached to my Declaration as Exhibit C.

12.

I decided to handle this matter on my own instead of assigning it to Ms. Lamar. I read Mr. Johnson's report and talked to him in detail about what he had found. He told me he had seen cases on Ms. Johnson's desk, missing exhibit lists, after she had indicated in HOTS that

they had been fully-worked up, in March and April. He also told me that Ms. Tamplin and Ms.

Davenport had also seen such cases in April. I talked to both Ms. Davenport and Ms. Tamplin.

They both told me that they had seen cases on Ms. Johnson's desk, missing exhibit lists, after she

had indicated in HOTS that they had been worked-up.

13.

In addition to talking to these three employees about what they had personally seen, I

reviewed the documentation submitted by Mr. Johnson. The HOTS case histories told me the

date when Ms. Johnson had moved the cases from worked-up. The WORD screen shots had

"dates of creation" that appeared to show that Ms. Johnson had only created the exhibit lists in

WORD after she had already moved the cases from work-up status in HOTS. The computer

records substantiated what Mr. Johnson, Ms. Davenport, and Ms. Tamplin told me they had seen.

I concluded this evidence showed that Ms. Johnson had falsely claimed credit in HOTS for

incomplete work.

14.

While I was reviewing the evidence, Mr. Johnson sent me an email explaining that during

May's audit he had found another file on Ms. Johnson's desk, without an exhibit list, that she had

indicated was worked-up in HOTS. A true and accurate copy of this email is attached as Exhibit

D.

15.

I understood from Mr. Johnson that he had already verbally counseled Ms. Johnson about

this matter in October 2003 and sent an email reiterating office policy that cases were not to be

moved from work-up status in HOTS until the exhibit list was completed, and the evidence

Page 7 of 17

showed that she continued to move incomplete cases in HOTS. I decided that this conduct

warranted a written reprimand. I issued the reprimand to Ms. Johnson on May 27, 2004.

16.

After I issued the reprimand, on June 21, 2004, I met with Ms. Johnson and Ms. Tamplin,

at Ms. Johnson's request, to discuss the reprimand. Among other things, Ms. Johnson provided

some WORD screen shots and we discussed the difference between the "date created" and the

"date of creation" for documents in WORD. These dates were sometimes different and Ms.

Tamplin could not explain why that might be in some instances. I decided that I could not rely

upon the WORD "date of creation" of a document to show when Ms. Johnson had actually

created the exhibit lists. At the end of the meeting, I told Ms. Johnson I would get back to her.

17.

The following day, I talked to Ms. Tamplin, Mr. Johnson, and Ms. Davenport again about

the incomplete files they had physically seen on Ms. Johnson's desk after Ms. Johnson had

indicated they had been worked-up in HOTS. I also reviewed the computer records and talked to

the Regional Office. I concluded that while the "date of creation" might not show when a

document had been created, the WORD screen shots still showed that Ms. Johnson had been

working on the exhibit lists after she had claimed that they had been finished in HOTS. Among

other things, the "date last saved" on the WORD screen shots showed that Ms. Johnson had

continued to work on exhibit lists in WORD after she had claimed that cases had been fully

worked-up in HOTS. Based on the witness testimony and the computer records showing that she

had continued to work on cases after she had indicated they were complete, I concluded that my

written reprimand was supported by the evidence. I wrote Ms. Johnson on the afternoon of June

Page 8 of 17

22, and informed her of my decision. She sent an email asking me for the basis for the

reprimand, and I sent her an email explaining what I was relying upon. A true and accurate copy

of my email is attached as Exhibit E. I had no further communication with her on this reprimand.

The written reprimand was removed from Ms. Johnson's file after a year.

18.

I am not aware of any other Legal Assistant who moved cases from HOTS without having

completed the exhibit lists in 2004 as Ms. Johnson had done. While some other Legal Assistants

had files missing from the RTH/RTS category in audits in April and May 2004, when the cases

were located the files were complete.

19.

Ms. Johnson was the first Legal Assistant I personally made the decision to discipline for moving

cases from work-up in HOTS when they were incomplete. I am aware that one of my Group

Supervisors, Ms. Lamar, had previously given a written reprimand to Michael Chamblee, an

Attorney, for claiming credit for a case that he had not completed. I am also aware that Ms.

Lamar gave a written reprimand to a Lead Legal Assistant, Debbie Rambo, after she discovered

Ms. Rambo had claimed credit for incomplete work and it is my understanding Ms. Rambo never

did it again. I am also aware that another one of my Group Supervisors, Ms. Davenport, issued a

verbal warning to a Legal Assistant, Karen Burton, for claiming credit for incomplete work and it

is my understanding Ms. Burton never did it again.

20.

In August 2004, I was asked by Gloria Bozeman, the Regional Management Official for

the Social Security Agency ("Agency") to respond to some allegations by Ms. Johnson that a

Page 9 of 17

hostile environment existed within the Montgomery office. Among other things, Ms. Johnson

claimed that my meeting with her, with Ms. Lamar present, when I presented her an EAP

brochure was like being abducted and raped by well known and respected management. I

addressed each of her contentions and explained that there was no hostile environment in

Montgomery and submitted my report to Ms. Bozeman. In mid November 2004, I was asked by

Ms. Bozeman to respond to a complaint by Ms. Johnson about an employee threatening to bring

a gun onto the property and shoot an employee. I had already commenced an investigation of

this incident on November 4, 2004, when Ms. Collier, an employee in our office, complained to

me that Ms. Cooper, another co-worker, had made a comment about a gun in the presence of Ms.

Warner. I obtained statements from Ms. Collier, Ms. Cooper, and Ms. Warner (who had been

identified as a witness), about the incident. During my investigation, a security guard told me

during my investigation that Ms. Johnson had talked to her about it, so I sent an email to Ms.

Johnson trying to find out what she might know. She refused to cooperate in my investigation

and did not provide me a statement. In response to Ms. Bozeman's request, I submitted a report

to her about my findings and it is attached as Exhibit F.

21.

I am aware of two employees in the Hearing Office who had handicap placards and who

had a right to park in the handicapped spaces in the employee parking lot at the Hearing Office.

The two employees were Ms. Lamar and Ms. Frazer (aka Weeks). They usually parked in two

spots on one side of the building and if I noticed people parking in those two spots when I knew

Ms. Lamar or Ms. Frazer were scheduled to be at work I would ask them to move. There were

three other handicap spots on the other side of the building, but since we only had two handicap

employees and they used two specific spots I let employees park in those other three spots.

22.

On January 27, 2005, I noticed Ms. Johnson's car parked in one of the handicap spot usually used by Ms. Lamar, who I knew was supposed to be coming to work that day. Ms. Johnson does not have a handicap placard and there was no legitimate reason for her to be parking in the handicap spot usually used by her handicap supervisor. As a result, I asked her to move her car.

23.

On February 23, 2005, Ms. Johnson sent me an email indicating that she thought someone had keyed her car and asked the government to pay for it. I sent her an email in response. A true and accurate copy of Ms. Johnson's email and my response are attached hereto as Exhibit G. I had nothing to do with the keying of Ms. Johnson's car and have no idea who did it. There was no evidence that anyone in the office had done it, and since Ms. Johnson had apparently just bought the car I have no idea who even knew it belonged to her. I have never authorized any payment by the Agency for damage to cars in the parking lot and do not even know if I have the authority to do so.

24.

In April 2005, Ms. Lamar informed me that Ms. Johnson had snatched her personnel file out of her hand and that she was going to give Ms. Johnson an oral warning for her conduct. Ms. Lamar asked me to come to her office to witness it. I went to her office, and Ms. Lamar counseled Ms. Johnson about snatching the file and her need to treat her supervisor with respect.

Ms. Lamar had previously complained to me that Ms. Johnson had ignored instructions not to use Ms. Lamar's telephone and instead had come around her desk and grabbed the telephone from her.

25.

In early June 2005, Ms. Johnson came into my office, alone, and closed the door to talk about something. I asked her to open the door. I had decided, based on discussion with the Regional Office and Ms. Lamar, that I would not meet alone with Ms. Johnson with the door closed, based on her false accusations against other management and the fact she often viewed events differently than everyone else who was present. She could still talk to me behind closed doors with a witness, such as the union representative she often brought with her to meetings, or with the door open. This had no affect on her ability to talk to me about work. In fact, I rarely close my door when talking to employees as I find it unnecessary to do so. I do not know why Ms. Johnson wanted to be in the office alone with me or any other manager.

26.

On or about June 7, 2005, Ms. Lamar uncharacteristically rushed into my office, interrupting a meeting I was having with another employee, and was clearly very agitated and flustered. She told me that Ms. Johnson had just given her the middle finger while leaving her office. I have known Ms. Lamar for over twenty years, and she is usually soft-spoken and calm and I have never seen her so flustered. She later submitted to me a Proposal to Suspend Ms. Johnson for five days for making this obscene gesture, and Ms. Johnson submitted a Response to the Proposal. As the deciding official, I had to make the final decision on what, if any, discipline to administer.

Page 12 of 17

27.

I reviewed the Proposal and Ms. Johnson's Response, and concluded that I believed that Ms. Johnson had, in fact, given Ms. Lamar the middle finger. In reaching this conclusion, I took into account Ms. Lamar's flustered demeanor when she had rushed into his office to first report the matter on June 7, 2005, as he had never seen her so flustered before and it was clear something very shocking had happened to her. I did not find Ms. Johnson's assertions in her Response to be credible. She demanded "substantial evidence" of what had occurred, and I had it in the form of Ms. Lamar telling me about it right after it happened and restating it in the Proposal. Ms. Johnson claimed she was afraid of Ms. Lamar due to an incident on November 5, 2004, when she claimed Ms. Lamar had grabbed her arm, but I did not find this believable as Ms. Johnson had never mentioned this to me previously, even in emails we exchanged in mid November 2004 while I was investigating a complaint made by her that a hostile environment existed in Montgomery. In finding Ms. Johnson's assertion about Ms. Lamar not to be credible, I also factored in that Ms. Johnson had accused Mr. Johnson of standing and yelling in April 2004, but none of the witnesses in the same room or in the area had supported her version of events.

28.

I have never had another employee give his or her supervisor the middle finger. When deciding what discipline to take, I took into account that I had recently seen Ms. Lamar give Ms. Johnson a verbal counseling for snatching a file out of her hand and advised her of the need to be more respectful towards her supervisor. Ms. Lamar had also told me that Ms. Johnson had grabbed her telephone out of her hand and used it after she had told Ms. Johnson not to do so. After talking with Human Resources in the Regional Office (none of whom could recall an

employee giving a supervisor the middle finger), I concluded that a suspension was warranted for the conduct but that three days, instead of five, would be sufficient to impart on Ms. Johnson the seriousness of her offense. I met with Ms. Johnson and gave her my decision suspending her for three days. Ms. Johnson continued to maintain that she did know what it meant to give someone the middle finger and asked me to display the obscene gesture fo her. She also gave me the middle finger and asked me if that was what she was accused of doing to Ms. Lamar. I did not believe that she did not know what it meant to give someone the middle finger.

29.

In or about June 2005, Ms. Tamplin told me that Ms. Johnson's mother was ill and that was the reason that she was seeking a hardship transfer to Chattanooga. I have had two other employees come to me and tell me they wanted hardship transfer requests relating to family reasons, such as to be closer to spouses who had transferred or to family, and I wrote letters supporting their requests. Ms. Johnson never came and told me this was the reason for her transfer. After Ms. Tamplin told me this was the reason, I wrote a letter to Ms. Bozeman indicating that I did not oppose her transfer request, as I had done for other employees in similar situations. I did not have any conversations with Ms. Bozeman about any attempts by Ms. Johnson to transfer, I have no idea whether she considers whether or not I have objections to any hardship transfer requests, and I have no role in the final decisions by Ms. Bozeman on hardship transfer requests. I never talked to anyone in Chattanooga about Ms. Johnson after her transfer to that office in October 2005.

30.

The Hearing Office has an alarm system. The building generally closes at 6 PM and I am

generally the last to leave. Before I leave, I check the office for employees and the employee

parking lot for cars and then set the alarm. On or about July 15, 2005, at the end of the day, I

checked the office for employees and did not see any and did not see any cars in the employee

parking lot, so I set the alarm and left. As I was driving around the building, I noticed Ms.

Johnson's car parked at a business next door and turned around to go back. I found Ms. Johnson

in the building, having set off the alarm. She told me she had been in the bathroom. This was

the first time I had set the alarm and had an employee still in the building set it off. The next day,

I sent an email to all employees reminding them that the workday for hourly employees ended at

6 PM, that they should leave the building at that time, and that an employee (who I did not name)

had set off the alarm by remaining in the building the previous day. The sole purpose of my

email was to remind employees when the building closed so that I could carry out my job of

ensuring the building was properly secured at night and to prevent false alarms to Federal

Protective Services.

31.

In September 2005, I heard that Ms. Johnson had been walking across the front parking

lot from her car (which she had parked in the lot next door instead of the employee parking lot)

and that Renita Barnett-Jefferson, an attorney in our office, had almost hit her in the parking lot.

I had nothing to do with this incident. Ms. Barnett-Jefferson later told me that Ms. Johnson had

stepped in front of her but she stopped before hitting her. Ms. Johnson never talked to me about

this incident. Federal Protective Services later told me that Ms. Johnson had filed a complaint

about the matter, they had investigated, and they had found that nothing had happened. I saw no

reason to take any action regarding this apparent near-accident.

32.

In October 2003, I did not authorize any administrative leave for employees to vote in the local elections because the polls were open long enough for employees to vote before or after work. A local election is different than a Presidential election, where employees who did not live in Montgomery might have to travel to their home polling locations in other counties to vote. Ms. Johnson and Ms. Tamplin were the only two employees who sought administrative leave to vote that day, and both employees had their administrative leave converted to annual leave. A true and accurate copy of the leave sheets for that day are attached as Exhibit H.

33.

Tresalyn Collier is a Legal Assistant in our office. She has never filed an EEO complaint. In mid-2003, Ms. Davenport told me that Ms. Johnson had complained about her calling Ms. Johnson and Ms. Collier "biddy wenches." Ms. Davenport often uses odd nicknames for employees in the office, and I have heard her use this term before. I do not know what it means but did not believe it was offensive as no one had ever complained about it. I told Ms. Davenport that if Ms. Johnson had complained to her about it, she should not use that term again when talking to her. I never heard any complaints from Ms. Johnson about this matter.

34.

During my employment, I receive annual Equal Employment Opportunity ("EEO") training conducted by the Social Security Administration. The training covers what conduct is prohibited and explained how employees may file complaints and the time-frame for filing the complaints. There are also posters in the Hearing Office with this information.

35.

I have never heard any racially offensive comments made by Mr. Johnson, Ms. Lamar, Ms. Davenport, or any other employees in the office. I have not seen any racially offensive pictures or emails in the office. I have not heard anyone make any negative comments about anyone using the Agency's EEO process. I have never made any offensive or negative comments about anyone using the EEO process.

36.

I did not discriminate against Ms. Johnson based on her race, and I did not retaliate against her for filing any EEO Complaints.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statement of **36** paragraphs is true and correct.

