# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| BERNETHIA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. 2:06-cv-397-WKW |
| V. | ) | 2:07-cv- 59-WKW |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF GLORIA BOZEMAN

I, Gloria Bozeman, in lieu of an affidavit, as permitted by 28 U.S.C. § 1746, make the following declaration based on my personal knowledge:

(1)

I am currently the Regional Management Official ("RMO") for the Social Security Administration ("Agency" or "SSA"), Office of Disability Adjudication and Review ("ODAR") for Region IV. Region IV covers the states of Alabama, Mississippi, Tennessee, Kentucky, Georgia, Florida, North Carolina and South Carolina. I have held this position since 1998. In this position, I act as the Deputy to the Regional Chief Administrative Law Judge. My delegated authority includes making determinations on requests for hardship transfers for the offices in this region. Agency policy states that the RMO should consider each request individually based on stated reasons for the transfer request, and staffing and budget factors should also be considered.

(2)

On or about August 6, 2004, I received a written hardship transfer request from Bernethia Johnson, a legal assistant in the Montgomery hearing office (Attachment ("Att.") A). Ms. Johnson stated that she wanted to transfer due to a hostile work environment in the hearing office and she requested a transfer to the Atlanta North hearing office in Georgia. On August 24, 2004, Ms. Johnson notified me by email that she would rather transfer to the Birmingham, Alabama hearing office (Att. B). I conducted fact finding interviews with the managers in the Montgomery hearing office and found no basis for her allegations related to a hostile work environment. I then compared the staffing levels in the Birmingham and Montgomery hearing offices and denied her transfer request based

1

on this factor. On October 7, 2004, I issued a written denial of the hardship transfer request to Ms. Johnson (Att. C). In the denial, I noted that one of the fundamental factors I considered was the workload and staffing of the affected hearing offices. The ratio of legal assistants to administrative law judge's was lower in the Montgomery hearing office and demonstrated a greater need for legal assistants in that office. Based on this factor, I denied the request for a transfer. I also noted my finding that a hostile work environment did not exist in the Montgomery hearing office.

(3)

On October 8, 2004, Ms. Johnson sent me an email asking that I reconsider her request for a hardship transfer based on a hostile work environment. On November 16, 2004, Ms. Johnson sent a follow-up email to me and stated that "an employee has threatened to bring a gun into this organization to shoot employee(s)" (Att. D). On December 1, 2004, I confirmed in writing to Ms. Johnson that we were reviewing her allegations (Att. E). Due to the nature of Ms. Johnson's allegations, I asked for written statements from employees in the Montgomery hearing office and received a report from Mr. Reams, Hearing Office Director, on these allegations. The statements did not support Ms. Johnson's allegations. On December 3, 2004, I issued a written denial of Ms. Johnson's transfer request and noted that there was no threatening situation and no basis for her allegations of a hostile work environment. I assured Ms. Johnson that there was a safe working environment in the Montgomery hearing office and denied her reconsideration request (Att. F).

(4)

On February 17, 2005, Ms. Johnson sent me an email requesting an immediate transfer to the Atlanta North hearing office for financial and health reasons (Att. G). On February 25, 2005, I issued a written denial stating that the Atlanta North hearing office had a critical shortage in case technician ("CT") positions, not senior case technician ("SCT") positions. Ms. Johnson held the position of senior case technician. I stated that I would be happy to revisit her request based on staffing allocations for the next fiscal year (Att. H). On June 29, 2005, Ms. Johnson sent an email to Mr. Reams requesting an immediate transfer to the Chattanooga hearing office for "personal reasons" (Att. I). As I have the delegated authority over transfer requests, Mr. Reams forwarded this email to me. On August 2, 2005, I asked Ms. Johnson to provide further details to support her transfer request. On August 10, 2005, Ms. Johnson stated she needed a transfer to help care for her mother in Tennessee. Ms. Johnson also stated that she would be willing to transfer to any of several hearing offices to be closer to her mother (Att. J). On September 1, 2005, I issued a written response granting Ms. Johnson's request based on her need to care for her mother. In that response, I asked Mr. Reams to coordinate the transfer with the hearing office director in Chattanooga (Att. K).