Paul Reams

Executed this **21** day of August, 2008.

# EXHIBIT A

**Reams, Paul E.**

| | |
|---|---|
| From: | Reams, Paul E. |
| | Tuesday, April 13, 2004 1:06 PM |
| To: | Johnson, Bernethia |
| Cc: | #AT AL OHA Mon Mgt Team |
| Subject: | work at home on Thursday |

Bernethia,

I'm sorry for the confusion about the extra ADS day for you this month.  Since you worked the front desk last month, you are entitled to work an extra day each week this month.  In order to try to rectify the situation, I have decided that you may work at home this Thursday, April 15.

Be sure to let Paul Johnson know on Friday, which cases you pulled on Wednesday and Thursday.  Since you only have 6 cases assigned to you presently, please see Cynthia Lamar today, so management can assign some cases to you before you leave.  I expect you to use this extra day productively.  You should give particular attention to the 3 "over 50 days old" cases on your workup report.

Also on Friday, please tell Paul Johnson whether you plan to work at home an extra day for the rest of the month and, if so, which additional ADS day you want to work.

Thanks,

Paul

Exhibit
Page 14 of 65

exhibit  21

1

EXHIBIT B

## Findings of Investigation of Allegations Made By Bernethia Johnson
## Against Paul Johnson

On Tuesday, April 20, 2004, Bernethia Johnson requested a meeting with me in my office. I agreed and she came to my office with the assistant union representative, Lynda Hall. Bernethia Johnson reported that she had a complaint about her group supervisor, Paul Johnson. She said that on the previous day, April 19, 2004, Paul Johnson, had, on two occasions, screamed or yelled at her. She said that the first incident occurred at her cubicle, when Paul Johnson came up to her cubicle and told her to come back to a second supervisor's office to continue a discussion about whether Bernethia Johnson needed additional cases assigned to her. Bernethia Johnson said she told Paul Johnson that she needed to save her work before she went back to the office and that he then "screamed" at her to come back to the office now. She said that he was standing outside of her cubicle and she felt threatened. According to Ms. Johnson, she then told Paul Johnson that she needed to go to the bathroom first, but instead went to the assistant union representative's office and asked her, Lynda Hall, to call and ask several questions about the original work issue that caused this series of meetings. Cynthia Lamar, the second supervisor, asked Bernethia Johnson and Lynda Hall to come back to the office and get things settled. After they were back in Cynthia Lamar's office, Bernethia Johnson reported to me that Paul Johnson yelled at her again, that he stood up from his chair, and that she felt physically threatened. I asked if there were any witnesses to the yelling at her cubicle, which is located in a large open work area. She said that she did not know. I asked about the incident in Cynthia Lamar's office and she in turn asked Lynda Hall whether she had observed Paul Johnson yelling and standing up during the meeting that they both had attended . Lynda Hall said that she did not see Paul Johnson yelling or standing up. Additionally, Bernethia Johnson added to her charges by stating that Paul Johnson had yelled at her in the past, that this behavior was becoming more frequent, and that she felt that she was in a hostile work place. I asked her if she wanted to change supervisors. Bernethia Johnson stated that she did not because Cynthia Lamar was a liar and that Pam Davenport, the third and final supervisor in the Montgomery office, had lied about her in the past. I asked when that had occurred and she would not tell me. She said that she wanted to continue to be supervised by Paul Johnson. I asked what she wanted me to do and she said that I should ask Paul Johnson to stop yelling at her. I told her that I would investigate the matter.

The next day, Wednesday April 21, 2004, I individually asked the employees who work around Bernethia Johnson's cubicle if they heard or observed any sort of disturbance on Monday afternoon. Of the four employees I talked to, no one heard Paul Johnson screaming or yelling at Bernethia Johnson. I talked to Cynthia Lamar and Lynda Hall about the meeting in Cynthia Lamar's office. Neither employee observed Paul Johnson screaming or yelling. Both these witnesses stated that Paul Johnson never stood up. Bonita McWilliams sits in a work station outside of the door of this office. She said that she did not hear any yelling in the office. She said that she heard Paul Johnson state when the door was open, "I am your supervisor" and observed Bernethia Johnson tell

Exhibit _____
Page ____ of ____
Johnson
page

Lynda Hall to "Tell them to have a nice day" and then leave. Finally, I talked to Paul Johnson. He said that he did not scream or yell at Bernethia Johnson on either occasion and did not stand up while talking to Bernethia Johnson while in Cynthia Lamar's office. He said that he was standing while talking to her outside of her cubicle but never stood close to her. Paul Johnson said that when he asked Bernethia Johnson about whether she needed work, while in Cynthia Lamar's office, Bernethia Johnson had repeatedly refused to answer simple work related questions. I asked each of the witnesses and both agreed with Paul Johnson's statement. Each said that Bernethia Johnson had refused to answer work questions from her supervisor.

After speaking to all the parties involved in these allegations and all the witnesses to the events that I could locate, I conclude that Paul Johnson did not behave in an inappropriate manner when dealing with Bernethia Johnson on April 19, 2004. No one but Bernethia Johnson observed the alleged screaming and yelling about which Bernethia Johnson complained. Neither of the two other people in the meeting observed Paul Johnson stand up during the meeting. Because these allegations are totally unsupported by others, I must conclude that Bernethia Johnson's characterizations of Paul Johnson's behavior are not factual.

Bernethia Johnson also alleged that Paul Johnson had yelled or screamed at her in the past and that she was in a hostile work environment. However, as recently as November, 2003, Bernethia Johnson told B.J. Thomas that she "loved" her supervisor. She also states that she does not want to be moved into a group supervised by another supervisor. I find no consistency between her allegations of a hostile work environment, her prior statement regarding her supervisor, and her current preference to stay in Paul Johnson's group. I find no indication of a hostile work environment.

During the course of this investigation I did find that Bernethia Johnson had refused to talk to her supervisor about whether she needed any work assigned to her. It is a basic management right to question employees about work and to assign work. Refusing to discuss her work with her supervisor was a clear act of insubordination by Bernethia Johnson.

Paul Reams
Hearing Office Director
Montgomery, Alabama
April 29, 2004

exhibit 8
page 2
Exhibit 8
Page 23 of 64

April 21, 2004

I attended a meeting on April 19, 2004, in Cynthia Lamar's office with Cynthia, Paul
Johnson, and Bernethia Johnson at the request of Bernethia.  On April 20, 2004, I
attended a meeting in Paul Ream's office with Paul R. and Bernethia at Bernethia's
request.  In the meeting with Paul R., Bernethia stated that in the meeting the previous
day with Cynthia and Paul J. that Paul J. stood up from his chair twice but did not make a
step and yelled/screamed at her.  Bernethia requested my verbalization to Paul R. as to
Paul J's demeanor the previous day to confirm her narrative.  I replied that I had not seen
Paul J. stand from his chair, nor did I hear him yell/scream.

Lynda H. Hall

Exhibit: F 1
Page 19 of 69

It is my recollection that at or about 3:30p.m.on April 19, 2004 Bernethia Johnson presented at my office door and began speaking without entering my work area. At the time I was seated at my desk facing Paul Johnson who sat in the right corner of the room, apparently outside the scope of Bernethia's peripheral vision. As Bernethia stood at the door she looked to me and indicated that if it was alright she wished to work at her alternative duty station on Wednesday and Thursday and also wanted a new assignment of work-up cases. Bernethia seemed quite startled when she heard Paul Johnson's voice in reply. In fact she stated that she thought Paul had signed out for the day. Paul then reminded Bernethia that the assignment of work-up cases takes place on Fridays, absent unusual circumstances. Bernethia acknowledged Paul's statement in a brief and calm exchange which ended in Bernethia's final assertion that she would not go home and would not need more cases. At all times during this encounter several feet of physical space separated Paul and Bernethia. At no time did Paul scream or use any voice of threat or intimidation. I also observed Paul show no body movements that I viewed as angry or menacing.

Approximately 15 minutes following the visit just referenced I received what I thought was an informal telephone call from Lynda Hall about case workup assignment. When Lynda began asking specific questions about Bernethia, it quickly became apparent to me that Bernethia was directing Lynda's battery of questions. In fact, at one point I could hear Bernethia in the background urging Lynda to ask me whether Paul was still in my office. Upon hearing the insistence in Bernethia's voice, I responded affirmatively and asked Lynda to simply have Bernethia to come to my office so that any issues regarding case assignment could be resolved. At that point, Paul left my office for a brief time to summon Bernethia. In short order Bernethia again appeared at my office, this time accompanied by Lynda who took a seat to my right nearest the door. Bernethia sat in the corner farthest from the door, in the same chair occupied by Paul during Bernethia's first visit. Just as before, I was seated behind my desk with Paul then positioned to my left nearest the door. All 3 parties sat in clear view to me as Paul began to speak to Bernethia about case work assignment. At the same time, Paul asked Bernethia directly if she needed additional work. Lynda intervened stating that she had been asked by Bernethia to serve as Bernethia's spokesperson. Bernethia, in fact, refused to answer any of Paul's questions regarding work assignment, and on this occasion uttered no statements or responses of any kind. While I perceived Paul's statement to Bernethia to be firm, detailed, and direct, it was in no way boisterous, menacing, or hostile. It is also notable that, as he spoke, Paul was separated from Bernethia by at least 8 feet and remained in the same seated position throughout his entire presentation. The four of us were assembled in my office for less than 10 minutes during which time I observed Paul use no ultimatums nor any threatening verbal or non-verbal expressions or gestures of any kind. More specifically, I heard no screaming or yelling expressed by Paul Johnson during the course of events described, nor at any other time since I have known him. It should also be noted that on April 19, 2004, Bernethia Johnson made no direct or indirect request for case assignment that was denied by Paul Johnson or Cynthia Lamar.

Signed _____

Date _____4/21/04_____

Exhibit: 6 to 2
Page 15 of 68

## STATEMENT OF ACTIVITIES 04/19/04

I was at my desk continuously from 2:00 PM until after 4:00 PM on Monday, April 19, 2004, in order to prepare case files for hearings to be held the next day. I sit in close proximity to Ms. Bernethia Johnson (about two cubicles over), and at no time during the above named period did I hear raised voices or yelling in the general area. I have heard Ms. Johnson speak in raised volume in her cubicle from my desk several times in the past, so I feel that I would have easily heard raised voices or yelling from her cubicle (or anywhere else in the area) on the above date. I did not.

(I have heard raised voices at the reception desk from my cubicle in the past, and the distance from my desk to the reception desk is probably twice as far as the distance from my desk to Ms. Johnson's desk).

*Louise Chevalier*
Louise Chevalier
Legal Assistant

Exhibit ____
Page ____ of ____

**Weeks, Teresa**

**To:**                 Reams, Paul E.
**Subject:**          Particular's of conversation on 4/19/04

On the day of April 19th, 2004, around approximately 3:30 to 4:00 p.m., I heard a conversation between Bernethia Johnson and Paul Johnson from my office. Bernethia's cubicle is very closely located outside of my office. I can hear voices of all employees when they talk on this side of the building from most all of the cubicles when my door is open.

On the particular day listed, I first heard Bernethia's voice loudest involved in a conversation with Paul Johnson. I cannot recall exactly what was being said but I believe to the best of my knowledge that Paul Johnson was asking Bernethia about something or where something was or to do something. I recall thinking at the time how he was keeping his cool with Bernethia and not sounding mad but just as he should be--a professional handling a situation with an obnoxious employee. He was not yelling even though his voice carried to my office--Bernethia was mostly talking the loudest and she sounded irritated, almost sarcastic in a way. I never heard any words that would have lead me to believe that anything other than a business conversation was being carried on though, and that the supervisor, Paul Johnson, was just trying to get an answer or a work problem taken care of.

Teresa Weeks
4/20/04

Exhibit: b.t r 4
Page 18 of 69

1

Paul Reams

On the April 19th I was at the front desk working.

I did not take notice of any type of loud talking in the area or any type of confrontational conversations.

Karen Burton
Dated: 4/19/04

Exhibit
Page 18 of 69

The only expression I heard from the direction of Bernethia's cubicle on Monday afternoon, April 19, 2004, was, " I'm going to the bathroom and I'll be there in a minute," and that was from Bernethia.  I don't know who she was talking to. I did not hear any other remarks.

*Brenda McAnnally*

Exhibit ___ 6
Page 29 of 69

**Johnson, Paul Whitson   OHA Montgomery HO**

| | |
|---|---|
| **From:** | Johnson, Paul Whitson   OHA Montgomery HO |
| **Sent:** | Wednesday, April 21, 2004 10:10 AM |
| **To:** | Reams, Paul E.; Thigpen, Charles A.   OHA Montgomery HO |
| **Subject:** | Your inquiry about Bernethia Johnson |

Paul:

In response to your inquiry about the on-going problems with Bernethia Johnson's work performance:

1.  I have never "screamed" or "yelled" at Bernethia under any circumstances.

2.  On Monday, during a meeting with her and Cynthia Lamar, I did not stand and make any type of aggressive gesture toward her. I was sitting in Cynthia's black leather chair when she entered the room with Lynda Hall (serving as a union rep), and I remained sitting until she left the room. I did not yell or scream at her during the meeting. I did use a tone of voice that I felt would convey the serious nature of the conversation and the inappropriateness of Bernethia's behavior. My comments were carefully chosen to make sure that there was no misunderstanding about what was expected of Bernethia. My comments were direct and to the point. Bernethia repeatedly refused to answer simple work-related questions during the meeting. She asked to briefly leave a few times during the meeting to confer with Lynda. I made no attempt to keep her from leaving, and they briefly spoke in front of Bonita McWilliams' cubicle several times. Cynthia Lamar and Lynda Hall were present during the entire meeting and can provide an account of my actions.

The discussion was basically about two things: Did she want to participate in the ADS/flexiplace program? If so, did she need work to take home? I told her that ADS was available to her and that it was up to her to decide if she wanted to participate. Her allegation that she has never discussed ADS with me is absurd. She initially signed up for the program with me as her supervisor. I have the initial forms with her signature and mine, dated 2/9/01. She most recently re-enrolled in the program on 10/21/03. If she intends to participate again, she needs to complete a new request form. You yourself overheard a conversation I had with her last week about ADS, and I asked you to call her to make sure that she knew what days she could work.

During the meeting, I also discussed Bernethia's failure to ask for new pulling cases on Fridays in accordance with office procedures. She had received at least three e-mails from me about this. Cynthia also asked Bernethia if she needed additional cases, and we made it clear that she could get additional work.

3.  As to the allegation that there was some type of inappropriate confrontation at her cubicle. Immediately prior to the meeting with Cynthia, I went to Bernethia's cubicle and asked her to come to Cynthia's office. She indicated that she did not want to meet at that time, and I told her that we needed to meet now to resolve whatever problem she was having. She said she needed to go to the bathroom. I told her that was fine and to come to Cynthia's office when she was done. I would estimate that the conversation lasted 30 seconds or so. It was brief, and I most certainly was not "yelling" or "screaming" at any point in the conversation. I did not get close to her in her cubicle space, and I did not use my body in any way to reflect aggression or intimidation. There were several employees nearby who certainly would have heard any loud confrontation if Bernethia's allegations were true. Teresa Weeks was the closest, and she may well have overheard the conversation. Karen Burton was nearby, working in the front desk area, and I think Denise Crowell was working over by her cubicle.