2

(5)

As stated earlier, I evaluated the reasons provided by Ms. Johnson in each transfer request and balanced the reasons with the workload and staffing needs of the affected offices. Although Ms. Johnson could have contacted the Regional Chief Administrative Law Judge or our central office for further review of any request, I am not aware that she took further action. I did not consider Ms. Johnson's race, sex or prior Equal Employment Opportunity activity in making this decision, and notified her in writing with the reasons for granting or denying each transfer request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

Executed this _13_ day of August, 2008.

Gloria Bozeman
Regional Management Officer
Social Security Administration, ODAR
61 Forsyth Street SW, Suite 20T10
Atlanta, Georgia 30303

# ATTACHMENT A

Bernethia T. Johnson

Ms. Bernethia T. Johnson
225 Garden Homes Circle
Montgomery, AL  36116


August 6, 2004

Ms. Gloria Bozeman
61 Forsyth Street S.W.
Suite 20T10
Atlanta, GA  30303


Dear Ms. Bozeman

I Bernethia T. Johnson, 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, OHA, Montgomery, AL  (334) 223-7503, ext.
3052, request that I be granted an immediate transfer.

　　　Since my initial EEO action against the agency in 1997 and my being a former
union steward at this location, management has increasingly been hostile to me.  I find
myself constantly seeking fair treatment from management and quietly accepting their
harassment strategies.  This is my third EEO action;  I believe that  only way I will escape
retaliation and unfair treatment is to leave OHA Montgomery. It appears that local
management has organized an organizational gang between itself and certain employees.

　　　Though I have mentioned hostile work environment to my former supervisor,
Mr. Paul Johnson, the **root** of the hostile work environment lies within management.
Trying extremely hard to overlook management's accusations, plots, and their unfair
treatments, it has now come to the point where it affects my ability and my health.

　　　The hostile work environment has risen to a new height to the point that  I am not
only extremely frightened by management's new levels of plots and what they might do to
me.  It appears that they will stop at nothing in an attempt to cease my EEO action(s)
from going forth. I further believe that their ultimate action is to fire me.  I sincerely,
believe that management is angry at me because I will not **DONATE** personal time to
work cases (meaning the 8-hour tour of duty without compensation).

　　　Through their masked depiction, I am made to look as though I do not pull my
share of workload.  (This information will be disclosed at the upcoming EEO hearing.)
I believe that management has gathered themselves together to plot a conspiracy against
me.  I further believe that management have gone to the length to involve bargaining union
employees to co-conspire against me, for instance, management has informed an
aggressive in nature, bargaining union employee, Beverly Warner,  of things that I have
presented to them   In or about  April 2004, Ms. Warner initiated a violent altercation with
Ms. Rosey Howell another union employee which resulted in management conspiring to
covering up this violent act.  When I questioned Mr. Reams about the event, he stated that

1

Bernethia T. Johnson

it was an isolated event. Therefore, I believe that Ms. Warner can initiate this type of action towards me, since management chose to look the other way when an employee commit such heinous crimes. This clearly shows that by no means am I protected in this office from such a felony offense as this. Ms. Howell has transferred to another office in the region.

According to a local policy, I had the right to work at home two days weekly out of the month of April 2004, to perform front desk duties. On April 12, 2004, I requested to work at home on Tuesday and Wednesday, but the request was denied by Mr. Paul Johnson, former supervisor. Mr. Paul Reams, Hearing Office Director, spoke with me about the incident. After he spoke with Labor Management Relations on April 13, he rectified the April 12, 2004, event. See exhibit 1. Ms. Cynthia Lamar, current supervisor, issued me cases and informed me that I did not have to wait until Fridays to get cases.

On April 19, I went to Ms. Cynthia Lamar, current supervisor, person in charge of issuing cases for the month of April to get additional cases. Mr. Johnson was in her office and made statements against me being issued cases on Monday, April 19, instead of Friday, April 16. getting cases issued to me on that day. I told him that it was not a problem and I declined to work at home. After I reviewed the cases that were currently assigned to me, I returned to Ms. Lamar's office and informed them that I had decided to work at home with the cases that were in my possession.

While in the process of typing the event that had occurred earlier in Ms. Lamar's office, Mr. Johnson stood behind me and in a loud and harsh voice called out my name. Because of the tone of his voice, fear did not allow me to turn around to face him. Nonetheless, he began to question me and demanded that I return to Ms. Lamar's office. I returned with a union official.