If you need additional information, please let me know.

Paul Johnson

Exhibit ~~L K I~~ 7
Page ~~2 0~~ of ~~6 9~~

1

# EXHIBIT C



**SOCIAL SECURITY ADMINISTRATION**                **Office of Hearings & Appeals**

# MEMORANDUM

**Date:**          April 29, 2004

**From:**          Paul W. Johnson
                   Group Supervisor

**Subject:**       Disciplinary Action for Bernethia Johnson

**To:**            Paul E. Reams, Hearing Office Director
                   Charles A. Thigpen, HOCALJ

I have written this memorandum to present facts in support of taking disciplinary action against Bernethia Johnson. Despite oral warning, Bernethia repeatedly made inputs in HOTS to reflect that she had completed workup of cases assigned to her that, in fact, were not worked up. In mid-October 2003, I began performing an audit of the cases assigned to my legal assistants, including Bernethia. I initially could not locate 17 of Bernethia's files. With her assistance, I located the files. She informed me that she thought she had moved the files from workup (WKUP) to pre-hearing development (PRE) status in HOTS. She agreed that the files did not contain exhibit lists and some had incomplete information on the ALJ folder. I told her that moving these incomplete cases from WKUP was clearly against office procedures. Her initial response was she was told by another employee that a manager had recently changed office workup procedures and that she had changed the statuses based on that conversation. She would not identify the employee or manager. I told her I would investigate and that management would not have made such a significant change without a staff meeting, written instructions by e-mail or handout, and follow-up by me as her supervisor. Upon investigation, I found no one who provided information consistent with Bernethia's statements.

On October 21, 2003, I met with Bernethia in my office. I explained the purpose of the meeting, and she elected to proceed without having a union representative present. She retracted her prior statements and said that there simply had been some type of misunderstanding about workup procedures. She agreed that there had been no procedural change. I explained to her that management had concerns that she was intentionally hiding incomplete work. I again reviewed office procedures with her regarding worked up files. I instructed her to return the incomplete files to the correct status and finish the work. I warned her that she faced disciplinary action if she improperly moved incomplete cases from workup again. I explained to her that I was most troubled by her changing the status of the cases so soon after I had given her a workup report on 9/19/03 that reflected her pending cases were getting old. This appeared to be a deliberate attempt to reduce the age of her pending work and give management the false impression that her work was finished. I subsequently discussed this matter with Paul Reams and HOCALJ Thigpen. We discussed the possible need for a work improvement plan.

REDACTED

JOHNSON001

2

To emphasize the importance of what I had said to Bernethia in private, I held a group meeting on October 23, 2003, about proper workup procedures. Bernethia was present at that meeting. I also sent an e-mail to all our legal assistants on October 29, 2003, as a further reminder of proper workup procedures. The attached e-mail is consistent with what I told Bernethia in private and in the group meeting. It reads, in part, as follows:

> *It is important to remember that you should not move a case from WKUP status unless you have completely worked up the file. This includes typing the exhibit list and completing the information on the ALJ folder. This procedure has been in place for a very long time and would not be changed without written notice.*

> *Since this is the last week of the month, many of you will likely be moving cases to RTH over the next few days. Again, you should not change the status of a case to RTH unless you are putting the file in the RTH cabinets. If you have any questions, see your supervisor.*

Please note that, in October 2003, this office was still using the RTH code for unassigned worked up cases, instead of the RTS code that we now use. The RTH cabinets at that time were file cabinets separately set aside for fully worked up cases that were ready to be assigned to a judge for hearing. My e-mail was referring to those cabinets.

In February 2004, I again began to have some concerns that Bernethia might be hiding incomplete work because the staff could not locate files that, according to HOTS, were worked up by her. Bernethia's workstation was often disorganized, and I concluded that I would have to do another legal assistant audit to determine if there was a problem. In March, I ran a list of the cases in Bernethia's initials and began to search for the files. Bernethia had stacks of cases on her desk that were not in her initials. I spoke to Bernethia, who was working as the receptionist on the front desk that month, about the stacks of cases on her desk. She said she was very busy at the front desk and that she would look into it. She subsequently took leave for the entire week of March 22nd. On April 2nd, I checked her desk and again saw several of the cases that were not in her initials in HOTS. I spoke to Bernethia and told her that we would need to meet to discuss her cases. We did not have a meeting that day. I investigated further. By April 5th, it was apparent to me that there was a serious problem. I went to Bernethia's desk to schedule a meeting. She was not there. I think she had taken leave to go to a funeral. I had printed some cases histories from HOTS for some of the missing files, and I left them on her desk with a note. I subsequently spoke to Paul Reams and Cynthia Lamar about the problem and began to carefully review information saved in HOTS and Microsoft Word to determine if there was going to be a need for disciplinary action. On Monday, April 19th, Bernethia made unsupported allegations against me regarding inappropriate supervisory behavior. My supervisor asked me to put this matter on hold until he could investigate. Yesterday, I was informed by my supervisor that the investigation was complete and that I could proceed with this matter.

Below are some specific examples of Bernethia's misconduct since the oral warning. Copies of HOTS and Microsoft Word documents are attached to provide objective evidence in support of the proposed disciplinary action.

REDACTED

JOHNSON002

Bernethia's February Workup Report from HOTS indicates that she completed 16 cases. Computer records reveal that many of the cases were, in fact, not completely worked up. In addition, exhibit lists for two of the cases are not saved in the Q: drive, so I am unable to determine when Bernethia actually worked up those two files. The following are some examples of my findings:

J█████ D████ #█████6466
Assigned to BTJ on 1/26/04. BTJ moved the case from WKUP on 2/27/04. Word reflects that she did not create the exhibit list until 4/6/04.

M██████ B████ #█████9900
Assigned to BTJ on 1/26/04. BTJ moved the case from WKUP on 2/27/04. Word reflects that she did not create the exhibit list until 3/4/04.

A█████ S██████ #██████0870
Assigned to BTJ on 1/26/04. BTJ moved the case from WKUP on 2/20/04. Word reflects that she did not create the exhibit list until 3/10/04.

Y████ M█████ #█████7645
Assigned to BTJ on 1/26/04. BTJ moved the case from WKUP on 2/27/04. Word reflects that she did not create the exhibit list until 3/4/04.

J███████ W██████ #█████8010
Assigned to BTJ on 2/6/04. BTJ moved the case from WKUP on 2/27/04. Word reflects that she did not create the exhibit list until 3/4/04.

L█████ B████ #█████2738
Assigned to BTJ on 2/20/04. BTJ moved the case from WKUP on 2/20/04. Word reflects that she did not create the exhibit list until 4/5/04.

S███ M████ #█████4922
Assigned to BTJ on 1/26/04. BTJ moved the case from WKUP on 2/27/04. Word reflects that she did not create the exhibit list until 4/2/04.

S██████ B████ #██████4153
Assigned to BTJ on 1/26/04. BTJ moved the case from WKUP on 2/27/04. Word reflects that she did not create the exhibit list until 4/5/04.

In many of these cases, Bernethia failed to actually work up the files until over a month after her last HOTS input. It is also noteworthy that a significant number of the inputs occurred on 2/27/04. That was the last day of the February production month. It is apparent that Bernethia's actions were a deliberate manipulation of her production numbers to hide her poor performance for that month and to reduce her "average age pending" number.

Bernethia served on the front desk as the receptionist for March, and, therefore, was not assigned cases for workup that month. In April, an audit of the RTS file cabinets by another employee

REDACTED

4

indicated that some of the cases that Bernethia had reported working up were missing. I went to
Bernethia's desk and found the missing cases at her workstation. On Monday, April 26, 2004, I
asked Pam Davenport to accompany me to Bernethia's workstation. We reviewed some of the
cases at issue and noted that the files did not contain exhibit lists even though Bernethia had
previously moved them from WKUP. Given Bernethia's HOTS inputs, these cases should have
been completely worked up and in the RTS cabinets. Here are two examples of what we found:

C▇▇▇Collum #▇▇▇1983
Assigned to BTJ on 4/14/04. BTJ moved the case from WKUP on 4/17/04. The file was still on
her desk as of 4/26/04 at 7:00 a.m., and it did not contain an exhibit list. Word reflects that BTJ
created the exhibit list on 4/26/04.

E▇▇ R▇▇ #▇▇8806
Assigned to BTJ on 4/14/04. BTJ moved the case from WKUP on 4/23/04. The file was still on
her desk as of 4/26/04 at 7:00 a.m., and it did not contain an exhibit list. Word reflects that BTJ
created the exhibit list on 4/26/04.

Once I returned to my desk, I began to check some of the other cases that Bernethia had recently
moved from WKUP. Once again, it was quite apparent that Bernethia had continued to make
inputs in HOTS to reflect that she had completed workup of cases assigned to her that, in fact,
she has not worked up. Here is another example of what I found:

F▇N▇ #▇▇4812
Assigned to BTJ on 2/6/04. BTJ moved the case from WKUP on 4/17/04. Word reflects that
BTJ created the exhibit list on 4/26/04.

I am confident that further investigation would reveal many other examples of similar
misconduct by Bernethia since the oral warning; however, it is my opinion that the current
information more than adequately supports a reprimand or suspension at this time. If you would
like me to obtain additional information, please let me know.

REDACTED

COMPLETED WORKUP REPORT FOR MONTGOMERY
PERIOD  01/31/2004 - 02/27/2004    EMPLOYEE:  BTJ

| CONTROL NAME | SSN | CLT | HT | REQ-DATE | STAT | STAT-DATE | ALJ | BEG-WKUP | REL-WKUP | CON | CRIT | DAYS | SI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D▮▮, J▮ | ▮6466 | SSID | 10 | 05/12/03 | DWR | 04/06/04 | 0000 | 01/26/04 | 02/27/04 | | | 32 | M |
| B▮, M▮ | ▮9900 | SSID | 10 | 05/12/03 | RTS | 03/09/04 | 1410 | 01/26/04 | 02/27/04 | | | 32 | M |
| B▮, M▮ | ▮1537 | SSID | 10 | 05/27/03 | SCHD | 04/09/04 | 2059 | 02/06/04 | 02/20/04 | | | 14 | S |
| S▮, A▮ | ▮0870 | DIWC | 10 | 05/12/03 | RTS | 03/25/04 | 2059 | 01/26/04 | 02/20/04 | | | 25 | M |
| C▮, T▮ | ▮4960 | SSID | 10 | 05/27/03 | SCHD | 04/09/04 | 2059 | 02/06/04 | 02/20/04 | | | 14 | S |
| R▮, C▮ | ▮1104 | SSID | 10 | 05/23/03 | RTS | 04/15/04 | 2059 | 02/06/04 | 02/20/04 | | | 14 | M |
| H▮, Y▮ | ▮7645 | SSID | 10 | 05/12/03 | SCHD | 04/20/04 | 2059 | 01/26/04 | 02/27/04 | | | 32 | S |
| W▮, J▮ | ▮8010 | SSDC | 10 | 05/23/03 | SCHD | 04/09/04 | 2059 | 02/06/04 | 02/27/04 | | | 21 | S |
| B▮, L▮ | ▮2738 | SSDC | 10 | 06/11/03 | PRE | 04/16/04 | 2195 | 02/20/04 | 02/20/04 | | | 0 | S |
| M▮, S▮ | ▮4922 | SSDC | 10 | 05/10/03 | RTS | 04/05/04 | 2286 | 01/26/04 | 02/27/04 | | | 32 | M |
| D▮, S▮ | ▮4525 | SSID | 10 | 05/12/03 | PRE | 04/05/04 | 2286 | 01/26/04 | 02/27/04 | | | 32 | M |
| B▮, S▮ | ▮4153 | DIWC | 10 | 05/12/03 | PRE | 04/14/04 | 2286 | 01/26/04 | 02/27/04 | | | 32 | M |
| J▮. A▮ | ▮0836 | SSID | 11 | 02/03/04 | PRE | 04/14/04 | 2286 | 02/18/04 | 02/27/04 | | | 9 | M |
| H▮, J▮ | ▮2819 | DIWC | 11 | 11/17/03 | RTS | 03/16/04 | 2329 | 02/06/04 | 02/20/04 | | | 14 | M |
| T▮, V▮ | ▮8994 | DIWC | 32 | 12/16/03 | RTS | 04/14/04 | 2329 | 01/29/04 | 02/27/04 | | | 29 | M |
| J▮, J▮ | ▮7784 | SSDC | 10 | 05/23/03 | SCHD | 04/07/04 | 2409 | 02/06/04 | 02/20/04 | | Y | 14 | M |

TOTAL COMPLETED WORKUP CASES = 16

AVERAGE WORKUP DAYS = 22

These are the cases Bernethia claimed she worked-up in Feb. 2004. Many of these cases were still being worked on by her in March and April. Feb 27, 2004 was the last day of the work month and she input she had completed many of them on that date.