On April 20, 2004, in the presence of a union official, I informed the director that I had called regional seeking safety measures, and I informed him of the April 19 incident. I requested that Mr. Johnson control his emotional behavior. Mr. Reams informed me that he would conduct an investigation.

As a result of the investigation (exhibit 2), a meeting was held on April 30, where Ms. Lamar and Mr. Carl Warren (via telephone) was present, I received an oral warning for insubordination for refusing to answer question(s) asked by Mr. Johnson. The questions asked by Mr. Johnson and Ms. Lamar were answered through a union official that was present at the meeting (exhibit 3). At the conclusion of the meeting after Mr. Warren had hung up the telephone, I was directed by Mr. Reams to stay in the hearing room.

Upon Mr. Reams continual conversation with me, I immediately and repeatedly asked for union representation but was denied the Weingarten Rights (see exhibit 4) through Mr. Reams action(s). I became extremely fearful and was tremendously stressed at being hemmed in the hearing room alone with two management officials. Finally after

2

Bernethia T. Johnson

asking approximately four to six times for representation, I began to speak out loudly as I wrote a letter (exhibit 5) regarding Mr. Reams denying me the Weingartner Rights. I was allowed to go to the restroom. While being momentarily free from the hearing room, I made copies of the letter and presented a copy to each of them to sign; both declined. It was only then that Mr. Reams, in an exceedingly s---l---o---w motion reached for the telephone to contact Mr. Warren, while he repetitively asked me the same question as to whether I was sure that I wanted representation.

I relentlessly answered his cyclical questions until I became annoyed and gave no response. Mr. Reams reminded me that I failed to answer his questions in a tone that implied that he had the authority to issue me disciplinary actions at a more progressive level. I told him that this scenario was similar to the one that had occurred in Ms. Lamar's office with Mr. Johnson. Therefore, to prevent receiving other disciplinary actions, I was **FORCED** to respond to each of Mr. Reams posed questions without union representation. I turned and asked Ms. Lamar to tell Mr. Reams what she told me last week about getting cases. She repeatedly replied to me, "You tell me what I said. When I mentioned about getting cases other than on Fridays, she stated that she had "no recollection."

Even though, according to him, he has never been in any branch of the United States Armed Forces, he discussed military issues with me and informed me that the reason I received the oral warning was because I "failed to follow direct order." The intimidation continued until he gave me permission to leave. I was very shaken and distressed about what had happed. I was mentally terrorized and abused by Mr. Reams and his accomplice, Ms. Lamar. **I walked out of that hearing room feeling as though I had been abducted and raped all over again, but not by a stranger but by well known and respected management. Although Ms. Lamar did not say much, it was as though she enjoyed watching what Mr. Reams was doing and what was taking place.**

On May 3, 2004, I presented Mr. Reams with a medical statement issued from my physician,, Dr. Davis. Mr. Reams declared it as "unacceptable." Therefore, upon returning to my physician's office on May 4, 2004, to get an "acceptable" medical statement (exhibit 6), I was informed that the statement previously given to me was a statement issued to all of Dr. Davis' patients when needed. Nonetheless, they would gladly meet Mr. Reams' demand. This clearly exemplifies harassment and shows unfair treatment.

On May 27, 2004, I was issued a reprimand (exhibit 7) by Mr. Reams where he presented no evidence of what was being discussed. Throughout the meeting, I repeatedly asked for case histories. He continued to badger me and insisted that I admit to cheating as all other employees do when caught. Later that day, I told Ms. Monique Caffey, **management has terminated her**, about my reprimand. She presented me with copies of documents that she had recently given to management of audits she conducted (exhibit 8). I presented these documents to Mr. Reams and asked if these were what he was referring

3

Bernethia T. Johnson

to in the meeting. He reviewed them and stated that he would give me case histories by close of business the next day.

On June 3, 2004, Ms. Caffey and I went to lunch together. I was amazed to learn that employees could tell me what time Ms. Caffey and I left going to lunch and the time that we returned. Shortly after returning from lunch, Ms. Caffey was given a "Proposal to Terminate. I believe management's action steamed not only from the documents I presented to Mr. Reams but also from the documents that Ms. Caffey had given me (exhibit 9).