REDACTED

JOHNSON005

```
04/27/2004  12:10 PM            HOTS CASE HISTORY
Page: 1                                                    HO CODE: 5139
=====================================================================
  E: B     I            SSN:           CLT: SSDC  HGT: 10 ALJ: 2195
HRREQ: 06/11/03  HRREC: 06/16/03          ASGN ALJ: 04/12/04  BIC:      SSO: 630
XREF NAME:                          XREF SSN:           XBIC: A
ADDRESSEE:                                                    DOB:
CLMT ADDR:                                              PH:
CLMT CITY:                CLMT ST:      CLMT ZIP:              GROUP: A
REP NAME:                        ATTY: N  FEE PETITION:     CLASS ACTION:
REP ADDR:                                              PH:
REP CITY:              REP ST:      REP ZIP:
REMARKS:
=====================================================================
STATUS: PRE   STATUS DATE: 04/16/04  EMP: YYY  CF RECD: 06/16/03  TRANS:
HRG WAIVED: N SUB APP:     SPECIAL CASE CODE: X OVERPMT: N HEARING SITE: S
=====================================================================
TL REMAND:   CIR COURT:      CT REM:   /  /   CT DUE:   /  /   CRITICAL CASE: N
HO FIELD1:        HO FIELD2:           VIDEO?       RECON DATE: 05/01/03
=====================================================================
1ST C INT:      LOC:    RECD:        D:          RESP:
2ND C INT:      LOC:    RECD:        D:          RESP:
3RD C INT:      LOC:    RECD:        D:          RESP:
4TH C INT:      LOC:    RECD:        D:          RESP:
5TH C INT:      LOC:    RECD:        D:          RESP:
=====================================================================
BEGIN MDKT:  06/16/03   END MDKT:   06/17/03  MDKT EMP: ESH
BEGIN WORKUP: 02/20/04  END WORKUP: 02/20/04  WKUP EMP: BTJ WKUP OUT:N
BEGIN PRE:   04/16/04   END PRE:    /  /   PRE EMP:   YYY BEG WKCN:  /  /
  IN DWR:    /  /       END DWR:    /  /   DWR EMP:      END WKCN:  /  /
RELEASED FROM ALJ PRE REVIEW: 04/16/04   T2 APP: 03/26/03   T16 APP: 03/26/03
=====================================================================
READY TO SCHEDULE: 02/20/04           NOTICE SENT:   /  /
HEAR SCHD:  /  /   HEAR DATE:  /  /   HEAR TIME:      VE:         ME:
SCH EMP:
HEAR SCHD1:  /  /   HEAR DATE1:  /  /  VE1:      ME1:      EMP1:     PP1:
HEAR SCHD2:  /  /   HEAR DATE2:  /  /  VE2:      ME2:      EMP2:     PP2:
HEAR SCHD3:  /  /   HEAR DATE3:  /  /  VE3:      ME3:      EMP3:     PP3:
HEAR HELD:  /  /   PARTICIPANTS:        HR:        INTERPRETER:
=====================================================================
BEG POST:        /  /   END POST:     /  /    POST EMP:       PC USED:
BEG DRAFT:       /  /   END DRAFT:    /  /    WRITER:      DRAFT OUT:
BEG DFT TYPING:  /  /   END DFT TYPING:  /  /  DFT TYPIST:     TYP OUT:
END WRITER EDITING:  /  /    END TYP CORR:  /  /   END FINAL TYPING:  /  /
RELEASED FROM ALJ SIGNING:       /  /        FINAL TYPIST:
=====================================================================
1ST DEV BEGIN:  /  /   TYPE:      DIARY:  /  /   RECD:   /  /
2ND DEV BEGIN:  /  /   TYPE:      DIARY:  /  /   RECD:   /  /
3RD DEV BEGIN:  /  /   TYPE:      DIARY:  /  /   RECD:   /  /
4TH DEV BEGIN:  /  /   TYPE:      DIARY:  /  /   RECD:   /  /
5TH DEV BEGIN:  /  /   TYPE:      DIARY:  /  /   RECD:   /  /
6TH DEV BEGIN:  /  /   TYPE:      DIARY:  /  /   RECD:   /  /
=====================================================================
DISPOSITION DATE:   /  /   ISSUE INDICATOR: D ON REC: Y   MAIL DATE:  /  /
  DSP:    PFI:  EOD:  /  /   REG:    DOC:  /  /   IMP:        CTT:
  DSP:    PFI:  EOD:  /  /   REG:    DOC:  /  /   IMP:        CTT:
MAIL EMPLOYEE:      FEE AGRMT:    FEE APRVD:  DAA:   LAST UPDATE: BSM 04/16/04
```

Exhibit
Page    of

REDACTED

JOHNSON006



Exhibit 8
Page 3 of 64
P 2

REDACTED

JOHNSON007

```
04/27/2004  12:10 PM          HOTS CASE HISTORY
Page: 1                                                    HO CODE: 5139
=================================================================================
 ●ME: M███████S███████        SSN:            CLT: SSDC HGT: 10 ALJ: 2286
 ●EQ: 05/10/03  HRREC: 05/17/03          ASGN ALJ: 04/05/04 BIC:     SSO: C32
XREF NAME:                      XREF SSN:              XBIC: A
ADDRESSEE:   ███████                                          DOB: ███████
CLMT ADDR:                                               PH: ███████
CLMT CITY:              CLMT ST: ██ CLMT ZIP: ████            GROUP: C
REP NAME:                    ATTY: Y  FEE PETITION:    CLASS ACTION:
REP ADDR:   ███████                                     PH: ███████
REP CITY:             REP ST: ██ REP ZIP: ███████
REMARKS:
=================================================================================
STATUS: RTS   STATUS DATE: 04/05/04  EMP: CCC  CF RECD: 05/17/03  TRANS:
HRG WAIVED: N SUB APP:     SPECIAL CASE CODE: X OVERPMT: N HEARING SITE: M
=================================================================================
TL REMAND:    CIR COURT:      CT REM:  /  /   CT DUE:   /  /  CRITICAL CASE: N
HO FIELD1:        HO FIELD2:          VIDEO?      RECON DATE:  04/17/03
=================================================================================
1ST C INT:      LOC:     RECD:        D:         RESP:
2ND C INT:      LOC:     RECD:        D:         RESP:
3RD C INT:      LOC:     RECD:        D:         RESP:
4TH C INT:      LOC:     RECD:        D:         RESP:
5TH C INT:      LOC:     RECD:        D:         RESP:
=================================================================================
BEGIN MDKT:    05/17/03   END MDKT:    05/19/03  MDKT EMP: ESH
BEGIN WORKUP:  01/26/04   END WORKUP:  02/27/04  WKUP EMP: BTJ WKUP OUT:N
●EGIN PRE:     02/27/04   END PRE:     02/27/04  PRE EMP: BTJ BEG WKCN:  /  /
●GIN DWR:      10/24/03   END DWR:     10/27/03  DWR EMP: PWJ END WKCN:  /  /
RELEASED FROM ALJ PRE REVIEW: 04/05/04    T2 APP: 02/04/03   T16 APP: 02/04/03
=================================================================================
READY TO SCHEDULE: 04/05/04       NOTICE SENT:       /  /
HEAR SCHD:  /  /    HEAR DATE:  /  /   HEAR TIME:        VE:       ME:
SCH EMP:
HEAR SCHD1:  /  /   HEAR DATE1:  /  /  VE1:     ME1:      EMP1:     PP1:
HEAR SCHD2:  /  /   HEAR DATE2:  /  /  VE2:     ME2:      EMP2:     PP2:
HEAR SCHD3:  /  /   HEAR DATE3:  /  /  VE3:     ME3:      EMP3:     PP3:
HEAR HELD:  /  /    PARTICIPANTS:         HR:         INTERPRETER:
=================================================================================
BEG POST:           /  /    END POST:      /  /  POST EMP:     PC USED:
BEG DRAFT:          /  /    END DRAFT:     /  /  WRITER:       DRAFT OUT:
BEG DFT TYPING:     /  /    END DFT TYPING: /  / DFT TYPIST:   TYP OUT:
END WRITER EDITING:  /  /   END TYP CORR:  /  /    END FINAL TYPING:  /  /
RELEASED FROM ALJ SIGNING:      /  /       FINAL TYPIST:
=================================================================================
1ST DEV BEGIN:  /  /   TYPE:     DIARY:  /  /  RECD:  /  /
2ND DEV BEGIN:  /  /   TYPE:     DIARY:  /  /  RECD:  /  /
3RD DEV BEGIN:  /  /   TYPE:     DIARY:  /  /  RECD:  /  /
4TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /  RECD:  /  /
5TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /  RECD:  /  /
6TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /  RECD:  /  /
=================================================================================
DISPOSITION DATE:    /  /   ISSUE INDICATOR: D  ON REC: Y   MAIL DATE:  /  /
 ● DSP:     PFI:   EOD:  /  /  REG:   DOC:  /  /  IMP:           CTT:
 6 DSP:     PFI:   EOD:  /  /  REG:   DOC:  /  /  IMP:           CTT:
MAIL EMPLOYEE:     FEE AGRMT:     FEE APRVD:   DAA:   LAST UPDATE: BSM 04/05/04
```

Exhibit _8_

Page _33_ of _65_
p 3

REDACTED

JOHNSON008



|  | Character Count | 1684 |
| --- | --- | --- |
|  | Lines | 14 |
|  | Paragraphs | 3 |
|  | Scale | Yes |
|  | Links Dirty? | False |
|  | Comments | |

**Origin**
|  | Author | Bernethia T. Johnson |
| --- | --- | --- |
|  | Last Saved By | Bernethia T. Johnson |
|  | Revision Number | 1 |
|  | Application Name | Microsoft Word 10.0 |
|  | Company Name | SSA |
|  | Manager | Elms |
|  | Date of Creation | 4/2/2004 |
|  | Date Last Saved | 4/2/2004 |
|  | Last Printed | |

Exhibit ___8___
Page ___ of ___

REDACTED

JOHNSON009

```
04/27/2004  12:10 PM            HOTS CASE HISTORY
Page: 1
                                                               HO CODE: 5139
=====================================================================
    ███IE: W██████, J███████     SSN: _____   CLT: SSDC  HGT: 10  ALJ: 2059
    ██Q: 05/23/03  HRREC: 06/03/03         ASGN ALJ: 03/10/04  BIC:    SSO: 630
XREF NAME:                       XREF SSN:           XBIC: A
ADDRESSEE:                                                   DOB:
CLMT ADDR:                                           PH:
CLMT CITY:              CLMT ST:   CLMT ZIP:                  GROUP:
REP NAME:                    ATTY: Y  FEE PETITION:      CLASS ACTION:
REP ADDR:                                            PH:
REP CITY:               REP ST:    REP ZIP:
REMARKS:
=====================================================================
STATUS: SCHD   STATUS DATE: 04/09/04   EMP: CJW  CF RECD: 06/03/03   TRANS:
HRG WAIVED: N  SUB APP:       SPECIAL CASE CODE: X OVERPMT: N HEARING SITE: S
=====================================================================
TL REMAND:      CIR COURT:        CT REM:   / /   CT DUE:   / /   CRITICAL CASE: N
HO FIELD1:            HO FIELD2:           VIDEO?      RECON DATE: 04/10/03
=====================================================================
1ST C INT:       LOC:      RECD:        D:          RESP:
2ND C INT:       LOC:      RECD:        D:          RESP:
3RD C INT:       LOC:      RECD:        D:          RESP:
4TH C INT:       LOC:      RECD:        D:          RESP:
5TH C INT:       LOC:      RECD:        D:          RESP:
=====================================================================
BEGIN MDKT: 06/03/03    END MDKT:    06/04/03  MDKT EMP: ESH
BEGIN WORKUP: 02/06/04  END WORKUP: 02/27/04  WKUP EMP: BTJ  WKUP OUT:N
BEGIN PRE:    / /       END PRE:    / /    PRE EMP:        BEG WKCN:  / /
██GIN DWR:    / /       END DWR:    / /    DWR EMP:        END WKCN:  / /
RELEASED FROM ALJ PRE REVIEW: 03/17/04    T2 APP: 02/19/03   T16 APP: 02/19/03
=====================================================================
READY TO SCHEDULE: 03/17/04            NOTICE SENT: 04/09/04
HEAR SCHD: 04/09/04  HEAR DATE: 05/06/04 HEAR TIME: 11:00  VE: 0456   ME:
SCH EMP: CJW
HEAR SCHD1:   / /    HEAR DATE1:   / /   VE1:       ME1:       EMP1:     PP1:
HEAR SCHD2:   / /    HEAR DATE2:   / /   VE2:       ME2:       EMP2:     PP2:
HEAR SCHD3:   / /    HEAR DATE3:   / /   VE3:       ME3:       EMP3:     PP3:
HEAR HELD:    / /    PARTICIPANTS:            HR:         INTERPRETER:
=====================================================================
BEG POST:            END POST:     / /     POST EMP:         PC USED:
BEG DRAFT:           END DRAFT:    / /     WRITER:           DRAFT OUT:
BEG DFT TYPING:      END DFT TYPING:  / /  DFT TYPIST:       TYP OUT:
END WRITER EDITING:   / /    END TYP CORR:  / /   END FINAL TYPING:   / /
RELEASED FROM ALJ SIGNING:     / /           FINAL TYPIST:
=====================================================================
1ST DEV BEGIN:   / /   TYPE:      DIARY:  / /   RECD:   / /
2ND DEV BEGIN:   / /   TYPE:      DIARY:  / /   RECD:   / /
3RD DEV BEGIN:   / /   TYPE:      DIARY:  / /   RECD:   / /
4TH DEV BEGIN:   / /   TYPE:      DIARY:  / /   RECD:   / /
5TH DEV BEGIN:   / /   TYPE:      DIARY:  / /   RECD:   / /
6TH DEV BEGIN:   / /   TYPE:      DIARY:  / /   RECD:   / /
=====================================================================
DISPOSITION DATE:    / /    ISSUE INDICATOR: D  ON REC: Y   MAIL DATE:  / /
  ● DSP:    PFI:  EOD:  / /   REG:   DOC:  / /  IMP:          CTT:
    DSP:    PFI:  EOD:  / /   REG:   DOC:  / /  IMP:          CTT:
MAIL EMPLOYEE:      FEE AGRMT:    FEE APRVD:    DAA:   LAST UPDATE: MKT 04/09/04
```

Printed Page 3**2** of 6**5**
PS

REDACTED

JOHNSON010



| | | |
|---|---|---|
| Character Count | 1501 | |
| Lines | 12 | |
| Paragraphs | 3 | |
| Scale | Yes | |
| Links Dirty? | False | |
| Comments | | |
| Origin | | |
| Author | Bernethia T. Johnson | |
| Last Saved By | Bernethia T. Johnson | |
| Revision Number | 2 | |
| Application Name | Microsoft Word 10.0 | |
| Company Name | SSA | |
| Manager | Elms | |
| Date of Creation | 3/4/2004 | |
| Date Last Saved | 3/4/2004 | |
| Last Printed | | |