On June 21, 2004, a meeting with Mr. Reams, a union official, and myself was held. In the opening of the meeting , Mr. Reams admitted that the evidence he thought he could used was deemed "**unreliable** (exhibit 10)." He stated that since it was "**unreliable**" he would go back to the supervisors for new evidence. He stated that some of the case histories he had given to me on May 28, were not of cases that were on my desk, but were gathered from a computer research that he had conducted. To this day, he has not yet differentiated between the cases that were supposed to have been found on my desk in RTH category  opposed to those cases that were not on my desk, but derived from his computer research. The evidence he deemed "**unreliable**" is the evidence he used to issue me the reprimand.

Although, for some unknown reason, I am no longer able to produce snapshots from the "general and summary property profile." Therefore, I produced tables for each legal assistants and lead case technicians, along with some cases that were created by the computer administrator which contains similar information for which Mr. Reams has given me a reprimand.

I have been singled out, discriminated, and disciplined in a matter that the computer system clearly shows the histories of other employees that work-up cases are similar to the case histories of cases worked by me. Because I have limited knowledge of the computer arena, I requested that the computer administrator and the director explain the difference in the findings of **creation date** and **date created**. Unfortunately, they were unable to give any explanation. As of this date, no explanation has been given. A review of the information I gathered from the profile shows that some exhibits were **created** in 2003 while the **date of creation** were dated in the 2004. I informed management that although I did not like speculating; all I could do was speculate; too much time had elapse for me to try to detail the histories of the cases Mr. Reams presented.

At this point, Ms. Lamar has prohibited me to communicate with her by e-mail. She has informed me that she "will not communicate to me by e-mail." I informed her that I had discussed the matter with Mr. Carl Warren, union official, but was informed to do so anyway. I fear that because if I e-mail Ms. Lamar, I may at anytime be call into another meeting with management officials and be issued a more progressive disciplinary action for failing to adhere to direct order(s).

4

Bernethia T. Johnson

Ms. Lamar makes appointments with employees which apparently overrides those employees waiting to speak with her at her door. In June, while waiting outside of Ms. Lamar's door, Ms. Barnett-Jefferson walks up and ask me if I am waiting for Ms. Lamar. I replied, "yes." Ms. Barnett-Jefferson is asked to come into Ms. Lamar's office and Ms. Barnett-Jefferson shuts the door in my face. Although I knock on Ms. Lamar's door and informs her that I was waiting to speak with her first. She informs me to return to my desk and that she will talk with me later. Later, Ms. Lamar informs me that Ms. Barnett-Jefferson had made an appointment with her and that appointments take precedence over non-appointment employees.

This office is known for employees hemming one another in corners, taking other employees property and hiding it. I believe it is no different with my work, coming up missing, moved from one location to another, and things being planted on my desk. Because of the afore mentioned, I can no longer pride myself on keeping up with cases that were/are assigned to me. It appears that nearly several times weekly I find myself spending hours or even days searching for my assigned cases. I now possess evidence that I am being portrayed me as a thief.

I also believe that a part of management's retaliatory actions against me stem from when I was union steward of this local agency. Numerous times when there were unresolved conflicts between local management and the local union, the conflicts were presented to next level in the American Federal Government Employee (AFGE). The majority of the time, management were found at fault and had been made by AFGE to cease and desist their unfair labor practices and activities, such as pre-selection, setting employees training time, and following AFGE national agreement. It is useless for me to report anything to management, because it seems to always backfire. Even when employees do not complete their work process and when management is made aware of employees incompleted work process, I am made to complete it or I am told to overlook it.
On July 21, 2004, while working at my Alternate Duty Station (ADS), the July 20, 2004, Serial Overtime or Holiday Work Attendance Roster, was found intermingled with my case workload. I don't know how it got there, but I believe it was planted. Nonetheless, I returned it to management.

As recent as Friday, July 23, 2004, as I passed Ms. Warner's desk leaving for lunch, we glimpsed at one another. I existed to the employees' pack parking lot located behind the building. As I was leaving the facility in my car with the windows rolled down, I heard a click. Looking in the direction of the click, I saw Ms. Warner standing in the front of the building with a camera to her face. Because she stood next to the security guard, Mr. Bobby, I telephoned him and asked why did she take my picture. He was uncertain as to why she had taken the picture but stated that she did take it. Because I felt uncomfortable about this situation, I reported this matter to my supervisor, Mr. Brown.