Exhibit 8
Page 5 of 69
p- 6

REDACTED

JOHNSON011

```
04/27/2004   12:10 PM              HOTS CASE HISTORY
Page: 1                                                        HO CODE: 5139
================================================================================
NAME: M_____ Y____          SSN:              CLT: SSID  HGT: 10  ALJ: 2059
REQ: 05/12/03  HRREC: 05/31/03          ASGN ALJ: 03/10/04  BIC:      SSO: 630
XREF NAME:                        XREF SSN:              XBIC:
ADDRESSEE:                                                  DOB:
CLMT ADDR:                                             PH:
CLMT CITY:              CLMT ST:     CLMT ZIP:                   GROUP:
REP NAME:                  ATTY: Y  FEE PETITION:        CLASS ACTION:
REP ADDR:                                              PH:
REP CITY:              REP ST:     REP ZIP:
REMARKS: LATE FILING
================================================================================
STATUS: SCHD   STATUS DATE: 04/20/04  EMP: BTJ  CP RECD: 05/31/03  TRANS:
HRG WAIVED: N SUB APP:     SPECIAL CASE CODE: X OVERPMT: N HEARING SITE: S
================================================================================
TL REMAND:    CIR COURT:      CT REM:  / /   CT DUE:  / /   CRITICAL CASE: N
HO FIELD1:            HO FIELD2:          VIDEO?     RECON DATE: 02/18/03
================================================================================
1ST C INT:       LOC:     RECD:          D:           RESP:
2ND C INT:       LOC:     RECD:          D:           RESP:
3RD C INT:       LOC:     RECD:          D:           RESP:
4TH C INT:       LOC:     RECD:          D:           RESP:
5TH C INT:       LOC:     RECD:          D:           RESP:
================================================================================
BEGIN MDKT:   05/31/03    END MDKT:   05/31/03  MDKT EMP: BSM
BEGIN WORKUP: 01/26/04    END WORKUP: 02/27/04  WKUP EMP: BTJ WKUP OUT:N
BEGIN PRE:     / /        END PRE:     / /   PRE EMP:       BEG WKCN:  / /
BEGIN DWR:     / /        END DWR:     / /   DWR EMP:       END WKCN:  / /
RELEASED FROM ALJ PRE REVIEW: 03/17/04     T2 APP:  / /      T16 APP: 10/31/02
================================================================================
READY TO SCHEDULE: 03/17/04              NOTICE SENT: 04/20/04
HEAR SCHD: 04/20/04 HEAR DATE: 05/26/04 HEAR TIME: 09:30  VE: 6298    ME:
SCH EMP: BTJ
HEAR SCHD1:  / /   HEAR DATE1:  / /   VE1:      ME1:      EMP1:      PP1:
HEAR SCHD2:  / /   HEAR DATE2:  / /   VE2:      ME2:      EMP2:      PP2:
HEAR SCHD3:  / /   HEAR DATE3:  / /   VE3:      ME3:      EMP3:      PP3:
HEAR HELD:   / /   PARTICIPANTS:          HR:          INTERPRETER:
================================================================================
BEG POST:      / /    END POST:      / /    POST EMP:        PC USED:
BEG DRAFT:     / /    END DRAFT:     / /    WRITER:         DRAFT OUT:
BEG DFT TYPING: / /   END DFT TYPING: / /   DFT TYPIST:     TYP OUT:
END WRITER EDITING:  / /     END TYP CORR:  / /    END FINAL TYPING:  / /
RELEASED FROM ALJ SIGNING:    / /              FINAL TYPIST:
================================================================================
1ST DEV BEGIN:  / /   TYPE:      DIARY:  / /   RECD:  / /
2ND DEV BEGIN:  / /   TYPE:      DIARY:  / /   RECD:  / /
3RD DEV BEGIN:  / /   TYPE:      DIARY:  / /   RECD:  / /
4TH DEV BEGIN:  / /   TYPE:      DIARY:  / /   RECD:  / /
5TH DEV BEGIN:  / /   TYPE:      DIARY:  / /   RECD:  / /
6TH DEV BEGIN:  / /   TYPE:      DIARY:  / /   RECD:  / /
================================================================================
DISPOSITION DATE:   / /    ISSUE INDICATOR: D  ON REC: Y   MAIL DATE:  / /
T2 DSP:      PFI:  EOD:  / /   REG:    DOC:  / /   IMP:         CTT:
T16 DSP:     PFI:  EOD:  / /   REG:    DOC:  / /   IMP:         CTT:
MAIL EMPLOYEE:      FEE AGRMT:    FEE APRVD:   DAA:   LAST UPDATE: MKT 04/20/04
```

Page ___ of ___

REDACTED

JOHNSON012



| | | |
|---|---|---|
| Character Count | 1514 | |
| Lines | 12 | |
| Paragraphs | 3 | |
| Scale | Yes | |
| Links Dirty? | False | |
| Comments | | |
| Origin | | |
| Author | Bernethia T. Johnson | |
| Last Saved By | Bernethia T. Johnson | |
| Revision Number | 2 | |
| Application Name | Microsoft Word 10.0 | |
| Company Name | SSA | |
| Manager | Elms | |
| Date of Creation | 3/4/2004 | |
| Date Last Saved | 3/4/2004 | |
| Last Printed | | |

Exhibit ___8___
Page ___5D___ of ___6C___
                 p. 8

REDACTED

JOHNSON013

```
04/27/2004  12:10 PM              HOTS CASE HISTORY
Page: 1                                                    HO CODE: 5139
==============================================================================
ME: S█████ A███████        SSN:              CLT: DIWC RGT: 10  ALJ: 2059
REQ: 05/12/03 HRREC: 05/20/03         ASGN ALJ: 03/17/04 BIC: A   SSO: C32
XREF NAME:                       XREF SSN:            XBIC:
ADDRESSEE:                                                  DOB:
CLMT ADDR:                                                  PH:
CLMT CITY:              CLMT ST:   CLMT ZIP:                     GROUP:
REP NAME:                  ATTY: Y FEE PETITION:       CLASS ACTION:
REP ADDR:                                                   PH:
REP CITY:              REP ST:   REP ZIP:
REMARKS:
==============================================================================
STATUS: RTS    STATUS DATE: 03/25/04  EMP: AAA  CF RECD: 05/20/03  TRANS:
HRG WAIVED: N SUB APP:    SPECIAL CASE CODE: X OVERPMT: N HEARING SITE: M
==============================================================================
TL REMAND:   CIR COURT:       CT REM:  / /   CT DUE:  / /    CRITICAL CASE: N
HO FIELD1:        HO FIELD2:            VIDEO?        RECON DATE:  05/05/03
==============================================================================
1ST C INT:      LOC:    RECD:         D:          RESP:
2ND C INT:      LOC:    RECD:         D:          RESP:
3RD C INT:      LOC:    RECD:         D:          RESP:
4TH C INT:      LOC:    RECD:         D:          RESP:
5TH C INT:      LOC:    RECD:         D:          RESP:
==============================================================================
BEGIN MDKT:    05/20/03    END MDKT:    05/21/03  MDKT EMP: BSH
BEGIN WORKUP: 01/26/04   END WORKUP: 02/20/04  WKUP EMP: BTJ WKUP OUT:N
BEGIN PRE:     / /     END PRE:    / /    PRE EMP:      BEG WKCN:  / /
BEGIN DWR:     / /     END DWR:    / /    DWR EMP:      END WKCN:  / /
RELEASED FROM ALJ PRE REVIEW: 03/25/04    T2 APP: 03/11/03  T16 APP:  / /
==============================================================================
READY TO SCHEDULE: 03/25/04          NOTICE SENT:  / /
HEAR SCHD:  / /   HEAR DATE:  / /   HEAR TIME:     VE:         ME:
SCH EMP:
HEAR SCHD1:  / /   HEAR DATE1:  / /   VE1:    ME1:      EMP1:   PP1:
HEAR SCHD2:  / /   HEAR DATE2:  / /   VE2:    ME2:      EMP2:   PP2:
HEAR SCHD3:  / /   HEAR DATE3:  / /   VE3:    ME3:      EMP3:   PP3:
HEAR HELD:  / /   PARTICIPANTS:         HR:        INTERPRETER:
==============================================================================
BEG POST:         / /    END POST:     / /    POST EMP:     PC USED:
BEG DRAFT:        / /    END DRAFT:    / /    WRITER:       DRAFT OUT:
BEG DFT TYPING:   / /    END DFT TYPING:  / /  DFT TYPIST:   TYP OUT:
END WRITER EDITING:  / /     END TYP CORR:  / /   END FINAL TYPING:  / /
RELEASED FROM ALJ SIGNING:     / /        FINAL TYPIST:
==============================================================================
1ST DEV BEGIN:   / /   TYPE:     DIARY:  / /   RECD:  / /
2ND DEV BEGIN:   / /   TYPE:     DIARY:  / /   RECD:  / /
3RD DEV BEGIN:   / /   TYPE:     DIARY:  / /   RECD:  / /
4TH DEV BEGIN:   / /   TYPE:     DIARY:  / /   RECD:  / /
5TH DEV BEGIN:   / /   TYPE:     DIARY:  / /   RECD:  / /
6TH DEV BEGIN:   / /   TYPE:     DIARY:  / /   RECD:  / /
==============================================================================
DISPOSITION DATE:    / /   ISSUE INDICATOR: D  ON REC: Y   MAIL DATE:  / /
   DSP:     PFI:   EOD:  / /   REG:   DOC:  / /   IMP:        CTT:
   DSP:     PFI:   EOD:  / /   REG:   DOC:  / /   IMP:        CTT:
MAIL EMPLOYEE:     FEE AGRMT:    FEE APRVD:    DAA:   LAST UPDATE: EJW 03/25/04
```

Page █████ of ███

REDACTED

JOHNSON014



| | | |
|---|---|---|
| Character Count | 1249 | |
| Lines | 10 | |
| Paragraphs | 2 | |
| Scale | Yes | |
| Links Dirty? | False | |
| Comments | | |

**Origin**

| | |
|---|---|
| Author | Bernethia T. Johnson |
| Last Saved By | Bernethia T. Johnson |
| Revision Number | 2 |
| Application Name | Microsoft Word 10.0 |
| Company Name | SSA |
| Manager | Elms |
| Date of Creation | 3/10/2004 |
| Date Last Saved | 3/10/2004 |
| Last Printed | |

Exhibit 8
Page 58 of 69
p. 48

REDACTED

JOHNSON015

```
04/27/2004  12:09 PM          HOTS CASE HISTORY
Page: 1                                               HO CODE: 5139
=================================================================
     E: B▮▮▮▮ M▮▮▮▮       SSN: ▮▮▮▮▮▮▮ CLT: SSID HGT: 10 ALJ: 1410
  SQ: 05/12/03  HRREC: 05/30/03    ASGN ALJ: 03/05/04 BIC:   SSO: 623
XREF NAME:                     XREF SSN:        XBIC:
ADDRESSEE:                                               DOB:
CLMT ADDR:                                         PH:
CLMT CITY:              CLMT ST: AL CLMT ZIP:              GROUP:
REP NAME:               ATTY:   FEE PETITION:   CLASS ACTION:
REP ADDR:                                          PH:
REP CITY:            REP ST:    REP ZIP:
REMARKS:
=================================================================
STATUS: RTS   STATUS DATE: 03/09/04  EMP: BBB  CF RECD: 05/30/03  TRANS:
HRG WAIVED: N SUB APP:    SPECIAL CASE CODE: H OVERPMT: N HEARING SITE: M
=================================================================
TL REMAND:    CIR COURT:      CT REM:  /  /  CT DUE: /  /  CRITICAL CASE: N
HO FIELD1:         HO FIELD2:          VIDEO?      RECON DATE: 03/17/03
=================================================================
1ST C INT:      LOC:   RECD:        D:            RESP:
2ND C INT:      LOC:   RECD:        D:            RESP:
3RD C INT:      LOC:   RECD:        D:            RESP:
4TH C INT:      LOC:   RECD:        D:            RESP:
5TH C INT:      LOC:   RECD:        D:            RESP:
=================================================================
BEGIN MDKT:  05/30/03   END MDKT:   06/02/03  MDKT EMP: ESH
BEGIN WORKUP: 01/26/04  END WORKUP: 02/27/04  WKUP EMP: BTJ WKUP OUT:N
BEGIN PRE:   /  /       END PRE:   /  /   PRE EMP:      BEG WKCN:
  IN DWR:    /  /       END DWR:   /  /   DWR EMP:      END WKCN: /  /
RELEASED FROM ALJ PRE REVIEW: 03/09/04  T2 APP:  /  /    T16 APP: 12/31/02
=================================================================
READY TO SCHEDULE: 03/09/04          NOTICE SENT:  /  /
HEAR SCHD:     HEAR DATE:  /  /   HEAR TIME:     VE:       ME:
SCH EMP:
HEAR SCHD1:  /  /   HEAR DATE1:  /  /  VE1:   ME1:   EMP1:   PP1:
HEAR SCHD2:  /  /   HEAR DATE2:  /  /  VE2:   ME2:   EMP2:   PP2:
HEAR SCHD3:  /  /   HEAR DATE3:  /  /  VE3:   ME3:   EMP3:   PP3:
HEAR HELD:   /  /   PARTICIPANTS:       HR:     INTERPRETER:
=================================================================
BEG POST:    /  /   END POST:    /  /  POST EMP:       PC USED:
BEG DRAFT:   /  /   END DRAFT:   /  /  WRITER:        DRAFT OUT:
BEG DFT TYPING: /  / END DFT TYPING: /  / DFT TYPIST:   TYP OUT:
END WRITER EDITING:  /  / END TYP CORR:  /  /   END FINAL TYPING: /  /
RELEASED FROM ALJ SIGNING:    /  /       FINAL TYPIST:
=================================================================
1ST DEV BEGIN: /  /  TYPE:    DIARY: /  /   RECD: /  /
2ND DEV BEGIN: /  /  TYPE:    DIARY: /  /   RECD: /  /
3RD DEV BEGIN: /  /  TYPE:    DIARY: /  /   RECD: /  /
4TH DEV BEGIN: /  /  TYPE:    DIARY: /  /   RECD: /  /
5TH DEV BEGIN: /  /  TYPE:    DIARY: /  /   RECD: /  /
6TH DEV BEGIN: /  /  TYPE:    DIARY: /  /   RECD: /  /
=================================================================
DISPOSITION DATE:   /  /   ISSUE INDICATOR: D ON REC: Y  MAIL DATE:  /  /
   DSP:    PFI:  EOD: /  /  REG:  DOC: /  /  IMP:      CTT:
   DSP:    PFI:  EOD: /  /  REG:  DOC: /  /  IMP:      CTT:
MAIL EMPLOYEE:    FEE AGRMT:   FEE APRVD:  DAA:  LAST UPDATE: MDH 03/09/04
```

Exhibit 4
Page 47 of 69

REDACTED

JOHNSON016



| | | |
|---|---|---|
| Character Count | 1576 | |
| Lines | 13 | |
| Paragraphs | 3 | |
| Scale | Yes | |
| Links Dirty? | False | |
| Comments | | |

**Origin**
| | |
|---|---|
| Author | Bernethie T. Johnson |
| Last Saved By | Bernethie T. Johnson |
| Revision Number | 2 |
| Application Name | Microsoft Word 10.0 |
| Company Name | SSA |
| Manager | Elms |
| Date of Creation | 3/4/2004 |
| Date Last Saved | 3/4/2004 |
| | |
| Edit time | |