Bernethia T. Johnson

I am being constantly discriminated and harassed beyond measures. Although in the redress of my initial EEO action, I request that there be no retaliation from management, this I find is a non-applicable request. I would prefer to work comfortably without wondering about management's next scheme. I believe I will always receive harassment and unfair treatment and that I will continue to be disadvantaged even by the assignment of work. With the way local management has rigged its environment, it is impossible for me to prove my worth to the Social Security Administration, Office of Hearings and Appeals, Montgomery. I am a good employee with good potential but all have been masked by management. Therefore, with all said, I believe the only thing that is left for me to do is to request an immediate hardship transfer.

I have attached a copy of a letter from Dr. Smith, and a copy of my application. I thank you for your assistance in this matter.     enclosure 1                    enclosure 2

Sincerely,



Bernethia T. Johnson
Legal Assistant

6

# ATTACHMENT B

**Johnson, Bernethia**

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Tuesday, August 24, 2004 5:21 PM |
| **:** | Parsons, Sheila |
| **bject:** | Amendment to Hardship Transfer Request |

August 24, 2004

Please attach this amendment to my request. The purpose of this amendment is to request a change in the relocation cite.   When I requested the hardship transfer, I overlooked my youngest daughter's asthmatic condition. Therefore, I sincerely request that a transfer to the Birmingham office be honored instead of OHA Atlanta North.

Thank you for your assistance. It is deeply and greatly appreciated.

/s/ Bernethia T. Johnson

1

# ATTACHMENT C



# SOCIAL SECURITY

MEMORANDUM

| | | |
|---|---|---|
| Date: | October 7, 2004October 7, 2004 | Refer To: Request for Hardship Transfer |
| To: | Bernethia Johnson<br>Legal Assistant<br>OHA – Montgomery, AL | |
| From: | Gloria Bozeman<br>Regional Management Officer<br>OHA – Region IV | |
| Subject: | Request for Hardship Transfer - Response | |

This is in response to your request for hardship transfer to the Birmingham Hearing Office (HO). Your initial request was to the Atlanta North HO and you subsequently changed your request to Birmingham. I wish to express my regret in the delay in responding to your request.

In addition to an employee's reason(s) for the request, one of the fundamental factors I consider in reviewing any request for hardship transfer is the workload and current staffing of both affected HOs. Currently, the Birmingham HO has an adequate number of staff to meet Agency goals and mission. The ratio of Legal Assistants (LAs) to ALJs is 2.18 in Birmingham. Conversely, the Montgomery HO has a ratio of 1.55 LAs to ALJs. It is apparent that Montgomery has a greater need for LAs than Birmingham.

Relative to your statements that your local management team has created a hostile work environment, I requested a response from your Hearing Office Director to these concerns. A careful review of the response did not disclose a conclusion that a hostile work environment in fact exists in the Montgomery HO. If you have additional evidence to substantiate your claim of a hostile work environment, I would strongly encourage you to submit it to the Regional Office. I will be happy to review any documentation you may have in support of your claim.

Unfortunately, I am unable to honor your request to transfer to the Birmingham HO at this time.

/s/
Gloria Bozeman

# ATTACHMENT D

**Johnson, Bernethia**

45

| | |
|---|---|
| **From:** | Johnson, Bernethia |
| **Sent:** | Tuesday, November 16, 2004 5:37 PM |
| **:** | Bozeman, Gloria |
| **ubject:** | Follow-up to my Request to Transfer to Atlanta North OHA |

On October 7, 2004, I received your response for my request to transfer to Birmingham OHA. On October 8, 2004, I requested an immediate transfer to Atlanta North via e-mail. Approximately three weeks ago, upon contacting your office to ask for the status of my request, I was told that Mrs. Sheila Parsons would call me back. Currently, I have not heard from her. It is my understanding that a response is usually given at a minimum of two weeks after a transfer request is made.

Since my second request, another violent incident has occurred. An employee has threatened to bring a gun into this organization to shoot employee(s). This confirms the hostile work environment that I previously mentioned to you in my initial request.