Exhibit ___
Page _48_ of _69_
p. 12

REDACTED

JOHNSON017

```
04/27/2004  12:09 PM              HOTS CASE HISTORY
Page: 1
                                                          HO CODE: 5139
==============================================================================
NAME: D      J            SSN:          CLT: SSID  HGT: 10  ALJ: 0000
  EQ: 05/12/03  HRREC: 05/29/03      ASGN ALJ:  /  /   BIC:      SSO: 623
XREF NAME:                      XREF SSN:           XBIC:
ADDRESSEE:                                                    DOB:
CLMT ADDR:                                                PH:
CLMT CITY:              CLMT ST:    CLMT ZIP:            GROUP:
REP NAME:                   ATTY: Y  FEE PETITION:    CLASS ACTION:
REP ADDR:                                              PH:
REP CITY:              REP ST:    REP ZIP:
REMARKS:
==============================================================================
STATUS: DWR    STATUS DATE: 04/06/04  EMP: MEH  CF RECD: 05/29/03  TRANS:
HRG WAIVED: N SUB APP:    SPECIAL CASE CODE: X OVERPMT: N HEARING SITE: M
==============================================================================
TL REMAND:    CIR COURT:        CT REM:  /  /   CT DUE:   /  /  CRITICAL CASE: N
HO FIELD1:          HO FIELD2:         VIDEO?        RECON DATE: 03/11/03
==============================================================================
1ST C INT:      LOC:     RECD:        D:        RESP:
2ND C INT:      LOC:     RECD:        D:        RESP:
3RD C INT:      LOC:     RECD:        D:        RESP:
4TH C INT:      LOC:     RECD:        D:        RESP:
5TH C INT:      LOC:     RECD:        D:        RESP:
==============================================================================
BEGIN MDKT:  05/29/03    END MDKT:   06/02/03  MDKT EMP: ESH
BEGIN WORKUP: 01/26/04   END WORKUP: 02/27/04  WKUP EMP: BTJ WKUP OUT:N
BEGIN PRE:  04/06/04     END PRE:    04/06/04  PRE EMP: MEH BEG WKCN:  /  /
  IN DWR:  04/06/04      END DWR:      /  /     DWR EMP: MEH END WKCN:  /  /
 ELEASED FROM ALJ PRE REVIEW:   /  /       T2 APP:  /  /      T16 APP: 10/31/02
==============================================================================
READY TO SCHEDULE: 02/27/04         NOTICE SENT:  /  /
HEAR SCHD:  /  /   HEAR DATE:  /  /   HEAR TIME:      VE:       ME:
SCH EMP:
HEAR SCHD1:  /  /   HEAR DATE1:  /  /  VE1:      ME1:      EMP1:    PP1:
HEAR SCHD2:  /  /   HEAR DATE2:  /  /  VE2:      ME2:      EMP2:    PP2:
HEAR SCHD3:  /  /   HEAR DATE3:  /  /  VE3:      ME3:      EMP3:    PP3:
HEAR HELD:  /  /    PARTICIPANTS:       HR:        INTERPRETER:
==============================================================================
BEG POST:     /  /   END POST:    /  /   POST EMP:    PC USED:
BEG DRAFT:    /  /   END DRAFT:   /  /   WRITER:      DRAFT OUT:
BEG DFT TYPING:  /  / END DFT TYPING:  /  / DFT TYPIST:   TYP OUT:
END WRITER EDITING:  /  /   END TYP CORR:  /  /  END FINAL TYPING:  /  /
RELEASED FROM ALJ SIGNING:      /  /          FINAL TYPIST:
==============================================================================
1ST DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
2ND DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
3RD DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
4TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
5TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
6TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
==============================================================================
DISPOSITION DATE:   /  /   ISSUE INDICATOR: D  ON REC: Y   MAIL DATE:  /  /
  DSP:    PFI:  EOD:  /  /  REG:   DOC:  /  /  IMP:        CTT:
  DSP:    PFI:  EOD:  /  /  REG:   DOC:  /  /  IMP:        CTT:
MAIL EMPLOYEE:     FEE AGRMT:    FEE APRVD:  DAA:  LAST UPDATE: PWD 04/06/04
```

Exhibit
Page 42 of 369

REDACTED

JOHNSON018



| | 1679 |
| Lines | 13 |
| Paragraphs | 3 |
| Scale | Yes |
| Links Dirty? | False |
| Comments | |
| Origin | |
| Author | Bernethia T. Johnson |
| Last Saved By | Bernethia T. Johnson |
| Revision Number | 2 |
| Application Name | Microsoft Word 10.0 |
| Company Name | SSA |
| Manager | Elms |
| Date of Creation | 4/6/2004 |
| Date Last Saved | 4/6/2004 |
| Last Printed | 4/6/2004 |
| Edit time | |

Exhibit ___8___
Page __43__ of __65__
p.14

REDACTED

JOHNSON019

```
04/27/2004  12:11 PM            HOTS CASE HISTORY
Page: 1                                                           HO CODE: 5139
===============================================================================
NAME: B█████ S█████            SSN: █████      CLT: DIWC  HGT: 10  ALJ: 2286
R█Q: 05/12/03  HRREC: 05/30/03          ASGN ALJ: 04/12/04  BIC: A   SSO: 623
XREF NAME:                        XREF SSN:            XBIC:
ADDRESSEE: █████                                              DOB: █████
CLMT ADDR:                                                   PH: █████
CLMT CITY:                 CLMT ST: █  CLMT ZIP: █████           GROUP: C
REP NAME:                     ATTY: N  FEE PETITION:     CLASS ACTION:
REP ADDR:                                                    PH: █████
REP CITY: █████            REP ST: █  REP ZIP: █████
REMARKS:
===============================================================================
STATUS: PRE   STATUS DATE: 04/14/04  EMP: XXX  CF RECD: 05/30/03  TRANS:
HRG WAIVED: N SUB APP:     SPECIAL CASE CODE: X OVERPMT: N HEARING SITE: M
===============================================================================
TL REMAND:   CIR COURT:       CT REM:   /  /   CT DUE:   /  /  CRITICAL CASE: N
HO FIELD1:          HO FIELD2:           VIDEO?         RECON DATE: 03/19/03
===============================================================================
1ST C INT:       LOC:    RECD:        D:           RESP:
2ND C INT:       LOC:    RECD:        D:           RESP:
3RD C INT:       LOC:    RECD:        D:           RESP:
4TH C INT:       LOC:    RECD:        D:           RESP:
5TH C INT:       LOC:    RECD:        D:           RESP:
===============================================================================
BEGIN MDKT:  05/30/03    END MDKT:   06/02/03  MDKT EMP: ESH
BEGIN WORKUP: 01/26/04   END WORKUP: 02/27/04  WKUP EMP: BTJ WKUP OUT:N
BEGIN PRE:   04/14/04    END PRE:     /  /     PRE EMP:  XXX BEG WKCN:  /  /
B█IN DWR:     /  /       END DWR:     /  /     DWR EMP:      END WKCN:  /  /
RELEASED FROM ALJ PRE REVIEW: 04/14/04     T2 APP: 12/06/02  T16 APP:  /  /
===============================================================================
READY TO SCHEDULE: 02/27/04          NOTICE SENT:   /  /
HEAR SCHD:   /  /   HEAR DATE:  /  /   HEAR TIME:      VE:        ME:
SCH EMP:
HEAR SCHD1:  /  /   HEAR DATE1:  /  /  VE1:       ME1:      EMP1:    PP1:
HEAR SCHD2:  /  /   HEAR DATE2:  /  /  VE2:       ME2:      EMP2:    PP2:
HEAR SCHD3:  /  /   HEAR DATE3:  /  /  VE3:       ME3:      EMP3:    PP3:
HEAR HELD:   /  /   PARTICIPANTS:          HR:        INTERPRETER:
===============================================================================
BEG POST:      /  /   END POST:      /  /   POST EMP:       PC USED:
BEG DRAFT:     /  /   END DRAFT:     /  /   WRITER:         DRAFT OUT:
BEG DFT TYPING: /  /  END DFT TYPING: /  /  DFT TYPIST:     TYP OUT:
END WRITER EDITING:  /  /   END TYP CORR:  /  /   END FINAL TYPING:  /  /
RELEASED FROM ALJ SIGNING:     /  /              FINAL TYPIST:
===============================================================================
1ST DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
2ND DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
3RD DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
4TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
5TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
6TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
===============================================================================
DISPOSITION DATE:    /  /    ISSUE INDICATOR: D  ON REC: Y   MAIL DATE:  /  /
T2 DSP:    PFI:   EOD:  /  /  REG:   DOC:  /  /  IMP:           CTT:
T█ DSP:    PFI:   EOD:  /  /  REG:   DOC:  /  /  IMP:           CTT:
MAIL EMPLOYEE:    FEE AGRMT:    FEE APRVD:   DAA:  LAST PRINT: DSM 04/14/04
```

Page 4█ of 6█
p. 15

REDACTED

JOHNSON020



Exhibit 
Page ___ of ___

REDACTED

JOHNSON021

```
04/26/2004    7:44 AM            HOTS CASE HISTORY
Page: 1                                                           HO CODE: 5139
================================================================================
NAME: C███████ C███████          SSN: ████████████  CLT: SSID  HGT: 10  ALJ: 0000
██SQ: 08/05/03  HRREC: 08/14/03          ASGN ALJ:   / /     BIC:        SSO: 630
XREF NAME:                       XREF SSN:               XBIC:
ADDRESSEE:                                                       DOB: █████
CLMT ADDR: █████████████████                             PH: █████
CLMT CITY: █████████     CLMT ST: ████  CLMT ZIP: ████████        GROUP:
REP NAME:                        ATTY:    FEE PETITION:    CLASS ACTION:
REP ADDR:                                                  PH:
REP CITY:             REP ST:        REP ZIP:
REMARKS:
================================================================================
STATUS: RTS     STATUS DATE: 04/17/04  EMP: RTH  CF RECD: 08/14/03  TRANS:
HRG WAIVED: N  SUB APP:     SPECIAL CASE CODE: X  OVERPMT: N  HEARING SITE: M
================================================================================
TL REMAND:   CIR COURT:        CT REM:   / /   CT DUE:   / /   CRITICAL CASE: N
HO FIELD1:          HO FIELD2:            VIDEO?       RECON DATE:  07/10/03
1ST C INT:      LOC:     RECD:          D:          RESP:
2ND C INT:      LOC:     RECD:          D:          RESP:
3RD C INT:      LOC:     RECD:          D:          RESP:
4TH C INT:      LOC:     RECD:          D:          RESP:
5TH C INT:      LOC:     RECD:          D:          RESP:
================================================================================
BEGIN MDKT:  08/14/03    END MDKT:   08/18/03  MDKT EMP: ESH
BEGIN WORKUP: 04/14/04   END WORKUP: 04/17/04  WKUP EMP: BTJ  WKUP OUT:N
BEGIN PRE:     / /       END PRE:     / /    PRE EMP:     BEG WKCN:  / /
██GIN DWR:     / /       END DWR:     / /    DWR EMP:     END WKCN:  / /
RELEASED FROM ALJ PRE REVIEW:   / /      T2 APP:   / /       T16 APP: 02/28/03
================================================================================
READY TO SCHEDULE: 04/17/04           NOTICE SENT:   / /
HEAR SCHD:  / /   HEAR DATE:  / /   HEAR TIME:      VE:        ME:
SCH EMP:
HEAR SCHD1:  / /   HEAR DATE1:  / /  VE1:      ME1:      EMP1:      PP1:
HEAR SCHD2:  / /   HEAR DATE2:  / /  VE2:      ME2:      EMP2:      PP2:
HEAR SCHD3:  / /   HEAR DATE3:  / /  VE3:      ME3:      EMP3:      PP3:
HEAR HELD:  / /    PARTICIPANTS:         HR:         INTERPRETER:
================================================================================
BEG POST:      / /    END POST:      / /    POST EMP:       PC USED:
BEG DRAFT:     / /    END DRAFT:     / /    WRITER:       DRAFT OUT:
BEG DFT TYPING:  / /  END DFT TYPING:  / /  DFT TYPIST:      TYP OUT:
END WRITER EDITING:  / /   END TYP CORR:  / /   END FINAL TYPING:   / /
RELEASED FROM ALJ SIGNING:       / /            FINAL TYPIST:
================================================================================
1ST DEV BEGIN:  / /   TYPE:    DIARY:  / /   RECD:  / /
2ND DEV BEGIN:  / /   TYPE:    DIARY:  / /   RECD:  / /
3RD DEV BEGIN:  / /   TYPE:    DIARY:  / /   RECD:  / /
4TH DEV BEGIN:  / /   TYPE:    DIARY:  / /   RECD:  / /
5TH DEV BEGIN:  / /   TYPE:    DIARY:  / /   RECD:  / /
6TH DEV BEGIN:  / /   TYPE:    DIARY:  / /   RECD:  / /
================================================================================
DISPOSITION DATE:    / /    ISSUE INDICATOR: D  ON REC: Y    MAIL DATE:   / /
T██ DSP:    PFI:   EOD:  / /   REG:   DOC:  / /   IMP:         CTT:
I██ DSP:    PFI:   EOD:  / /   REG:   DOC:  / /   IMP:         CTT:
MAIL EMPLOYEE:     FEE AGRMT:     FEE APRVD:     DAA:     LAST UPDATE: BTJ 04/17/04
```

*Still on Bernethia's desk*
*No Exhibit list in file.* PM

Exhibit
Page ~~5~~ of ~~10~~

REDACTED

JOHNSON022



| | | |
|---|---|---|
| Character Count | 1641 | |
| Lines | 13 | |
| Paragraphs | 3 | |
| Scale | Yes | |
| Links Dirty? | False | |
| Comments | | |
| **Origin** | | |
| Author | Bernethia T. Johnson | |
| Last Saved By | Bernethia T. Johnson | |
| Revision Number | 2 | |
| Application Name | Microsoft Word 10.0 | |
| Company Name | SSA | |
| Manager | Elms | |
| Date of Creation | 4/26/2004 | |
| Date Last Saved | 4/26/2004 | |
| | | |
| Edit time | | |

Exhibit ___
Page ___ of ___
p 2

REDACTED

JOHNSON023

04/26/2004   7:44 AM              HOTS CASE HISTORY

Page: 1                                                              HO CODE: 5139

NME: R█████ B█████          SSN:█████████  CLT: SSDC  HGT: 10  ALJ: 0000
RQ: 08/05/03  HRREC: 08/20/03          ASGN ALJ:  /  /   BIC:      SSO: C32
XREF NAME:                      XREF SSN:              XBIC: A
ADDRESSEE:█████████████████                        DOB:███████
CLMT ADDR:                                          PH:█████████
CLMT CITY:              CLMT ST:█  CLMT ZIP:█████        GROUP:
REP NAME:                      ATTY: Y  FEE PETITION:   CLASS ACTION:
REP ADDR:██████████████████                        PH:█████████
REP CITY:              REP ST:█  REP ZIP:█████
REMARKS:

========================================================================
STATUS: RTS   STATUS DATE: 04/23/04  EMP: RTH  CF RECD: 08/20/03  TRANS:
HRG WAIVED: N SUB APP:     SPECIAL CASE CODE: X OVERPMT: N HEARING SITE: M

TL REMAND:   CIR COURT:      CT REM:  /  /   CT DUE:  /  /   CRITICAL CASE: N
HO FIELD1:        HO FIELD2:           VIDEO?         RECON DATE: 07/23/03

1ST C INT:      LOC:    RECD:        D:        RESP:
2ND C INT:      LOC:    RECD:        D:        RESP:
3RD C INT:      LOC:    RECD:        D:        RESP:
4TH C INT:      LOC:    RECD:        D:        RESP:
5TH C INT:      LOC:    RECD:        D:        RESP:
========================================================================
BEGIN MDKT:  08/20/03  END MDKT:  08/21/03  MDKT EMP: ESH
BEGIN WORKUP: 04/14/04  END WORKUP: 04/23/04  WKUP EMP: BTJ WKUP OUT:N
BEGIN PRE:    /  /   END PRE:   /  /   PRE EMP:     BEG WKCN:  /  /
BEGIN DWR:  08/29/03  END DWR:  10/30/03  DWR EMP: LLR END WKCN:  /  /
RELEASED FROM ALJ PRE REVIEW:  /  /     T2 APP: 04/02/03  T16 APP: 04/02/03