I am desperately seeking a lateral transfer to Atlanta North OHA to escape the hostile work environment. Although I have worked for the Federal Government for 30 years which includes time spent in the United States Armed Forces, I have never encountered the high level of hostility in any United States Federal Government work place as to what has occurred here in Montgomery OHA. Therefore, I am requesting that an immediate transfer be granted. Please notify me about my immediate transfer request. Your immediate attention to this matter is to the highest degree appreciated.

Sincerely

/s/
Bernethia T. Johnson

1

# ATTACHMENT E



# SOCIAL SECURITY

## MEMORANDUM

Date:      December 1, 2004

To:        Bernethia Johnson
           Legal Assistant
           OHA – Montgomery, AL

From:      Gloria Bozeman
           Regional Management Officer
           OHA - Region IV

Subject:   Request for Hardship Transfer – Response

This memorandum is in response to your request for hardship transfer to the Atlanta North Hearing Office.

I regret that your request was not addressed more timely. However, we are currently reviewing the allegations noted in your request, and following review of this, will address your request for a hardship transfer to the Atlanta North Hearing Office.

I ask your patience as Regional Office personnel looks into the issues noted in your email and hopefully resolve those issues.

/s/
Gloria Bozeman

# ATTACHMENT F



# SOCIAL SECURITY

## MEMORANDUM

Date:     December 3, 2004

To:       Bernethia Johnson
          Legal Assistant
          OHA – Montgomery, AL

From:     Gloria Bozeman
          Regional Management Officer
          OHA - Region IV

Subject:  Request for Hardship Transfer – Response

This memorandum is in response to your request for hardship transfer to the Atlanta North Hearing Office.

We have investigated your allegations and taken signed statements from all parties involved. We have concluded that there is no threat and no basis for the allegations of a hostile work environment in the Montgomery Hearing Office.

In light of the above, we are confident that you will have a safe work environment in the Montgomery Hearing Office. Therefore, at this time, we are taking no further action in reference to your relocation to the Atlanta North Hearing Office.

                              /s/
                        Gloria Bozeman

# ATTACHMENT G

**Johnson, Bernethia**

| | |
|---|---|
| ˉrom: | Johnson, Bernethia |
| ‚ent: | Thursday, February 17, 2005 11:32 AM |
| To: | Bozeman, Gloria; Parsons, Sheila; Johnson, Trudy; Belt, Leon; Scott, Betty   OHA Atlanta RO |
| Subject: | Immediate Transfer |
| | |
| Importance: | High |
| Sensitivity: | Personal |

Please allow me an immediate transfer to OHA Atlanta North, GA., for financial and health reasons.  More importantly, this transfer will also allow me to be closer to my elderly and ill mother, and I will be able to give assistance to her in time of her crisis.

/s/
Bernethia T. Johnson

| Tracking: | Recipient | Delivery | Read |
|---|---|---|---|
| | Bozeman, Gloria | Delivered: 2/17/2005 11:32 AM | Read: 2/18/2005 4:40 PM |
| | Parsons, Sheila | Delivered: 2/17/2005 11:32 AM | Read: 2/17/2005 11:34 AM |
| | Johnson, Trudy | Delivered: 2/17/2005 11:32 AM | Read: 2/24/2005 1:54 PM |
| | Belt, Leon | Delivered: 2/17/2005 11:32 AM | Read: 2/22/2005 4:56 PM |
| | Scott, Betty   OHA Atlanta RO | Delivered: 2/17/2005 11:32 AM | Read: 2/22/2005 9:31 AM |
| | 'lightsalt@charter.net' | | |

1

# ATTACHMENT H



# SOCIAL SECURITY

MEMORANDUM

Date:       February 25, 2005

To:         Bernethia Johnson
            Legal Assistant
            OHA – Montgomery, AL

From:       Gloria Bozeman
            Regional Management Officer
            OHA - Region IV

Subject:    Request for Hardship Transfer – Response

This memorandum is in response to your request for hardship transfer to the Atlanta North Hearing Office.

Unfortunately, we are unable to accommodate your request at this time. The Atlanta North Hearing Office has critical staffing shortages in the CT position, not SCTs. Any recruitment strategy is targeted toward CTs. Once we receive our FY 05 staffing allocation, we will be happy to revisit your request.

I regret my response could not be more favorable at this time.