READY TO SCHEDULE: 04/23/04      NOTICE SENT:  /  /
HEAR SCHD:  /  /   HEAR DATE:  /  /  HEAR TIME:      VE:        ME:
SCH EMP:
HEAR SCHD1:  /  /   HEAR DATE1:  /  /  VE1:      ME1:      EMP1:    PP1:
HEAR SCHD2:  /  /   HEAR DATE2:  /  /  VE2:      ME2:      EMP2:    PP2:
HEAR SCHD3:  /  /   HEAR DATE3:  /  /  VE3:      ME3:      EMP3:    PP3:
HEAR HELD:  /  /   PARTICIPANTS:        HR:        INTERPRETER:
========================================================================
BEG POST:      /  /   END POST:    /  /   POST EMP:      PC USED:
BEG DRAFT:     /  /   END DRAFT:   /  /   WRITER:      DRAFT OUT:
BEG DFT TYPING:  /  /   END DFT TYPING:  /  /   DFT TYPIST:     TYP OUT:
END WRITER EDITING:  /  /   END TYP CORR:  /  /   END FINAL TYPING:  /  /
RELEASED FROM ALJ SIGNING:       /  /        FINAL TYPIST:

1ST DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
2ND DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
3RD DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
4TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
5TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
6TH DEV BEGIN:  /  /   TYPE:     DIARY:  /  /   RECD:  /  /
========================================================================
DISPOSITION DATE:   /  /   ISSUE INDICATOR: D  ON REC: Y   MAIL DATE:  /  /
█ DSP:     PFI:  EOD:  /  /   REG:     DOC:  /  /   IMP:        CTT:
  DSP:     PFI:  EOD:  /  /   REG:     DOC:  /  /   IMP:        CTT:
MAIL EMPLOYEE:    FEE AGRMT:   FEE APRVD:   DAA:   LAST UPDATE: BTJ  04/23/04

*Still on Branchia's desk*
*No exhibit list in file.* PJ

Exhibit BTJ
Page ___ of ___
p 3

REDACTED

JOHNSON024



Exhibit    /
Page ~~5 1~~ of ~~6 9~~
p 4

REDACTED

JOHNSON025

```
04/28/2004  10:46 AM              HOTS CASE HISTORY
Page: 1                                                           HO CODE: 5139
█ ME: N████ F████         SSN:█████████  CLT: DIWC  HGT: 10  ALJ: 2329
HREQ: 05/26/03  HRREC: 06/03/03           ASGN ALJ: 04/23/04  BIC: A  SSO: C32
XREF NAME:                        XREF SSN:            XBIC:
ADDRESSEE:                                                        DOB:
CLMT ADDR:                                              PH:
CLMT CITY:                  CLMT ST: █  CLMT ZIP:                  GROUP:
REP NAME:                     ATTY: Y  FEE PETITION:    CLASS ACTION:
REP ADDR:                                              PH:
REP CITY:              REP ST: |AL| REP ZIP:
REMARKS:
══════════════════════════════════════════════════════════════════════════════
STATUS: ARPR  STATUS DATE: 04/23/04  EMP: ***  CF RECD: 06/03/03  TRANS:
HRG WAIVED: N SUB APP:      SPECIAL CASE CODE: X OVERPMT: N HEARING SITE: M
══════════════════════════════════════════════════════════════════════════════
TL REMAND:    CIR COURT:      CT REM:   / /    CT DUE:    / /    CRITICAL CASE: N
HO FIELD1:            HO FIELD2:            VIDEO?       RECON DATE: 05/14/03
══════════════════════════════════════════════════════════════════════════════
1ST C INT:      LOC:    RECD:         D:              RESP:
2ND C INT:      LOC:    RECD:         D:              RESP:
3RD C INT:      LOC:    RECD:         D:              RESP:
4TH C INT:      LOC:    RECD:         D:              RESP:
5TH C INT:      LOC:    RECD:         D:              RESP:
══════════════════════════════════════════════════════════════════════════════
BEGIN MDKT:  06/03/03    END MDKT:   06/04/03  MDKT EMP: ESH
BEGIN WORKUP: 02/06/04   END WORKUP: 04/17/04  WKUP EMP: BTJ WKUP OUT:N
█GIN PRE:      / /       END PRE:      / /    PRE EMP:     BEG WKCN:  / /
█GIN DWR:      / /       END DWR:      / /    DWR EMP:     END WKCN:  / /
RELEASED FROM ALJ PRE REVIEW:   / /      T2 APP: 03/24/03  T16 APP:   / /
══════════════════════════════════════════════════════════════════════════════
READY TO SCHEDULE: 04/17/04           NOTICE SENT:   / /
HEAR SCHD:   / /    HEAR DATE:   / /   HEAR TIME:       VE:         ME:
SCH EMP:
HEAR SCHD1:  / /    HEAR DATE1:  / /   VE1:      ME1:      EMP1:      PP1:
HEAR SCHD2:  / /    HEAR DATE2:  / /   VE2:      ME2:      EMP2:      PP2:
HEAR SCHD3:  / /    HEAR DATE3:  / /   VE3:      ME3:      EMP3:      PP3:
HEAR HELD:   / /    PARTICIPANTS:           HR:        INTERPRETER:
══════════════════════════════════════════════════════════════════════════════
BEG POST:     / /    END POST:     / /   POST EMP:      PC USED:
BEG DRAFT:    / /    END DRAFT:    / /   WRITER:        DRAFT OUT:
BEG DFT TYPING:  / /  END DFT TYPING:  / /  DFT TYPIST:    TYP OUT:
END WRITER EDITING:  / /   END TYP CORR:  / /   END FINAL TYPING:   / /
RELEASED FROM ALJ SIGNING:    / /          FINAL TYPIST:
══════════════════════════════════════════════════════════════════════════════
1ST DEV BEGIN:   / /    TYPE:      DIARY:   / /    RECD:   / /
2ND DEV BEGIN:   / /    TYPE:      DIARY:   / /    RECD:   / /
3RD DEV BEGIN:   / /    TYPE:      DIARY:   / /    RECD:   / /
4TH DEV BEGIN:   / /    TYPE:      DIARY:   / /    RECD:   / /
5TH DEV BEGIN:   / /    TYPE:      DIARY:   / /    RECD:   / /
6TH DEV BEGIN:   / /    TYPE:      DIARY:   / /    RECD:   / /
══════════════════════════════════════════════════════════════════════════════
DISPOSITION DATE:   / /    ISSUE INDICATOR: D  ON REC: Y   MAIL DATE:   / /
  DSP:     PFI:  EOD:  / /   REG:    DOC:  / /   IMP:         CTT:
T16 DSP:   PFI:  EOD:  / /   REG:    DOC:  / /   IMP:         CTT:
MAIL EMPLOYEE:       FEE AGRMT:    FEE APRVD:    DAA:    LAST UPDATE: JMDR  04/23/04
```

Page ██ of ██
PS

REDACTED

JOHNSON026



Global Text Properties

| | | |
|---|---|---|
| Character C... | 1386 | |
| Lines | 11 | |
| Paragraphs | 3 | |
| Scale | Yes | |
| Links Dirty? | False | |
| Comments | | |

**Origin**

| | |
|---|---|
| Author | Bernethia T. Johnson |
| Last Saved By | Bernethia T. Johnson |
| Revision Nu... | 2 |
| Application ... | Microsoft Word 10.0 |
| Company Na... | SSA |
| Manager | Elms |
| Date of Cre... | 4/26/2004 |
| Date Last Sa... | 4/26/2004 |
| Last Printed | |

Exhibit ___
Page ___ of ___

REDACTED

JOHNSON027

# EXHIBIT D

**Reams, Paul E.**

| | |
|---|---|
| **From:** | Johnson, Paul Whitson   OHA Montgomery HO |
| **Sent:** | Tuesday, May 18, 2004 7:40 AM |
| **To:** | Lamar, Cynthia A. |
| **Cc:** | Reams, Paul E. |
| **Subject:** | Inappropriate action by Bernethia Johnson |

**Importance:**       High

Cynthia:

Bernethia has again moved a case in HOTS from WKUP at the end of the month without completing workup.  Yesterday's RTS/RTH audit revealed that Bernethia moved the case for ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ from WKUP on 4/30/04.  The case file is still on her desk as of this morning, May 18, 2004.  This appears to be another attempt to improve her production numbers by falsifying records.

Paul J.

1                    **REDACTED**

JOHNSON028

# EXHIBIT E

## Reams, Paul E.

| | |
|---|---|
| **From:** | Reams, Paul E. |
| **Sent:** | Monday, June 28, 2004 3:37 PM |
| **To:** | Johnson, Bernethia |
| **Cc:** | Warren, Carl L. |
| **Subject:** | RE: Update on Reprimand |

The evidence used in the reprimand is:    Your files that were in the RTS category missing from the RTS file
cabinet.

Files found on your desk in the RTS category with no exhibit lists in file.

Computer records showing work done by you on these files after you said
you                                      had  finished working on them.

Paul Reams

-----Original Message-----
**From:** Johnson, Bernethia
**Sent:** Monday, June 28, 2004 3:12 PM
**To:** Johnson, Bernethia; Reams, Paul E.
**Cc:** Warren, Carl L.
**Subject:** RE: Update on Reprimand

-----Original Message-----
**From:** Johnson, Bernethia
**Sent:** Monday, June 28, 2004 3:03 PM
**To:** Reams, Paul E.
**Subject:** RE: Update on Reprimand

Will you be using the same evidence or or did you, as you stated that you would do search for newer evidence to
use?   If you have received newer evidence please provide to me immediately.  I must meet the deadline.

-----Original Message-----
**From:** Reams, Paul E.
**Sent:** Tuesday, June 22, 2004 4:52 PM
**To:** Johnson, Bernethia
**Cc:** #AT AL OHA Mon Mgt Team
**Subject:** Update on Reprimand

June 22, 2004

To:     Bernethia Johnson
From:   Paul Reams

As I told you I would during our discussion yesterday, I have reviewed the evidence in this matter.  I have
concluded that there is ample evidence supporting the reason for the reprimand.  I am extending the time
period for you to respond to this reprimand until Monday, June 28.

**Paul Reams**
**Hearing Office Director**
**Montgomery, Alabama**

Exhibit 7
Page 52 of 65
P 1

EXHIBIT F

**Explanation of Charges of a Hostile Work Environment by Bernethia Johnson**

Two employees in the Montgomery Office got into a dispute about baby clothes. Apparently, Valerie Cooper asked Tresalyn Collier to give her some clothing that her young child had outgrown. Valerie had recently become a grandmother. Weeks later Tresalyn told Valerie in a general conversation that she had donated some things to a charity. Valerie asked if Tresalyn had donated the baby clothes that she had promised to give to her. According to Tresalyn, she then told Valerie that she did have an outfit she could give her. Tresalyn states that later she thought about this conversation and decided that she was not going to let herself be pushed into giving this outfit away. The next day she told Valerie that she was not going to give her these clothes.

Later, on October 22, 2004, Tresalyn was sitting at the front desk. She states that she overheard Valerie make a statement to another employee, Beverly Warner. Tresalyn says that Valerie said, These people are going to make me bring my gun in here" and later said, "It's in my car; I always keep my piece nearby just in case I need to use it."

Tresalyn did not report this incident for a week or so. On November 4, 2004, Tresalyn told me about this incident. I asked her to submit a statement and told her I would talk to all the parties involved. Valerie denied making the threat and submitted a signed statement. Beverly denied that Valerie made the threat and submitted a statement. I was not able to locate an employee who heard the threat. Valerie said that she did have a gun and that she had a permit. She said that she traveled a long distance to work and carried it for protection. She said that in the old building (more than 5 years ago) she did bring in her gun, but that the security guard told her that she could not and that she had not since then. She said that she had not had a gun in her car for several months.

On October 22, 2004, the day of the incident, Valerie was in the back parking lot and saw that a car in the lot next door had gunshot damage to a backdoor window. She came to me and told me about it and said she was telling other employees that they should be careful when going to their cars. She speculated that maybe Tresalyn had heard her talking about this.

On November 4, 2004, the security guard told me that an employee had come to her and said that Valerie had threatened to shoot another employee. The guard later said that Bernethia was the employee that had come to her twice about this incident. The guard reported this to her supervisor who knew Bernethia because he used to be the guard here and he told the guard to talk to me. The supervisor later asked that I tell Bernethia to not talk to the guards. I have not done this because I do not want to be accused of trying to stop Bernethia from making any type of statement to anybody.

I then sent Bernethia an e-mail asking what she knew of the incident and if she knew of any third party that had heard the threat. The guard, Tamara Jackson, then told me that Bernethia had come to her wanting to know what she had told management. Bernethia

said that she had to know what the guard had said to me so that she would know what she could lie about. The guard submitted a written statement about this conversation.

At this point, I am still looking into whether I can prohibit employees from bringing guns onto our property in their cars. The sergeant with our security guard company thinks I can. I sent an e-mail to RO asking about this and have not yet received a reply. My own opinion is that we probably don't have the authority to tell someone with a license that they can't have a gun in their car.

 I also have not received a direct reply from Bernethia about whether she knows of a third party with knowledge of this incident. I have asked her to cooperate in this investigation and she has not.

Paul Reams
HOD
Montgomery, Alabama
November 30, 2004

# EXHIBIT G

**Johnson, Bernethia**

| | |
|---|---|
| **From:** | Reams, Paul E. |
| **Sent:** | Wednesday, February 23, 2005 5:56 PM |
| **To:** | Johnson, Bernethia; Tamplin, Linda S. |
| **Cc:** | Thigpen, Charles A.   OHA Montgomery HO; Warren, Carl L. |
| **Subject:** | RE: Request Permission to Park in the Front Parking Lot |
| | |
| **Sensitivity:** | Confidential |

I understand that you believe your car was damaged while in the back parking lot. Although your car was parked in the open and in plan view of the building, as far as I know there are no witnesses to your vehicle being damaged and even if you first noticed the damage while parked here, that is not proof that it was damaged in our parking lot. However, assuming the car was damaged by a criminal act in the parking lot, I am not aware of any obligation for the agency to pay for its repair.

Your request for a personal parking space in the visitor's parking lot is denied.  Often this lot is completely filled with our customers and parking there could be an inconvenience to the public.  Parking there also reduces the security of our staff.  We try to keep employees from commingling with the public as much as possible for security reasons and have separate employee entrances to the building from the back parking lot.

Your report is the first incident of its kind that I have received in the five years that we have worked in this building.  I believe that our back parking lot is a safe place for the employees of the agency to park their vehicles.  Please let me know if you have any further problems.

Paul Reams

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Wednesday, February 23, 2005 3:53 PM |
| **To:** | Reams, Paul E.; Tamplin, Linda S. |
| **Cc:** | Thigpen, Charles A.   OHA Montgomery HO; Warren, Carl L. |
| **Subject:** | Request Permission to Park in the Front Parking Lot |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

This is to inform you that my vehicle purchased on February 19, 2005, was damaged while parked in the employees' parking lot today.  As you are aware, the incident has been reported to the Montgomery Police Department.  This e-mail is to inform you of the incident and to request that the agency pay for the cost of the repair since it happened on Federal Government property.