/s/
Gloria Bozeman

# ATTACHMENT I

```
TO:       Paul R. Reams, HOD
FROM:     Bernethia Johnson
DATE:     June 29, 2005
SUBJECT:  Request for an Immediate Transfer
```

As you are aware, this is my third attempt to transfer to another
location. I request that I be granted an immediate hardship transfer to
OHA Chattanooga for personal reasons. Your consideration in this matter
is appreciated.

# ATTACHMENT J

Ms. Bernethia T. Johnson
225 Garden Homes Circle
Montgomery, AL  36116

August 10, 2005


Social Security Administration
Office of Hearings and Appeals
ATTN:  Ms. Gloria Bozeman
61 Forsyth Street
Suite 20T10
Atlanta, GA  30303

Dear Ms. Bozeman:

In responding to your August 2, 2005, letter, where you request that I "forward more specific information concerning your hardship transfer," the following is provided.

You are aware from my initial request for an immediate hardship transfer around August 2004, that there are several uncomfortable reasons why I have requested an immediate hardship lateral transfer.  One of the most important reasons at this time is my mother's failing health and my need to assist in caring for her.  While my mother was staying with me, in June 2005 she had approximately three strokes, all within one week.  She was seen in the emergency rooms at Jacksonville Hospital (AL) and Baptist South Hospital in Montgomery.  At these hospitals, the physicians were concerned about the type of medications she had been prescribed of many years.  They informed me that it would take at least two weeks of hospitalization for them to study my mother and to regulate her medications.  Therefore, it was befitting for me to get my mother back to Tennessee, so that she could receive treatment from her treating physician (Dr. E. Davidson) of many years and who specifically knows of my mother's medical history.  Upon getting her back to Tennessee, she was immediately taken to Baptist Hospital where she was admitted and was hospitalized for two weeks under her own treating physician's care.  She has numerous health problems and the ones that I am familiar with are:  thyroids, stroke (weak on one side of her body from the stroke), diabetes, heart problems, shortness of breath, overweight, tightness around her stomach, legs problem, blind in one eye, and when swallowing her food, she has a tendency of choking.  There are other surrounding problems that affect my mother's health, but I believe the information provided is sufficient.

I have been traveling back and forward to Tennessee to give relief to my sister and to give assistance with cooking, washing clothes, shopping for mama's personal needs and giving weekend baths.  My sister has recently had open-heart surgery and is in no condition to care for mother.

Should you need additional information regarding my mother's health, I am certain that I can secure the medical evidence needed to accommodate you in making an informed decision about whether the agency will allow me an immediate hardship lateral transfer.

Also, although initially I requested to relocate to OHA Chattanooga, I am not limited to OHA Chattanooga only. I am willing to transfer to any of the following SSA, OHA offices, all of which are a better commute than Montgomery.

        Atlanta (downtown), GA
        Atlanta North, GA
        Birmingham, AL
        Charlotte, NC
        Columbia, NC
        Greenville, SC
        Kingsport, TN
        Lexington, KY
        Louisville, KY
        Middlesboro, KY
        Nashville, TN

Please correspond to my above-cited home address. Too, I may be contacted by telephone numbers (334) 223-70077 ext. 3052 (office) and (334) 284-8590 (home). Thank you for your assistance in this matter.

Sincerely,


Bernethia T. Johnson

# ATTACHMENT K



# SOCIAL SECURITY

September 1, 2005


Ms. Bernethia Johnson
3381 Atlanta Highway
Montgomery, AL  36109

Dear Ms. Johnson:

This is in response to your letter dated August 10, 2005, requesting a hardship transfer from the Montgomery, AL hearing office to the Chattanooga, TN hearing office.

I am happy to inform you that I have approved your transfer request from Montgomery to Chattanooga.  By this letter, I am requesting that Paul Reams, HOD, in your current office and Gayle Lyell, HOD, in Chattanooga, TN, work out an effective date and reporting date.  This will require a memo from you stating that the relocation will be at no cost to the agency.  Once the dates have been established, please forward this information to Janis Hargrave in our office, prior to your effective transfer date.

Sincerely,


 /s/
Gloria Bozeman
Regional Management Officer

cc:  Paul Reams, HOD
      Montgomery, AL

      Cynthia Lamar, GS
      Montgomery, AL

      Gayle Lyell, HOD
      Chattanooga, TN

      Shelia Parsons
      Regional Office