For the safety of my vehicle, I have taken it off of the premises until I can secure a safe parking space. Therefore, I request to park my vehicle in the front parking lot in the parking space located just outside of my cubical window.  Please accommodate me in this matter so that I may drive my vehicle to work as all other employees.  Thank you for your assistance in this matter.

# EXHIBIT H

Printed on recycled paper

## SERIAL, TIME, AND ATTENDANCE ROSTER
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

This form IS NOT to be used to record overtime or holiday work.

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

**1. DATE** 10/14/03

Tuesday

**2. DW/BRANCH/SECTION/UNIT**

**3. FLEXIBLE BANDS:**

CORE HOURS:

| 4. EMPLOYEE'S SIGNATURE ORDER OF ARRIVAL | 5. TIME IN | 6. Flextime FROM - TO | 7. Leave/Other Absence FROM - TO | 8. Leave | 9. COMP | 10. RC | 11. CH | 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 8:00 | 8:30 - 9:00 | | | | | ½ | | | | | | 2 | 9:30 |
| 2. | 8:40 | 8:30 - 9:00 | 11:45 | | | | | | | | | | 1 | 5:00 |
| 3. | 9:15 | | | | | | | | | | | | 3 | 5:45 |
| 4. | 1:50 | 9:30 - 10:30 10:30 - 11:30 | | ½ | | | | | | | | | 5 | 6:00 |
| 5. | 11:10 | 9:25 - 11:10 | | 3:45 | | | | | | | no voting leave seated or FWS (early) | | 4 | 6:00 |
| 6. | | | | | | | | | | | | | | |
| 7. ADS | | | | | | | | | | | | | | |
| 8. | 7:30 | | | | | | | | | | | | 8 | 4:00 |
| 9. | 6:30 | | | | | | | | | | | | 9 | 3:00 |
| 10. | 6:30 | | | | | | | | | | | | 10 | 3:00 |
| 11. | | | | | | | | | | | | | | |
| 12. | | | | | | | | | | | | | | |
| 13. | | | | | | | | | | | | | | |
| 14. | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | |

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Supervisor's Signature/Date _____ 10/17/03

Timekeeper's Number/Signature/Date _____

Form SSA-30 (10/88)  (Supersedes SSA-3329 and SSA-3331)

# SERIAL TIME AND ATTENDANCE ROSTER

SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

This form IS NOT to be used to record overtime or holiday work.

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

**1. DATE** 10/14/2003

**2. DIV/BRANCH/SECTION/UNIT**

**3. FLEXIBLE BANDS:**

**CORE HOURS:**

| 4. EMPLOYEE'S SIGNATURE ORDER OF ARRIVAL | 5. TIME IN | PERIODS OF ABSENCE 6. Flextime FROM - TO | 7. Leave/ Other Absence FROM - TO | PERIODS OF ABSENCE CHARGED TO 8. Leave | 9. COMP | 10. RC | 11. CH | HOURS WORKED 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. E. Noble | 9:45 | | 3:30 5:30 | | | | | 8½ | | 1¼ | | B. McConnell | 2 | 3:30 |
| 2. B. McConnell | 9:00 | | | ½ | | | 2 | 6 | | | | B. Watkins | 4 | 5:25 |
| 3. Linda Taylor | 10:00 | | 5:30-10 5:30-6 | ½ S ½ leave At | | | | 7 | | | | Linda Taylor | 3 | 5:30 |
| 4. D. Watkins | 2:15 | | | | 9 leave At | | | 3 | | | | E. Noble | 1 | 6:00 |
| 5. | | | | | | | | | | | | | | |
| 6. | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | |
| 8. A.DS | | | | | | | | | | | | | | |
| 9. J. Womm | 6:30 | | | | | | | 8 | | | | J. Womm | | 3:00 |
| 10. D. Parks | 7:30 | | | | | | | 8 | | | | D. Parks | | 4:30 |
| 11. Nancy Womm | 6:30 | | | | | | | 8 | | | | Nancy Womm | 11 | 3:00 |
| 12. M. McCarthy | 8:00 | | | | | | | 8 | | | | M. McCarthy | 12 | 4:30 |
| 13. | | | | | | | | | | | | | | |
| 14. | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | |

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Supervisor's Signature/Date

Timekeeper's Number/Signature/Date

P.02    334 223 7069    SSA ODAR MONTGOMERY AL    JUL-07-2008 15:52

Printed on recycled paper

Printed on recycled paper

# SERIAL TIME AND ATTENDANCE ROSTER
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

This form IS NOT to be used to record overtime or holiday work.

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

**1. DATE** 10-1-03

**2. DIV/BRANCH/SECTION/UNIT**

**3. FLEXIBLE BANDS:**

**CORE HOURS:**

| 4. EMPLOYEE'S SIGNATURE ORDER OF ARRIVAL | 5. TIME IN | PERIODS OF ABSENCE | | PERIODS OF ABSENCE CHARGED TO | | | | | | | HOURS WORKED | | | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE ORDER OF DEPARTURE | 17. Sign in line | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 6. Flextime FROM - TO | 7. Leave/Other Absence FROM - TO | 8. Leave | 9. COMP | 10. RC | 11. CH | | | | 12. REG | 13. RC | 14. CH | | | | |
| 1. P Ream | 9:30 | | | | | | | | | | 8 | | | | P Ream | | 6:00 |
| 2. | | | | | | | | | | | | | | | | | |
| 3. | | | | | | | | | | | | | | | | | |
| 4. | | | | | | | | | | | | | | | | | |
| 5. | | | | | | | | | | | | | | | | | |
| 6. | | | | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | | | | |
| 8. | | | | | | | | | | | | | | | | | |
| 9. | | | | | | | | | | | | | | | | | |
| 10. | | | | | | | | | | | | | | | | | |
| 11. | | | | | | | | | | | | | | | | | |
| 12. | | | | | | | | | | | | | | | | | |
| 13. | | | | | | | | | | | | | | | | | |
| 14. | | | | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | | | | |

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Supervisor's Signature/Date _____ 10/03

Timekeeper's Number/Signature/Date _____

Form SSA-30 (10/93)    (Supersedes SSA-3329 and SSA-3331)

**SERIAL TIME AND ATTENDANCE ROSTER**
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

1. DATE: 10-14-03

2. DIV/BRANCH/SECTION/UNIT

This form IS NOT to be used to record overtime or holiday work.

3. FLEXIBLE BANDS:

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

CORE HOURS:

| 4. EMPLOYEE'S SIGNATURE / ORDER OF ARRIVAL | 5. TIME IN | 6. Flextime FROM-TO | 7. Leave/Other Absence FROM-TO | 8. Leave | 9. COMP | 10. RC | 11. CH | 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE / ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 7:30 | | | 1/2 | | | | 7½ | | | | | 1 | 3:00 |
| 2. | 7:35 | | | | | | | 8 | | | | | 2 | 3:45 |
| 3. | 10:05 | | 9:25-10:05 | 3½ | | | | 3½ | | | | | 3 | 5:30 |
| 4. | | | | | | | | | | | | | | |
| 5. | | | | | | | | | | | | | | |
| 6. | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | |
| 8. | | | | | | | | | | | | | | |
| 9. | | | | | | | | | | | | | | |
| 10. | | | | | | | | | | | | | | |
| 11. | | | | | | | | | | | | | | |
| 12. | | | | | | | | | | | | | | |
| 13. | | | | | | | | | | | | | | |
| 14. | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | |

Supervisor's Signature/Date: P Recum

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Timekeeper's Number/Signature/Date

JUL-07-2008  15:53     SSA ODAR MONTGOMERY AL     334 223 7069     P.05

# SERIAL TIME AND ATTENDANCE ROSTER
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

This form IS NOT to be used to record overtime or holiday work.

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

1. DATE  10-14-03

2. DIV/BRANCH/SECTION/UNIT

3. FLEXIBLE BANDS:

CORE HOURS:

| 4. EMPLOYEE'S SIGNATURE ORDER OF ARRIVAL | 5. TIME IN | PERIODS OF ABSENCE 6. Flextime FROM-TO | 7. Leave/Other Absence FROM-TO | PERIODS OF ABSENCE CHARGED TO 8. Leave | 9. COMP | 10. RC | 11. CH | HOURS WORKED 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 7³⁰ | | | | | | | 8 | | | | LAWSON | 1 | 4⁰⁰ |
| 2. | 7⁴⁰ | | | | | | | 8 | | ½ | | | 2 | 4⁴⁶ |
| 3. | 8:00 | | | | | | | 8 | | | | | 3 | 4:⁴⁰ |
| 4. | 8:25 | | 10/30-11/30 4:40-3:45 | | | | ¼ | 4¾ | | | | | 4 | 4:⁴⁰ |
| 5. | 8³⁰ | | | | | | | 8 | | | | | 6 | 5²⁰ |
| 6. | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | |
| 8. | | | | | | | | | | | | | | |
| 9. | | | | | | | | | | | | | | |
| 10. | | | | | | | | | | | | | | |
| 11. | | | | | | | | | | | | | | |
| 12. | | | | | | | | | | | | | | |
| 13. | | | | | | | | | | | | | | |
| 14. | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | |

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Supervisor's Signature/Date

Timekeeper's Number/Signature/Date

# SERIAL TIME AND ATTENDANCE ROSTER
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

This form IS NOT to be used to record overtime or holiday work.

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

**1. DATE** 10/14/03

**2. DIV/BRANCH/SECTION/UNIT**

**3. FLEXIBLE BANDS:**

CORE HOURS:

| 4. EMPLOYEE'S SIGNATURE / ORDER OF ARRIVAL | 5. TIME IN | PERIODS OF ABSENCE 6. Flextime FROM-TO | 7. Leave/Other Absence FROM-TO | PERIODS OF ABSENCE CHARGED TO 8. Leave | 9. COMP | 10. RC | 11. CH | HOURS WORKED 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE / ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 8:00 | | | | | | | 8 | | | | | 1 | 4:30 |
| 2. | 8:30 | | | | | | | 8 | | | | | 2 | 5:00 |
| 3. | 8:30 | | 5:20-5:50 | | | | | 8 | | | | | 4 | 5:30 |
| 4. | 8:30 | | | | | | | | | | | | 3 | 6:00 |
| 5. | 9:25 | | | 1/2 AL | | | | | | | | | 5 | 6:00 |
| 6. | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | |
| 8. | 6:30 | | | | | | | 8 | | | | Kelly Cotten | 8 | 3:00 |
| 9. | 8:00 | | | | | | | 8 | | | | | 9 | 4:30 |
| 10. | | | | | | | | 3 | | | | | | 4:10 |
| 11. | | | | | | | | | | | | | | |
| 12. | | | | | | | | | | | | | | |
| 13. | | | | | | | | | | | | | | |
| 14. | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | |

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Supervisor's Signature/Date _____ 10/15/03

Timekeeper's Number/Signature/Date _____

# SERIAL TIME AND ATTENDANCE ROSTER
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

This form IS NOT to be used to record overtime or holiday work.

WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).

1. DATE: October 14, 2003

2. DIV/BRANCH/SECTION/UNIT

3. FLEXIBLE BANDS:

CORE HOURS:

| | 4. EMPLOYEE'S SIGNATURE / ORDER OF ARRIVAL | 5. TIME IN | PERIODS OF ABSENCE 6. Flextime FROM - TO | 7. Leave/Other Absence FROM - TO | PERIODS OF ABSENCE CHARGED TO 8. Leave | 9. COMP | 10. RC | 11. CH | HOURS WORKED 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE / ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | Denise Wilder | 630 | | | | | | | 8 | | | | Denise Wilder | 1 | 300 |
| 2. | | | | | | | | | | | | | | | |
| 3. | | | | | | | | | | | | | | | |
| 4. | | | | | | | | | | | | | | | |
| 5. | | | | | | | | | | | | | | | |
| 6. | | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | | |
| 8. | | | | | | | | | | | | | | | |
| 9. | | | | | | | | | | | | | | | |
| 10. | | | | | | | | | | | | | | | |
| 11. | | | | | | | | | | | | | | | |
| 12. | | | | | | | | | | | | | | | |
| 13. | | | | | | | | | | | | | | | |
| 14. | | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | | |

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Supervisor's Signature/Date _____ 10/16/03        Timekeeper's Number/Signature/Date _____

♻ Printed on recycled paper

**SERIAL TIME AND ATTENDANCE ROSTER**
SEE REVERSE SIDE FOR PRIVACY STATEMENT & INSTRUCTIONS

**2. DIV/BRANCH/SECTION/UNIT**

This form IS NOT to be used to record overtime or holiday work.

**WILLFUL FALSIFICATION OF TIME RECORDS MAY RESULT IN SEVERE DISCIPLINARY ACTION INCLUDING A FINE OF NOT MORE THAN $10,000 OR IMPRISONMENT OR BOTH (18 USC 287, 1001).**

**3. FLEXIBLE BANDS:**

**1. DATE** 10/14/03

CORE HOURS:

I have reviewed the above entries and certify, to the best of my knowledge, they are true, complete and accurate.

Supervisor's Signature/Date

Timekeeper's Number/Signature/Date

| 4. EMPLOYEE'S SIGNATURE / ORDER OF ARRIVAL | 5. TIME IN | 6. Flextime FROM-TO | 7. Leave/Other Absence FROM-TO | 8. Leave | 9. COMP | 10. RC | 11. CH | 12. REG | 13. RC | 14. CH | 15. COMMENTS | 16. EMPLOYEE'S SIGNATURE / ORDER OF DEPARTURE | 17. Sign in line # | 18. TIME OUT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | 7:00 | | 2:16 3:30 | 1/4 | | | | 8 | | | | Beverly Warren | 1 | 2:15 |
| 2. | 8:00 | | 3:45 4:15 | | | | | 8 | | 3/4 | | Denise Weeks | 2 | 5:20 |
| 3. | 9:00 | 3:45 4:15 | | | | | | 8 | | | | Cathy Yu | 3 | 6:00 |
| 4. | 9:30 | | 4:15 4:40 | 1/4 | | | | 8 | | | | | 4 | 6:30 |
| 5. | | | | | | | | | | | | | | |
| 6. | | | | | | | | | | | | | | |
| 7. | | | | | | | | | | | | | | |
| 8. | 7:00 | | | | | | | 8 | | | | B.B. Jackson | 8 | 4:15 |
| 9. | 8:30 | | | | | | | 8 | | | | A. Thomason | 9 | 3:30 |
| 10. | | | | | | | | 8 | | | | M. Thomas | 10 | 5:00 |
| 11. | | | | | | | | | | | | | | |
| 12. | | | | | | | | | | | | | | |
| 13. | | | | | | | | | | | | | | |
| 14. | | | | | | | | | | | | | | |
| 15. | | | | | | | | | | | | | | |

TOTAL P.10

FLEX REQUEST

TO:        SUPERVISOR

SUBJECT:    REQUEST TO FLEX DURING CORE HOURS

I request to flex from _____ 345 _____ to __ 415 __

(must be between 9 AM & 3 PM) on ____ 10/14/03 ____

_CA Smith_
Signature of Employee

_10/14/03_
Date

✓ Approved

_____ Denied (Reason):

_Cynthia Adman_
Signature of Supervisor

_10/15/03_
Date